Jeffrey M. Davidson (SBN 248620)
Phillip Warren (SBN 89744)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:   jdavidson@cov.com
Email:   pwarren@cov.com

Michael E. Martinez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone:  (312) 372-1121
Email:  michael.martinez@klgates.com
Email:  lauren.donahue@klgates.com

*Attorneys for Defendants SK Energy Americas, Inc.,*
*SK Trading International Co., Ltd., and*
*David Niemann*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CALIFORNIA GASOLINE SPOT MARKET ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No.: 3:20-cv-03131-JSC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE BY DEFENDANT SK TRADING INTERNATIONAL CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:   December 10, 2020<br>Time: 9:00 a.m.<br>Dept:  San Francisco, Courtroom E<br>Judge:  Hon. Jacqueline S. Corley |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.      INTRODUCTION ............................................................................................................. 1

II.     BACKGROUND ............................................................................................................... 2

        A.      Jurisdictional Facts Relevant to SKTI and SKEA ............................................... 2

        B.      Plaintiffs' Allegations Regarding SKEA and SKTI ............................................. 3

III.    ARGUMENT ..................................................................................................................... 4

        A.      SKTI Is Not Subject to General Personal Jurisdiction........................................ 5

        B.      SKTI Is Not Subject to Specific Personal Jurisdiction ....................................... 6

                1.      Plaintiffs Fail to Allege Purposeful Direction or Purposeful Availment ............... 7

                2.      The Exercise of Jurisdiction Would Be Unreasonable ........................... 9

        C.      SKTI Does Not Have an "Alter Ego" Relationship with SKEA that Would Give
                Rise to Personal Jurisdiction ............................................................................ 10

                1.      SKEA and SKTI Do Not Have a Unity of Interest that Would Support the
                        Extreme Remedy of Treating SKEA as SKTI's Alter Ego.................................. 10

                2.      Dismissal of the Complaint Against SKTI Will Not Lead to an Inequitable
                        Result ......................................................................................................... 14

        D.      "Agency" Does Not Give Rise to Personal Jurisdiction over SKTI ............................... 15

        E.      Plaintiffs Are Not Entitled to Both Nationwide Jurisdiction and Nationwide
                Venue Against SKTI ......................................................................................... 16

IV.     CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

CASES

*Apple Inc. v. Allan & Assocs., Ltd.*,
    2020 WL 1492665 (N.D. Cal. 2020) ..........................................................................15, 16

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987)......................................................................................................8, 9

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
    137 S. Ct. 1773 (2017)............................................................................................8, 9, 19

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................................................7

*Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) .............................................................................................5

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995)....................................................................................10

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ...........................................................................................7

*Corcoran v. CVS Health Corp.*
    169 F. Supp.3d 970 (N.D. Cal 2016) ................................................................................16

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)............................................................................................6, 15, 16

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)..............................................................................................17

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc*,
    557 F.2d 1280 (9th Cir. 1977) ...........................................................................................5

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ..............................................................................11, 14, 16

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*,
    885 F.2d 1406 (9th Cir. 1989) .....................................................................................17, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011).......................................................................................................8

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)..........................................................................................................18

*GTE New Media Servs., Inc. v. Bellsouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ................................................................17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..............................................................................10

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ................................................................................8

*KM Enters. v. Global Traffic Techs.*,
   725 F.3d 718 (7th Cir. 2013) ...........................................................17, 18

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
   235 Cal.App.3d 1220 (1991) ..................................................................12

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ..................................................................19

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ..................................................................6

*Mehr v. Federation Internationale de Football Assoc.*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) ......................................................9

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (N.D. Cal. 2013) ....................................................10

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ........................................................8

*Pac. Atlantic Trading Co., Inc. v. M/V Main Exp.*,
   758 F.2d 1325 (9th Cir. 1985) ..................................................................9

*In re Packaged Seafood Prods. Antitrust Litig.*,
   338 F. Supp. 3d 1118, 1139 (S.D. Cal. 2018) ..........................................6, 7

*Payrovi v. LG Chem Am., Inc.*,
   2020 WL 5798375 (N.D. Cal. Sept. 29, 2020) ............................................8

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ..............................................................4, 7

*Playboy Enters., Inc. v. Welles*,
   279 F.3d 796 (9th Cir 2002) ..................................................................10

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ..........................................................*passim*

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992) ..............................................................................19

*Reynolds v. Binance Holdings Ltd.*,
    2020 WL 5074391 (N.D. Cal. Aug. 26, 2020) ............................................................... *passim*

*Robinson v. Ashcroft*,
    357 F. Supp. 2d 146 (D.D.C. 2004) ...............................................................................5

*Schwartzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .....................................................................................7, 8

*Sinatra v. Nat'l Inquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ....................................................................................8, 9

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..........................................................................................5

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
    290 F. Supp. 2d 1057 (N.D. Cal. 2003) .........................................................................11

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ..........................................................................................................10

*United States v. Nat' l City Lines*,
    334 U.S. 573 (1948) .........................................................................................................18

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
    108 F. Supp. 3d 733 (N.D. Cal. 2015) ..........................................................................7, 8

*Vance's Foods, Inc. v. Special Diets Europe Ltd.*,
    2012 WL 1353898 (E.D. Cal. Apr. 16, 2012)...................................................................8

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .................................................................................. *passim*

**STATUTES**

15 U.S.C. § 22........................................................................................................5, 17, 18

28 U.S.C. § 1391.........................................................................................................17, 18

Fed. R. Civ. P. 12 ..................................................................................................1, 2, 4, 16

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 10, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jacqueline S. Corley, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Courtroom E−15th Floor, Defendant SK Trading International Co., Ltd., will, and hereby does, move pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) to dismiss Plaintiffs' Consolidated Class Action Complaint for lack of personal jurisdiction and improper venue.  The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Jinwoo Jeong, the concurrently filed Rule 12(b)(6) motion to dismiss and motion to stay, arguments of counsel, and such other submissions and material that the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs' Consolidated Class Action Complaint (Complaint) should be dismissed as to SK Trading International Co., Ltd. under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

In this lawsuit, the Plaintiffs accuse SK Energy Americas, Inc. (SKEA) and SK Trading International Co., Ltd. (SKTI)[1] of conspiring with Vitol Inc. to enter into anticompetitive agreements and to manipulate the gasoline spot market in California in violation of the Sherman Act and California's Cartwright Act and Unfair Competition Law.  Because the claims are unfounded, Plaintiffs have overreached on the merits.  Plaintiffs have also overreached on jurisdiction by naming the Korean company SKTI as a defendant.  SKTI is organized under the laws of Korea and headquartered there.  It has never had any presence in or substantial contacts with California or any other state.  Nor has it

---

[1] The Complaint refers to the defendants as "SK Energy" and "SK Trading" and refers to them collectively as "SK."  Compl. ¶ 31.  The reference to defendant SK Energy Americas, Inc. as "SK Energy" is potentially misleading.  SK Energy Co., Ltd. is a separate company from SK Energy Americas, Inc. and SK Energy International Pte., Ltd. is SKEA's parent.  To help avoid confusion, this Motion uses the acronyms SKEA and SKTI to refer to defendants SK Energy Americas, Inc. and SK Trading International Co, Ltd., respectively.

exercised control over SKEA's day-to-day operations.  Under these circumstances, this Court cannot exercise personal jurisdiction over SKTI.  Accordingly, SKTI moves to dismiss the Complaint against it for lack of personal jurisdiction and improper venue.  *See* Fed. R. Civ. P. 12(b)(2), 12(b)(3).

## II.     BACKGROUND

### A.     Jurisdictional Facts Relevant to SKTI and SKEA

SKTI is a Korean corporation with its principal place of business in Korea.  It is engaged in the business of trading petroleum products and of importing and exporting petroleum products to and from Korea.  *See* Declaration of Jinwoo Jeong (Jeong Decl.) ¶ 6.  SKTI has never registered with the California Secretary of State to transact business within California nor registered with any other state to transact business there.  *Id.* ¶ 8.  It has never had a registered agent or paid taxes in the United States.  *Id.* ¶ 9.  Nor has it maintained offices, facilities, property, or bank accounts in the United States.  *Id.* ¶ 11.

SKTI has no direct ownership interest in SKEA, and SKEA is not a subsidiary of SKTI.  Rather, SKTI is the parent company to a Singaporean company, SK Energy International Pte. Ltd., which is the parent company to SKEA.  *Id.* ¶ 7.  SKTI and SKEA are separate legal entities.  The two companies maintain separate corporate records, and their funds and other assets are likewise separately maintained.  *Id.* ¶¶ 16-17.  SKTI is not and has never held itself out as liable for SKEA's debts.  *Id.* ¶ 18.

SKTI has never transacted business in California or the United States.  It has never executed a trade of physical gasoline in California or elsewhere in the United States.  It has never entered into a contract to buy or sell physical gasoline in California or the United States.  It has never entered into a gasoline futures contract in California or the United States.   Nor has it ever entered into a joint venture or other collaborative arrangement with another company in California or elsewhere in the United States.  *Id.* ¶¶ 12-14.

SKTI is the parent corporation of SKEA's parent corporation.  As SKEA's grandparent corporation, it does not control the daily operations of SKEA.  Employees of SKTI monitored SKEA's California gasoline trading operations for compliance with pre-set mathematical trading loss-limit and risk parameters that applied to SKEA's overall California gasoline trading book.  But SKTI never exercised any day-to-day control over SKEA's California gasoline trading activities.  SKEA had no policy or practice that required SKTI to review or authorize specific trades.  SKEA's California gasoline

1  traders had the sole discretion to execute transactions as long as they were within the prescribed risk-

2  management numerical limits.  *Id.* ¶ 19.

3  **B.      Plaintiffs' Allegations Regarding SKEA and SKTI**

4          The Complaint names both SKEA and SKTI as defendants.  It refers to them collectively as

5  "SK," Compl. ¶ 31, and it asserts many allegations and all claims against both defendants.  This "group

6  pleading" results in a series of allegations that are false, since virtually all of the actions attributed to

7  "SK" were not and could not have been performed by SKTI.  For example, SKTI did not enter into large

8  contracts with ExxonMobil for alkylate in 2015, Compl. ¶ 109, make trades with Vitol that were

9  reported to OPIS, e.g., *id.* ¶¶ 117-120, or enter into joint ventures with Vitol, *id.* ¶¶ 129-139.  The only

10  SK entity that would have entered into any contracts with ExxonMobil, trades with Vitol, or joint

11  ventures with Vitol in California is SKEA.  Defendants asked that Plaintiffs correct these misleading

12  allegations under their Rule 11 obligations, but Plaintiffs refused.  Setting aside the misleading "group

13  pleading" that wrongly attributes SKEA's acts to SKTI, the Complaint's allegations with respect to

14  SKTI itself are minimal.  And Plaintiffs' claims are in large measure copied from a Complaint filed by

15  the California Attorney General.  Their claims exhibit no evidence of independent knowledge based on a

16  factual investigation of any of these allegations.

17          The Complaint misleadingly describes SKEA as an "indirect, wholly-owned subsidiary" of

18  SKTI.  Compl. ¶ 23.  In fact, as set forth above, SKEA is actually a grandchild company; its parent

19  company is SK Energy International Pte. Ltd. (SKEI), a Singaporean corporation, based in Singapore.

20  Jeong Decl. ¶ 7.

21          The Complaint makes five conclusory allegations about SKEA's operational relationship with

22  SKTI.  None of the allegations are factual; they simply assert legal conclusions.  First, the Complaint

23  alleges that SKTI "dominated and controlled" SKEA and "specifically ratified the illegal conduct

24  engaged in" by SKEA.  Compl. ¶ 27.  Second, it alleges that SKEA was the "agent" and "alter ego" of

25  SKTI due to the nature and extent of control that SKTI exercised over SKEA.  *Id.* ¶ 28.  Third, it alleges

26  that there was a "unity of interest and ownership" between SKEA and SKTI such that "any separateness

27  between them had ceased to exist" and SKTI "controlled, dominated, managed, and operated."  *Id.* ¶ 29.

28  Fourth, it alleges that SKTI controlled the business and affairs of SKEA such that "the distinction

3

between the companies were [sic] mere technicalities." *Id.*  And fifth, it alleges that SKEA was "acting within the course and scope of its agency with the knowledge, consent, permission, authorization, and ratification, either express or implied" of SKTI in performing the acts alleged.  *Id.* ¶ 30.

Finally, the Complaint makes allegations about SKTI's supposed control of SKEA's California gasoline spot market trading operations without supplying any supporting factual detail.  It merely asserts that SKEA "functioned as the California trading arm" of SKTI, that SKEA's trading was conducted within the "continuous and pervasive control and supervision" of SKTI and its subsidiaries, and that SKTI "specifically reviewed and approved key decisions to coordinate certain trading activities with Vitol." *Id.* ¶ 87.  And it alleges that SKTI was "directly involved in nearly every aspect" of the employment of SKEA's head trader.  *Id.* ¶ 88.

Despite its many recitations of legal conclusions, the Complaint contains only a handful of specific facts.  First, it alleges that SKTI approved the decision to hire David Niemann (and Shelly Mohammed, the scheduler who worked with Niemann) and that an SKTI executive was in Niemann's reporting chain of command, and personally negotiated Niemann's bonus.  *Id.* ¶ 88.  Second, it alleges that SKEA's trades were governed by SKTI's Trading Risk Management Policy applicable to all of its global affiliates and that SKTI set SKEA's trade parameters, reviewed business plans, set position and loss limits, and verified trade entries.  *Id.* ¶ 89.  And third, SKTI sent one of its executives on periodic trips to directly supervise SKEA's operations and meet with SKEA's partners or competitors to discuss business or attempts to generate business, including one trip in April 2015 to attend a meeting with Vitol in Houston, Texas.  *Id.* ¶ 90.

## III.  ARGUMENT

The Complaint should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  The Complaint is facially deficient.  It does not allege facts that come close to establishing that SKTI is "essentially at home" in California or any other state, as required to establish general personal jurisdiction.  Nor does it allege facts that establish a basis for specific personal

jurisdiction: that SKTI purposefully directed its activities toward the forum (either California or the United States as a whole), purposefully availed itself of the forum, engaged in activities from which the claims arise, or that the exercise of jurisdiction would be reasonable.  Nor does the Complaint allege facts that would support treating SKTI as the alter ego of SKEA.

On this motion to dismiss, Plaintiffs bear the burden of establishing—with specific facts—that all jurisdictional criteria are satisfied.  The Court may consider defendant's evidence presented by declaration in determining personal jurisdiction and may not assume the truth of allegations that are contradicted by declarations.  *Data Disc., Inc. v. Sys. Tech. Assocs., Inc*, 557 F.2d 1280, 1284-85 (9th Cir. 1977).  Moreover, the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Indeed, plaintiffs must offer specific facts demonstrating jurisdiction; vague assertions are insufficient.  *See, e.g.*, *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (conclusory allegations that defendants had agent in district did not establish personal jurisdiction); *Robinson v. Ashcroft*, 357 F. Supp. 2d 146, 148 (D.D.C. 2004) ("Plaintiff bears the burden of establishing personal jurisdiction over each defendant.  In order to meet his burden, plaintiff must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations." (citation omitted)).

Moreover, as discussed in Section III.E. below, although the Ninth Circuit has held that in antitrust cases, nationwide contacts, as opposed to forum state contacts, can be used to establish jurisdiction under 15 U.S.C. § 22, SKTI contends that Plaintiffs should be required to establish contacts with California, and that, in any event, venue in the Northern District of California is improper.  Assuming, however, that the Court rules that nationwide contacts are sufficient, this Motion argues that SKTI has insufficient contacts anywhere in the United States to support a finding that the Court has personal jurisdiction over SKTI.

### A.     SKTI Is Not Subject to General Personal Jurisdiction

Plaintiffs cannot establish general personal jurisdiction over SKTI.  General personal jurisdiction over a corporation exists only where it is incorporated or has its principal place of business, or in exceptional cases where the corporation's contacts with the forum are "so constant and pervasive as to

render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)); *Ranza*, 793 F.3d at 1069; *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 (S.D. Cal. 2018). The Supreme Court's decision in *Daimler* "makes clear the demanding nature of the standard for general personal jurisdiction over a corporation." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 134 S. Ct. at 751).

As this Court has acknowledged, "*Daimler*'s bedrock principle" makes the inquiry "not whether a foreign corporation's in-forum contacts can be said in some sense to be 'continuous and systematic,' but rather if the 'corporation's *affiliations with the State* are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Reynolds v. Binance Holdings Ltd.*, 2020 WL 5074391 at *3 (N.D. Cal. Aug. 26, 2020) (internal quotations and citation omitted).

Here, SKTI does not have "constant and pervasive" contacts with California or any other state that could render SKTI "essentially at home" anywhere in the United States. *Daimler*, 134 S. Ct. at 751. As the Complaint acknowledges, SKTI is not incorporated in California or elsewhere in the United States, and its principal place of business is not in California or elsewhere in the United States—the "paradigm bases" for general personal jurisdiction. *Id.* at 760 (internal quotations omitted); *see* Compl. ¶ 24. SKTI maintains no physical presence in, has never conducted business in, and is not qualified to do business in California or any other state. *See* Jeong Decl. ¶¶ 8-12. There accordingly could be no basis for this Court to exercise general personal jurisdiction over SKTI.

## B.    SKTI Is Not Subject to Specific Personal Jurisdiction

Plaintiffs cannot carry their burden to establish a basis for the exercise of specific personal jurisdiction over SKTI. To adequately plead specific jurisdiction over a foreign defendant, a plaintiff must show: "(1) the defendant either 'purposefully direct[s]' its activities or 'purposefully avails' itself of the benefits afforded by the forum's laws; (2) the claim arises from the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is] reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017); *see also Packaged Seafood*, 338 F. Supp. 3d at 1148 (applying test in an antitrust case). Plaintiffs bear the

burden of satisfying the first two prongs of the analysis.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Here, Plaintiffs cannot establish either prong of the test.

### 1.    Plaintiffs Fail to Allege Purposeful Direction or Purposeful Availment

The "purposeful direction" prong is "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (internal marks omitted); *see also Packaged Seafood*, 338 F. Supp. 3d at 1148 (noting that courts in the Ninth Circuit "apply the purposeful direction test to antitrust cases").  "[A]n antitrust defendant 'purposefully directs' its activities at a forum when its allegedly anticompetitive behavior is targeted at the resident of the forum, or at the forum itself." *Cont'l Auto Sys., Inc. Avanci, LLC*, 2019 WL 6735604 at *7 (N.D. Cal. Dec. 11, 2019) (internal citation and quotation marks omitted).  The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of any party or a third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) (citations omitted).  By contrast, "purposeful availment" is typically an action by the defendant that invokes the benefits and protections of the laws in the forum state. *Pebble Beach*, 453 F.3d at 1155.

Plaintiffs cannot establish that SKTI purposefully directed wrongful conduct or purposefully availed itself of the privilege of conducting activities in California or in the United States.  Plaintiffs allege anticompetitive activities involving gasoline trading and collaborative activities between Vitol and SKTI as well as SKEA.  But SKTI has never traded gasoline in the California spot gasoline market or anywhere else in the United States—it has no facilities or assets in California or elsewhere in the United States with which it could do so.  Jeong Decl. ¶¶ 8-14.  Nor has it entered into collaborative activities with Vitol in California or elsewhere in the United States. *Id.*

In fact, Plaintiffs make no effort to identify which of the alleged anticompetitive conduct they contend that SKTI carried out—rather, they deliberately obfuscate through "group pleading."  In much of the Complaint, Plaintiffs level allegations at "SK," a term that lumps together SKEA and SKTI, attempting to establish personal jurisdiction over the two defendants simultaneously.  Plaintiffs' failure to specify SKTI's role in the alleged anticompetitive conduct renders its allegations deficient. *See, e.g.*,

1   *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify

2   what action each Defendant took that caused Plaintiff's harm, without resort to generalized allegations

3   against Defendants as a whole") (internal quotation marks and citation omitted)).

4       Plaintiffs have not alleged the types of facts previously found sufficient to show that a defendant

5   purposefully availed itself of a forum state.  For example, courts have held that a foreign defendant

6   purposefully avails itself of a state when it solicits or enters into commercial transactions with customers

7   in the forum state, *Sinatra v. Nat'l Inquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988), when it executes

8   or performs a contract there, *Schwarzenegger*, 374 F.3d at 802, when it takes deliberate actions within

9   the forum state creating ongoing obligations to customers in the forum state, *Vance's Foods, Inc. v.*

10  *Special Diets Europe Ltd.*, 2012 WL 1353898 at *5 (E.D. Cal. Apr. 16, 2012), or when it engages in an

11  advertised campaign that targets the forum state, *Payrovi v. LG Chem Am., Inc.*, 2020 WL 5798375 at

12  *5 (N.D. Cal. Sept. 29, 2020).  In other words, this jurisdictional test focuses on the defendant's

13  intentionality, which may be determined from, for example, "designing the product for the market in the

14  forum State, advertising in the forum State, establishing channels for providing regular advice to

15  customers in the forum State, or marketing the product through a distributor who has agreed to serve as

16  the sales agent in the forum State."  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480

17  U.S. 102, 112 (1987); *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (finding

18  specific jurisdiction lacking where "at no time had [the defendant] advertised in, sent goods to, or in any

19  relevant sense targeted the State.").  Nothing close to these facts is alleged here.

20      The second requirement for specific jurisdiction is that the claim "arises out of or relates to the

21  defendant's forum-related activities."  *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F.

22  Supp. 3d 733, 749 (N.D. Cal. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802).  "[S]pecific jurisdiction

23  is confined to adjudication of the issues deriving from, or connected with, the very controversy that

24  establishes jurisdiction."  *Goodyear*, 564 U.S. at 919; *see also Bristol-Myers Squibb Co. v. Super. Ct. of*

25  *Cal., S.F. Cnty.,* 137 S. Ct. 1773, 1781 (2017).  The question under this prong is whether a plaintiff's

26  claims would have arisen "but for" the defendant's contact with the forum.  *See Mehr v. Federation*

27  *Internationale de Football Asso*c., 115 F. Supp. 3d 1035, 1051 (N.D. Cal. 2015).

28

8

The Complaint's allegations arise out of the activities of SKEA and Vitol relating to the California spot gasoline market.  Nothing in the Complaint depends on the existence of SKTI or its activities in California or anywhere in the United States.  The Complaint does not allege *any* contacts by SKTI with California or any other state that bear *any* relation—let alone a "substantial connection"—to Plaintiffs' claims.

### 2.   The Exercise of Jurisdiction Would Be Unreasonable

Even if Plaintiffs could establish the first two prongs of the test for specific personal jurisdiction over SKTI, the exercise of jurisdiction would be unreasonable.  Throughout the reasonableness assessment, "the primary concern is the burden on the defendant."  *Bristol-Myers*, 137 S. Ct. at 1780 (internal marks omitted).

While constitutional considerations always demand that courts exercise restraint in asserting jurisdiction over out-of-state defendants, "when the nonresident defendant is from a foreign nation, rather than from another state in our federal system, the sovereignty barrier is higher, undermining the reasonableness of personal jurisdiction."  *Pac. Atlantic Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir. 1985).  Indeed, the Supreme Court has stated that the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness" of personal jurisdiction.  *Asahi*, 480 U.S. at 114.  Accordingly, this Court must consider not only the "important sovereignty concerns" that arise from asserting jurisdiction against an alien defendant such as SKTI, but also the significant burdens that SKTI would face in defending itself locally.  *See Sinatra*, 854 F.2d at 1199.

Here, forcing SKTI—a Korean company with zero presence in California—to appear in a forum an ocean away from its headquarters in Korea would naturally impose "serious burdens."  *Asahi*, 480 U.S. at 115.  As an initial matter, multi-year Cartwright Act and UCL claims of the type Plaintiffs allege would invariably result in expensive and burdensome party discovery of foreign-located witnesses and documents.  The burden on SKTI of appearing in this forum to litigate claims that are wholly unrelated to any contacts it had with California or any other state would not comport with "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

1

2

### C.   SKTI Does Not Have an "Alter Ego" Relationship with SKEA that Would Give Rise to Personal Jurisdiction

The alter ego doctrine is an equitable doctrine that allows a corporate identity to be disregarded to extend personal jurisdiction to a foreign parent when "in actuality, the foreign entity is not really separate from its domestic affiliate." *Williams*, 851 F.3d at 1020 (quoting *Ranza*, 793 F.3d at 1073). But the doctrine must be applied with great care, since it is "a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations and quotations omitted).  And "as a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza*, 793 F.3d at 1070.  Indeed, this Court has recognized that disregarding the corporate entity is an "extreme remedy," and that "courts will only pierce the corporate veil in 'exceptional circumstances.'" *Reynolds*, 2020 WL 5074391 at *4 (citations omitted)*; see Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 807 (9th Cir 2002) ("[T]he alter ego rule is generally applied with caution."); *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (it is rare for a court to treat a parent and subsidiary as one entity for purposes of jurisdiction, unless a showing of fraud or injustice is made).

To establish an alter ego relationship a plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *See Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).  A plaintiff must allege specifically both elements of alter ego liability, as well as facts supporting each. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (N.D. Cal. 2013) (citation omitted).  Plaintiffs' conclusory allegations are not sufficient to establish an alter ego relationship between SKTI and SKEA.

### 1.   SKEA and SKTI Do Not Have a Unity of Interest that Would Support the Extreme Remedy of Treating SKEA as SKTI's Alter Ego

This Court has addressed the unity-of-interest prong of the alter ego test, observing that it "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Reynolds*, 2020 WL 5074391 at *4 (citing *Ranza*, 793 F.3d at 1073); *see also Ranza*, 793 F.3d at 1073

10

(the "unity of interest" prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former" (internal quotation marks and citations omitted)).  A parent does not forfeit the protection of the corporate form by overseeing the subsidiary's overall activities; that is conventional and expected.  *Reynolds*, 2020 WL 5074391 at *4 ("[a] parent's 'substantial' involvement in the subsidiary's activity is insufficient 'to negate the formal separation between the two entities' for jurisdictional purposes—a parent must be involved in a subsidiary's routine day-to-day operations such that there is a failure of the entities to observe their separate 'corporate formalities.'"); *Doe*, 248 F.3d at 927 (a parent corporation may be directly involved in macro-management of its subsidiaries "without exposing itself to a charge that each subsidiary is merely its alter ego."); *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1064 (N.D. Cal. 2003) (jurisdiction over a subsidiary can serve as the basis for jurisdiction over a corporate parent only if the parent exerts pervasive and dominant control that goes beyond the "normal corporate oversight by a parent of a subsidiary").

In considering entities' unity of interest, relevant factors include "the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers."  *Reynolds*, 2020 WL 5074391 at *4 (citations omitted).

Plaintiffs allege conclusory statements and labels that track the relevant legal standards, but are devoid of facts.  For example, the Complaint alleges that SKTI "dominated and controlled" SKEA and "specifically ratified the illegal conduct engaged in by [SKEA]"; that SKEA was "an agent and alter ego" of SKTI; that "there existed a unity of interest and ownership" between the companies "such that any separateness between them had ceased to exist"; that SKTI "controlled, dominated, managed, and operated" SKEA; and that SKTI "controlled the business and affairs of SKEA "such that the distinction between the companies were mere technicalities."  Compl. ¶ 27-29.  Such conclusory allegations of "alter ego" status are insufficient to state a claim.  As this Court has recognized, "to sufficiently allege a theory of alter ego . . . a plaintiff must offer more than labels and conclusions—'factual allegations must

be enough to raise a right to relief above the speculative level'" and a plaintiff "must explain how factual allegations are applicable to the alter ego analysis." *Reynolds,* 2020 WL 5074391 at *4; *see Williams*, 851 F.3d 1015 at 1025 n.5 (disregarding similar language as "a conclusory legal statement unsupported by any factual asserting [one defendant's control over the other] or regarding any other aspect of the parent-subsidiary relationship").

In addition to being conclusory, Plaintiffs' allegations are simply wrong. As an initial matter, SKTI and SKEA have no unity of ownership. SKTI has no direct ownership interest in SKEA, and SKEA is not an SKTI subsidiary. SKTI is the parent company to SKEA's parent company, SK Energy International Pte., Ltd. Jeong Decl. ¶ 7. SKTI's position as the parent of SKEA's parent corporation confers none of the legal rights that corporate law affords a corporation over its subsidiaries. Only in rare cases in which a defendant has attempted to use its corporate structure to escape liability for fraud and other misdeeds have courts applied alter ego liability to an affiliated non-parent company. *See, e.g.*, *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.,* 235 Cal. App. 3d 1220, 1248-1251 (1991). Also, SKEA and SKTI maintain separate corporate records and separate funds and other assets, Jeong Decl. ¶¶ 16-17, and SKTI has never held itself out as liable for SKEA's debts, *id.* ¶ 18.

The Complaint's attempts to attribute the alleged actions of SKEA to SKTI are incorrect or misleading. It refers to SKEA and SKTI collectively as "SK." Compl. ¶ 31. This approach results in factual allegations that are demonstrably untrue. SKTI is organized under the laws of Korea and headquartered there. It has never transacted business in California or the United States. Jeong Decl. ¶ 12. And it has never exercised control over SKEA's day-to-day operations. Jeong Decl. ¶ 19. Thus, virtually all of the actions attributed to "SK" were not and could not have been performed by SKTI, and the Complaint provides no evidence outside of bare and conclusory allegations to show otherwise.

The Complaint fails to distinguish between the actions of SKEA and SKTI throughout. *See, e.g.*, Compl. ¶ 84 ("SK was an active participant in trading gasoline in California."); *id.* ("SK also traded RBOB Futures on the NYMEX on a regular basis."); *id.* ¶ 85 ("SK imported gasoline and gasoline blending components (such as alkylate) into California."); *id.* ¶ 115 ("One tactic used by Vitol and SK when trading Regular gasoline was to transact the high deal of the day when the deal reported to OPIS."); *id.* ¶ 123 ("Vitol and SK executed these facilitating trades with each other and with third

parties."); *id.* ¶ 128 ("Vitol and SK entered into contracts with each other designed to share in the supra-competitive profits earned from manipulating the floating price contract."); *id.* ¶ 128 ("Vitol entered into a contract with SK to share the profits derived from its floating price contract with ExxonMobil."); *id.* ¶ 134 ("Vitol and SK engaged in market-spiking trades during the pricing windows for large sales of alkylate.").

Many of these allegations are incorrect even with respect to SKEA, as we will demonstrate, but with respect to SKTI, they are patently frivolous.  SKTI has never executed a trade of physical gasoline in California or the United States or entered into a futures contract in California or the United States. Jeong Decl. ¶ 12.  Thus, the vast majority of the Complaint's assertions against "SK" not only lack underlying factual support as a general matter but are also completely baseless as to SKTI.  SKTI pointed out these inaccuracies to plaintiffs by letter and demanded that they be retracted; plaintiffs refused.

Beyond its attempt to attribute SKEA's alleged conduct to SKTI indiscriminately, the Complaint alleges few specific evidentiary facts about SKTI's involvement in SKEA's operations or its West Coast gasoline trading operation.  Its conclusory allegation that SKEA's West Coast trading operation was conducted under the "continuous and pervasive control and supervision of SKTI and its subsidiaries," Compl. ¶ 87, is unfounded.  SKTI did not control SKEA's daily operations and did not review or authorize specific trades in the California gasoline market. Jeong Decl. ¶ 19.  SKEA's California gasoline traders had the sole discretion to execute transactions as long as they were within the prescribed risk-management numerical limits.  *Id.*

The Complaint's allegations that SKTI governed SKEA's trades and that SKTI set SKEA's trade parameters in a Trading Risk Management policy, reviewed business plans, set position and loss limits, and verified trade entries, support at most that SKTI conducted the conventional oversight activities expected of a parent corporation.  They do nothing to establish the type of disregard of corporate separateness that could support an alter ego finding.  In fact, SKTI did monitor SKEA's California gasoline trading operations for compliance with pre-set mathematical trading loss-limit and risk parameters that applied to SKEA's overall California gasoline trading book.  Jeong Decl. ¶ 19.  But that monitoring function did not come close to control of SKEA's day-to-day operations.  *See Doe*, 248 F.3d

at 927-28 (finding the "unity of interest" prong was not met when a parent company was, among other things, involved in the formulation of general business policies and strategies applicable to its subsidiaries, including reviewing and approving major decisions and being closely involved in the subsidiary's pricing decisions); *Ranza*, 793 F.3d at 1074-75 (not finding a "unity of interest" even though the parent exercised control over the subsidiary's budget, established general human-resources policies that the subsidiary had to follow, was involved in some of the subsidiary's hiring decisions, was involved in the subsidiary's product branding, and required some subsidiary-company employees to report to parent supervisors on a dotted-line basis).

The additional few specific factual allegations in the Complaint suggest that SKTI had only limited and episodic involvement in directing SKEA's West Coast trading operation.  The Complaint alleges that an individual at SKTI (1) approved the decision to hire David Niemann, SKEA's West Coast trader, and his scheduler; (2) negotiated Niemann's bonus; and (3) traveled to the U.S. for a meeting with Vitol in Houston, Texas in April 2015.  Compl. ¶¶ 88-90.  These sparse facts fall far short of establishing the requisite pervasive control over SKEA's day-to-day operations.  Approving the hiring and compensation of an important executive is exactly the type of general oversight that would be expected in a corporate hierarchy and says nothing about day-to-day control.  And it is hard to conceive of how a trip to Houston could establish the jurisdiction of a California court or any other U.S. court.

In sum, the Complaint provides no evidentiary facts—the who, what, where, and when—that could distinguish between the type of general corporate oversight that is necessary and expected, and the domination and control that could allow the Court to disregard the corporate forms of SKEA and SKTI, and exercise personal jurisdiction over SKTI.

### 2. Dismissal of the Complaint Against SKTI Will Not Lead to an Inequitable Result

The second prong of the alter ego test requires that a plaintiff "plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Reynolds*, 2020 WL 5074391 at *7 (internal citations and quotations omitted); *see Apple Inc. v. Allan & Assocs., Ltd.*, 2020 WL 1492665 at *8 (N.D. Cal. 2020) (plaintiff must establish that an inequitable, fraudulent, or unjust result will follow if alleged alter ego defendants

do not appear in the case—"the question thus becomes what fraud or injustice will result if the Court declines to find that Defendant [ ] is an alter ego of [the other defendants].")

Plaintiffs have made no effort to allege that an inequitable, fraudulent, or unjust result will result if the Complaint against SKTI is dismissed.  Nor do they allege that defendant SKEA cannot answer plaintiffs' claims.

### D.    "Agency" Does Not Give Rise to Personal Jurisdiction over SKTI

The Complaint alleges that SKEA is an "agent" of SKTI.  *Id.* ¶ 28.  After *Daimler*, it is doubtful whether an agency theory remains a viable basis for establishing personal jurisdiction.  But even if it were a viable theory, there is no specific allegation of the type of day-to-day control that could satisfy it.  In fact, SKTI exercised only the type of general supervision that, if accepted as demonstrating agency, would allow U.S. courts to regulate the world.

In *Daimler*, the Supreme Court invalidated the agency theory in the context of general personal jurisdiction, holding that such a theory sweeps too broadly to comport with due process requirements.  *Daimler,* 134 S. Ct. at 759; *Ranza*, 793 F.3d at 1071 (acknowledging that in *Daimler,* the Supreme Court invalidated the agency test for general jurisdiction).  But *Daimler* left open the question of whether the agency theory can be a basis for specific personal jurisdiction.  *Daimler*, 134 S. Ct. at 759 n.13.  In *Williams*, the Ninth Circuit all but held that the agency theory was invalid in the context of specific jurisdiction too: "[*Daimler*'s] criticism applies no less in the context of specific jurisdiction."  851 F.3d at 1024.  Like *Daimler* and *Ranza* before it, *Williams* also suggested that the only permissible test for imputing contacts is the alter ego test.  *Id.* at 1021 ("[W]e held that the alter ego test may be used to extend personal jurisdiction."); *see also Corcoran v. CVS Health Corp.* 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("the rationale set forth in *Daimler* . . . would seem to undermine application of [our agency test] even in specific jurisdiction cases.") (citations omitted).

The *Williams* court nonetheless went on to consider plaintiff's agency arguments after citing the footnote in *Daimler* that says some standard of agency continues to be relevant to the existence of *specific* jurisdiction, *Daimler*, 134 S.Ct. at 759 n.13.  In assessing plaintiff's claim, however, *Williams* cites to the section of *Doe v. Unocal* that discusses the "control" standard mainly in the context of the alter ego test.  248 F.3d at 926.

Whether any version of an agency theory has survived *Daimler*, it is clear that any remaining vestige of an agency theory would not reach conduct that the unity-of-interest prong of the alter ego test did not cover.  As a court in the Northern District of California recently ruled: "[T]he agency inquiry is identical to the alter ego inquiry . . . this Court holds that, to the extent the agency test survived *Daimler*, it did so only to test whether the parent corporation exercises 'pervasive control.'  Having held above that Plaintiff has not demonstrated alter-ego liability, the court declines to reengage in the identical agency analysis."  *Apple*, 2020 WL 1492665 at *8.  The Complaint fails to establish the unity of interest between SKEA and SKTI that the alter ego theory requires.  Necessarily, it also fails to meet the standards of any agency theory that may remain viable after the *Daimler* decision.

**E.     Plaintiffs Are Not Entitled to Both Nationwide Jurisdiction and Nationwide Venue Against SKTI**

Plaintiffs assert nationwide contacts based on their Sherman Act injunctive relief claim.  For the reasons discussed in Section IV.E of Defendants' concurrently filed Rule 12(b)(6) motion to dismiss, that claim is frivolous.  If the Court agrees, then Plaintiffs' theory of nationwide jurisdiction falls away.

But even if Plaintiffs' injunctive relief claim survives, neither venue nor jurisdiction in *this* Court would be appropriate.  Plaintiffs have asserted in meet-and-confer communications a theory of personal jurisdiction and venue that would effectively permit them to sue SKTI in any court in the country—arguing that jurisdiction is proper under 15 U.S.C. § 22 of the Clayton Act and venue under 28 U.S.C. § 1391(b) and (c).  The Clayton Act provides special rules for venue and service of process in antitrust actions: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."  15 U.S.C. § 22.  This provision has two parts: first, it states that venue is proper anywhere the corporation is an "inhabitant," is "found," or "transacts business"; and second, it provides that in "such cases" defendants are subject to nationwide service of process and thus nationwide jurisdiction.

The structure of the provision raises the question of whether these two provisions must be read as an integrated whole or whether a plaintiff could employ only one of the two clauses.  For example, could

---

16

a plaintiff utilize the nationwide service of process provision in the Clayton Act but also the general venue provisions of § 1391?  If so, a plaintiff could bring a defendant into any jurisdiction in the country: the defendant would be subject to nationwide jurisdiction under the Clayton Act and venue would be permissible in any court because § 1391(c)(2) makes venue proper in any district in which a corporation is subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(c)(3) (venue proper in any district for alien corporations).  An antitrust case could be brought in any forum where a defendant transacts business, even if those transactions have nothing to do with the allegations of the complaint.

In a 1989 decision, the Ninth Circuit accepted this extreme result.  *See Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989).  It reasoned that courts generally read special venue statutes as supplementing, not displacing, general venue.  *Id.* at 1409.  It thus concluded that the venue and service of process clauses need not be read as linked.  *Id.* at 1413.

The Ninth Circuit's decision was erroneous.  More recently, the Second, Seventh, and D.C. Circuits have declined to follow *Go Video*, ruling that permitting nationwide jurisdiction and venue over every corporate defendant contradicts the statute's language as well as its history and purpose.  *See KM Enters. v. Global Traffic Techs.*, 725 F.3d 718 (7th Cir. 2013); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422-28 (2d Cir. 2005); and *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1350-51 (D.C. Cir. 2000); *but see In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004) (agreeing with *Go-Video* as applied to alien corporations).  The reasoning of the majority of the circuits is compelling and shows that *Go-Video* is should be overturned.

First, the text is clear: the statute provides for nationwide service of process only in "such cases." 15 U.S.C. § 22.  "Such cases" clearly refers back to those cases qualifying for venue in the preceding clause.  In other words, both venue and personal jurisdiction must be established to employ the special venue and process rules of the Clayton Act.

Second, permitting nationwide venue renders the Clayton Act's venue clause in 15 U.S.C. § 22 superfluous, and, indeed, would nullify 28 U.S.C. § 1391's limits on venue.  *Cf. Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").  And finally, Congress provided no indication that it intended nationwide venue in antitrust

1   cases.  In fact, just the opposite is true: the Clayton Act included specific limits on the districts where

2   venue was proper.  *See KM Enters.*, 725 F.3d at 730; *see also United States v. Nat' l City Lines*, 334

3   U.S. 573, 588 (1948) ("In adopting § 12 [of the Clayton Act] Congress was not willing to give plaintiffs

4   free rein to haul defendants hither and yon at their caprice.").

5          For these reasons, the Ninth Circuit's decision in *Go-Video* is wrong.  If Plaintiffs seek to use the

6   Clayton Act's nationwide service of process provision, they must also satisfy the corresponding venue

7   provision.  And Plaintiffs cannot do that here as to SKTI.  SKTI is not an "inhabitant" of, is not "found"

8   in, and does not "transact[] business" in the Northern District of California.  As a result, even assuming

9   that plaintiffs could establish sufficient contacts on a nationwide basis, such as in Texas—which, as

10  discussed above, they cannot do—venue in California is not proper as to SKTI and dismissal is

11  warranted.

12         Moreover, even if this Court does not find *Go-Video* erroneous, nationwide jurisdiction is still

13  improper as to SKTI because it violates the Due Process Clause of the Fifth Amendment; Plaintiffs

14  should thus have to establish California contacts.  In *Bristol-Meyers*, the Supreme Court concluded that

15  the Fourteenth Amendment's Due Process Clause prohibited out-of-state plaintiffs from bringing claims

16  against a defendant unrelated to the defendant's contacts with the state.  Yet the Court stated that it

17  would "leave open the question whether the Fifth Amendment imposes the same restrictions on the

18  exercise of personal jurisdiction by a federal court."  *Bristol-Meyers Squibb*, 137 S. Ct. at 1784.

19         This Court should conclude that the same analysis applies to the Fifth Amendment.  For one,

20  courts routinely apply Fourteenth Amendment personal jurisdiction standards in Fifth Amendment

21  cases.  *See, e.g.*, *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 620 (1992).  And second,

22  *Bristol-Meyers* simply reaffirmed a general principle—that due process requires a "connection between

23  the forum and the specific claims at issue."  *Bristol-Meyers Squibb*, 137 S. Ct. at 1776.  That is because

24  personal jurisdiction is not simply about federalism but also about ensuring fairness to the defendant.

25  *See, e.g.*, *Livnat v. Palestinian Auth.*, 851 F.3d 45, 54-55 (D.C. Cir. 2017) ("A 'vital' purpose of

26  personal-jurisdiction standards is to 'ensure[ ] fairness to the defendant.'" (citation omitted)).

27         These fairness concerns are acutely present here.  SKTI is a Korean corporation with its principal

28  place of business in Korea.  It has never registered with the California Secretary of State to transact

18

business within California, has never had a registered agent there, has never paid taxes there, and has never maintained offices, employees, facilities, property, or bank accounts in California.  Bringing it into court in California based on supposed transactions occurring elsewhere is unreasonable and unfair.

## IV.   CONCLUSION

For the foregoing reasons, SKTI respectfully requests that this Court dismiss the Complaint against SKTI for lack of personal jurisdiction or venue.

DATED: October 23, 2020

COVINGTON & BURLING LLP


By:   */s/ Jeffrey M. Davidson*
JEFFREY M. DAVIDSON (SBN 248620)
  (jdavidson@cov.com)
PHILLIP WARREN (SBN 89744)
  (pwarren@cov.com)
JOAN R. LI (SBN 312024)
  (jli@cov.com)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile:  (415) 591-6091


JOHN S. PLAYFORTH (*pro hac vice*)
  (jplayforth@cov.com)
LAURA E. BROOKOVER (*pro hac vice*)
  (lbrookover@cov.com)
BRENDAN D. DUFFY (*pro hac vice*)
  (bduffy@cov.com)
ANDREW W. CHANG (SBN 319009)
  (achang@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile:  (202) 662-6291

K&L GATES LLP


By:  */s/ Michael E. Martinez*
MICHAEL E. MARTINEZ (*pro hac vice*)
  (michael.martinez@klgates.com)
LAUREN NORRIS DONAHUE (*pro hac vice*)
  (lauren.donahue@klgates.com)
CLIFFORD C. HISTED (*pro hac vice*)
  (clifford.histed@klgates.com)
STEPHEN M. HUMENIK (*pro hac vice*)
  (stephen.humenik@klgates.com)
BRIAN J. SMITH (*pro hac vice*)
  (brian.j.smith@klgates.com)
JOHN E. SUSORENY (*pro hac vice*)
  (john.susoreny@klgates.com)
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000


Attorneys for Defendant
SK TRADING INTERNATIONAL CO., LTD.


## ATTESTATION

I, Jeffrey M. Davidson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

to the filing of this document has been obtained from each signatory hereto.


 DATED:  October 23, 2020                 By:  */s/ Jeffrey M. Davidson*
                                               Jeffrey M. Davidson