UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GASOLINE SPOT LITIGATION | Case No. 20-cv-03131-JSC<br><br>**ORDER RE: MOTION TO DISMISS FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. No. 221 |

In this consolidated putative class action, Plaintiffs allege that Defendants entered into horizonal agreements to restrain competition in the spot market for gasoline and gasoline blending components formulated for use in California. Plaintiffs bring federal and state antitrust claims as well as state law unfair competition and unjust enrichment claims against SK Trading International Co., Ltd. ("SK Trading"), SK Energy Americas, Inc. ("SK Energy"), Vitol Inc. ("Vitol"), and two individual defendants. All Defendants have moved to dismiss Plaintiffs' Consolidated Class Action Amended Complaint and the Court has phased the briefing and hearing of the motions.[1] SK Trading's motion to dismiss for lack of personal jurisdiction and improper venue under Federal Rule of Civil Procedure 12(b)(2), (3) came before the Court for hearing on December 16, 2020. (Dkt. No. 221.[2]) Having considered the parties' briefs and having had the benefit of oral argument, the Court DENIES SK Trading's motion to dismiss for improper venue under Rule 12(b)(3) and DEFERS ruling on SK Trading's motion to dismiss for lack of personal jurisdiction because jurisdictional discovery is warranted.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 199 at ¶ 12.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

## I. Parties

### A. Class Action Plaintiffs

The class action plaintiffs are eight entities and individuals who purchased gasoline at retail in the State of California within the class period for their own use and not for resale. (Consolidated Class Action Complaint ("CCAC"), Dkt. No. 186 at ¶¶ 14-21.) They bring this action on their own behalf as well as on behalf of "All persons or entities that purchased gasoline from a retailer, for their own use and not for resale, within the State of California from February 18, 2015 until such time as the adverse effects of Defendants' anticompetitive conduct ceased." (*Id.* at ¶ 42.)

### B. SK Trading

SK Trading is a South Korean corporation with its head office in Seoul, South Korea. (*Id.* at ¶ 24.) It is the largest refiner of crude oil in Korea. (*Id.*) It is the "indirect parent" of SK Energy and a "sister" company to SK Energy Co., Ltd. ("SK Energy Korea"). (*Id.*) All of these entities are wholly owned subsidiaries of SK Innovation Co., Ltd., a South Korean company. (*Id.*)

### C. SK Energy

SK Energy is a California corporation with its registered office in Houston, Texas. According to the CCAC, SK Energy is "an indirect, wholly-owned subsidiary of SK Trading." (*Id.* at ¶ 23.) "SK Trading publicly describes its subsidiary SK Energy as the marketing agent for SK Energy Korea in the United States and explains that SK Energy facilitates the export of SK Energy Korea's gasoline and gasoline blending products to the United States." (*Id.* at ¶ 25.)

### D. Vitol

Vitol is an energy company incorporated in Delaware and registered with the California Secretary of State to conduct business in California." (*Id.* at ¶ 22.)

### E. Individual Defendants

Brad Lucas is Vitol's West Coast Marketing Director. (*Id.* at ¶ 33.) He has been with Vitol since 2013. Mr. Lucas "was the primary trader at Vitol responsible for trading gasoline and gasoline blending components that were delivered within California." (*Id.*)

David Niemann was SK Energy's senior trader responsible for executing trades on the West Coast. (*Id.* at ¶ 34.) He allegedly colluded with Mr. Lucas regarding the price fixing scheme. (*Id.*)

## II. Complaint Allegations

The gravamen of the CCAC is that SK Trading, SK Energy, and Vitol conspired to "restrain competition in the spot market for gasoline formulated for use in California and in certain gasoline blending components used in that gasoline." (*Id.* at ¶ 1.) "Defendants' scheme exploited a disruption in refining capacity that resulted from an incident at the refinery in Torrance, California wherein a cracking unit exploded which impaired the refinery's ability to refine alkylates from February 2015 through at least June 2016. (*Id.* at ¶ 3.)

The corporate Defendants and their employees—Lucas and Niemann—recognized that the supply disruption provided by the explosion provided them an opportunity to artificially inflate the price of alkylates and thus gasoline (given the relationship between the two). (*Id.* at ¶ 4.) Defendants negotiated large contracts to supply gasoline and gasoline blending components for delivery in California and entered into agreements with each other to "manipulate the spot market price for refined gasoline and gasoline blending components so that they could realize windfall profits on these contracts." (*Id.* at ¶¶ 5-6.) They also entered into profit sharing agreements and agreements to disguise their market interference. (*Id.*)

Throughout this period, SK Trading "dominated and controlled SK Energy, and specifically ratified the illegal conduct engaged in by SK Energy." (*Id.* at ¶ 27.) In addition, given SK Trading's control over SK Energy, SK Energy was SK Trading's alter ego and agent. (*Id.* at ¶ 28.) The two entities had a unity of interest and ownership "such that any separateness between them had ceased to exist and SK Trading controlled, dominated, managed, and operated SK Energy" and any distinction between the two was a mere technicality. (*Id.* at ¶ 29.) With respect all of Plaintiffs' allegations "SK Energy was acting within the course and scope of its agency with the knowledge, consent, permission, authorization, and ratification, either express or implied." (*Id.* at ¶ 30.)

//

**III. Procedural Background**

Before this action was filed, the California Attorney General filed a *parens patriae* action in the San Francisco Superior Court. *See The People of the State of California v. Vitol, Inc., et al.*, Case No. CGC20584456 (S.F. Superior, filed May 4, 2020) ("AG Action"). The AG Action includes Cartwright Act and UCL claims.

Pacific Wine Distributors, Inc., filed the first action in this District on May 6, 2020. (Dkt. No. 1.) The other named plaintiffs subsequently filed separate actions, each of which was related to this action. The parties thereafter stipulated that all of the 23 related actions would be consolidated for purposes of trial. (Dkt. Nos. 67, 121, 133, 146, 148, 174.) The Court then appointed Hausfeld and Girard Sharp as co-lead interim class counsel. (Dkt. No. 167.) Shortly thereafter, Plaintiffs filed the now operative Consolidated Class Action Complaint which includes class claims for (1) violation of the Sherman Act, 15 U.S.C. § 1; (2) violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (4) unjust enrichment. (Dkt. No. 186.)

Following a status conference on October 6, 2020, the Court set a phased briefing schedule for Defendants' forthcoming Rule 12(b) motions with SK Trading's motion to dismiss for lack of personal jurisdiction and improper venue to be heard before the other Defendants' Rule 12(b)(6) motion and motion to stay. (Dkt. No. 207.) The motion to dismiss for lack of personal jurisdiction and improper venue under Rule 12(b)(2), (3) is fully briefed and came before the Court for hearing on December 16, 2020. The Rule 12(b)(6) motion and motion to stay will be heard on January 28, 2021. (Dkt. No. 207.)

**DISCUSSION**

SK Trading moves to dismiss the complaint for lack of personal jurisdiction and improper venue.

**I.  Dismissal Under Rule 12(b)(2)**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). "Where, as

4

here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted); *see also Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (noting that in such cases courts "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction."). Moreover, "for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Thus, "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

"To exercise personal jurisdiction over a non-resident defendant in a federal question case, the district court [must first] determine that a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the principles of Fifth Amendment due process." *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1413 (9th Cir. 1989). "A statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004). The CCAC alleges personal jurisdiction and venue are proper here based on the Clayton Act, 15 U.S.C. § 22. (Dkt. No. 186 at ¶¶ 11-12.) The Clayton Act provides, in pertinent part:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. The Clayton Act potentially confers personal jurisdiction over SK Trading; thus, the Court turns to the "constitutional aspects of the exercise of personal jurisdiction." *Go-Video,* 885 F.2d at 1415.

The Due Process Clause of the Fifth Amendment requires that nonresident defendants have "minimum contacts" with the forum such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The strength of contacts required depends on which of the categories of

personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

Plaintiffs maintain that SK Trading is subject to specific jurisdiction.

**A. Plaintiffs Have Not Made a Prima Facie Showing of Specific Jurisdiction**

The Ninth Circuit utilizes a three-prong test for determining specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff has "the burden of satisfying the first two prongs"; if it does so, the defendant must demonstrate that the court's exercise of personal jurisdiction would be unreasonable. *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co.*, 453 F.3d at 1155 (internal quotation marks and citation omitted). Here, Plaintiffs fail to make a prima facie showing under the first prong; however, jurisdictional discovery is warranted based on the CCAC's allegations.

**1. Purposeful Direction**

The "purposeful direction" test applies to antitrust actions. *See Schwarzenegger*, 374 F.3d at 802-03 (noting that "[a] purposeful availment analysis is most often used in suits sounding in contract," while the purposeful direction or "effects" test "is most often used in suits sounding in tort.") (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013) (applying "effects test" in antitrust action). To establish "purposeful direction," a plaintiff must show that the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *In re W. States*, 715 F.3d at 743 (internal quotation marks and citation omitted).

6

Generally, an antitrust defendant "expressly aims" an intentional act at a forum state when its allegedly anticompetitive behavior is targeted at a resident of the forum, or at the forum itself. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. CV 07-5944-SC, 2014 WL 2581525, at *6 (N.D. Cal. June 9, 2014) (citing *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013)). Plaintiffs combine the intentionality and express aiming prongs and argue that the requirements are met because SK Trading's anticompetitive conduct was targeted at the United States and California gasoline markets. Plaintiffs identify the following CCAC allegations in support of their argument: (1) SK Energy "regularly participated in trading gasoline in California and bought and sold spot market contracts and entered into unlawful agreements with Vitol" who was also an active player in the spot market (Dkt. No. 237 at 19:23-25 citing CCAC at ¶¶ 78-79, 84); (2) SK Trading and SK Energy hired Niemann who had previously traded gasoline contracts on the California spot market at Vitol for ten years (*id*. citing CCAC at ¶¶ 86, 97); and (3) SK Trading executives traveled to the United States to supervise SK Energy and in April 2015 met with Vitol representatives (*id*. citing CCAC at ¶¶ 90, 131).

SK Trading's response is two-fold. First, it insists that none of these allegations show that it—as opposed to SK Energy—participated in trading in California or engaged in any conspiracy aimed at California residents; that is, SK Trading contends that Plaintiffs are conflating the two entities and impermissibly attributing acts by SK Energy to it. Second, it maintains that Plaintiffs allegations are insufficient to show intentional acts expressly aimed at California rather than the United States generally, and it insists that the allegations regarding the April 2015 meeting and the joint hiring of SK Energy's senior gasoline trader (Niemann) are insufficient to establish nation-wide contacts.

As a threshold matter, the Court rejects SK Trading's argument that the intentional act had to be purposefully directed at California as opposed to the United States generally. The relevant forum for the Court's jurisdictional analysis in this action is the United States as a whole, and not merely California. *See Go-Video, Inc*., 885 F.2d at 1415 (applying "national contacts analysis" to suit against foreign defendant brought under Section 12 of the Clayton Act alleging violation of section 1 of the Sherman Act, 15 U.S.C. § 1); *see also Action Embroidery Corp*., 368 F.3d at 1180

7

(noting that "the relevant forum with which a defendant must have 'minimum contacts' in a suit brought under Section 12 of the Clayton Act is the United States.") (citing *Go-Video*, 885 F.2d at 1416).

SK Trading's insistence that *Go-Video* was wrongly decided is made to the wrong court. A "district court does not have the authority to ignore circuit court precedent" rather, "[b]inding authority must be followed unless and until overruled by a body competent to do so." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (internal citation and quotation mark omitted). Likewise, SK Trading's argument that the Clayton Act claim fails as a matter of law is unpersuasive as that issue has yet to be fully briefed or decided. Further, given the Court's decision *infra* that jurisdictional discovery is warranted into, among other things, SK Trading's contacts with California, the argument is premature. The purposeful direction test "does not require that the 'brunt' of the harm be suffered in the forum state; as long as a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *In re W. States*, 715 F.3d at 744.

Turning to the sufficiency of Plaintiffs' allegations, while they demonstrate that SK Energy intentionally directed its allegedly anticompetitive acts to the forum, Plaintiffs' allegations fall short of tethering those allegations to SK Trading as opposed to SK Energy. That is, while Plaintiffs' allegations suggest that SK Trading oversaw SK Energy's actions generally, all the allegations of actual misconduct relate to SK Energy. Plaintiffs endeavor to tie the two together through their allegations that "SK Energy functioned as the California trading arm of SK Trading" and that "the trading operation was conducted under the continuous and pervasive control and supervision of SK Trading and its subsidiaries, and SK Trading also specifically reviewed and approved key decisions to coordinate trading activities with Vitol." (CCAC at ¶ 87.) With respect to the particular trading activity at issue—which Plaintiffs allege was orchestrated by Niemann (a SK Energy employee)—Plaintiffs allege that "SK Trading was directly involved in nearly every aspect of Niemann's employment" including his hiring and that SK Trading's Distillate Book Leader Nambo Kim was in his reporting chain. (*Id.* at ¶¶ 88, 111.) Further, "SK Energy could only trade within parameters that were reviewed and approved by SK Trading." (*Id.* at ¶ 89.)

8

1    Indeed, SK Trading sent its executives to the United States "to supervise SK Energy's operations."
2    (*Id*. at ¶ 90.)  But these allegations are not enough to show that SK Trading purposefully directed
3    the specific anticompetitive activity alleged here for personal jurisdiction purposes.
4       In *Western States*, the Ninth Circuit found that the plaintiffs' allegations that defendant
5    "either directly or indirectly through one of its controlled affiliates, engaged in the practice of
6    wash sales, and manipulated market indices through the reporting of false trading information,
7    actions which were intended to have, and did have, a direct, substantial and reasonably foreseeable
8    effect on commerce in Wisconsin" were sufficient to demonstrate purposeful direction.  *In re W.*
9    *States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743-44 (9th Cir. 2013), *aff'd sub nom.*
10   *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).  But in *Western States*, there was no dispute
11   regarding the relationship between the "controlled affiliates."  Here, in contrast, SK Trading
12   disavows any direct relationship between SK Trading and SK Energy and has submitted a
13   declaration from Jinwoo Jeong, the Senior Manager, Business Support Office, Trading Energy
14   Strategy Planner at SK Trading International who attests that SK Trading "does not control the
15   daily operations of SK [Trading]," "had no policy or practice that required [SK Trading] to review
16   or authorize specific trades," and "never conducted activities through SK [Energy].  (Dkt. No.
17   221-1 at ¶¶ 19-20.)
18      With their opposition, Plaintiffs submitted several publicly available documents to bolster
19   their allegations regarding the relationship between the two SK entities.  The documents support
20   Plaintiffs' argument that SK Trading oversees at least some of SK Energy's activities, but they do
21   not support a sufficient inference that SK Trading intentionally directed the specific activity at
22   issue here.  For example, the 2018 Offering Circular of SK Innovation (the parent of both SK
23   Trading and SK Energy) states that SK Trading "operates a global network based on major trading
24   hubs in Singapore, Houston, and London." (Dkt. No. 237-2 at 3.)   Likewise, an SK Holding's
25   brochure identifies Texas as a global business location for SK Trading and states that SK Trading
26   "is establishing and expanding a differentiated trading platform based on the partnerships and the
27   tangible and intangibles [sic] strengths of SK in oil trading hubs such as Singapore, Europe, North
28   America and the Middle East." (Dkt. No. 237-3 at 4.)  Finally, Plaintiffs rely on a series of

postings on LinkedIn indicating that Houston, Texas is one of SK Trading's locations, that one of SK Trading's employees is located in Austin, Texas, and that a SK Energy employee previously worked as the Senior Manager and Business Development Petroleum Products Testing at SK Trading.  (Dkt. No. 237-1 at ¶¶ 5-7 citing Dkt. Nos. 237-4—237-6.)  While these publicly available documents—whose authenticity as opposed to probative value SK Trading does not contest—bolster the allegations of a connection between the two SK entities, they are not sufficient on their own to show that SK Trading directed the particular activity at issue here.

**2. Alter Ego**

Plaintiffs also insist that specific jurisdiction exists here based on an alter ego theory.  To satisfy the "alter ego test" and extend personal jurisdiction to a foreign parent or subsidiary on the basis of the in-forum entity's contacts, it is a plaintiff's burden to make out a prima facie case showing "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exists and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citing *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015)). A parent's "substantial" involvement in the subsidiary's activity is insufficient "to negate the formal separation between the two entities" for jurisdictional purposes—a parent must be involved in a subsidiary's routine day-to-day operations such that there is a failure of the entities to observe their separate "corporate formalities." *Ranza v. Nike*, 793 F.3d 1059, 1075 (9th Cir. 2015)).  Disregarding the corporate entity is recognized as an "extreme remedy," and courts will only pierce the corporate veil in "exceptional circumstances." *Gonzalez v. Drew Indus. Inc.*, 2008 WL 11338569, at *1 (C.D. Cal. Apr. 1, 2008) (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).

Plaintiffs do not allege any facts or even conclusions that suggest fraud or injustice if SK Trading's separate corporate form is not recognized.  Their reliance on *Bleu Prod., Inc. v. Bureau Veritas Consumer Prod. Servs., Inc.*, No. CV 08-2591CAS (JCX), 2009 WL 2412413, at *15 (C.D. Cal. Aug. 3, 2009), is unpersuasive as the plaintiff in *Bleu* alleged that the defendants "engage[d] in fraudulent activities in the course of this litigation." *Id*. at *14.  In particular, plaintiff alleged that defendants filed declarations containing false statements, filed an initial

disclosure concealing the existence of entities, and misrepresented which entity employed certain individuals. *Id.* Plaintiffs here have not made similar allegations of fraud. Nor are Plaintiffs' allegations close to the "shell game" allegations pled *in City & Cty. of San Francisco v. Purdue Pharma L.P.*, No. 3:18-CV-07591-CRB, 2020 WL 5816488 *9 (N.D. Cal. Sept. 30, 2020) (finding that plaintiff plausibly alleged that "treating Teva Ltd. and its subsidiaries as separate entities would further a shell game and prevent the City from recovering expenses resulting from both Teva Ltd.'s and its subsidiaries' conduct."). Nor do they rise to the level of "institutional bad faith" alleged in *Tam Vu v. Liberty Mut. Ins. Co.*, No. 18-CV-03594-SI, 2018 WL 5982867, at *3 (N.D. Cal. Nov. 14, 2018) (relying on allegations of a "corporate structure [that] is tantamount to institutional bad faith" and that the subsidiary was "a mere instrument for shielding LMIC from liability" to support a finding of inequitable result.); *see also Vizio, Inc. V. LeEco V. LTD.*, 2018 WL 5303078, at *19 (C.D. Cal. July 27, 2018) (finding that the subsidiary was "used to perpetuate the fraud in order to avoid the termination fee from the cancelled merger" such that "it would be unjust to allow the parent company to escape liability when it was a key player in enabling the alleged fraud of the subsidiary company."). Plaintiffs' allegations do not plausibly suggest that SK Energy is not a real company, rather, they are that SK Energy's anticompetitive behavior was directed by SK Trading; but that is not sufficient to show a fraud or injustice if SK Trading is not made a party to this litigation.

### 3. Agency

Plaintiffs have also not alleged sufficient facts to support specific personal jurisdiction under an agency theory. In *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017), the Ninth Circuit noted that while the Supreme Court's *Daimler* opinion "voided our agency approach for imputing contacts for the purpose of general jurisdiction," *Daimler* "left open the question of whether an agency relationship might justify the exercise of specific jurisdiction." *Id.* at 1023. "Assuming [ ] that some standard of agency continues to be relevant to the existence of specific jurisdiction," the Ninth Circuit held, "[f]undamental tenets of agency theory require that an agent act on the principal's behalf and subject to the principal's control." *Id.* at 1024 (quotation marks and citations omitted). The *Williams* court concluded that Yamaha Motor Co. Ltd.

("YMC"), a Japanese corporation, was not subject to specific personal jurisdiction in California based on the contacts of its subsidiary, Yamaha Motor Corporation, U.S.A. ("YMUS"). *Id*. at 1024-25. The court relied on the fact that plaintiffs "neither allege nor otherwise show that YMC had the right to control YMUS's activities in any manner at all." *Id*. at 1025.

For the same reason Plaintiffs' first theory of personal jurisdiction fails, the CCAC's allegations are too general to satisfy Plaintiffs' burden of showing specific personal jurisdiction of SK Trading based on an agency theory. Plaintiffs have not alleged facts that satisfy their burden of making a prima facie showing that SK Trading controlled SK Energy's activities.

*\*\*\**

Accordingly, Plaintiffs have not established a prima facie case of specific personal jurisdiction.

### B. Jurisdictional Discovery is Warranted

The next question, then, is whether the Court should exercise its discretion and allow Plaintiffs to conduct personal jurisdiction discovery. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). A plaintiff's request for jurisdictional discovery should "be granted where pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (internal quotations and citations omitted); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

SK Trading contends that no jurisdictional discovery should be allowed because there are no relevant facts in dispute. The Court is not persuaded. First, the Court does not agree that it should accept Mr. Jeong's declaration without allowing Plaintiffs to test his assertions. Plaintiffs' objections to his declaration statements as lacking in foundation and hearsay are well-taken: Mr. Jeong was not an SK Trading employee during the time period at issue and he does not specify the basis for his knowledge beyond that it is based on SK Trading and SK Energy's "business records" and his "own personal knowledge." (Dkt. No. 221-1 at ¶ 4.) At a minimum, Plaintiffs

should be allowed to test the statements in Mr. Jeong's declaration and the source of his knowledge. In addition, Plaintiffs should have the opportunity to review the "business records" on which Mr. Jeong's attestations are based.

Putting Mr. Jeong's declaration aside, Plaintiffs' allegations are sufficient to warrant limited jurisdictional discovery into two of Plaintiffs' personal jurisdiction theories. The first is that SK Trading was itself involved in directing and overseeing the anticompetitive horizonal spot market trading activity alleged here. While somewhat conclusory, the allegations suggest some involvement, especially given the meeting between SK Trading executives and Vitol in April 2015 (two months after the Torrance Refinery explosion), SK Trading and SK Energy's hiring and management of Niemann, and SK Trading's alleged supervision of SK Energy's West Coast trading operation and review and approval of trading activities with Vitol. Where further discovery on an issue "might well" demonstrate facts sufficient to constitute a basis for jurisdiction, it is an abuse of discretion to deny it. *Harris Rutsky & Co. Ins. Serv. v. Bell & Clements*, 328 F.3d 1122, 1135 (9th Cir. 2003).

Second, the Court will allow discovery into the agency theory, although to a large extent the relevant discovery will overlap with the above theory. *Williams v. Yamaha*, does not counsel otherwise. It did not, as SK Trading contends, put an end to an agency theory of specific personal jurisdiction; instead, the court held that the Ninth Circuit's formulation of the agency theory of personal jurisdiction could not survive *Daimler*. 851 F.3d at 1024. The court then went on to decide whether the plaintiffs had satisfied a different formulation of agency theory and concluded that they had not. *Id.* at 1024-25. Thus, neither the Ninth Circuit nor the Supreme Court have ruled out agency as a basis for specific jurisdiction. *See Daimler*, 571 U.S. 117, 135, n.13.

The Court will not, however, permit discovery in support of an alter ego theory as Plaintiffs have not made any allegations that suggest that with discovery they could satisfy the fraud or inequitable result requirement.

*Reynolds v. Binance Holdings Ltd.*, No. 20-CV-02117-JSC, 2020 WL 5074391 (N.D. Cal. Aug. 26, 2020), does not persuade the Court that jurisdictional discovery should be denied. The *Reynolds* plaintiff was asserting general jurisdiction based on an alter ego theory and there was no

suggestion that discovery would lead to facts supporting personal jurisdiction. The personal jurisdiction theory, and alleged facts, are very different here and the Court is not so confident that jurisdictional discovery will be futile.

**II.  Venue**

SK Trading's improper venue argument is essentially a rehash of its challenge to *Go-Video's* nationwide contacts test. SK Trading insists that Plaintiff cannot establish sufficient contacts with California to satisfy venue requirements. However, "[u]nder *Go–Video*, venue is proper in a federal antitrust suit if the venue requirements of either Section 12 or 28 U.S.C. § 1391 are satisfied." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1178 (9th Cir. 2004.) As Plaintiffs note in their opposition brief, under 28 U.S.C. § 1391(c)(3) "a defendant not resident in the United States may be sued in any judicial district." SK Trading does not respond to this argument, and in fact, makes no reference to venue in its reply brief. The motion to dismiss for improper venue under Rule 12(b)(3) is therefore denied. *See Stross v. NetEase, Inc*., 2020 WL 5802419, at *10 (C.D. Cal. Aug. 20, 2020) (denying foreign non-resident defendant's Rule 12(b)(3) motion based on Section 1391(c)(3)); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3810 (4th ed. 2020) (observing that the effect of 28 U.S.C. § 1391(c)(3) is that "non-residents of the United States simply may not object to venue.").

## CONCLUSION

For the reasons set forth above, the Court DENIES SK Trading's motion to dismiss for improper venue under Rule 12(b)(3) and DEFERS ruling on SK Trading's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) until the parties have completed limited jurisdictional discovery regarding the relationship between SK Trading and SK Energy. The parties shall meet and confer via video-conference using Plaintiffs' proposed discovery plan (Dkt. No. 187-1) as a starting point. The plan should focus on the discovery that will be the most probative to the questions presented. The parties shall submit the plan in joint, or separate form if they are unable to agree, by January 15, 2021. The Court will review the plan(s) with the parties at the previously scheduled January 28, 2021 hearing. Following the limited jurisdictional discovery period, the parties shall file supplemental submissions addressing personal jurisdiction.

The parties' discovery plan shall also include a proposed schedule on the supplemental submissions. Upon review of the supplemental submissions, the Court will advise the parties if additional oral argument is required.

**IT IS SO ORDERED.**

Dated: December 18, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

15