Jeffrey M. Davidson (SBN 248620)
Phillip Warren (SBN 89744)
Joan R. Li (SBN 312024)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Email:  jdavidson@cov.com
Email:  pwarren@cov.com
Email:  jli@cov.com

Michael E. Martinez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
Brian J. Smith (*pro hac vice*)
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone:  (312) 372-1121
Email:  michael.martinez@klgates.com
Email:  lauren.donahue@klgates.com
Email:  brian.j.smith@klgates.com

*Attorneys for Defendants SK Energy Americas, Inc., SK Trading International Co. Ltd., and David Niemann*

Amanda Bonn (SBN 270891)
Eliza Finley (SBN 301318)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email:  abonn@susmangodfrey.com
Email:  efinley@susmangodfrey.com

John B. Quinn (SBN 090378)
Steven G. Madison (SBN 101006)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email:  johnquinn@quinnemanuel.com
Email:  stevemadison@quinnemanuel.com

*Attorneys for Defendant Vitol Inc.
and Brad Lucas*

*Attorneys for Defendant Vitol Inc.*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CALIFORNIA GASOLINE SPOT MARKET ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Civil Case No.: 3:20-cv-03131-JSC<br><br>Judge: Hon. Jacqueline Scott Corley<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY**<br><br>Date:   January 28, 2021<br>Time:  9:00 a.m.<br>Dept:  San Francisco, Courtroom E<br>Judge:  Hon. Jacqueline S. Corley |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.  THE EXTRAORDINARY OVERLAP BETWEEN THE CASES WARRANTS A STAY ..........3

    A.  The Claims and Factual Issues in Both Actions Are the Same ...........................................3

    B.  The Nominal Differences Between the Two Actions Do Not Preclude a Stay. ..................5

        1.  Plaintiffs' Frivolous Sherman Act Claim Does Not Preclude a Stay. ....................5

        2.  The Claims of Entities and Non-California Residents Do Not Preclude a Stay. ......6

        3.  This "Virtually Identical" Action Accomplishes Little. ..........................................8

II.  PLAINTIFFS WILL NOT BE PREJUDICED BY A STAY ........................................................9

III.  THE HARMS OF SIMULTANEOUS LITIGATION WARRANT A STAY .............................10

IV.  PRINCIPLES OF FEDERALISM AND THE ADMINISTRATION OF JUSTICE

    FAVOR A STAY.........................................................................................................13

CONCLUSION....................................................................................................................13

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY

Case No. 20-cv-3131

# TABLE OF AUTHORITIES

**Cases**

*AIIRAM LLC v. KB Home*,
  Case No. 19-cv-00269-LHK, 2019 WL 3779185 (N.D. Cal. Aug. 12, 2019) ........................7

*Arris Enters. LLC v. Sony Corp.*,
  Case No. 17-cv-02669-BLF, 2017 WL 3283937 (N.D. Cal. Aug. 1, 2017) .........................10

*Bradshaw v. City of Los Angeles*,
  Case No. 2:19-CV-06661-VAP-JC, 2020 WL 2065007 (C.D. Cal. Mar. 23, 2020) ............................2

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................ *passim*

*Cabiness v. Educ. Fin. Sols., LLC*,
  Case No. 16-cv-01109-JST, 2017 WL 167678 (N.D. Cal. Jan. 17, 2017) ..........................10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ..............................................................................12

*I.K. ex rel. E.K. v. Sylvan Union Sch. Dist.*,
  681 F. Supp. 2d 1179 (E.D. Cal. 2010) .........................................................6

*Fields v. Wise Media, LLC*,
  2013 WL 3799766 (N.D. Cal. July 19, 2013) ...................................................13

*FTC v. Lending Club Corp.*,
  Case No. 18-cv-02454-JSC, 2020 WL 4898136 (N.D. Cal. Aug. 20, 2020) ........................9

*Goodin v. Vendley*,
  356 F. Supp. 3d 935 (N.D. Cal. 2018) .........................................................4, 7

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002) ..................................................................3

*Krieger v. Atheros Communications, Inc.*,
  776 F. Supp. 2d 1053 (N.D. Cal. 2011) .....................................................5, 8, 13

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ...................................................................... *passim*

*Lathrop v. Uber Techs., Inc.*,
  Case No. 14-cv-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) .........................9, 10

*Moore v. Universal Prot. Serv., LP*,
  Case No. 5:19-cv-2124-JGB, 2020 WL 2518030 (C.D. Cal. May 15, 2020) .......................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)................................................................................................................2

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Rudolph & Slettin, Inc.*,
  Case No. 20-CV-00810-HSG, 2020 WL 4039370 (N.D. Cal. July 17, 2020) ...................10

*Pascal v. Concentra, Inc.*,
  Case No. 19-cv-02559-JSC, 2019 WL 5458282 (N.D. Cal. Oct. 24, 2019)........................10

*Perez v. Nidek Co.*,
  657 F. Supp. 2d 1156 (S.D. Cal. 2009)................................................................................7

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011) ...............................................................................................3

*RLI Ins. Co. v. ACE Am. Ins. Co.*,
  Case No. 19-cv-04180-LHK, 2020 WL 1322955 (N.D. Cal. Mar. 20, 2020) ...................13

*Sargon Enters., Inc. v. Univ. of S. Cal.*,
  55 Cal. 4th 747 (2012) .......................................................................................................12

*Sciortino v. Pepsico*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) .................................................................................7

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*,
  862 F.3d 835 (9th Cir. 2017) ...............................................................................................3

*Sims v. United Parcel Serv., Inc.*,
  Case No. 19-cv-07551-RS, 2020 WL 2542622 (N.D. Cal. Jan. 13, 2020)...........................7

*Smith v. JPMorgan Chase Bank, N.A.*,
  Case No. 20-cv-01777-CBM, 2020 WL 5033532 (C.D. Cal. Aug. 21, 2020) ...................10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...............................................................................................6

*Tan v. GrubHub, Inc.*,
  171 F. Supp. 3d 998 (N.D. Cal. 2016) .................................................................................6

*Turf Paradise, Inc. v. Arizona Downs*,
  670 F.2d 813, 820 (9th Cir. 1982) .......................................................................................8

*Weisbein v. Allergan, Inc.*,
  Case No. 20-cv-0801-FMO, 2020 WL 6555051 (C.D. Cal. Nov. 6, 2020).......................10

**Statutes**

Fed. R. Civ. P. 26(b)(1)...................................................................................................12

Cal. Bus. & Prof. Code § 16760 .........................................................................................4

Cal. Code Civ. Proc. § 2017.010 .......................................................................................12

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY

**INTRODUCTION**

Plaintiffs' Opposition ignores the dispositive point that this case seeks to litigate, on behalf of all natural persons residing in California, the same claims as those presented in the California Attorney General's civil case pending in state court ("State AG Action").  This is exceptional, and wholly unlike the more common situation in which class action plaintiffs bring civil claims arising out of events that are the subject of a co-pending criminal enforcement matter.  Instead, this case presents a situation in which the Plaintiffs are purporting to represent the same civil claimants advancing the same civil claims arising out of the same factual transactions as those in the California Attorney General's case.

The enormous costs of the resulting duplication weigh heavily in favor of a stay.  Double the case management conferences; double the motion papers; double the written discovery responses; double the meet-and-confer conferences; double the case law research; and double the work for double the judges.  When those efforts inevitably result in contradictory rulings from this Court and the state court, there is no clear roadmap for how those conflicts will be resolved, and so the side dissatisfied with one ruling from one court will inevitably seek a different result from the other court.

"Coordination" might shave a percentage off the total duplicative effort, particularly with respect to discovery, but nothing can reduce the cost of litigating two cases in two judiciaries to the cost of one.  And nothing except a stay of this copycat action can eliminate the burden of defending two actions and the risks of conflicting results.  So far, the purported coordination between the Plaintiffs and the California Attorney General has led to double-negotiation of discovery protocols and double-responses to motion papers, creating a risk of inconsistent results and each plaintiff group not regarding itself as bound by any result reached with respect to the other.

There is no federal interest that could justify such repetition.  Plaintiffs' claims are California law claims, arising from California gasoline purchases, brought chiefly on behalf of California residents, with the first case filed in California state court by the California Attorney General.  The tacked-on Sherman Act injunctive relief claim is frivolous: the individual defendants left their employment years ago, and SKEA has exited the California trading market entirely.  In any event, Plaintiffs do not suggest that the Sherman Act would permit different or greater injunctive relief than what is equally available under their duplicative state law claims.

The marginal differences between the cases cannot support doubling the litigation effort.  The claims of businesses and out-of-state purchasers are not substantively different from the claims of California natural persons; indeed, in seeking to pursue such claims as part of a single class, Plaintiffs necessarily are asserting that common issues predominate among all of these types of purchasers.  If this case were stayed, allowing the core liability theories to be litigated in the State AG Action, any remaining issues in this case would be modest, and the claims of business and out-of-state purchasers would progress during the stay via the free representation supplied by the California Attorney General in its case.

As this Court mentioned in the first hearing in this case, the global pandemic demands that now more than ever courts be sensitive to cost and efficiency.  Nothing could be less efficient than double litigation over the same claims based on the same transactions against the same defendants by the same claimants.  The Court should stay this case.

## ARGUMENT

As set forth in Defendants' Motion, both the animating policies and doctrinal factors of the *Colorado River* and *Landis* doctrines weigh in favor of staying this action.[1]  Nothing in Plaintiffs' Opposition explains how litigating this action concurrently with the State AG Action promotes a federal interest, serves the interests of federalism, results in judicial efficiencies, reduces party costs, or protects against conflicting rulings—the objectives of *Colorado River* and *Landis*.  Instead, Plaintiffs narrowly apply both doctrines in service of an effort to litigate the same claims twice.  Opp. at 5.  The Court should instead approach the factors focused on the core question of what purpose is being achieved by this extraordinarily duplicative litigation effort.  *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) (each of the *Colorado River* factors "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.").  The factors are to be weighed using a "flexible balancing test, in which one factor may be accorded substantially more weight

---

[1] Plaintiffs argue that "the Court should not consider a stay under *Landis*," Opp. at 17, but the Ninth Circuit has never held that a *Landis* stay is precluded as an alternative to a *Colorado River* stay.  *See Bradshaw v. City of Los Angeles*, Case No. 2:19-CV-06661-VAP-JC, 2020 WL 2065007, at *4 (C.D. Cal. Mar. 23, 2020) (collecting cases where courts found that *Colorado* and *Landis* were independent grounds to stay).

than another depending on the circumstances of the case." *Holder v. Holder*, 305 F.3d 854, 870–71 (9th Cir. 2002).  Here, the factors weigh in favor of a stay.

## I.     THE EXTRAORDINARY OVERLAP BETWEEN THE CASES WARRANTS A STAY

Many of the *Colorado River* factors address the extent of the overlap between the parallel cases and whether the state action will adequately address the same underlying allegations as the federal action.  *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011) (considering *Colorado River* threshold inquiry, and third, fifth, sixth, and eighth factors).  These factors support a stay.

### A.     The Claims and Factual Issues in Both Actions Are the Same.

The extraordinary duplication presented by this case is an "exceptional circumstance[]" demonstrating why piecemeal litigation would be particularly problematic here.  *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017).  Plaintiffs are pursuing the exact same state law claims and remedies on behalf of the exact same California residents against the exact same corporate defendants that are already being litigated in the State AG Action, simply on the basis of copying and pasting the California AG's complaint.  *See* Mot. Ex. C.  The claims of a California driver who filled up her tank on January 1, 2015, in San Francisco are being pursued simultaneously in both actions.  Because natural person residents of California buy the overwhelming majority of gasoline in California, the overwhelming majority of the claims in the two cases are identical, and there can be only one adjudication of those claims.

Despite Plaintiffs' tepid concession that both actions share "common factual and legal issues arising out of the [same] alleged agreements" (Opp. at 3), the Opposition otherwise ignores this massive duplication, arguing instead that Defendants "overstate the similarities between the two actions" and there is still "substantial doubt" that the State AG Action will fully resolve the case.  Opp. at 5–8. This argument depends on discounting the large majority of overlapping class members—individual California purchasers—and placing significant emphasis on two frivolous causes of action.  *See id.*  As demonstrated below, these minor distinctions are insufficient to avoid a stay; fundamentally, Plaintiffs' California state law claims are identical to all of the California AG's claims in terms of the alleged conduct and theories of liability.  Mot. at 13.  Accordingly, it is beyond dispute that resolution of the

1   California AG's claims "will resolve the [linchpin] legal question" of whether Defendants' alleged

2   conduct was anticompetitive.  *See Goodin v. Vendley*, 356 F. Supp. 3d 935, 948 (N.D. Cal. 2018)

3   (Corley, J.).  There is no good reason the Court should adjudicate a duplicative case pursuing the same

4   claims and the same relief.

5          Plaintiffs' argument also ignores the pragmatic consequences of simultaneous litigation of the

6   same claims.  As an example, this Court recently issued its Order in response to Defendant SKTI's

7   motion to dismiss for lack of personal jurisdiction.  Dkt. No. 263.  Finding that Plaintiffs had failed to

8   make a *prima facie* showing that SKTI is subject to the Court's jurisdiction, the Court permitted

9   Plaintiffs to take limited jurisdictional discovery in support of their minimum contacts and agency

10  personal jurisdiction theories, but not their alter ego theory.  *Id*. at 12–13.  Turning to the State AG

11  action, SKTI's nearly identical challenge to personal jurisdiction has been fully briefed and is set to be

12  heard on January 13.  Resolution of that motion presents the risk of both substantive inconsistencies

13  (e.g., where one court but not the other exerts jurisdiction over SKTI) and procedural inconsistencies

14  (e.g., where one court permits discovery that the other prohibits).  But the result cannot be that the losing

15  side on each issue merely shops its arguments back to the other court in search of a better result—that is

16  a recipe for doubling efforts and conflicting results.

17         Such potential disorder will not be limited to jurisdictional or discovery issues.  Consider the

18  liability and damages claims of the San Francisco resident who purchased gasoline in January 2015.  At

19  present, her claims have been improperly split, advanced simultaneously by *both* the California AG as

20  *parens patriae* and by the Plaintiffs as the representatives of their putative purchaser class.  There can be

21  only one adjudication of those claims.  But should Judge Cheng dismiss the California AG's state law

22  claims in the State AG action, the identical, duplicative claims of this putative class member would

23  remain in the federal action, resulting in either a conflicting result, double litigation, or a *res judicata*

24  dismissal that would render all prior activity in this case with respect to her claims void.  *See* Cal. Bus.

25  & Prof. Code § 16760(b)(3) ("The final judgment in an action under [the Cartwright Act by the

26  California Attorney General as *parens patriae*] shall be res judicata as to any claim under this section by

27  any person on behalf of whom the action was brought . . . .").  A vast range of interlocutory rulings, such

28

as rulings on discovery protocols and the scope of permissible discovery, also are rife with opportunities for redundancy and conflict.

**B. The Nominal Differences Between the Two Actions Do Not Preclude a Stay.**

Plaintiffs argue that their throwaway Sherman Act injunctive relief claim and their putative representation of businesses and out-of-state purchasers justifies concurrent litigation with the State AG Action. Opp. 5–8, 18. But neither of these nominal differences precludes the Court from exercising its discretion to stay this action.

**1. Plaintiffs' Frivolous Sherman Act Claim Does Not Preclude a Stay.**

Plaintiffs cannot rely on their frivolous Sherman Act claim to avoid a stay. *See* Opp. at 9, 13, 15. Without the appended Sherman Act claim, Plaintiffs plead no federal causes of action over which this Court has exclusive jurisdiction. As Judge Koh noted in granting a motion to stay duplicative state law claims, courts should be wary of permitting cases to proceed based on tacked-on federal claims, since doing so "permits forum-shopping and may encourage plaintiffs to add [such claims] solely for the purpose of securing a separate federal forum and avoiding consolidation with previously filed state court actions." *Krieger v. Atheros Communications, Inc.*, 776 F. Supp. 2d 1053, 1060 (N.D. Cal. 2011). That is exactly what has occurred here. The challenged conduct, by Plaintiffs' own admission, ceased more than four years ago; the only purpose of the injunctive relief claim is to create an illusion that this case is different from the State AG Action. When the Court dismisses Plaintiffs' frivolous Sherman Act claim for the reasons set forth in Defendants' Motion to Dismiss (Dkt. No. 224), Plaintiffs' remaining claims will be identical to those in the State AG Action.

Moreover, even if the Court were to permit Plaintiffs' injunctive relief claim to proceed, it would not differentiate this case from the State AG Action, since both sets of plaintiffs present alternative state-law grounds for their injunctive relief requests. *See* CCAC at ¶ 179 ("Plaintiffs and members of the Class are entitled to . . . injunctive relief pursuant to California Business and Professions Code § 16750(a)."); *see also* State AG Compl. ¶ 131 ("The Attorney General also seeks injunctive relief pursuant to California Business and Professions Code section 16754.5."). Thus, even if injunctive relief could be an appropriate remedy in this case, the state law claims in both actions provide the legal authority for such relief, thereby mooting the efficacy of the Sherman Act claim for injunctive relief

5

*only*.[2]  Such an allegedly separate but non-substantive claim does not preclude a stay.  *Cf. Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1015–16 (N.D. Cal. 2016) (Corley, J.) (noting that the "one critical difference" between the two actions was that "the state case alleges only PAGA claims, without the underlying Labor Code violations," while "the present action brings separate claims for the underlying Labor Code violations," and declining to stay because "the separate, predicate Labor Code violations are not in the state action and they will have to be addressed here anyway").

Plaintiffs' cited authorities are unavailing.  *See* Opp. at 6–8.  All of their proffered cases involved *additional* causes of action that permitted incremental relief beyond what was available in the state court action.  *See, e.g.*, *I.K. ex rel. E.K. v. Sylvan Union Sch. Dist.*, 681 F. Supp. 2d 1179, 1185 (E.D. Cal. 2010) (federal complaint included an appeal of a federal administrative decision under the federal Individuals with Disabilities Education Act, and "also differs by substantive claims not specifically raised in the state court complaint, i.e., the federal complaint asserts statutory claims under the IDEA, the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, none of which are advanced in the state court complaint").  Plaintiffs cite no authority where an additional, legally distinct—but practically duplicative—claim for relief precluded a stay of otherwise identical parallel actions.

### 2. The Claims of Entities and Non-California Residents Do Not Preclude a Stay.

It is also inconsequential that Plaintiffs assert claims on behalf of a putative class of purchasers that includes, as a minority component, "entities and non-Californian natural persons not represented in the AG action."  Opp. at 18.  The underlying facts regarding Defendants' alleged conduct are the same for all Plaintiffs and putative class members.

Nothing in Plaintiffs' cited cases suggests that identical claims by a small subset of different purchasers predicated on the same alleged anticompetitive conduct is sufficient to render parallel actions substantially *dissimilar.*  Opp. at 7–8.  Instead, Plaintiffs suggest that anything less than an exact overlap between the claimants in this action and the State AG Action precludes a stay under *Colorado River*.

---

[2]  Likewise, the fact that Plaintiffs allege an unjust enrichment claim is not dispositive.  *See* Opp. at 6–7.  Unjust enrichment is an indisputably equitable remedy, and Plaintiffs' Complaint fails to allege that legal remedies are inadequate.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  *See* Mot. to Dismiss at 35; *see also* Defendants' Joint Reply in Support of Mot. to Dismiss, Section II(C).

But such "exact parallelism" is not required.  *See Goodin*, 356 F. Supp. 3d at 948 ("'Exact parallelism'

is not required; rather, it is enough if the claims are 'substantially similar.'"); *see also Sims v. United*

*Parcel Serv., Inc.*, Case No. 19-cv-07551-RS, 2020 WL 2542622, at *3 (N.D. Cal. Jan. 13, 2020)

(finding "substantial similarity" under *Colorado River* where the parties were "essentially identical" in

both actions, as one putative class was "essentially a superset" of another).  If exact parallelism were

required, then *Landis* and *Colorado River* would do little more than what anti-claim-splitting, double

recovery, and other doctrines already accomplish.

　　　 Plaintiffs' cases likewise rely not on limited differences in the scope of the proposed class, but

instead on more fundamental differences in the scope of the legal theories, causes of action, or relief

sought in the different litigations.  For example, in *Sciortino v. Pepsico*, the underlying factual

allegations in the parallel proceedings, the causes of action, and the relief sought were all different.  108

F. Supp. 3d 780, 815 (N.D. Cal. 2015) ("The state case . . . only alleges a claim for [a violation] of

Proposition 65, and does not allege any other misstatements or violation of the UCL and CLRA.

Correspondingly, the [state] action seeks recovery of civil penalties under Proposition 65, and does not

seek monetary damages and restitution on a class basis as this action does." (citations omitted)); *see also*

*Moore v. Universal Prot. Serv., LP*, Case No. 5:19-cv-2124-JGB, 2020 WL 2518030, at *4–5 (C.D. Cal.

May 15, 2020) (where, unlike here, the "California state law claims in this [federal] action are far more

wide-ranging, and this [federal] action also includes nationwide and Colorado [state law] claims that are

not a part of [the state court action]").  Likewise, in *AIIRAM LLC v. KB Home*, the corresponding state

action was brought on behalf of a small number of individuals only, and the federal action was on behalf

of a far broader putative class.  Case No. 19-cv-00269-LHK, 2019 WL 3779185, at *6 (N.D. Cal. Aug.

12, 2019).

　　　 In this case, by contrast, the large majority of purchasers whose claims are being asserted are

identical in both actions.  And unlike in Plaintiffs' cited cases, the remedies sought here are the same for

all purchasers.  *Compare* State AG Compl. ¶¶ 140–45 (seeking treble damages, injunctive relief and

restitution) and CCAC, Prayer for Relief (seeking same relief) *with Perez v. Nidek Co.*, 657 F. Supp. 2d

1156 (S.D. Cal. 2009) (state action sought individual damages for physical injury suffered by class

members, while federal action sought restitution and statutory penalties but did *not* seek damages for

physical injury); *see also* Mot. Ex. C (identical claims of relief sought under identical causes of action in both this action and the State AG Action).

### 3.     This "Virtually Identical" Action Accomplishes Little.

Plaintiffs fail to explain what this federal action could accomplish that would justify double litigation.[3]  The minor distinctions discussed above cannot obscure the practical realities of the substantial overlap in these two cases and the tag-along nature of this action.  If this case were stayed, the State AG Action would proceed to a resolution that would address all of the state law claims asserted in this action and resolve the claims of the supermajority of claimants in this action.  That is, when the state court dismisses the California AG's liability, damages, and injunctive relief claims already asserted by the large majority of purchasers in Plaintiffs' putative class, there will be nothing left to litigate in the federal action.  Even if the State AG Action were resolved by a judgment against Defendants, the only remaining issues for adjudication in this Court would relate to the particular circumstances of out-of-state purchasers and businesses, such as causation and remedies.[4]

But if this action is not stayed, the result would be disorderly jockeying over which court rules on which issues first, and which plaintiff group leads.  Without a stay, such competition and conflict is unavoidable, since the claims of California residents have been improperly split into two parallel and "virtually identical" actions that Plaintiffs seek to litigate simultaneously.  *See Krieger*, 776 F. Supp. 2d at 1062 (staying "virtually identical" actions).  Plaintiffs do not explain why they should be permitted to advance the claims of California residents instead of deferring to the free representation of the California AG, who brought the claims in the first instance.

---

[3] Plaintiffs' authority is inapposite (Opp. at 10), as *Turf Paradise, Inc. v. Arizona Downs* concerned a federal court adjudicating a federal antitrust claim and a parallel state court adjudicating a state antitrust claim.  670 F.2d 813, 820 (9th Cir. 1982).  Here, both the federal court and the state court would be adjudicating the same state law claims.

[4] Plaintiffs intimate that the naming of Lucas, Niemann, and unidentified Does as non-corporate defendants further distinguishes this action from the State AG Action, thus counseling against a stay.  Opp. at 3.  But Plaintiffs fail to counter Defendants' initial argument that there is no material difference between the two actions—where all of the claims are wholly predicated on the alleged conduct of Lucas and Niemann as alleged corporate agents—simply because the federal action includes these additional non-corporate defendants. *See* Mot. at 13 n.6.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY

Case No. 20-cv-3131

## II.   PLAINTIFFS WILL NOT BE PREJUDICED BY A STAY

Plaintiffs do not identify significant prejudice from a stay, the first factor under *Landis*.  *See* Mot. at 15–16.

*First*, as discussed above, the vast majority of putative class members in this action will benefit from a stay that allows the California AG to advance California state law claims in California state court, based on his two-year investigation.  Because their claims are being advanced simultaneously in both actions and the State AG Action will proceed irrespective of the status of this action, there will be no "prejudice inflicted on" California residents.  *See* Opp. at 18 (conceding that California residents' claims will be advanced notwithstanding a stay).  Indeed, *all* putative class members will benefit from a stay and deference to the California AG, whose action will develop the same facts and test the same legal theories—but without the substantial fees Plaintiffs' counsel in this case would seek to collect if they obtained a recovery.  *See* Mot. at 2, 7.  Accordingly, it is abstaining from a stay that would prejudice the very class members Plaintiffs seek to represent.

*Second*, courts, including this one, have rejected the notion that a delay in an alleged "right to compensation to losses" (Opp. at 19) constitutes a harm that would warrant denial of a stay.  *See FTC v. Lending Club Corp.*, Case No. 18-cv-02454-JSC, 2020 WL 4898136, at *2 (N.D. Cal. Aug. 20, 2020) (Corley, J.) ("[T]he Ninth Circuit has made clear that monetary recovery cannot serve as the foundation for the denial of a stay." (citations and quotations omitted)).

*Third*, Plaintiffs overstate the purported harm from and length of a stay, given that the resolution of the State AG Action will resolve the core issues in this federal case.  That crucial difference distinguishes this case from Plaintiffs' cited cases (the majority of which are in the TCPA context), where the parallel proceedings were not virtually identical actions, involved "speculative" rulings, and would not definitively resolve issues in the action before the court.

For example, in *Lathrop v. Uber Techs., Inc.*, the court found prejudice because (i) there was a *potential* that the D.C. Circuit might issue a decision regarding a recent FCC order and the Supreme Court's decision in *Spokeo, Inc. v. Robins*; (ii) in the meantime, the case would be stayed for an indeterminate length of time pending that *potential* decision; and (iii) regardless, any such decision would not render the case moot.  Case No. 14-cv-05678-JST, 2016 WL 97511, at *3 (N.D. Cal. Jan. 8,

9

2016); *see also Cabiness v. Educ. Fin. Sols., LLC*, Case No. 16-cv-01109-JST, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017) (same).  Likewise, in *Pascal v. Concentra, Inc.*, the court denied a stay based on the "*possibility* that a *future* FCC" may change the definition of automatic telephone dialing system ("ATDS") when such change may not even be relevant to the case.  Case No. 19-cv-02559-JSC, 2019 WL 5458282, at *3 (N.D. Cal. Oct. 24, 2019) (emphasis added).  And in *Smith v. JPMorgan Chase Bank, N.A.*, the court denied a stay pending a Supreme Court decision concerning the definition of ATDS, where discovery would proceed regardless and the amended complaint alleged a cause of action outside the scope of the Supreme Court's decision.  Case No. 20-cv-01777-CBM, 2020 WL 5033532, at *2 (C.D. Cal. Aug. 21, 2020); *see also Weisbein v. Allergan, Inc.*, Case No. 20-cv-0801-FMO, 2020 WL 6555051, at *2 (C.D. Cal. Nov. 6, 2020) (same).  These concerns are not present here.  Resolution of the State AG Action will definitively resolve most if not all of the issues in this federal court action, and the federal claims will not necessarily restart upon lifting of the stay, but rather may be largely resolved through the state court proceedings.

*Fourth*, Plaintiffs' vague assertion that they would be prejudiced because of a supposed "need to re-depose witnesses and collect overlapping evidence years later" is wrong.  Opp. at 2, 21.  Depositions of Defendants' employees taken in the State AG Action would be admissible in a subsequent federal case.  And the documentary evidence being compiled in the State AG Action would be equally available as well.  Further, Plaintiffs are free to coordinate with the California AG to make sure their equities are being protected in state court discovery and to take any steps they deem necessary to preserve evidence.

## III.    THE HARMS OF SIMULTANEOUS LITIGATION WARRANT A STAY

While Plaintiffs would suffer no irreparable damage or injustice if a stay were granted, Defendants would suffer damage and injustice if a stay were denied, thus weighing in favor of a stay. *See Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Rudolph & Slettin, Inc.*, Case No. 20-CV-00810-HSG, 2020 WL 4039370, at *8 (N.D. Cal. July 17, 2020) (second *Landis* factor weighed in favor of stay when there was "no doubt" that defendants would be harmed).  The harm articulated in Defendants' Motion (Mot. at 16–17)—burden and distraction, especially from invasive discovery—"goes beyond the mere effort of defending a lawsuit, and would prejudice" Defendants.  *See Arris Enters. LLC v. Sony Corp.*, Case No. 17-cv-02669-BLF, 2017 WL 3283937, at *2–3 (N.D. Cal. Aug. 1, 2017) (litigating

10

"essentially two separate actions with overlapping and duplicative discovery" is a potential hardship that goes beyond defending a suit (citation and quotations omitted)).  Defendants also face the burden and risks, as discussed above, of simultaneously adjudicating identical legal claims based on the same statutes and the same alleged conduct in different tribunals, which requires substantial duplication of effort and resources, particularly where "coordination" between the actions fails or where rulings in one court on a duplicate legal issue mandates a response from Defendants not required in the other court. Mot. at 9, 16.

Plaintiffs assert that the potential for "coordination" reduces any burden on Defendants.  But coordination of discovery is necessarily an incomplete solution, given the procedural differences between state and federal courts and risk of strategic differences between Plaintiffs and the California AG.  Mot. at 17.  The track record of "coordination" to date has been poor.  For example, Plaintiffs point to the possibility of coordinating protective orders, ESI protocols, expert protocols, and Rule 502(d) orders.  Opp. at 4.  After extensive negotiation, this Court entered the agreed protective order, ESI protocol, expert discovery protocol, and Rule 502(d) orders in this action in November 2020, and Plaintiffs represented that they had "coordinated" on these with the California AG.  Such "coordination" either did not occur or has not resulted in any efficiencies.  For instance, the California AG made clear that the federal orders were simply the *starting point* for negotiations on the same corresponding protocols in the State AG Action, and the parties are still negotiating those protocols—more than two months after each was finalized in this action.  Indeed, Defendants litigated before this Court over the content of the protective order—in particular whether they should receive notice of Plaintiffs' experts— and prevailed.  *See* Dkt. No. 245.  Yet, the California AG has taken the exact the same position as Plaintiffs—*i.e.*, the argument this Court rejected in its November 24, 2020 Order—thus forcing Defendants to litigate the same issue a second time in the State AG Action.

Likewise, the California AG served Defendants with discovery search protocols that included search terms and custodians, which the AG emphasized came from the California AG's office without any involvement from or "coordination" with the federal plaintiffs.  When Plaintiffs attended the parties' meet and confer call to discuss those search terms and custodians, Plaintiffs' counsel noted that the California AG's proposed search protocol was just a "starting point" for federal plaintiffs.  Plaintiffs

1    then requested additional and burdensome information from Defendants not previously requested by the

2    California AG, even though discovery is stayed in this case.  *See* Dkt. No. 232.

3            Even if "coordination" were better executed than it has been to date, it would not address the real

4    possibility of divergent rulings from the application of same law on the exact same facts.  Only a stay

5    can resolve this fundamental problem.  As an example, a motion is pending before both this Court and

6    the state court on whether plaintiffs have failed to allege per se violations of the Cartwright Act

7    stemming from Defendants' agreements to jointly import alkylate into California during a supply

8    shortage.  *See* Mot. to Dismiss at 11–14.  Without deference of this Court to the State AG Action, the

9    parties face the risk of inconsistent rulings on whether the exact same state law claim predicated on the

10   exact same factual allegations should be considered per se unlawful or, instead, analyzed under the "rule

11   of reason."  Different rulings on this identical question of law would result in differences in both the

12   necessary discovery and evidentiary burdens associated with a rule of reason case—*i.e.*, proof of market

13   definition, market power, and whether any anticompetitive effects outweigh the procompetitive

14   justifications for the conduct at issue.  Such differences could require different expert theories and

15   different evidence on the exact same state law claim predicated on the exact same facts on behalf of the

16   exact same purchasers against the exact same defendants.

17           The potential for conflict will recur over and over again, because the same claims are being

18   advanced on behalf of the same people in two courts.  The scope of discovery will be subject to

19   divergent federal and state standards.  *Compare* Fed. R. Civ. P. 26(b)(1) *with* Cal. Code Civ. Proc.

20   § 2017.010.  The admissibility of experts will be subject to different approaches.  *Compare Daubert v.*

21   *Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) *with Sargon Enters., Inc. v. Univ. of S. Cal.*, 55 Cal.

22   4th 747, 772 & n.6 (2012).  Every single issue litigated in this case, ranging from mundane questions of

23   case management to weighty questions regarding the substantive prohibitions of California law, presents

24   the risk of conflicting results and forum shopping between the two courts.  Mot. at 12 (seventh *Colorado*

25   *River* factor weighs in favor of stay, as Court should not permit Plaintiffs and California AG to

26   manipulate court systems in this way).  The risk of inconsistent rulings and the associated multiplication

27   of proceedings negates any theoretical efficiencies from "coordination."

28

## IV.   PRINCIPLES OF FEDERALISM AND THE ADMINISTRATION OF JUSTICE FAVOR A STAY

The purpose of *Colorado River* is to promote federalism and judicial efficiency by authorizing a federal court to defer to parallel state proceedings.  This purpose is paramount here, in a case where the key claims are California state-law claims, where the alleged consequences occurred in California, and where identical claims are being litigated by California's chief law enforcement officer in California state court after a California investigation.  Without the appended Sherman Act injunctive relief claim, there is no federal interest in adjudicating state law claims that are already being adjudicated by a state court judge.  The California AG is surely capable of vigorously pursuing these claims in state court.

The Court's inherent power under *Landis* to control its docket to promote efficiency and reduce cost points to the same result.  Plaintiffs cannot deny that resolution of the State AG Action would, at a minimum, simplify the remaining issues and "contribute to the decision of [ ] the factual and legal issues before the district court."[5]  *RLI Ins. Co. v. ACE Am. Ins. Co.*, Case No. 19-cv-04180-LHK, 2020 WL 1322955, at *7 (N.D. Cal. Mar. 20, 2020) (internal quotations omitted and brackets in original).  Given the limitations on time and resources of the parties and the courts—which have only been exacerbated by the global pandemic—there is no reason why those resources should be deployed toward double litigation, when resolution of the State AG Action will heavily inform, if not completely resolve, the action before this Court.[6]

### CONCLUSION

For the reasons set forth above and in Defendants' Motion, the Court should stay this action pending resolution of the State AG Action.

---

[5] Plaintiffs appear to concede this point, and submit only that "this factor alone is insufficient particularly in light of Plaintiffs' coordination efforts to avoid duplication and waste."  Opp. at 20 (citing *Fields v. Wise Media, LLC*, 2013 WL 3799766 (N.D. Cal. July 19, 2013).  As explained, "coordination efforts" have accomplished little so far.  And, in *Fields*, Judge Alsup refused to stay the case before him because the parallel proceeding was against only one of the corporate defendants named in the federal case.  Here, of course, the corporate defendants are the same in both actions.

[6] At minimum, the Court should stay the Plaintiffs' state-law claims with respect to California natural persons.  *See Krieger*, 776 F. Supp. 2d at 1063 (staying state law claims).

13

Dated: January 7, 2021

Respectfully submitted,

By: */s/ Jeffrey M. Davidson*

Jeffrey M. Davidson (SBN 248620)
Phillip Warren (SBN 89744)
Joan R. Li (SBN 312024)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile:  (415) 591-6091
jdavidson@cov.com
pwarren@cov.com
jli@cov.com

John S. Playforth (*pro hac vice*)
Laura E. Brookover (*pro hac vice*)
Andrew W. Chang (SBN 319009)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile:  (202) 662-6291
jplayforth@cov.com
lbrookover@cov.com
achang@cov.com

*Counsel for Defendants SK Energy
Americas, Inc., SK Trading International Co.
Ltd., and David Niemann*

By: */s/ Michael E. Martinez*

Michael E. Martinez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
Clifford C. Histed (*pro hac vice*)
Stephen M. Humenik (*pro hac vice*)
Brian J. Smith (*pro hac vice*)
John E. Susoreny (*pro hac vice*)
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000
michael.martinez@klgates.com
lauren.donahue@klgates.com
clifford.histed@klgates.com
stephen.humenik@klgates.com
brian.j.smith@klgates.com
john.susoreny@klgates.com

*Counsel for Defendants SK Energy
Americas, Inc., SK Trading International Co.
Ltd., and David Niemann*

By: /s/ John B. Quinn

John B. Quinn (SBN 090378)
Steven G. Madison (SBN 101006)
Shon Morgan (SBN 187736)
Ethan Glass (SBN 216159)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnquinn@quinnemanuel.com
stevemadison@quinnemanuel.com
shonmorgan@quinnemanuel.com
ethanglass@quinnemanuel.com

John M. Potter (SBN 165843)
Justin Reinheimer (SBN 268868)
Christine W. Chen (SBN 327581)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
850 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
johnpotter@quinnemanuel.com
justinreinheimer@quinnemanuel.com
christinechen@quinnemanuel.com

*Counsel for Defendant Vitol, Inc.*

By: /s/Amanda Bonn

Amanda Bonn (SBN 270891)
Eliza Finley (SBN 301318)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
abonn@susmangodfrey.com
efinley@susmangodfrey.com

Neal Manne (94101)
Alex Kaplan (*pro hac vice*)
**SUSMAN GODFREY LLP**
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com

*Counsel for Defendants Vitol Inc. and Brad
Lucas*

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY

Case No. 20-cv-3131

1

## **<u>ATTESTATION</u>**

2

3

I, Jeffrey M. Davidson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

4

5

DATED:   January 7, 2021                          By:   */s/ Jeffrey M. Davidson*
                                                                      Jeffrey M. Davidson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY

Case No. 20-cv-3131