JEFFREY M. DAVIDSON (SBN 248620)
PHILLIP WARREN (SBN 89744)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Email: jdavidson@cov.com
Email: pwarren@cov.com

*Attorneys for Defendants SK Energy Americas, Inc.,
SK Trading International Co., Ltd., and
David Niemann*

MICHAEL E. MARTINEZ (*pro hac vice*)
LAUREN NORRIS DONAHUE (*pro hac vice*)
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Email: michael.martinez@klgates.com
Email: lauren.donahue@klgates.com

*Attorneys for Defendants SK Energy Americas, Inc. and
SK Trading International Co., Ltd.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CALIFORNIA GASOLINE SPOT MARKET ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Case No.: 3:20-cv-03131-JSC<br><br>**THIRD SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY DEFENDANT SK TRADING INTERNATIONAL CO., LTD.**<br><br>Date: September 2, 2021<br>Time: 9:00 a.m.<br>Dept: San Francisco, Courtroom E<br>Judge: Hon. Jacqueline S. Corley |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 1

    A.   CORPORATE GOVERNANCE AND ADMINISTRATIVE ACTIVITIES DO NOT ESTABLISH SPECIFIC JURISDICTION BASED ON AGENCY. ........................ 2

    B.   SKTI DID NOT PARTICIPATE IN OR DIRECT ANTICOMPETITIVE CONDUCT. ................................................................................................................ 4

III. CONCLUSION .................................................................................................................. 5

## I. INTRODUCTION

The question before the Court is whether SKTI, the grandparent Korean entity of SKEA, should be haled across the ocean to litigate in this forum on the grounds that it purposefully directed the specific anticompetitive activity alleged in this case or controlled SKEA's day-to-day trading strategies or activities. Prior rounds of briefing, after jurisdictional discovery that included production of thousands of documents and depositions of key personnel, have established that jurisdiction is absent. In particular, the testimony of two SKTI executives—Jinwoo Jeong and Namho Kim—remains unrebutted and dispositive: no one at SKTI participated in, directed, or ratified the complex scheme that Plaintiffs allege in the highly specialized California gasoline market.

Plaintiffs' latest brief and exhibits only confirm those facts. They show that: SKEA traders made their own trading decisions without direction from SKTI and reported their trades to SKTI only after-the-fact for purposes of aggregate risk management; SKTI personnel assisted SKEA with certain risk management and back-office functions, but never controlled SKEA's day-to-day trading decisions or joint venture activities; and SKTI was oblivious to the details of SKEA's trading strategies, and had to ask SKEA to explain its trading activity at a rudimentary level when it wanted to know, as every parent corporation does, what its subsidiary was doing. They also show that the April 2015 courtesy visit between Namho Kim and Vitol personnel—which the Court referenced in its Order on jurisdictional discovery (Dkt. 263 ("Order")), but which Plaintiffs decided not to ask about in the jurisdictional depositions—was, as Mr. Kim has testified, a low-substance "meet-and-greet." Plaintiffs have failed to establish a basis for personal jurisdiction.

## II. ARGUMENT

At this stage, allegations and innuendo in the face of a contrary factual record will not do for Plaintiffs. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Rather, Plaintiffs bear the burden of proof of establishing jurisdiction over SKTI by setting forth "written materials . . . demonstrat[ing] facts which support a finding of jurisdiction" as a matter of law. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Since SKTI is a Korean corporation, and "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into

the international field," Plaintiffs must overcome a "higher jurisdictional barrier" than for a merely out-of-state defendant. *DFSB Kollective Co. v. Bourne*, 2012 WL 2376209, at *4 (N.D. Cal. June 22, 2012) (Corley, J.) (internal quotations omitted) (R&R adopted). Plaintiffs' new exhibits, like their previous 113 exhibits, fail to show that SKTI directed or controlled the conduct at issue.

> A.  **CORPORATE GOVERNANCE AND ADMINISTRATIVE ACTIVITIES DO NOT ESTABLISH SPECIFIC JURISDICTION BASED ON AGENCY.**

Under "any standard for finding an agency relationship," the plaintiff must show that the parent entity "substantially control[led]" the subsidiary. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017). A showing of some "high level control" does not suffice. *Teradyne, Inc. v. Astronics Test Sys., Inc.*, 2020 WL 8173024, at *9 (C.D. Cal. Nov. 6, 2020). Moreover, because only *specific* personal jurisdiction is at issue, *see* Order at 11–12, there must be a nexus between the agency relationship and the claim; the plaintiff has to show that the subsidiary was acting as the parent's agent with respect to the conduct at issue. *See Young v. Actions Semiconductor Co.*, 386 F. App'x 623, 627–28 (9th Cir. 2010); *see also* Order at 9 (Plaintiffs must show that "SK Trading purposefully directed the specific anticompetitive activity alleged here for personal jurisdiction purposes."); Order at 8 (Plaintiffs must establish facts that "tether[ ]" the allegedly anticompetitive conduct at issue "to SK Trading as opposed to SK Energy").

The new exhibits offered by Plaintiffs fail on both fronts. These exhibits show nothing more than ordinary parent-subsidiary interactions on matters unrelated to the substance or direction of SKEA's trading. Start with Exhibits 1 and 2. Plaintiffs claim these exhibits show that SKTI gave "guidance" to SKEA on "operating its business." Dkt. 332 ("Third Supp.") at 2. That far overstates the documents themselves. The exhibits show only that Yuchi Tsui, a member of SKTI's Trading Risk Management team and a non-trader, trained SKEA personnel on compliance with SKTI's risk management processes, such as SKTI's after-the-fact trade "reporting protocol," *see id.* at 2, and on other routine administrative matters. *See* Exs. 1, 2. Exhibit 4 is similar; it shows that SKTI set general accounting policies governing how its subsidiaries should account for interest expenses. The fact that SKTI "set[ ] general policies and procedures" and "monitor[ed] . . . [SKEA's] performance" and compliance with some of those policies through after-the-fact reporting is "insufficient alone or in

combination" to establish an agency relationship relevant to specific personal jurisdiction.[1] *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 549, 551 (2000); *see also In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1134 (D. Nev. 2009) ("set[ting] general policies and guidelines regarding best policies and practices, as well as certain overall limits, such as the limit on VAR" did not establish that the parent company exercised day-to-day control); SKTI Supp. at 8–9.[2]

Exhibit 3 is no different. While Plaintiffs say it shows that "SKEA and SKTI worked hand-in-hand," Third Supp. at 2, at most, Exhibit 3 shows that SKEA reported completed trades to SKTI for risk management purposes and that SKEA sometimes needed SKTI's cooperation in entering those trades into the software system. That is nothing new, and this after-the-fact review cannot establish that SKTI substantially controlled SKEA's trading. *See, e.g.*, Dkt. 322 ("SKTI Second Supp.") at 4–5 (citing Exs. A–F). This exact fact pattern in the commodities trading context was found insufficient in *In re Western States Wholesale Natural Gas Litigation*, where, as here, the parent company used industry-standard quantitative risk management approaches. 605 F. Supp. 2d at 1134. Plaintiffs' made-up assertion that the price curve referred to in Exhibit 3 "is used both for valuation and as a guide for future trading" is unsupported. Third Supp. at 3. Exhibit 3 does not say that David Niemann or other SKEA traders relied on price curves in making trading decisions—it reflects an exchange that took place *after* SKEA made a trade without any input from SKTI. If anything, Exhibit 3 only reinforces that Mr. Niemann "had complete authority to trade as he saw fit" within SKTI's quantitative risk parameters, since it reflects that he bought 37,000 barrels of CARBOB Premium *before* SKTI had even set up a code for that product in its trade capture systems. Ex. 3; *see also* Dkt. 306-1 ("Kim Decl.") ¶ 7; Dkt. 294 ("First Supp."), Ex. 76 (Niemann had "full authority in making trading decisions").

Like Exhibit 3, Exhibit 5 only further confirms what SKTI has maintained all along. In it, Ms.

---

[1] Contrary to Plaintiffs' suggestion (Third Supp. at 4), accounting for financial results does not ratify allegedly unlawful activity leading to those results, for ratification requires both a pre-existing agency relationship and the principal's knowledge of all material facts, including the facts making the activity unlawful. *See* Dkt. 306 ("SKTI Supp.") at 3–4.

[2] Plaintiffs' emphasis on the labels certain SKEA and SKTI personnel sometimes put on the companies' relationship, Third Supp. at 2, is similarly unavailing. Nothing is more common than corporate affiliates referring to themselves as a "single enterprise," but that type of rhetoric has routinely been held irrelevant to the question of jurisdiction. SKTI Supp. at 6–7.

Tsui asks an SKEA trader high-level questions about the "operation method and status of the Vitol JV," particularly regarding account settlement issues.  Ex. 5.  Her questions reflect her and SKTI's lack of knowledge about the SKEA trading activity this case is about.  SKTI Second Supp. at 4–5 (citing Exs. G–J); Kim Decl. ¶ 6.  About eight months before the exchange in Exhibit 5, SKEA entered into a separate joint venture with Vitol without any advance input or direction from SKTI; in fact, the joint venture was already underway a week before SKEA even requested pro forma approval from Namho Kim.  *See* SKTI Supp. at 16; SKTI Second Supp. at 5.  Consistent with Namho Kim's unrebutted sworn testimony in his declaration, "SKTI did not attempt to oversee Mr. Niemann's trading strategies or require him to get authorization from SKTI before executing individual trades."  Kim Decl. ¶ 7.  SKTI could not have exercised the day-to-day control over SKEA trading necessary to establish agency when SKTI personnel did not have advance knowledge of SKEA's trading strategies and had to ask SKEA to explain the details of those strategies months later.[3]

### B.    SKTI DID NOT PARTICIPATE IN OR DIRECT ANTICOMPETITIVE CONDUCT.

This Court ordered jurisdictional discovery in part based on Plaintiffs' "somewhat conclusory" allegation that SKTI participated in a conspiratorial meeting in April 2015.  Order at 13.  That allegation has collapsed.  The unrebutted evidence, including sworn testimony by Namho Kim, shows that this meeting was a short "meet-and-greet" courtesy visit that involved no in-depth discussion of California gasoline, and no discussion of specific Vitol-SKEA transactions, trading strategies, or Vitol-SKEA business ventures.  First Supp., Ex. 3, Rog. 1; Kim Decl. ¶ 10.  Plaintiffs made the extraordinary tactical decision not to ask *a single question* of Mr. Kim or Mr. Jeong about this meeting at their depositions, and they did not submit a single relevant exhibit, beyond SKTI's own interrogatory response, in the prior two rounds of supplemental briefing.  Having functionally abandoned their prior unfounded accusation, Plaintiffs now claim that an innocuous reference in Exhibit 6 to "opportunities and

---

[3] In arguing "SKTI has emphasized to this Court about how it has no experience with or knowledge of SKEA's business," Third Supp. at 2, Plaintiffs misstate SKTI's position.  SKTI has never claimed it knew nothing about SKEA's *business*.  Instead, the unrebutted testimony has made clear that SKTI lacked the experience and expertise to exert control over the *day-to-day* trading in the complex California gasoline spot market.  Kim Decl. ¶ 6.

synergies" can resurrect their allegation that the meeting was conspiratorial. Plaintiffs' gambit boils down to this: (1) justify jurisdictional discovery by alleging without evidence that the April 2015 meeting was conspiratorial; (2) deliberately avoid developing a factual record about the meeting during depositions; and (3) point to a single innocuous email and insinuate that the absence of other relevant evidence beyond the interrogatory response and Kim Declaration is somehow the result of wrongdoing and "underscores the need" for still more "discovery as to SKTI."[4]  Third Supp. at 5.

An email referencing generic "synergies and opportunities" is consistent with the sworn testimony that the meeting was a short "meet-and-greet" courtesy visit. SKTI and Vitol are trading companies that regularly conduct business with one another; a meeting of trading counterparties is not inherently suspicious. Plaintiffs' argument that such anodyne language must be code for conspiracy is both absurd and contrary to law. "[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999).[5] Plaintiffs have produced no evidence to support their allegation that the meeting was conspiratorial, and dispositive testimony shows that it was not.

### III.    CONCLUSION

The Court should dismiss the Complaint against SKTI for lack of personal jurisdiction.

---

[4] Plaintiffs object that Exhibit 6 (which does not hit on any of the agreed-upon jurisdictional discovery search terms) was produced by Vitol, not the SK Defendants. *See* Third Supp. at 1, 5. That is both unremarkable and irrelevant. Document retention policies differ across custodians and firms, so it is unexceptional that a six-year-old document might exist in one custodial collection but not another. At any rate, none of this—and certainly not the innuendo about phone records (which were outside the scope) and withheld privileged documents (which, contrary to Plaintiffs' mischaracterization, amount to only 19% of the logged entries during jurisdictional discovery, the majority of which relate to a state regulatory action that is tangential at best to jurisdiction), *see id*. at 3, 5 n.3—bears on the dispositive question of whether the evidence establishes personal jurisdiction.

[5] Plaintiffs' cited case involved detailed allegations of collusive conduct, not just inferences drawn from two words in a single email.  *See Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2013 WL 6481195, at *18 (E.D.N.Y. Sept. 20, 2013) (plaintiffs provided "examples of how employees of one corporate family member would report back to its corporate affiliates regarding the collusive surcharges and request that they be implemented," and parent defendants had entered into guilty pleas regarding similar antitrust violations).

DATED: August 18, 2021

COVINGTON & BURLING LLP

By: */s/ Jeffrey M. Davidson*
JEFFREY M. DAVIDSON (SBN 248620)
 (jdavidson@cov.com)
PHILLIP WARREN (SBN 89744)
 (pwarren@cov.com)
JOAN R. LI (SBN 312024)
 (jli@cov.com)
HANNAH M. CHARTOFF (SBN 324529)
 (hchartoff@cov.com)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

JOHN S. PLAYFORTH (*pro hac vice*)
 (jplayforth@cov.com)
LAURA E. BROOKOVER (*pro hac vice*)
 (lbrookover@cov.com)
ALEXANDER J. CAVE (*pro hac vice*)
 (acave@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

K&L GATES LLP


By:  /s/ Michael E. Martinez
MICHAEL E. MARTINEZ (*pro hac vice*)
  (michael.martinez@klgates.com)
LAUREN NORRIS DONAHUE (*pro hac vice*)
  (lauren.donahue@klgates.com)
CLIFFORD C. HISTED (*pro hac vice*)
  (clifford.histed@klgates.com)
STEPHEN M. HUMENIK (*pro hac vice*)
  (stephen.humenik@klgates.com)
BRIAN J. SMITH (*pro hac vice*)
  (brian.j.smith@klgates.com)
JOHN E. SUSORENY (*pro hac vice*)
  (john.susoreny@klgates.com)
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000


Attorneys for Defendant
SK TRADING INTERNATIONAL CO., LTD.


### ATTESTATION

I, Jeffrey M. Davidson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:  August 18, 2021         By:  /s/ Jeffrey M. Davidson
                                     Jeffrey M. Davidson