1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7
8

IN RE CALIFORNIA GASOLINE SPOT

9

MARKET ANTITRUST LITIGATION

Case No.  20-cv-03131-JSC

**ORDER RE: MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Dkt. Nos. 263, 294, 306, 310, 320, 322, 332

10
11
12
13
14

Plaintiffs allege that Defendants entered into horizonal agreements to restrain competition in the spot market for gasoline and gasoline blending components formulated for use in California. Plaintiffs bring state antitrust and unjust enrichment claims against SK Trading International Co., Ltd. ("SK Trading"), SK Energy Americas, Inc. ("SK Energy"), Vitol Inc. ("Vitol"), and two individual defendants.[1] The Court previously deferred ruling on SK Trading's motion to dismiss for lack of personal jurisdiction and allowed Plaintiffs to conduct jurisdictional discovery.  (Dkt. No. 263.)  That discovery is complete and the parties have submitted supplemental briefing.  (Dkt. Nos. 294, 306, 310, 320, 322, 332.)  Having considered the parties' submissions and having had the benefit of oral argument on September 2, 2021, the Court GRANTS the motion to dismiss. While Plaintiffs have alleged and offered evidence of SK Trading's oversight over SK Energy, the evidence falls short of tethering Plaintiffs' allegations of illegal trading to SK Trading sufficient to make a prima face showing of specific personal jurisdiction.

//

15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 199 at ¶ 12.)

United States District Court
Northern District of California

**BACKGROUND**

Plaintiffs' allegations are summarized the Court's order denying Defendants' motion to dismiss.  (Dkt. No. 281 at 5-6.)  At issue on the present motion is whether Plaintiffs have established that SK Trading—a South Korean company—is subject to personal jurisdiction in California.  *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003) (holding that the burden is on the plaintiff to show personal jurisdiction of each defendant).

The Court originally heard oral argument on SK Trading's motion to dismiss for lack of personal jurisdiction on December 16, 2020.  Following the hearing, the Court issued a written order deferring ruling on the personal jurisdiction motion to dismiss and instead granting Plaintiffs leave to take jurisdictional discovery. (Dkt. No. 263.)  That discovery is now complete and Plaintiffs have filed three supplemental briefs in opposition to SK Trading's motion (Dkt. Nos. 294, 320, 331), and SK Trading has filed three responsive briefs (Dkt. No. 306, 322, 337).

**DISCUSSION**

Where, as here, the court permits discovery to assist in determining whether it has personal jurisdiction, but does not hold an evidentiary hearing, the "plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid [dismissal]." *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("[B]ecause the trial court ruled on the issue relying on affidavits and discovery materials without holding an evidentiary hearing, dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction.") (internal quotation marks and citation omitted). All disputed facts must be resolved in the plaintiff's favor in determining "whether a prima facie showing has been made." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).

Plaintiffs insist that there is specific personal jurisdiction over SK Trading. To establish specific personal jurisdiction, Plaintiffs must satisfy two elements. First, that SK Trading purposefully directed its activities to California, consummated some transaction within California, or performed some act by which it purposefully availed itself of the privilege of conducting

United States District Court
Northern District of California

2

United States District Court
Northern District of California

activities in California, thereby invoking the benefits and protections of California's laws. Second, Plaintiffs' California antitrust claim must arise out of or relate to SK Trading's forum-related activities. *See Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801-02 (9th Cir. 2004). If Plaintiffs satisfy those elements, then specific personal jurisdiction is present unless SK Trading demonstrates that the Court's exercise of personal jurisdiction would be unreasonable. *Id*. at 802.

Plaintiffs' claims arise out of SK Energy's alleged agreement with Vitol to manipulate their California spot market trades. There is no dispute that SK Trading did not engage in any of the trades itself; instead, Plaintiffs contend that for personal jurisdiction purposes, SK Trading is responsible for SK Energy's California conduct because (1) SK Trading was SK Energy's agent, or (2) SK Trading participated in and ratified the alleged price-fixing conspiracy.

### A.     Agency Theory

To succeed on its agency personal jurisdiction theory, Plaintiffs must make a prima facie showing that SK Trading had the right to substantially control SK Energy's activities. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017). Plaintiffs contend they have made at least a prima facie showing that SK Trading controlled SK Energy's trading business, including controlling SK Energy trader David Niemann. The evidence marshalled by Plaintiffs, however, demonstrates normal oversight of a parent over a subsidiary rather than control such that the subsidiary—here, SK Energy—was merely doing the bidding of the parent and therefore the subsidiary's contacts with the forum may be attributed to the parent to establish personal jurisdiction.

First, Plaintiffs argue that SK Trading "closely monitored" SK Energy's trading activities. The evidence supports this assertion. However, closely monitoring is not controlling. SK Trading offers evidence, through declarations, that it did not control the day-to-day trading and strategy decisions of SK Energy. (Dkt. No. 306-1, Kim Decl. at ¶¶ 3-4, 7-8, 11-12.) Despite being afforded written discovery and depositions, Plaintiffs do not identify any evidence that disputes this testimony; that is, any evidence that suggests that SK Trading controlled what trades SK Energy engaged in or otherwise controlled its day-to-day operations. Exhibit 10, which Plaintiffs

1    highlighted at oral argument, shows that SK Trading had a specific role to play in SK Trading's

2    overall global strategy, and that SK Trading was highly attuned to its profitability, but such

3    conduct is insufficient to show that SK Energy was merely its agent.  (Dkt. No. 295-11; *see also*

4    Dkt. No. 295-89 (Ex. 88).)  As the California Court of Appeals as explained:

> The nature of the control exercised by the parent over the subsidiary
> necessary to put the subsidiary in an agency relationship with the
> parent must be over and above that to be expected as an incident of
> the parent's ownership of the subsidiary and must reflect the parent's
> purposeful disregard of the subsidiary's independent corporate
> existence. . . . As a practical matter, the parent must be shown to have
> moved beyond the establishment of general policy and direction for
> the subsidiary and in effect taken over performance of the subsidiary's
> day-to-day operations in carrying out that policy.

10   *Sonora Diamond Corp. v. Superior Ct*., 83 Cal. App. 4th 523, 542 (2000) (internal citations

11   omitted).  Other evidence Plaintiffs highlight similarly shows close monitoring and risk

12   management, not control of day-to-day operations. (Dkt. Nos. 295-44 (Ex. 43); Dkt. No. 295-73

13   (Ex. 72); Dkt. No. 295-79 (Ex. 78); Dkt. No. 295-81 (Ex. 80).)  *See Ranza v. Nike, Inc*., 793 F.3d

14   1059, 1074 (9th Cir. 2015) ("A parent corporation may be directly involved in financing and

15   macro-management of its subsidiaries ... without exposing itself to a charge that each subsidiary is

16   merely its alter ego.") (internal citation omitted); *see also United States v. Bestfoods*, 524 U.S. 51,

17   72 (1998) ("[A]ctivities that involve the facility but which are consistent with the parent's investor

18   status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance

19   and capital budget decisions, and articulation of general policies and procedures, should not give

20   rise to direct liability.").

21           Second, Plaintiffs' heavy focus on SK Trading's involvement in the hiring of SK Energy's

22   David Niemann is unavailing.  (Dkt. No. 295-31 (Ex. 30); Dkt. No. 295-32 (Ex. 31).) The record

23   shows that in May 2014 SK Trading approved a plan for SK Energy to hire global trading talent in

24   order "to survive for future growth."  (Dkt. No. 295-24 (Ex. 23) at 3.)  SK Energy identified

25   several candidates, and suggested David Niemann after its top choice declined an offer.  (Dkt. No.

26   295-31 (Ex. 30); Dkt. No. 295-32 (Ex. 31).)  While the record supports a finding that SK Trading

27   interviewed Mr. Niemann and approved his hiring (Dkt. No. 295-28 (Ex. 27)), a parent

28   corporation's involvement in some hiring decisions does not show that it directs the subsidiary's

United States District Court
Northern District of California

day-to-day operations.  *See Ranza*, 793 F.3d at 1074-75.

Third, Plaintiffs' contention that SK Trading otherwise controlled Niemann is not supported by the record.  Plaintiffs highlight evidence that Niemann directly reported to Kim on at least on occasion (Dkt. No. 295-36 (Ex. 35)) as well as evidence that Kim, rather than SK Energy CEO Koo, provided detailed reports to SK Trading representatives regarding the status of Niemann's work (Dkt. No. 295-37 (Ex. 36)).  Further, there is evidence of Niemann's increasing frustration with SK Trading's treatment of him and Shelly Mohammed in the context of their contract and salary negotiations and their "micromanaging of every little aspect of the finances." (Dkt. No. 295-38 (Ex. 37).)  In October 2016, when discussing whether to renew Niemann's contract, there is evidence Koo needed to seek approval from Kim regarding whether Niemann should renew storage contracts.  (Dkt. No. 295-39 (Ex. 38).)  Plaintiffs also place much weight on evidence that in December 2014, when Koo expressed concern to Kim regarding Niemann golfing during work hours, Kim told him to make sure "he is allowed to do that as long as it does not interrupt operations."  (Dkt. No. 295-40 (Ex. 39) at 3.)  Plaintiffs emphasize that when the SK Trading CEO noted to Kim that "[t]rading profit is continuously going down," Kim shared the feedback with Koo and asked him to "review and share the reason of profit loss."  (Dkt. No. 295-42 (Ex. 41) at 3-4.)

Plaintiffs insist that this level of oversight by Kim is sufficient to infer a plausible agency relationship between SK Trading and SK Energy.  Not so.  Plaintiffs' evidence does not support an inference that SK Trading controlled SK Energy's trading activities.  *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017).  Being concerned with profitability and insisting that a subsidiary follow corporate-wide policies does not make a parent an agent of a subsidiary for specific personal jurisdiction purposes; if that was the law, nearly every parent would be subject to personal jurisdiction based on the contacts of its subsidiaries.

Plaintiffs' reliance on *In re Packaged Seafood Prod. Antitrust Litig.*, 277 F.Supp.3d 1167, 1190 (S.D. Cal. 2017), is unpersuasive.  There the district court found that the following evidence when taken "in concert" supported a plausible theory of agency liability:

[the parent corporation's CEO] was both the immediate supervisor of

5

1

> [the subsidiary's] CEO and approved day-to-day matters related to [its] business, including the retention and employment terms of StarKist employees, the contract terms with StarKist's raw material suppliers, and whether or not to launch new products in the United States; and controll[ed] StarKist's communications with the FDA over health violations at its plants[,] and at least one other [parent corporation] Executive routinely provided direction to StarKist regarding its pricing and volume terms for specific customers....

*Id*. at 1190 (internal citations and quotation marks omitted; some alterations in original).  While some similar evidence is present here, two key pieces are not—evidence that SK Trading "controlled" Niemann or SK Energy's communications or evidence that SK Trading "routinely provided direction to [SK Energy] regarding its pricing and volume [of trading]."  *Id.*  Indeed, in Kim's response to Niemann's progress report discussed above, he simply stated "Well noted!" but did not provide substantive feedback regarding Niemann's report.  (Dkt. No. 295-36 (Ex. 35).)  As the *In re Packaged Seafood* court noted, "the parent must be shown to have moved beyond the establishment of a general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy."  *Id.* at 1189 (internal quotation marks and citations omitted).  While the evidence shows that Kim engaged in regular oversight, it does not reflect (with the exception of the communications regarding negotiating Niemann and Mohammed's salary contracts) control over Niemann's day-to-day actions—either generally or those from which Plaintiffs' claims arise.  *See, e.g.*, *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (finding no alter ego or agency where parent placed its own directors on subsidiary's board, guaranteed loans for subsidiary, reviewed and approved subsidiary's major decisions, and had involvement in subsidiary's pricing).

Finally, Plaintiffs' assertion that the evidence supports a prima facie showing that SK Trading and SK Energy were a single integrated entity is puzzling. They do not cite any case that defines "single integrated entity" or explain how it is relevant to the agency personal jurisdiction inquiry. As Defendants note, courts routinely reject the use of a single enterprise theory as a basis for liability in the alter ego context—the theory under which it is typically advanced.  *See, e.g.*, *Pitt v. Metro. Tower Life Ins. Co.*, No. 18-CV-06609-YGR, 2020 WL 1557429, at *4 (N.D. Cal. Apr. 1, 2020) (rejecting "Plaintiff's collective enterprise theory" because "numerous courts in this

6

1   circuit have rejected the use of such a theory as a basis for establishing jurisdiction" and collecting

2   cases re: the same).

3           In any event, in support of their "integrated entity" theory, Plaintiffs highlight several

4   facts:

- Several employees including Namho Kim served as the head of distillates at both
  SK Trading and SKEI (SK Energy's direct parent).  (Dkt. No. 295-5, Kim Depo.
  at 19:10-14.)

- In the "US L[ight]D[istillates] Book Biz Plan" prepared by SK Trading for SK
  Energy, SK Energy was to "[b]uild the post to complete global LD book network
  connecting Asia/US/Europe, and grow to be the western profit center."  (Dkt. No.
  295-11 (Ex. 10) at 8.) "Attaining profitability in LA Carbob pipe trading" was
  listed as a "top priority."  (*Id.*)

- All SK Energy employees and all SK Trading employees share an @sk.com email
  address and all SK Energy employees are identified in their emails as supporting
  the operations of "SKEA/SKTI."  (Dkt. No. 295-4 at 11 (citing Ex. 95 (Dkt. No.
  295-96 at 5)).)

- Between 2014 and 2016 14 SK Trading employees were loaned to SK Energy.
  (Dkt. No. 294-3, ROG Resp. No. 6.)

None of these facts support an inference that SK Trading controlled SK Energy's trading activities

and all of them are common to the parent/subsidiary relationship.  *See Ranza v. Nike*, 793 F.3d

1059, 1074 (9th Cir. 2015) ("Some employees and management personnel move between the

entities, but that does not undermine the entities' formal separation."); *see also Yih v. Taiwan*

*Semiconductor Mfg. Co*., No. 5:20-cv-04184-EJD, 2020 U.S. Dist. LEXIS 201093, at *19 (N.D.

Cal. Oct. 27, 2020) (collecting cases finding that allegations that entities "operate on the same

corporate website, share the same email address domain, and also have a common interactive

online system for information and transactions…do not reflect an abuse of the corporate form and

existence of an alter ego relationship." (internal citations and quotations marks omitted).

           While the evidence supports a prima facie showing that SK Trading actively monitored SK

United States District Court
Northern District of California

1    Energy's profitability and compliance with its corporate policies, it falls short of a prima facie

2    showing that SK Trading controlled SK Energy's day-to-day trading activity.  *See In re W. States*

3    *Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1134 (D. Nev. 2009) (finding no personal

4    jurisdiction where the corporate parent "received daily reporting" from the subsidiary, but there

5    was no evidence to suggest that the parent "gave daily control commands" as opposed to that it set

6    "best policies and practices, as well as certain overall limits, such as the limit on VAR," but that

7    "when it came to [the subsidiary's] day-to-day conduct of its business within these guidelines, [the

8    parent] had little to no role.").

9                                                                   \*\*\*

10       In *Williams*, the Ninth Circuit held that the reasoning of *Daimler AG v. Bauman,* 571 U.S.

11   117, 136 (2014), was clearly irreconcilable with the Ninth Circuit's agency test for personal

12   jurisdiction. *Williams*, 851 F.3d at 1024-25.  *Daimler* had rejected the Ninth Circuit's prior less

13   rigorous test for agency-based personal jurisdiction because it "stacks the deck, for it will always

14   yield a pro-jurisdiction answer: Anything a corporation does through an independent contractor,

15   subsidiary, or distributor is presumably something that the corporation would do 'by other means'

16   if the independent contractor, subsidiary, or distributor did not exist." *Id.* at 1024 (quoting

17   *Daimler*, 571 U.S. at 136).  Plaintiffs' theory of agency-based personal jurisdiction here suffers

18   from the same flaw.  To accept their formulation would mean that parent corporations cannot give

19   their subsidiaries personnel advice, cannot closely monitor their subsidiaries' profitability, cannot

20   ensure that their subsidiaries follow corporate-wide policies.  In short, parent corporations cannot

21   act as a parent corporation without becoming subject to personal jurisdiction based on a

22   subsidiary's conduct. The caselaw does not support Plaintiffs' theory.

23       **B.      Ratification**

24       In addition to their agency theory, Plaintiffs appear to advance a separate ratification

25   theory.  Ratification, however, is not a valid theory for establishing personal jurisdiction. *See*

26   *Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*, No. 816-CV-01321 JLS KES, 2017 WL 7240856, at \*6

27   (C.D. Cal. Apr. 25, 2017), ("Plaintiffs' other, exotic theories of imputing contacts—single

28   enterprise, aiding and abetting, and ratification—are not valid theories of establishing personal

United States District Court
Northern District of California

1    jurisdiction in the Ninth Circuit to the extent that they stray from the well-established alter ego and

2    agency theories.") (internal quotation marks omitted) aff'd sub nom. *Iconlab, Inc. v. Bausch*

3    *Health Companies, Inc.*, 828 F. App'x 363 (9th Cir. 2020).  To the extent that Plaintiffs rely on

4    *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019), as amended on

5    denial of reh'g and reh'g en banc (May 6, 2019), for the proposition that agency can be established

6    through ratification, that case involves the well-established method of proving liability based on

7    an agency theory, not, as here, using agency to prove personal jurisdiction.

8         **C.     Nexus**

9         To satisfy the second prong of the specific jurisdiction test, Plaintiffs' "claim must be one

10   which arises out of or relates to [SK Trading]'s forum-related activities." *Mavrix Photo, Inc. v.*

11   *Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). "In determining whether [a plaintiff's]

12   claims arise out of [a defendant's] forum-related conduct, 'the Ninth Circuit follows the 'but for'

13   test.'" *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting *Myers v. Bennett Law*

14   *Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001)). "[I]f the plaintiff would not have suffered loss 'but

15   for' the defendant's activities, [the 'arising out of'] element is satisfied." *Bartel v. Tokyo Elec.*

16   *Power Co., Inc.*, 371 F. Supp. 3d 769, 787 (S.D. Cal. 2019), appeal dismissed, No. 19-55442,

17   2019 WL 5260743 (9th Cir. July 30, 2019).

18        Put simply, Plaintiffs must offer evidence that SK Trading purposefully directed the

19   specific anticompetitive trading activity alleged here.  They have not.  Thus, even if the Court

20   were to find that Plaintiffs' allegations cumulatively support a plausible inference that SK Trading

21   in fact substantially controlled SK Energy under an agency theory, Plaintiffs have failed to offer

22   evidence that supports a plausible inference that SK Trading's actions were the but for cause of

23   Plaintiffs' injuries; that is, Plaintiffs have not identified evidence that makes a prima facie showing

24   that SK Trading directed the trading activity alleged here.

25                                  **CONCLUSION**

26        For the reasons stated above, the Court GRANTS SK Trading's motion to dismiss for lack

27   of personal jurisdiction.

28        The Court sets a further Case Management Conference for October 28, 2021 at 1:30 p.m.

United States District Court
Northern District of California

9

1    The parties shall file a joint updated case management conference statement by October 21, 2021.

2         This Order disposes of Docket Nos. 294, 306, 310, 320, 322, 332.

3         **IT IS SO ORDERED.**

4    Dated: September 29, 2021

5

6    JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

7

United States District Court
Northern District of California