```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3   Before the Honorable Jacqueline Scott Corley, Judge

 4

 5   IN RE:  CALIFORNIA GASOLINE    )  No. C 20-03131-JSC
     SPOT MARKET ANTITRUST          )
 6   LITIGATION,                    )
                                    )
 7   _____)

 8                                    San Francisco, California
                                      Thursday, February 10, 2022
 9

10    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 1:54 - 2:20 = 26 MINUTES
11
     APPEARANCES:
12
     For Plaintiff:
13                              Girard Sharp, LLP
                                601 California Street
14                              Suite 1400
                                San Francisco, California
15                                94108
                           BY:  DENA C. SHARP, ESQ.
16                              MIKAELA M. BOCK, ESQ.
                                KYLE PAUL QUACKENBUSH, ESQ.
17                              SCOTT GRZENCZYK, ESQ.

18                              Hausfeld, LLP
                                600 Montgomery Street
19                              Suite 3200
                                San Francisco, California
20                                94111
                           BY:  SAMANTHA STEIN, ESQ.
21

22

23

24            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25
```

2

1  APPEARANCES:  (Cont'd.)

2  For the California Attorney
      General's Office:                    Attorney General's Office
3                                          455 Golden Gate Avenue
                                           Suite 11000
4                                          San Francisco, California
                                              94102
5                                  BY:  NELL MOLEY, ESQ.
                                       ERIC J. CHANG, ESQ.
6
   For Vitol, Inc.
7                                          Quinn, Emanuel, Urquhart
                                              & Sullivan, LLP
8                                          865 South Figueroa Street
                                           Tenth Floor
9                                          Los Angeles, California 90017
                                   BY:  STEVEN G. MADISON, ESQ.
10                                     CHRISTINE CHEN, ESQ.

11 For Vitol, Inc. and
      Brad Lucas:                          Susman Godfrey, LLP
12                                         1000 Louisiana, Suite 5100
                                           Houston, Texas 77002
13                                 BY:  MICHAEL KELSO, ESQ.

14 For SKEA, SKTI and
      D. Niemann:                          Covington & Burling, LLP
15                                         415 Mission Street, Suite 5400
                                           San Francisco, California
16                                            94105
                                   BY:  JEFFREY M. DAVIDSON, ESQ.
17
                                           K & L Gates
18                                         70 West Madison Street
                                           Suite 3300
19                                         Chicago, Illinois 60602
                                   BY:  MICHAEL E.MARTINEZ, ESQ.
20

21 Transcribed by:                         Echo Reporting, Inc.
                                           Contracted Court Reporter/
22                                         Transcriber
                                           echoreporting@yahoo.com
23

24

25

3

1  <u>Thursday, February 10, 2022</u>                                    <u>1:54 p.m.</u>

2                      P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4          THE CLERK:  Calling civil action C 20-3131, In Re:

5  California Gasoline Spot Market Antitrust Litigation.

6      Ms. Sharp, can you just state your appearance and your

7  team?

8          MS. SHARP (via Zoom):  I'd be happy to.  Thank you,

9  Ms. Means.

10     I'm Dena Sharp from the law firm of Girard Sharp and

11 with me today are three of my colleagues, Scott Grzenczyk,

12 Kyle Quackenbush and Mikaela Bock.  I know that's a handful

13 of us, your Honor, but there are a handful of meet and confer

14 issues addressed in the CMC statement and I wanted the folks

15 on the ground to be able to address any questions the Court

16 had.

17         THE COURT:  That's okay.  Ms. Means gives me a list

18 of everybody's name.

19         MS. SHARP:  All right.  So we'll -- you're ahead of

20 us, as usual.

21     And I don't mean to speak for her, but Ms. Stein is

22 appearing from the Hausfeld firm, our colleague, as well.

23 Thank you.

24         THE COURT:  Good afternoon.

25         MS. STEIN (via Zoom):  Good afternoon, your Honor.

4

1           MR. DAVIDSON (via Zoom):  Good afternoon, your

2  Honor.  Jeff Davidson, Covington and Burling for SKEA and

3  Dave Niemann.

4           THE COURT:  All right, good afternoon.

5      And Mr. Martinez, you're there with him?

6           MR. MARTINEZ (via Zoom):  Yes, from K and L Gates,

7  same Defendants, your Honor.  Good morning -- good afternoon.

8           THE COURT:  Good afternoon.

9           MS. SHARP:  And your Honor, I should note for the

10 record that Mr. Chang and Ms. Moley are also here from -- for

11 the people -- appearing for the California Department of

12 Justice.

13          THE COURT:  Oh, great, well --

14          MS. SHARP:  And I don't mean to -- I don't mean to

15 speak for them either, but Ms. Means asked me to speak about

16 everybody on our side, so I'm doing that.

17          THE COURT:  All right.

18          MR. CHANG (via Zoom):  Good afternoon, your Honor.

19          THE COURT:  All right.  Mr. Kelso?

20          MR. KELSO (via Zoom):  Good afternoon, your Honor.

21 Michael Kelso at Susman and Godfrey for Vitol and Brad Lucas.

22 I'm also joined by Steve Madison and Christine Chen with

23 Quinn Emanuel, for Vitol.

24          THE COURT:  All right.  Good afternoon.  Okay.  I

25 think that is everyone.

1    So, we have a few things to talk about and I think
2 mostly I just need to set some deadlines, right?  To sort
3 fish or cut bait and so we can move things along, because we
4 do have that fact discovery cutoff coming up.  Although, do
5 we have any idea -- or we probably don't -- of when we'll
6 have a ruling out of the Maryland court?

7          MS. SHARP:  Sadly, no, your Honor.

8          THE COURT:  Yeah.

9          MS. SHARP:  We don't have a hearing date and
10 there's a -- candidly -- a pile of paper in front of that
11 judge right now.

12          THE COURT:  Okay.  Well, obviously -- we'll see --
13 I don't know if I've ever had a Rule 45 to compel with both
14 the Plaintiff and Defendant in the underlying case wanted it.
15 So we'll see.  But I mean I know that's obviously critical
16 discovery, so we'll just -- we'll move ahead and then we'll
17 see where we are.

18    So I'll just kind of go in order.  One of the first
19 issues raised, again, was the issue of the Plaintiff's gas
20 consumption.  And there seemed to be a little disconnect in
21 the statements, because the Plaintiffs were talking about
22 anticipated -- and I maybe understood the defense to be
23 talking about past, like evidence of past; so who wants to
24 sort of bring me up to speed there and see how we can break
25 this impasse?

6

1          MR. DAVIDSON:  Well I can start, your Honor.  And I
2 think we may be talking about both.
3      I mean, our view of the world is that there's five
4 Plaintiffs here who are, you know, purporting to be
5 representatives of everybody who purchased gasoline in
6 California and so we want a very fully developed record of
7 their purchases, their fleets, their expected consumption
8 over time, you know, where they were driving, to figure out
9 class certification issues, but also to develop individual
10 defenses.
11      I read their case management statement to say on
12 February 7th they're planning on -- they're planning on
13 producing things and the -- whatever they're not producing,
14 it's because they don't have.  So it may be that there is no
15 dispute, but we're in the dark as to why it has been so
16 difficult to get this information from the Plaintiffs.  It
17 shouldn't be such a project, in our view.
18          THE COURT:  All right.  Well, so what's going to be
19 produced on February 7th?
20          MS. BOCK:  Good afternoon, your Honor.  I can speak
21 to this issue.
22      Plaintiffs will be making a production later today that
23 addressed Defendant's second --
24          THE COURT:  Oh yeah, since February 7th is past.
25          MS. BOCK:  The week of February 7th.

7

1          THE COURT:  Oh, I see.

2          MS. BOCK:  That will address Defendant's second set

3 of set of request for production.  So we do have documents

4 coming there way.  We do want to highlight, however, that

5 after this production, Plaintiffs will have produced

6 everything responsive to Defendant's request for production,

7 and what we haven't produced, it's because it simply does not

8 exist.

9     Plaintiffs have explained to Defendants that some of the

10 information they're seeking, we're not opposed to providing

11 it to the Defendants, however, documents that go to this

12 information are not there.  So we've suggested

13 interrogatories, or deposition questioning that go to these

14 topics, and Defendants seem to have taken that to heart,

15 because they've noticed 30(b)6 topics that go to some of

16 these questions.  So we're confident that Defendants will get

17 all of the information that they need.

18          THE COURT:  So when you say -- but so -- what I

19 understood the statement was, you don't really have documents

20 that show anticipated, but I would assume you would have

21 documents that would show past use, some anyway?

22          MS. BOCK:  Yes.

23          THE COURT:  Okay.

24          MS. BOCK:  And those documents have been produced.

25          THE COURT:  Okay.  All right.  So it sounds like

8

1  you're getting, today, Mr. Davidson, and they'll -- you know,

2  in their responses, they represent that they -- that that's

3  all they have and there we are.

4        MR. DAVIDSON:  When we complain about it in the

5  case management statement, magic things happen, so it seems

6  like this is --

7        THE COURT:  Oh, it happens anyway.  All right.

8    So the next issue is the 30(b)6 of Defendants and it

9  sounds like the topics, except for maybe a couple of things

10  -- topics have been addressed.  You're -- the AG is

11  supplementing the responses on February 14th and Plaintiffs

12  are supplementing their responses by?

13        MR. GRZENCZYK (via Zoom):  Your Honor, Scott

14  Grzenczyk for the Plaintiffs.  I'll be taking this one.

15    We don't have a specific date right now to supplement

16  our responses.  I think the issue that is in the case

17  management conference statement is really about the upcoming

18  depositions of the Defendants and whether there's any sort of

19  threshold impediment to them providing us dates and 30(b)6

20  designees and presenting those individuals for depositions.

21  We -- from Plaintiff's perspective, we need that process to

22  go forward.

23        THE COURT:  Wait, wait, wait.  So -- okay, so you

24  don't have, in your mind, new information that you haven't

25  disclosed that you're supplementing -- that you are

9

1  supplementing?

2          MR. GRZENCZYK:  I think it's fair to say we don't

3  have a specific -- more specific trades we would identify

4  right now and a function of that is because discovery is

5  ongoing on a bunch of different fronts, including deposition

6  discovery, document discovery from Defendants and third

7  parties and behind the scenes, a fairly robust expert

8  analysis.  So we're certainly planning to supplement the

9  interrogatories when we've gotten to the point that we have

10 information to meaningfully supplement with, but with respect

11 to the deposition issue, we don't think that the fact that

12 we're not there --

13         THE COURT:  No, no, that's a different matter.  I

14 understand.  But your representation is that as you sit here

15 today, all of the trades of which you are aware of currently,

16 that you are challenging, have been identified?

17         MR. GRZENCZYK:  That we would definitively

18 challenge.  I mean, there are certainly other ones, just to

19 be fully transparent.  There are other ones that we are

20 looking at and investigating, but that process is ongoing.

21         THE COURT:  Okay.  All right.  So you're not --

22 okay.

23     So I think the Defendants said that they were -- at

24 least for the 30(b)6, they were then preparing to give dates;

25 have you done so, or when will you do so?

10

1        MR. KELSO:  Your Honor, this is Michael Kelso for

2   Vitol.

3      So we've provided the Plaintiffs with dates for two of

4   the three current Vitol employees whose depositions they've

5   requested.  We --

6        THE COURT:  Wait, are these the 30(b)1 or the

7   30(b)6?

8        MR. KELSO:  They're going to overlap, your Honor.

9        THE COURT:  I see.

10       MR. KELSO:  And that's --

11       THE COURT:  I got it.  I got it.

12       MR. KELSO:  We've given them dates for two 30(b)6

13   witnesses -- this is speaking for Vitol -- We've given them

14   dates earlier today for two of the three current Vitol

15   employees whose depositions they've requested.  We'll get

16   them the third in the near term.

17      We've told the Plaintiffs that we anticipate designating

18   those individuals on the remaining 30(b)6 topics.  What we're

19   doing right now is, one, I think there are still some

20   negotiations over some of the topics, but we're just working

21   up on dividing the remaining topics among the 30(b)1

22   witnesses who they've asked for.  And we'll get those

23   designations out.

24       THE COURT:  Okay, so those dates -- the Plaintiffs

25   have some dates then?

1          MR. KELSO:  Yes, your Honor.

2          THE COURT:  Okay, all right.  So the only two

3    topics I believe that were raised, at least in the statement,

4    were about the affirmative defenses; is that right?

5          MR. GRZENCZYK:  Before we move onto that, your

6    Honor, if I may?

7          THE COURT:  Yes.

8          MR. GRZENCZYK:  We just want to clarify, because

9    one statement we've heard from Defendants, and we saw

10   reiterated in the case management statement, was that -- and

11   this on page four -- "Defendant should not be required to

12   present witnesses to testify."

13      So, in a prior meet and confer, Defendants informed us

14   that they would provide us dates, but whether those

15   depositions would go forward, they were continuing their sort

16   of objections to those going forward, based on their desire

17   to have supplemented -- supplemental interrogatory responses

18   from the federal Plaintiffs and the California AGs

19   and we just want to make sure that (Zoom glitch) when we get

20   those dates, as soon as we negotiate agreed upon dates, those

21   depositions can go forward and we're not going to be in a

22   situation where they say, "Well we -- we're not going to

23   present those witnesses --

24          THE COURT:  Well I mean they have -- I mean

25   obviously the 30(b)6, you can't question the 30(b)6 about a

12

1 trade that you haven't identified.  So that -- I don't think
2 it's an issue with the 30(b)6, at all.  The 30(b)1, you know,
3 either the witness can answer it, or it can't answer.  I
4 don't believe that you're hiding anything.  If the Defendant
5 believes that it's a reason -- I mean, they'd have to bring a
6 motion for protective order, but I don't see it.  I mean, in
7 some ways it's -- yeah, I guess I don't see it.  But I don't
8 know, Mr. Kelso, if you want to be heard on that?

9          MR. KELSO:  Sure, your Honor.  I guess the bottom
10 line for us is, I don't think there's any dispute for the
11 Court to resolve today on this.  The AG has a deadline
12 ordered by Judge Cheng, to supplement their interrogatory
13 answers on Monday, February 14th.  So if they  -- and those
14 are the contention interrogatories we served and asked them
15 to identify the trades they've challenged -- they currently
16 challenge as unlawful.

17      If the AG gives us a complete answer to those
18 interrogatories, then there's no issue with the depositions
19 going forward.  I think the issue we have, and the concern
20 that we've raised, is there has been this sort of hide the
21 ball game going on with the AG over identifying the trades
22 they're challenging as unlawful.  And if that continues in
23 the supplemental interrogatory answers on February 14th, then
24 we may very well be back in front of the Court and in front
25 of Judge Cheng, asking for appropriate relief, and in our

13

1 view, that may affect the propriety of depositions going

2 forward.

3        THE COURT:  Well and I guess -- yeah -- the only

4 reason it would impact this case is because the parties have

5 generously agreed to coordinate the discovery.  Otherwise I

6 would say, "Okay, I don't care about the AG, that's fine."

7        So I don't know, Mr. Kelso, I mean -- you know, I think

8 the AG clearly understands -- the Plaintiffs understand -- if

9 they have an obligation, as they sit here today, or when they

10 answer the interrogatories to identify every trade, which

11 they have said, "We're challenging."  But obviously an

12 investigation is ongoing.  Those OPUS records, I assume, are

13 relevant to that, as well.  So there may be other ones that

14 are going to be challenged later.

15        I think with both Plaintiffs, the AG and probably the

16 Plaintiffs here, are a little concerned about being boxed in

17 to saying, "Well, these are the only ones you can challenge."

18 And you're not saying that --

19        MR. KELSO:  And to be clear, your Honor, that's not

20 what we're saying at all.  I mean, of course, they can

21 supplement according to the discovery rules, as appropriate.

22 But I do think there's -- it's not just the fact that they've

23 generously agreed to coordinate discovery, it's the fact that

24 the class Plaintiff's complaint is near identical to the

25 AG's.  The interrogatory answers are a cut and paste job from

14

1 the AG's.  The same alleged conduct, the same alleged trades

2 are at issue in both cases, with the class Plaintiffs

3 following the AG's lead from the outset.  There is no way for

4 our witnesses to answer questions, at a deposition in this

5 case, without going on the record about the AG's allegations.

6 And those concerns are heightened, your Honor, because of the

7 class Plaintiff's close relationship with the AG.

8     At the June 10th CMC, Plaintiffs said they expected

9 deposition taking to be a "collaborate process with the AG"

10 with "Some deponents where the private plaintiffs take the

11 lead and some where the Attorney Generals take the lead."

12     At the July 29th CMC, Plaintiffs told the Court, "We are

13 working very closely with the Attorney General."  And, quote

14 (sic) -- I think your Honor said at the last hearing,

15 "They're like co-counsel."  And it is like that.  We're

16 pretty much one big happy family at this point.

17     And there's also just the practical consideration, your

18 Honor, which is we should only be required to present the

19 same witness once for deposition.  That's what the parties

20 agreed, it's what the Court ordered in its October 28th order

21 on discovery limits and scheduling.

22     So it's a little bit more than that.  And with the

23 respect to the AG, I certainly hope that the AG understands

24 their obligation to identify all trades they're currently

25 challenging.  That is not what they have done so far.

1            THE COURT:  I don't -- I'm not going to weigh in on

2  that, because I don't have that in front of me and Judge

3  Cheng is perfectly capable of dealing with that, and I don't

4  think anybody -- I don't think the Plaintiffs are suggesting

5  -- and I'll hear from Mr. Grzenczyk -- that they go forward

6  with the deposition and then as they later identify more

7  trades, that they get to re-depose the witness, right?

8  You're not suggesting that at all?

9            MR. GRZENCZYK:  Your Honor is exactly right.  And

10 your Honor is exactly right about another issue you mentioned

11 earlier, which is, we understand that our expectations about

12 the detail with which a 30(b)1 or a 30(b)6 deponent can

13 testify about a particular trade, is contingent on the

14 information we've given Defendants prior to the deposition.

15 We understand we have to calibrate our expectations for that

16 deposition, based on the information we've given them.

17     So the depositions need to go forward for a lot of

18 reasons.  If there are trades we later identify as ones we

19 think are at the heart of the case and we want to supplement

20 after the deposition, you know, you're right.  We, sitting

21 here, wouldn't just proclaim that as a basis to reopen the

22 depositions.  So we understand that there are different

23 dynamics at play here and we're prepared to go forward with

24 the depositions.  We frankly think they're going to be mostly

25 on trade-setting policies, but not specific trades.  But we

16

1  understand the push and pull here that's involved with what

2  we can expect out of the depositions, given Defendant's

3  position that if they want to prepare a deponent about a

4  particular trade, they need to know the trade in advance.  We

5  get that and we understand that's part of the process here.

6      I think probably what your Honor was generally alluding

7  to earlier was exactly right.  In our experience, most of

8  these kinds of disputes kind of come out in the wash when you

9  actually just go and do the deposition and just take it.  And

10  so that's really what we want, is to not have an impediment

11  to taking the depositions.  So hearing Defendant's say,

12  "Well, if we're not happy with what the AGs provide, that

13  means we might still decline to present an individual for

14  deposition," isn't really satisfactory.  We think it's time

15  for these to go forward and we're prepared to, sort of I

16  guess, suffer the consequences of what the record is when the

17  depositions go forward and what that means for the scope of

18  our questioning.

19          MR. KELSO:  Your Honor, I think -- I think we're

20  talking past each other a little bit, because the situation

21  we're talking about is not one where the AG serves

22  supplemental interrogatory answers on Monday and says,

23  "That's it.  We've identified all of the trades we're

24  currently challenging as unlawful, subject to

25  supplementation."  If that's what happens on Monday, if the

1 AG complies with what we think they've represented to Judge
2 Cheng they're going to do, and what's in Judge Cheng's order,
3 there is not going to be an issue.  The problem, where they
4 may be an issue, is if the AG on Monday says what they've
5 said so far, which is, "We're challenging a bunch of trades,
6 we're only going to tell you about the illustrative examples
7 of those trades," strongly implying that there are others
8 they're challenging, but that they won't tell us about.

9      For the AG to be able to question our witnesses in that
10 situation, where they haven't given a full discovery
11 response, compliant with the Rules, is fundamentally unfair.
12 And all we're saying, your Honor --

13          THE COURT:  No, I don't buy -- I don't know if it's
14 fundamentally unfair or not.  However, I like all of you
15 guys, you're all good attorneys, I always assume that
16 everybody is going to comply with an order of the Court, so I
17 think, Mr. Kelso, there will be no problem.  If Judge Cheng
18 ruled -- I'm sure, and I -- the AGs that are kindly here,
19 they don't even have to say anything, of course they're going
20 to comply, so then there should be no issue and we have now,
21 your concern about your witnesses being called twice, the
22 Plaintiffs are not asserting that when they later -- if and
23 later -- identify additional trades, that that's a reason to
24 re-depose.

25      As Mr. Grzenczyk said, there's obviously strategic

18

1  decisions to be made about when -- always -- when to go

2  forward with depositions.  They've decided they really need

3  to go forward with them, understanding that they can't retake

4  those depositions just because they've then learned

5  additional information later on.  So I don't think there's

6  any prejudice to Vitol in that -- in that -- anyway.  And I

7  don't have any other things in front of me, but my

8  expectation is the depositions will go forward.

9          MR. KELSO:  All right.  And our point, your Honor,

10 is in the event the AG doesn't comply with those obligations,

11 and we contend they have not to date, while we seek relief

12 from Judge Cheng, there may be interim relief we need to ask

13 for from this Court.

14         THE COURT:  All right, I'll -- okay.  Well

15 hopefully it won't come to that, and I'm actually pretty

16 confident it won't.

17         MR. KELSO:  I wish we could share that confidence.

18 We certainly hope.

19         MR. DAVIDSON:  And if I could just lob in 40

20 seconds of commentary that I think may help orient this a

21 little bit.

22    When the AG answered their interrogatory responses in

23 the first instance, they identified nine trades, clustered

24 mostly in a two-week period that they said --

25         THE COURT:  Yeah, I read that in the statement.

1      MR. DAVIDSON:  And frankly, your Honor, it strikes

2 us as bizarre, because this case has been marketed --

3      THE COURT:  But Mr. Davidson, I'm just going to cut

4 you off, because you brought this to Judge Cheng's attention

5 and he issued a ruling, right?  And they're amending them on

6 Monday.  On Valentine's Day you'll get a nice gift.  So I

7 don't know what more there is to say.  I read your statement,

8 I understood the position.  I don't know, maybe it will turn

9 out that the -- it's a narrowed class, who knows.  I don't

10 know what they'll find, you know?  I don't know.  I don't

11 know what it will be, it is what it is, right?  It is what it

12 is.  People have obligations to produce and they produce and

13 that's what it is.

14      Mr. Chang, did you want to say something?

15      MR. CHANG:  I did, your Honor.  You know, just to

16 the extent that the Defendants are arguing that Judge Cheng

17 has approved any of their arguments and ordered the people to

18 supplement their responses, it's not true.  You know, the --

19 we maintain that the interrogatory responses were sufficient

20 -- more than sufficient -- but we agreed last September to

21 supplement these responses and we volunteered to do that last

22 month.  I just want to make that clear.

23      THE COURT:  Okay.  All right.  And you're doing so

24 on Monday?

25      MR. CHANG:  Yes, your Honor.

1          THE COURT:  All right.  Okay.  Great.  So what I
2    want to do then -- well, before -- I want to set a next CMC
3    date for next month, but is there anything else we should
4    address?

5          MR. GRZENCZYK:  Your Honor, you had -- Scott
6    Grzenczyk again, for the Plaintiffs.  You had briefly, I
7    think -- before -- I diverted us back to this topic.  It
8    looked like you were already going to pivot to talking about
9    the two topics that are also mentioned in the --

10          THE COURT:  Oh right, thank you.

11          MR. GRZENCZYK:  -- in the Berifkin (phonetic)
12    issue?

13          THE COURT:  So, obviously California procedure
14    doesn't apply in this case, okay?  However, just as a
15    practical matter, right, we all know that affirmative events
16    are written by lawyers, so to question a 30(b)6 lay-witness
17    about the basis for the defense, just doesn't seem to be a
18    good use of deposition time and why not do the interrogatory
19    contention interrogatories?  Because all they're going to do
20    is pair it to you what their lawyer prepares them to do.  I
21    mean that was more my -- California procedure doesn't apply,
22    but it just seems like it would be more useful, because it is
23    just voir, really, what the affirmative defense is.

24          I mean is the issue really that, as is the case in most
25    cases, there are a lot of affirmative defenses that shouldn't

1 be there?  Just meet and confer and maybe they'll agree to

2 get rid of them.  No, that's not the case.  It is the case.

3 It's not the case?

4          MR. KELSO:  I don't think so, your Honor.  We had

5 this discussion with the Plaintiffs earlier in the case, we

6 amended --

7          THE COURT:  Okay.

8          MR. KELSO:  -- our answer after extensive meet and

9 confers with the.  I can't recall how many affirmative

10 defenses are left in the answer, but it's a narrow and

11 targeted bunch, so --

12          THE COURT:  Is there -- so from the Plaintiff's

13 point of view, is there -- you know, why not doing, at first

14 at least, the contention interrogatories?

15          MR. QUACKENBUSH (via Zoom):  Your Honor, Kyle

16 Quackenbush for the Plaintiffs.  So we have asked that the

17 Defendants -- if the Defendants prefer to respond to these

18 topics in contention interrogatories, we've asked them to do

19 that.  They have -- we've asked that repeatedly and they have

20 yet to commit to that approach.

21    We'll also note that these questions were asked in a

22 substantially similar manner by the people and Defendants

23 responded with non-substantive objections and so that is why

24 this -- that is why we chose to use a 30(b)6 method, instead

25 of using contention interrogatories, but --

1          THE COURT:  Oh, you mean the people did contention
2  interrogatories?

3          MR. QUACKENBUSH:  Yes.

4          THE COURT:  Oh.

5          MR. QUACKENBUSH:  And so we have no preference, but
6  we would just like answers to the questions that are asked.
7  We don't care which form they come in.

8          THE COURT:  All right.

9      Mr. Kelso, now you -- now the shoe is on the other foot
10 and they're complaining about your interrogatory responses;
11 can you give them substantive responses in which you actually
12 say what the factual basis for the defenses are?

13         MR. KELSO:  Well, I don't think we've gotten that
14 interrogatory from the AG.  I think --

15         THE COURT:  No, no, no.  I hear what you're saying,
16 but what Mr. Quackenbush said is that the -- the AG's office
17 actually did serve and that you gave, what they -- you said
18 you don't think you did?

19         MR. KELSO:  Your Honor, first of all, it's a little
20 interesting to be answering questions about contention
21 interrogatories that they haven't even served.  So if they
22 want to serve a contention interrogatory on us, they should
23 do that.  The AG's contention interrogatories, I believe
24 asked for all facts underlying our answer.  I could go back
25 and look --

1        THE COURT:  Okay, not the affirmative defense.

2  Okay, all right.

3      Mr. -- okay, so here, Mr. Quackenbush says the

4  Plaintiffs have no objection to those two topics being

5  addressed as contention interrogatories, they do so.

6  And Mr. Kelso will answer, fully, or whoever will, the

7  Defendants will answer them fully so that you have an

8  understanding of their affirmative defense.

9        MR. KELSO:  Thank you, your Honor.

10        THE COURT:  Okay, all right.  I think then that

11  covers everything.

12      So I thought maybe we should get back together on March

13  22nd, just because by then hopefully we'll have some clarity

14  on the subpoena matter and then we do have that fact

15  discovery cutoff date and also I can get a -- check in on how

16  the deposition scheduling is going and make sure all of that

17  is happening.  And that would be at 1:30 by Zoom.

18        MS. STEIN:  Your Honor, the only note there is, we

19  actually do have a 30(b)6, I think, scheduled for that date.

20  I think it should be fine, in any event.  We can probably get

21  the quorum of people, but I just wanted to note that.

22        THE COURT:  Okay.  Or we could take a quick break

23  to do this.  We can break.  Take your lunch during --

24        MS. STEIN:  We'll do that.

25        THE COURT:  -- the 1:30 CMC.  And also, you could

24

1 just work with Ms. Means.  If you want we can call you first

2 that day, as well.  Just let her know.

3          MS. STEIN:  Okay, thank you.

4          THE COURT:  We always call you last, because you're

5 the most, but just let her know and we can call you first.

6          MS. SHARP:  As long as you don't call us last

7 because we're the worst.  That's all.

8          THE COURT:  Never.  Not at all.  Not even close.

9 Not even close.

10     Okay, great.  Thank you.  Hope everyone is well.

11          MR. KELSO:  Thanks, your Honor.

12     (Proceedings adjourned at 2:20 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF TRANSCRIBER</u>

    I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Tuesday, March 1, 2022

*Echo Reporting, Inc.*