```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline S. Corley, Magistrate Judge


In re:                          )
                                )
In re California Gasoline       )   No. C 20-03131-JSC
Spot Market Antitrust           )
Litigation                      )
                                )
_____)

                                    San Francisco, California
                                    Thursday, March 24, 2022

      TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC
           SOUND RECORDING 1:32 - 1:45 = 8 MINUTES

APPEARANCES:

For Plaintiffs:
                                Girard Sharp LLP
                                601 California Street
                                Suite 1400
                                San Francisco, California
                                   94108
                        BY:     DENA C. SHARP, ESQ.
                        BY:     MIKAELA M. BOCK, ESQ.

                                Hausfeld LLP
                                600 Montgomery Street
                                Suite 3200
                                San Francisco, California
                                   94111
                        BY:     SAMANTHA STEIN, ESQ.




              (APPEARANCES CONTINUED ON NEXT PAGE)
```

```
 1  APPEARANCES:

 2  For California Attorney General's Office:
                                 Office of the Attorney
 3                                  General
                                 455 Golden Gate Avenue
 4                               Suite 11000
                                 San Francisco, California
 5                                  94102
                         BY:     ERIC CHANG, ESQ.
 6
    For Defendant Vitol Inc.:
 7                               Quinn Emanuel Urquhart &
                                    Sullivan LLP
 8                               50 California Street
                                 22nd Floor
 9                               San Francisco, California
                                    94111
10                       BY:     CHRISTINE WEIJIA CHEN, ESQ.

11  For Defendants Vitol Inc. and Brad Lucas:
                                 Susman Godfrey LLP
12                               1000 Louisiana Street
                                 Suite 5100
13                               Houston, Texas 77002
                         BY:     MICHAEL CRAIG KELSO, ESQ.
14

15  For Defendants SKEA, SKTI and D. Niemann:
                                 Covington & Burling LLP
16                               Salesforce Tower
                                 415 Mission Street
17                               San Francisco, California
                                    94105
18                       BY:     JEFFREY M. DAVIDSON, ESQ.

19                               K&L Gates
                                 70 West Madison Street
20                               Suite 3300
                                 Chicago, Illinois 60602
21                       BY:     MICHAEL MARTINEZ, ESQ.

22

23  Transcribed by:              Echo Reporting, Inc.
                                 Contracted Court Reporter/
24                               Transcriber
                                 echoreporting@yahoo.com
25
```

*Echo Reporting, Inc.*

```
 1  Thursday, March 24, 2022                            1:32 p.m.
 2                       P-R-O-C-E-E-D-I-N-G-S
 3                              --oOo--
 4         THE CLERK:  Calling civil action C 20-03131, In re
 5  California Gasoline Spot Market.
 6      Counsel, starting with plaintiff, can you please state
 7  your appearance for the record.
 8         MS. SHARP (via Zoom):  Good afternoon, your Honor.
 9  Dena Sharp from Gerard Sharp on behalf of the class
10  plaintiffs, along with Mikaela Bock from my office as well.
11         THE COURT:  Good afternoon.
12         MS. STEIN (via Zoom):  Good afternoon, your Honor.
13  Samantha Stein of Hausfeld LLP, also on behalf of the
14  plaintiffs.
15         THE COURT:  Good afternoon.
16         MR. CHANG (via Zoom):  Good morning, your Honor.
17  Eric Chang from the AG's office here.
18         THE COURT:  Good afternoon.
19         MR. DAVIDSON (via Zoom):  Good afternoon, your
20  Honor.  Jeff Davidson, Covington and Burling on behalf of
21  the SK defendants.
22         THE COURT:  Good afternoon.
23         MR. MARTINEZ (via Zoom):  Good afternoon, your
24  Honor.  Michael Martinez of K and L Gates on behalf of the
25  SK defendants as well.
```

1          THE COURT:  Good afternoon.
2          MR. KELSO (via Zoom):  Michael Kelso at Susman
3 Godfrey for the Vitol defendants.
4          THE COURT:  Good afternoon.
5          MS. CHEN (via Zoom):  Your Honor, Christine Chen
6 from Quinn Emanuel, also for Vitol.
7          THE COURT:  Last but not least, good afternoon.
8     All right.  Mr. Davidson, I see you're back in the
9 state court case, or your foreign defendant is.  So it's no
10 different then I guess.  They're a party in the one action,
11 they're related, so in any event we go forward.
12     What I want to do today in looking at the statement is
13 Mr. Kelso, near term.  Don't know what that means.  We're
14 going to put dates on near term to move things along.
15      I know we still haven't heard from the Maryland court,
16 and I get that.  I'm reluctant to set new dates today
17 because I don't know what to set it to.  I want to keep
18 those days there, keep things moving, have everything done
19 that can be done, and we'll set another CMC for 30 days from
20 now and hopefully know something.
21      So, Mr. Kelso, let's see.  Let me see where we need
22 some --
23          MR. KELSO:  Your Honor, before we --
24          THE COURT:  Yes.
25          MR. KELSO:  -- go there, I think events may have

1 overtaken the CMC statement.
2          THE COURT:  Oh, good.
3          MR. KELSO:  We've now designated all of Vitol's
4 30(b)6 PMK topics out to witnesses.  We've offered dates for
5 all Vitol current employees who the plaintiffs have asked
6 for plus an additional witness to address one of the 30(b)6
7 topics.
8      And Mr. Lucas, we've also offered dates for his
9 deposition.
10      So with respect to Vitol, I believe the only witnesses
11 who plaintiffs have requested for whom we have not yet
12 offered dates are third party former employees, and that's
13 Mike Loya, Ryan Rabe, and Nicole Johnston.  And we're
14 working with those non-parties on potential dates.
15      Documents have been requested of them as well, so in
16 setting those dates, I think we want to make sure, as I'm
17 sure plaintiffs do, that to the extent they have documents,
18 those are collected and sent to them in advance of any
19 deposition.
20      I'm relatively confident, your Honor, that we will get
21 those depositions scheduled before the fact discovery cutoff
22 as it stands today.  And to the extent there are issues,
23 obviously those depositions were noticed for compliance in
24 other districts aside from this one, and so we will work
25 with the plaintiffs on it.  We don't anticipate a problem

1  there.
2          THE COURT:  Are you representing them, the former
3  employees?
4          MR. KELSO:  Yes, our firm is.  Yes.
5          THE COURT:  Yes.  Okay.
6      All right.  So whoever's taking it for the plaintiffs,
7  is there anything I need to do with respect to Vitol today?
8          MS. SHARP:  I don't think today, your Honor.
9  We're so pleased with the progress that we've made since we
10 put in the CMC statement last week.  We're encouraged by
11 that.
12     We have some concerns overall about trying to jam a lot
13 of depositions into a short period of time, but we're
14 working well with the defendants now.  And I think to the
15 extent there are open issues, within 30 days we sure hope
16 those would be resolved and in fact hope to have a bunch
17 more depositions under our belts.
18     And so for now we are making progress I think, unless
19 one of my colleagues tells me I'm missing something, and I
20 don't think they will.
21         THE COURT:  Good.  That's why it's good to just
22 schedule these things I think.
23         MS. SHARP:  It really is.  Nothing concentrates
24 the mind like a court appearance, as your Honor knows.
25         THE COURT:  All right.  And Mr. Kelso, if you have

1  any trouble with your former employees, just let me know and
2  I'm happy to set a date by which you have to have a
3  deposition date or the plaintiffs can pick it unilaterally,
4  and that tends to work to get their attention and get their
5  availability.
6          MR. KELSO:  Understood, your Honor.  Like I said,
7  we don't anticipate any issues.  The only thing I do want to
8  note because plaintiffs have said now a couple of times that
9  they'll seek guidance from this Court if there are issues
10 with that, like I said, the depositions were noticed for
11 compliance in other districts besides this one.  So to the
12 extent there's motion practice about those depositions for
13 Mr. Loya and Mr. Rabe, those would need to happen in the
14 Southern District of Texas, not in this Court.
15       Again, I don't think it's going to go there.  I really
16 don't anticipate a problem with this, but since it's been
17 mentioned a couple times, I want to just play that flag.
18          THE COURT:  All right.
19       Did I understand your statement correctly that in
20 Maryland the subpoena recipient consented to having it heard
21 here?  No.  Otherwise, it would be here.
22          MS. SHARP:  I don't know, your Honor.  If we're
23 talking about OPIS, the pricing --
24          THE COURT:  yes.
25          MS. SHARP:  -- yeah, the data folks, no, they did

8

1 not consent --
2          MR. DAVIDSON:  They took -- my understanding,
3 they -- they've said a few different things about where they
4 want the subpoena to be located.
5          THE COURT:  I see.
6          MR. DAVIDSON:  We had to bring the motion in
7 Maryland.  We think that the relevant legal issues are
8 Maryland law issues relating to the privilege, and so that's
9 why we moved it there in the first instance.  We may live to
10 regret that though because we haven't heard anything from
11 the Maryland court, but hopefully we will soon.
12          MS. SHARP:  Yes, that's right, your Honor.  There
13 were pretty substantial negotiations over the subpoena where
14 a whole host of issues were discussed, but I think we all
15 landed where we agreed to land.
16          THE COURT:  All right.  I don't know what I read
17 that I was confused about that.
18          MS. SHARP:  Well, there was some back-and-forth.
19          THE COURT:  You have to bring it there, right?
20 You have to bring it to Maryland, yeah.
21          MS. SHARP:  That's exactly right.  And Rule 45 is
22 not totally clear what happens, even if the parties consent
23 to something different.  And so there was some back-and-
24 forth.  There was a bit of negotiation, but it landed where
25 it landed, I think.

1        THE COURT: Yes. No, I think the subpoena
2   recipient can veto it. And then even if everyone agrees, I
3   think the judge could keep it, although truthfully, he or
4   she wouldn't, but -- yeah. Okay.
5        So anything else we should discuss or just set a next
6   date?
7        MS. SHARP: Your Honor, I think setting a next
8   date would be great. And to the extent it impacts the
9   Court's on thinking on that, there's two updates that I
10  think might be helpful a little bit.
11       One is, as we reported in the CMC statement, the
12  defendants have moved to set a schedule in the Attorney
13  General's case in the Superior Court.
14       Now, Judge Cheng was -- the defendants had requested I
15  think or maybe a hearing was set for this morning, but it's
16  been vacated and now reset for the People's case management
17  conference that I understand is happening on April 19th, I
18  believe.
19       So that -- you know, I think there will probably be
20  some developments that are at least adjacent to and
21  potentially relevant to this case there.
22       The second event that is happening in April somewhat
23  relevant to this case is that Vitol filed, as your Honor
24  might have seen, a motion to compel compliance with the
25  subpoena on Chevron. That's set for hearing before your

1  Honor on I think April 28th, I want to say, in the morning.
2       And that, just to be clear, is separate and apart from
3  some of the subpoenas that we mentioned in our case
4  management conference that go towards data and documents.
5       The Chevron subpoena relates to ongoing litigation down
6  in Southern California relating to some refiners that we're
7  all interested in getting some -- you know, a little bit
8  more insight into.  It's a separate issue, but to the extent
9  the Court is inclined to hear those things together, that's
10 happening too.
11           THE COURT:  Oh, that's a good point.  I haven't
12 looked at it yet.  I don't know if I'll need a hearing, but
13 perhaps we should set our next status for the 28th at 9:00
14 a.m. in any event, just in case.
15           MS. SHARP:  That's great here.  Thank you.
16      The plaintiffs probably have a slightly different spin
17 on the way they see the facts there, just to lay down on our
18 marker.  And so we're happy to be involved in that hearing
19 if and when it may happen.
20           THE COURT:  Okay.  But that brings up something
21 with respect to the state case.  And I'm wondering --
22 because I could give Judge Cheng a call.  What do the
23 parties want?  And I could just call him and talk to him,
24 right?  What does everybody want?
25           MR. DAVIDSON:  Your Honor, maybe I should take

1  that in the first instance since we moved to set a case
2  schedule.
3       Our view -- just to lay out the history, Judge Cheng
4  had set a trial date in June of '23.  And our motion was
5  directed towards you should set some interim deadlines like
6  a discovery cutoff and some expert deadlines.
7       Now, the AG opposed that.  I don't know quite why but
8  they did.  And so that was the motion practice that was set
9  for this morning.
10      So on April 19th he has indicated that he wants to
11 discuss a case schedule with us, and so we will have that
12 discussion and be able to report back.
13      You know, I think -- obviously we think that things
14 ought to be coordinated between the two cases as much as
15 they can be and it's especially important with respect to --
16           THE COURT:  It's not that they are different
17 deadlines.  It's just that there's no deadlines.
18           MR. DAVIDSON:  Yeah, I guess deadlines versus no
19 deadlines is a difference but --
20           THE COURT:  Yeah, yeah.  Well, I should hear from
21 Mr. Chang because I don't think it's my place to call Judge
22 Cheng and say "You should set deadlines," right?  I think if
23 he had deadlines and they were inconsistent, it would be
24 fair to talk to him about making them consistent.
25           MR. DAVIDSON:  Understood.  And the deadlines that

1  we had asked for were quite consistent with the deadlines
2  that this Court had set for the same --
3          THE COURT:  Yeah.  No, no, no.  I understand but
4  that seems to me just something that's in Judge Cheng's
5  bailiwick.
6       But should I hear from Mr. Chang?
7          MR. CHANG:  Yes, please, your Honor.
8       You know, from our perspective, the main issues that
9  there's just still a significant amount of fact discovery
10 that's still outstanding and apart from SKTI now rejoining
11 the case, there's gaps in the productions.
12      And I think this dynamic where we're trying to sort of
13 link these two cases requires just a little bit of
14 flexibility over the next two months, maybe the next couple
15 of months where we can sort of figure out where we are with
16 fact discovery before we set these deadlines.
17      That's really what our position is.
18         THE COURT:  Okay.  You're not -- so I will say
19 this.  To the extent the parties can agree to do deadlines,
20 I'm happy to accept those.  Okay?  But from the statement, I
21 didn't seem to have agreement, and so that's why I said I'll
22 leave it in place until I know more.
23      But until the three of you -- by that, I mean the
24 plaintiffs, the AG -- well, I guess four of you --
25 defendants SK and Vitol -- if you all can agree, that's

1 fine.  And maybe you want to sit down and talk and see if
2 you can do that.  That will bring much more certainty to
3 your next few months if you could do that.
4          MS. SHARP:  Your Honor, if I may.  Dena Sharp
5 again.
6      We agree and we are I think working real actively with
7 the defense and certainly with our counterparts on the
8 Attorney General side to work on the schedule.
9      From my perspective it would be helpful for us to bring
10 some alignment, because for example, as your Honor I'm sure
11 remembers early in the case, we tried to figure out if we
12 should stagger or do class experts and merits experts
13 deadlines together.
14      Mr. Davidson just alluded to the fact that the dates
15 that they proposed in the AG case I think generally align
16 with the dates here.  But there's a pretty significant
17 nuance there to be pointed out, which is the dates that are
18 aligned in terms of the expert dates in this case are class
19 expert dates.
20      The expert dates that have been proposed in the
21 Attorney General case are merits expert dates.
22      Now, that may work.  It may not.  But it sure seems
23 like we need to have an alignment on when that merits work
24 is going to be happening and then the attendant trial dates
25 and all the rest of it.

1      So from my perspective at least, some coordination in
2 that regard would avoid a bit of a pinball effect ultimately
3 between the two cases.
4           THE COURT:  All right.  It actually seems like
5 everyone's aligned as to what they want, just not quite sure
6 yet how to get there.  But I bet you guys can figure it out.
7      And, again, I'm happy then to the extent it would be --
8 and you will see Judge Cheng, but I'm sure if you all
9 stipulate and agree to some dates, I'll accept it and he
10 would accept it too.
11     To the extent he doesn't and he does something else,
12 I'm open to then moving ours to the extent -- we both
13 want -- we all want to have as much efficiency as possible.
14 Everybody's aligned.
15          MS. SHARP:  Absolutely, your Honor.  All we want
16 is a trial date.  We'll get one, one day.  We know it.
17          THE COURT:  Oh, yeah, yeah. You will get it.  But
18 you're probably come after, right, because you have the
19 class cert in between.  That's just the reality of it.
20     And -- well, Mr. Davidson and Mr. Vitol -- Mr. Kelso
21 can't try them at the same time.
22     You guys can and Mr. Chang, but that's not fair to the
23 defendants, right?  So someone has to go first, and there
24 has to be a little bit of breathing room in between.
25          Okay.  All right.  So I will see you back then on April

```
                                                                 15
 1  28th at 9:00 a.m.  In the meantime, though, I welcome a
 2  stipulation with a new case schedule if the parties are able
 3  to come up with one.  All right.
 4          MS. SHARP:  Thank you, your Honor.  We will do our
 5  best.
 6          THE COURT:  Okay.  Thank you.
 7          MR. DAVIDSON:  Thank you, your Honor.
 8          MR. MARTINEZ:  Thank you, your Honor.
 9          MR. CHANG:  Thank you, your Honor.
10          MR. KELSO:  Thank you, your Honor.
11      (Proceedings adjourned at 1:45 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

16

CERTIFICATE OF TRANSCRIBER

   I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

   I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



          Echo Reporting, Inc., Transcriber
             Wednesday, April 6, 2022