UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOGARD CONSTRUCTION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OIL PRICE INFORMATION SERVICE, LLC,<br><br>Defendant. | Case Nos. 22-mc-80104-JSC<br>22-mc-80107-JSC<br><br>**ORDER RE: OPIS SUBPOENAS**<br>Re: Dkt. Nos. 1, 4, 22 |

In the underlying putative antitrust class action, Plaintiffs allege that Defendants Vitol Inc. and SK Energy conspired to manipulate the benchmark price published by non-party Oil Price Information Servce, LLC (OPIS). *See In Re: California Gasoline Spot Market Antitrust Litigation*, No. 20-cv-3131 JSC (N.D. Cal.). Plaintiffs and Defendants in that action issued document and (in the case of Defendants) deposition subpoenas to OPIS. OPIS refused to comply. Now pending before the Court are Plaintiffs' and Defendants' motions to compel OPIS to comply with the subpoenas, and OPIS's counter-motions to quash. (No. 22-mc-80104, Dkt. Nos. 1, 4, 22; No. 22-mc-80107, Dkt. No. 1.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on May 11, 2022, the Court GRANTS the motions to compel and DENIES the motions to quash. This Court has subject matter jurisdiction of the underlying action, Rule 45 does not require Plaintiffs to pay OPIS a substantial licensing fee for published material, and the Maryland Shield Law governs the privilege dispute and does not bar production of OPIS's unpublished material.

**BACKGROUND**

The underlying complaint's allegations are recited in the Court's order denying Defendants' motions to dismiss. *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-

03131-JSC, 2021 WL 1176645, at *1 (N.D. Cal. Mar. 29, 2021).  OPIS resists the subpoenas on three grounds: (1) the Court lacks subject matter jurisdiction of the underlying California law antitrust action; (2) Rule 45 requires Plaintiffs to pay market rate for OPIS's published information; and (3) California's Shield Law governs and bars production of OPIS's unpublished information.

## I. Subject Matter Jurisdiction

OPIS first argues that this Court does not have subject matter jurisdiction of the underlying action because the Court dismissed the Sherman Act claim—the only federal claim—on standing grounds.  Subject matter jurisdiction, however, is now premised on the Class Action Fairness Act (CAFA), not federal question jurisdiction.  (Dkt. No. 16, Ex. A).  "Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity of citizenship between the parties, (2) the proposed class must have at least 100 members and (3) the amount in controversy must "'exceed[ ] the sum or value of $5,000,000.'"  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) (citing 28 U.S.C. § 1332(d)).  There is no dispute that this case satisfies those elements.

Next, OPIS argues that the "local controversy" exception to CAFA jurisdiction deprives this Court of subject matter jurisdiction of the entire case.  (Dkt. No. 40 at 6.)  OPIS is wrong.  The Ninth Circuit has squarely held that CAFA's "local controversy" exception is *not* jurisdictional.  *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013).  Thus, this Court has subject matter jurisdiction.

Finally, OPIS insists that the Court must decline to exercise its subject matter jurisdiction pursuant to the "local controversy" exception to CAFA jurisdiction and therefore dismiss the entire case.  *See* 28 U.S.C. § 1332(d)(4).  But it fails to show that a non-party has any standing to raise whether the Court should exercise its subject matter jurisdiction.  Its reliance on *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988), is misplaced.  There the court held that "if a district court does not have subject-matter jurisdiction over the underlying action, and [] process was not issued in aid of determining that jurisdiction, then the process is void."  *Id*. at 76.  And further, that the non-party subject to the process can challenge the

2

lack of subject matter jurisdiction. *Id*. This Court has subject matter jurisdiction. Thus, *U.S. Catholic Conference* does not support the right of non-party OPIS to challenge the Court's *exercise* of its subject matter jurisdiction.

OPIS's emphasis on the local controversy exception's mandatory language—the court "shall decline to exercise jurisdiction" if the local controversy requirements are met, 28 U.S.C. § 1332(d)(4) —is no more persuasive. OPIS still does not have standing to assert—and attempt to prove—that the exception applies. "Although CAFA carves out exceptions to the district court's exercise of jurisdiction, the obligation to raise and prove that those exceptions apply—even the mandatory 'local controversy' and 'home-state controversy' ones—rests on the party seeking remand." *Kuxhausen*, 707 F.3d at 1140 n.1; *see also Kendrick v. Conduent State & Loc. Sols., Inc.*, 910 F.3d 1255, 1260 (9th Cir. 2018) (observing that the purpose of the local controversy exception is to ensure that class actions with a local focus remain in state court *rather than being removed to federal court* because state courts have a strong interest in resolving local dispute). This case was filed in this District, and after dismissal of the federal claim, no party to this action sought remand. That is the end of the matter.

## II.   RULE 45 SUBPOENA

### A.  Published Information

Plaintiffs in the underlying action seek transactional data showing gasoline purchases on the (1) spot market, (2) rack market, and (3) retail market from January 1, 2008 through December 31, 2020. OPIS is willing to produce the data provided the parties pay what OPIS contends it would charge any customer seeking such data.

If a Rule 45 subpoena requests "commercial information," a court may quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(B)(i). In the alternative, the court may order production of the commercial information under specified conditions if the requesting party "(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C). There is no dispute that the data the parties seek is commercial information protected by Rule 45(d)(3)(B)(i). The question, then, is whether the Court should nonetheless

3

order it produced under conditions and with the payment of reasonable compensation.

### 1. Substantial Need or Undue Hardship

Plaintiffs have shown a substantial need for the data. The data is relevant, indeed critical, to Plaintiffs' damages analysis. By comparing the spot market data from before the alleged price-fixing conspiracy (the clean period) to the period during and after, Plaintiffs intend to show how Defendants' alleged manipulation of the spot market impacted the prices paid by the putative class. They have met their burden of showing substantial need. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 03-CV-01431 PMP-PAL, 2009 WL 10692733, at *15 (D. Nev. Aug. 14, 2009). They have not, however, offered evidence explaining the need for data going back to 2008. At oral argument they offered to submit a declaration from their expert identifying more precisely the data needed and why. They shall do so.

The Court need not find the substantial license fee is an undue hardship as Rule 45(d)(3)(C)(i) contains alternatives: the court may order production under specified conditions if the requesting party "shows a substantial need for the testimony *or* material that cannot be otherwise met without a substantial hardship." Fed. R. Civ. P. 45(d)(3)(C)(i) (emphasis added).

### 2. Reasonable Compensation

The primary dispute is what is reasonable compensation for production of this data. OPIS contends Plaintiffs should pay what any customer of OPIS would pay for the data. Plaintiffs respond that they should be ordered to pay what it costs OPIS to comply with the subpoena request, not what a customer would pay. The Eleventh Circuit is the only Court of Appeals to have addressed whether "reasonable compensation" in Rule 45(d)(3)(C)(ii) means paying the producing party what the information would fetch in the open market. It held that it did not.

> The gain to the party seeking confidential information through a subpoena is not the measure of compensation reasonably owed to the owner of that information. The measure is the loss to the owner of the property. If the enforcement of a subpoena under Rule 45(c)(3)(B) causes no loss, then the amount of compensation reasonably owed will be zero. If the loss to the owner of the information is substantial, then so will be the amount of compensation even if the gain to the taker of the information is slight.

*Klay v. All Defendants*, 425 F.3d 977, 985 (11th Cir. 2005). Applying this "loss to the owner"

interpretation, the court held that the requesting party did not have to pay the license fee sought by the producing American Medical Association (AMA) because the AMA did not suffer any loss by providing the data to the requesting party. *Id.* at 985-86; *see also United States Willis v. SouthernCare, Inc.*, No. CV 410-124, 2015 WL 5604367, at *11 (S.D. Ga. Sept. 23, 2015) (holding that in light of protective order that limited use of third party's data to the underlying litigation, "reasonable compensation" under Rule 45 meant compensating third party for out-of-pocket expenses but no more was required since third party did not suffer loss to its property interest); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 251 (E.D. Pa. 2014) (following *Klay*); *Cohen v. City of New York*, 255 F.R.D. 110, 120 (S.D.N.Y. 2008) (same).

*Klay* is directly on point. OPIS, as the AMA in *Klay*, will not suffer any property loss by producing the data to Plaintiffs. OPIS will still have the data to sell to others for non-litigation purposes, and the protective order will ensure that its production in this case will not impair its value. OPIS purports to agree with *Klay's* loss-to-the-owner formulation, which was derived from takings law. It posits, however, that *Klay* then went "off the rails" (Dkt. No. 4-1 at 28), by refusing to follow the Supreme Court's directive that "just compensation" be based upon "market value," and specifically, in the context of intellectual property, determined via a hypothetical negotiation for a reasonable royalty. (*Id.* at 26-28.) But the question is not what is "just compensation" when the government takes physical property that then deprives the owner of use. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 368-69 (2015) (discussing the rule for a physical taking). Nor is the question how damages for patent infringement are calculated. *See ITT Corp. v. U.S.*, 17 Cl. Ct. 199, 202 (1989). The question is what does "reasonable compensation" mean when a party provides commercial information in response to a lawful federal subpoena. *Klay's* analysis makes sense in that context. Accordingly, Plaintiffs shall pay OPIS the reasonable cost of compliance with their subpoena; that is, the loss that OPIS will actually suffer.

### 3. Unpublished Material and Testimony

The parties also seek material and testimony that OPIS does not publish. This material includes trades that were reported to OPIS but that it did not publish, how it determines the reported benchmark price, and communications it had with Defendants or other third parties

regarding Defendants' trading. OPIS contends the Court must quash the subpoenas for its unpublished material on the grounds that such discovery is protected from disclosure by California's Reporter's Shield Law. The parties to the underlying action contend that Maryland's Reporter's Shield Law applies, and that under that law the subpoenas must be enforced.

### a) Which State's Reporter's Privilege Applies?

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." OPIS insists that since California law provides the rule of decision in the underlying case, California law governs the privilege question and thus California's Reporter's privilege applies; in other words, that Rule of Evidence 501 compels the application of California privilege law.

The Court disagrees. Rule 501 provides that state law, rather than federal law, governs the privilege question in a case in federal court. *See* 23A Wright & Miller, Federal Practice and Procedure, §5435 (1st ed. April 2022 Update). If, as OPIS contends, it directed that the state law supplying the rule of decision governs privilege law, then it would have read "the state law regarding a claim or defense which supplies the rule of decision governs privilege." It did not; instead, it provides that *state law*, but not any particular state law, governs privilege for a claim or defense in which state law supplies the rule of decision. This language is consistent with drafters' interest in preserving *Erie* and the application of state law rather than federal law. *Id.* Indeed, the cases OPIS cites confirm this meaning. (Dkt. No. 4-1 at 15 (citing *Davis v. Leal*, 43 F. Supp. 2d 1102, 1107-08 (E.D. Cal. 1999) (holding that state law rather than federal law governed privilege question); *F.D.I.C. v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 379 (S.D. Cal. May 1, 2000) (stating that "[t]he first sentence of Rule 501 establishes that federal common law generally controls evidentiary privileges in cases arising under federal law" and "[t]he second sentence requires district courts to apply state law in cases governed by state law").

Next, the Court must determine which state's law governs the privilege. A federal court applying state law must apply the forum state's choice of law rules. *Klaxton Co. v. Stentor Elect. Mfg.*, 313 U.S. 487, 496 (1941); *see also Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir. 2021) ("When state claims are brought, federal courts apply the choice of law rules of the

1   forum state").

2       The Court applies Maryland's choice of law rules to determine which state's law governs
3   the privilege question because Maryland is the original forum for this Rule 45 subpoena
4   compliance proceeding.  The motions to quash and motions to compel were originally filed in
5   Maryland—OPIS's home state—pursuant to Federal Rule of Civil Procedure 45(d)(3).  The
6   Maryland federal court then transferred it to this Court at OPIS's request pursuant to Rule 45(f).
7   Under these circumstances, Maryland constitutes the forum state for purposes of applying conflict
8   of laws.  *See Ferenes v. John Deere Co.,* 494 U.S. 516, 521 (1990) (holding that law of transferor
9   court governs when venue was proper in the original venue and case was transferred for
10  convenience of the parties); *see also City of Almaty, Kazahkstan v. Ablyazov*, 2018 WL 11270080,
11  *1 (S.D.N.Y. July 23, 2018) (applying Pennsylvania law to subpoena dispute filed in Pennsylvania
12  as the state of compliance but then transferred to New York pursuant Rule 45(f)).  Indeed, neither
13  OPIS nor the *Gasoline Spot* parties could have originally filed their motions in this or any
14  California forum.  *See* Fed. R. Civ. P. 45(d)(3) (providing that subpoena-related motions must be
15  filed in the state of compliance).  It thus would make no sense to apply California choice of law
16  rules.

17      Under Maryland choice of law rules, the Court looks to the Second Restatement of
18  Conflict of Laws for privilege questions.  *See Hill v. Huddleston*, 263 F.Supp. 108, 110 n.2. (D.
19  Md. 1967).  Under the Second Restatement, the Court applies the law of the state with the most
20  significant relationship to the communications at issue.  *See id; see also Saint Annes Dev. Co. LLC
21  v. Trabich*, 2009 WL 324054 *2 (D. Md. Feb. 9, 2009) (applying *Hill* and most significant
22  relationship test to privilege question); *Wellin v. Wellin*, 211 F.Supp.3d 793, 804 (D. S.C. 2016)
23  (noting that the "Second Restatement test is considered representative of the prevailing approach
24  among states that have established a choice of law doctrine regarding privileges").  OPIS's
25  insistence that Maryland applies the doctrine of *lex loci delecti* is unpersuasive as none of the
26  cases it cites involve privilege questions.  Further, although *Hill* was decided over 50 years ago, no
27  Maryland state or federal court has disagreed with its holding as to the choice of law rule to apply
28  to privilege questions.

United States District Court
Northern District of California

The *Gasoline Spot* parties contend that Maryland has the most significant relationship to the communications at issue while OPIS contends that California does. As between California and Maryland, the Court finds that Maryland has the most significant relationship with the communications at issue—OPIS's communications with Defendants or other third parties regarding Defendants' trading. All of the communications have OPIS as at least one of the parties to the communication, and it is OPIS that is claiming the privilege. OPIS is physically headquartered in Maryland and it does not offer any evidence of any physical office in California, having any personnel located in California, or even of having personnel located in California at the time the personnel received the communication. That OPIS's sources come from all over the country does not persuade the Court that California is the state with the most significant relationship to OPIS's communications with Defendants and other third parties.

OPIS's reliance on *New York Times Co. v. Superior Court*, 51 Cal. 3d 453 (1990), for the proposition that California has the most significant interest in the communications is unpersuasive. In that action, a news photographer for a Santa Barbara, California newspaper took a photograph of a vehicle accident in Santa Barbara. *Id*. at 456. The defendant in a California lawsuit arising from the car accident sought the unpublished photographs taken by the Santa Barbara photographer. *Id*. at 457. Unsurprisingly, no party disputed that California privilege law governed the dispute. *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 822 (N.D. Cal. 2011), is also unpersuasive as it addressed the law to apply to negligent misrepresentation claims brought by California plaintiffs.

Finally, OPIS offers no support for its assertion that because the communications relate to the California spot market for gasoline, California has the most significant relationship to the communications; in other words, that the Court looks to the subject matter of the communication to determine the state with the most significant interest in the communication. Such a rule would not make any sense. Under OPIS's construction of the test, a California news gatherer headquartered in California, with only California personnel, and only California sources for a story, would lose the benefit of the California Reporter's Shield Law merely because its California-based personnel and sources were communicating about, say, events in Washington,

8

1  D.C.  Not likely.

2  Accordingly, Maryland's Reporter's Shield Law applies to the privilege question.

### B. Maryland Law Does not Shield OPIS's Compliance With the Subpoena

"Maryland was the first state to enact a Shield Law protecting the media from revealing the source of its information." *Prince George's Cnty. v. Hartley*, 822 A.2d 537, 548 (2003). The Shield Law protects "the news media." Md. Code Ann., Cts. & Jud. Proc. § 9-112. The Court will assume, without deciding, that OPIS acts as "news media" when gathering the communications at issue on these motions.

The Maryland Reporter's Shield Law protects "(1) The source of any news or information procured by the" news media, regardless of any promises of confidentiality, and "(2) Any news or information procured by the" news media, including "[o]ther data, irrespective of its nature, not itself disseminated in any manner to the public." Md. Code Ann., Cts. & Jud. Proc. § 9-112(c). The Maryland Shield Law, however, is not absolute. A court may compel "disclosure of news or information" if the party seeking the news or information shows by clear and convincing evidence that:

> (i) The news or information is relevant to a significant legal issue before any judicial, legislative, or administrative body, or anybody that has the power to issue subpoenas;
>
> (ii) The news or information could not, with due diligence, be obtained by any alternate means; and
>
> (iii) There is an overriding public interest in disclosure.

*Id.* § 9-112 (d)(1). But a court may *not* compel disclosure of source information. *Id.* § 9-112(d)(2).

The *Gasoline Spot* parties contend that they are not seeking source information and that any such information in the responsive communications can be redacted. The Court finds that the parties have shown by clear and convincing evidence that the communications they seek—in anonymized form—are relevant to the claims in this case; that they cannot reasonably obtain them from another source; and that there is an overriding public interest in disclosure of this information (subject to a protective order) given what is at issue in the antitrust price fixing conspiracy class

9

1 action. While some of the communications are from Defendants, they have not maintained all of
2 the communications and what they have maintained may be incomplete. And they do not have the
3 communications regarding trades by others that were not included in the OPIS benchmark price.
4 Accordingly, Maryland's Reporter's Shield Law does not bar OPIS from complying with the
5 *Gasoline Spot* parties' subpoena for unpublished information in anonymized form where needed.

## CONCLUSION

Plaintiffs' motion to compel publicly available (for a price) trading data is GRANTED in part, subject to the Protective Order governing this case. Before the Court orders OPIS to provide data as far back as 2008, Plaintiffs must submit a declaration from their expert(s) explaining why they need such data for that time period (or for whatever time period they request). Plaintiffs shall do so by June 8, 2022. Further, pursuant to Rule 45(d)(3)(C)(ii), Plaintiffs must pay OPIS for the actual costs of producing its commercial information.

Defendants' and Plaintiffs' motions to compel production of unpublished communications and data is GRANTED on the condition that source information is redacted and thus not disclosed.

OPIS's motions are DENIED.

The motions to file sur-replies are GRANTED.

The parties shall meet and confer via video regarding compliance with the Court's order. The Court will hold a further case management conference on June 23, 2022 in the underlying action. OPIS is required to attend the conference if there are any disputes remaining regarding OPIS's compliance with the subpoenas and this Order.

This Order disposes of Dkt. Nos. 1, 4, 22, 33, 41 in Case No. 22-mc-80104, and Dkt. No. 1 in Case No. 22-mc-80107.

**IT IS SO ORDERED.**

Dated: May 31, 2022

_JACQUELINE SCOTT CORLEY_
United States District Judge