1  Seth D. Berlin (PHV; Maryland Bar No. 9112170056)
   berlins@ballardspahr.com
2  Matthew S.L. Cate (California Bar No. 295546)
   catem@ballardspahr.com
3  BALLARD SPAHR LLP
   1909 K Street, NW
4  12th Floor
   Washington, DC  20006-1157
5  Telephone: 202.661.2200
   Facsimile: 202.661.2299
6
7  *Attorneys for Non-Party*
   *Oil Price Information Service, LLC*

8              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
9                **SAN FRANCISCO DIVISION**

10 *In re California Gasoline Spot*          Case No. 3:20-cv-03131-JSC
   *Market Antitrust Litig.*
11                                          **Non-Party Oil Price Information Service,**
        *Related Cases*:                    **LLC's Notice of Motion and Motion to**
12      No. 3:22-mc-80104-JSC               **Amend and Certify the Court's Order re:**
        No. 3:22-mc-80107-JSC               **OPIS Subpoenas for Immediate Appeal**
13                                          **Under 28 U.S.C. § 1292(b); Memorandum**
                                            **of Points and Authorities**
14
15                                          Date:        August 11, 2022
                                            Time:        9:00 a.m.
16                                          Courtroom:   Courtroom 8, 19th Floor
                                            Judge:       Hon. Jacqueline S. Corley
17
18
19
20
21
22
23
24
25
26
27
28

─────────────────────────────────────────────────────

1

## <u>TABLE OF CONTENTS</u>

2
TABLE OF AUTHORITIES ................................................................................................ ii

3
NOTICE OF MOTION AND MOTION ............................................................................. 1

4
ISSUES TO BE DECIDED................................................................................................. 1

5
MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

6
I.    INTRODUCTION AND SUMMARY OF ARGUMENT.................................... 1

7
II.   BACKGROUND.................................................................................................. 4

8
      A.   OPIS's Role as a Leading Publisher of Energy-Industry News for 45
9          Years..................................................................................................... 4

      B.   This Action, the Subpoenas and the Court's Order................................. 5
10

11
III.  ARGUMENT ...................................................................................................... 7

12
      A.   The Order Adjudicated Multiple Controlling Questions of Law ............ 8

13
           1.   The Order involves controlling conflicts of law questions ........... 8

14         2.   The Order involves a controlling question of law about the
                scope of protection for unpublished material under Maryland's
15              shield law.................................................................................... 11

16
      B.   There is a Substantial Ground for Difference of Opinion Concerning
           These Questions of Law ....................................................................... 13
17
           1.   The choice-of-law issues addressed in the Order are novel and
18              complex ...................................................................................... 13

19         2.   There are substantial grounds for a difference of opinion about
                the application of Maryland's shield law ................................... 18
20
      C.   Immediate Review of the Order Will Materially Advance the
21         Conclusion of the Litigation................................................................. 20

22
IV.   CONCLUSION ................................................................................................. 22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013) ........................................................................13

*City of Almaty, Kazahkstan v. Ablyazov*,
   No. 1:15-cv-05345-JGK-KHP, 2018 U.S. Dist. LEXIS 242385 (S.D.N.Y. July
   23, 2018)......................................................................................................................14

*Erie Insurance Exchange v. Heffernan*,
   925 A.2d 636 (Md. 2007)......................................................................................10, 16

*Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020)....................................................................................9

*Hare v. Family Publications Service, Inc.*,
   334 F. Supp. 953 (D. Md. 1971) ................................................................................17

*Hauch v. Connor*,
   453 A.2d 1207 (Md. 1983) .........................................................................................10

*Hill v. Huddleston*,
   263 F. Supp. 108 (D. Md. 1967) ..........................................................................10, 16

*Hoffman v. Citibank (South Dakota) N.A.*,
   No. SACV 06-0571 AG (MLGx), 2007 U.S. Dist. LEXIS 98644 (C.D. Cal.
   Feb. 15, 2007)...............................................................................................................8

*IBLC Abogados, S.C. v. Bracamonte*,
   No. 11-cv-2380-GPC-KSC, 2013 U.S. Dist. LEXIS 138853 (S.D. Cal. Sept. 26,
   2013)..............................................................................................................................8

*Jacobs v. Adams*,
   505 A.2d 930 (Md. Ct. Spec. App. 1986) ..................................................................10

*Jimenez v. City of Chicago*,
   733 F. Supp. 2d 1268 (W.D. Wash. 2010) ................................................................15

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974)......................................................................................20

*KL Group v. Case, Kay & Lynch*,
   829 F.2d 909 (9th Cir. 1987).....................................................................................14

*Laxalt v. McClatchy*,
   116 F.R.D. 438 (D. Nev. 1987) ......................................................................13, 16, 17

*Lightman v. State*,
   294 A.2d 149 (Md. Ct. Spec. App. 1972) .............................................................13, 19

*Maertin v. Armstrong World Industries, Inc.*,
    No. 01-5321 (JBS), 2006 U.S. Dist. LEXIS 13612 (D.N.J. Mar. 29, 2006).................................8

*Middlesex County Retirement System v. Semtech Corp.*,
    No. CV 07-7114 CAS, 2010 U.S. Dist. LEXIS 148584 (C.D. Cal. May 17,
    2010)...........................................................................................................................20, 21

*Mohawk Industries, Inc. v. Carpenter*,
    558 U.S. 100 (2009) ...........................................................................................2, 20, 21

*National Steel Products Co. v. Superior Court*,
    164 Cal. App. 3d 476 (1985)..........................................................................................9

*New York Times Co. v. Superior Court*,
    51 Cal. 3d 453 (1990)...................................................................................................21

*Perry v. Schwarzenegger*,
    602 F.3d 976 (9th Cir. 2010).........................................................................................4

*Price v. Time, Inc.*,
    416 F.3d 1327 (11th Cir. 2005)....................................................................................20

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)...........................................................................7, 13, 20

*Schoenberg v. Exportadora de Sal, S.A. de C.V.*,
    930 F.2d 777 (9th Cir. 1991).........................................................................................8

*In re United States Department of Education*,
    25 F.4th 692 (9th Cir. 2022).........................................................................................4

*Valencia v. Colorado Casualty Insurance Co.*,
    No. CIV 06-1259 JB/RHS, 2007 U.S. Dist. LEXIS 97721 (D.N.M. Dec. 6,
    2007).......................................................................................................................10, 16

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products
    Liability Litigation*,
    No. 3:09-md-02100-DRH-PMF, 2100, 2011 U.S. Dist. LEXIS 39820 (S.D. Ill.
    Apr. 11, 2011) ..............................................................................................................16

*Zerilli v. Smith*,
    656 F.2d 705 (D.C. Cir. 1981) ....................................................................................18

**Statutes**

28 U.S.C. § 1292 ...............................................................................................1, 7, 20, 22

28 U.S.C. § 1404 .......................................................................................................3, 9, 14

Cal. Civ. Proc. Code § 904.1 ...................................................................................................22

Cal. Evid. Code § 1070 .......................................................................................................6, 8

iii

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

Md. Cts. & Jud. Proc. Code Ann. § 9-112 .................................................................... *passim*

**Other Authorities**

Fed. R. App. P. 5 ...........................................................................................................7

Fed. R. Civ. P. 1 .........................................................................................................12

Fed. R. Civ. P. 45 ..................................................................................... *passim*

William M. Richman & David Riley, *The First Restatement of Conflict of Laws on the Twenty-Fifth Anniversary of Its Successor: Contemporary Practice in Traditional Courts*, 56 Md. L. Rev. 1196 (1997) ...................................................10

**Constitutional Provisions**

Cal. Const. art. I, § 2 ...........................................................................................6, 8

iv

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 11, 2022, at 9:00 a.m., or such other date and time as may be ordered, in Courtroom 8—19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, Non-Party Oil Price Information Service, LLC ("OPIS") will and hereby does move the Court to amend its May 31, 2022, Order Re: OPIS Subpoenas (the "Order"), ECF No. 437,[1] for immediate appeal under 28 U.S.C. § 1292(b).

OPIS brings this motion on the grounds that the Order involves controlling questions of law, that there are substantial grounds for differences of opinion concerning those controlling questions of law, and that immediate review of the Order will materially advance the conclusion of the litigation.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the arguments of counsel, the complete files and record of this action, and such other submissions or material the Court may properly consider.

**ISSUES TO BE DECIDED**

1.     Whether the Order involves controlling questions of law.

2.     Whether there are substantial grounds for differences of opinion concerning those controlling questions of law.

3.     Whether immediate review of the Order will materially advance the conclusion of this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

By this motion, OPIS seeks to certify for review an order that profoundly implicates core protections for news organizations and their journalists.  In this case, following the electronic production of years' worth of published information, and more than 20,000 pages of documents,

---

[1] Unless otherwise noted, ECF citations are to the docket entries in Case No. 3:20-cv-03131.

the parties are pursuing subpoenas to OPIS that, between them, call for virtually every piece of unpublished newsgathering material that OPIS created and compiled over a multi-year period about an entire West Coast market.  As explained below, this Court's Order enforcing those subpoenas relied on three determinations related to the journalist's privilege, each of which warrants certification because it (a) is controlling, (b) involves substantial grounds for disagreement, and (c) would materially advance the conclusion of the action.  Indeed, the Supreme Court has instructed that "district courts should not hesitate to certify an interlocutory appeal" where, as here, "a privilege ruling involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).[2]

   ***The Order involves several controlling questions of law.***  The first two of the Court's determinations involve the choice of law between the journalist's shield laws of California and Maryland, and specifically (a) which state's choice-of-law principles apply under Federal Rule of Civil Procedure 45 and, (b) under the selected choice-of-law principles, which state's shield law applies.  These issues are controlling since, although both states provide absolute protection for sources, California's constitutionally-based provision confers absolute protection against compelled disclosure of unpublished information while Maryland (like the First Amendment-based privilege) provides only qualified protection.  The third controlling issue of law is whether, even assuming Maryland's shield law applies, a court may burden a third-party news organization with producing a substantial volume of internal newsgathering materials where, as here, (a) it already has produced thousands of pages of published materials, (b) it is permitted to redact source information from the unpublished materials, and (c) the information remaining in the redacted, unpublished materials is cumulative of the published materials and thus not central to the case.

   ***There are substantial grounds for disagreement with the Order's resolution of each of these issues***.  Conflicts of law issues are notoriously complex; indeed, at the hearing on this issue,

---

[2] As counsel for OPIS explained at the June 23, 2022 Case Management Conference, OPIS does not seek leave to appeal the Court's determinations with respect to (a) its subject matter jurisdiction, Order at 2-3, or (b) OPIS's production of published information to Plaintiffs, *id.* at 3-5, which has now been resolved, *see* Notice of Compliance (ECF No. 438).  Also, unless otherwise noted, all citations' internal marks, citations, and brackets have been omitted.

the Court analogized them to a law school exam.  As to which state's choice-of-law principles apply under Rule 45, there is a substantial basis for disagreement over whether to analogize transfers of discovery motions under Rule 45 to transfers of entire cases on *forum non conveniens* grounds under 28 U.S.C. § 1404(a).  Indeed, there is only one other decision on this topic.  It contains only a couple of sentences addressing that issue, which was not disputed; relies exclusively on a decision that pre-dates the 2013 amendments to Rule 45; and conflicts with the expressed views of the amended Rule's drafters, who were concerned about inconsistent rulings on discovery motions raising similar issues involving non-parties in different states.

Moreover, even if Maryland's choice-of-law rules applied, there are serious questions as to whether, for privilege matters, Maryland follows the *First Restatement of Conflicts of Laws* or the *Second Restatement of Conflicts of Laws*.  This Court relied on a 55-year-old case that predicted, erroneously, that Maryland would follow the not-yet-then-published *Second Restatement*.  Under the *First Restatement*, to which Maryland continues to adhere in virtually all other contexts, a privilege question would either follow the place of the claim (*lex loci*) or be treated as a procedural matter governed by the law of the forum—in both cases, California.

Even if Maryland followed the *Second Restatement* for privilege matters, there is also a serious question as to whether it would apply the journalist's privilege law of Maryland or California.  Since 1896, Maryland has protected journalists against compelled disclosures specifically to foster the flow of newsworthy information to the public.  There is thus a serious question as to whether Maryland would disregard the People of California's twice-expressed choice, which they elevated to constitutional status, to provide enhanced protections in the service of the same goal simply because a discovery motion was filed in Maryland pursuant to the Federal Rules and regardless of the fact that a California court would not order such a production had the discovery motion been filed there instead.  And finally, there is a substantial basis for disagreement over the Court's application of the Maryland shield law, including whether a news organization may be compelled (a) to disclose unpublished information that, once redacted to protect sources, is not meaningfully different from the substantial volume of published material it

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

has already produced or (b) to disclose unpublished information to a party who intends to use it to identify journalists' sources, as Plaintiffs have repeatedly indicated.

***Resolution of these questions would materially advance the litigation for several reasons***.  For one, a determination of this issue will resolve whether OPIS is required to produce thousands of pages of (source-redacted) documents.  Second, while OPIS believes that, once redacted, the documents will not be material to the issues in the case, both parties have asserted otherwise, claiming that the information is essential to their claims or defenses.  Finally, the only other option for OPIS to seek appellate review is to refuse to comply and to be subject to civil contempt motions practice.[3]  But the California constitutional provision and statutory shield law invoked by OPIS both expressly confer an immunity from contempt.  Given the alternative of certification, expressly endorsed by the Supreme Court for privilege cases in *Mohawk*, OPIS respectfully submits that it should not need to be held in contempt in order to pursue a constitutionally based immunity from contempt.

## II.   BACKGROUND

### A.   OPIS's Role as a Leading Publisher of Energy-Industry News for 45 Years

OPIS is a news organization that offers subscribers independent insight into and analysis of market trends in the oil and gas industries, among others in the energy sector.  *See* Consol. Class Action Compl. ("Compl.") ¶ 71 (ECF No. 186); Decl. of Linda Herbert ("Herbert Decl.") ¶ 2, *Pls.' Action* (ECF No. 4-4).[4]  As Plaintiffs acknowledge, "OPIS is the most widely used reporting

---

[3] The Court suggested at the June 23, 2022 Case Management Conference that OPIS might instead file a petition for writ of mandamus with the Ninth Circuit, referencing *In re United States Department of Education*, 25 F.4th 692 (9th Cir. 2022).  There, mandamus was permitted because the case involved former Cabinet Secretary Betsy DeVos and "there are no other means of relief beyond mandamus because to disobey the subpoena, face contempt charges, and then appeal would not be appropriate for a high-ranking government official."  *Id.* at 705; *see also id.* at 705 n.4 ("DeVos has no other adequate way besides the writ of mandamus to obtain the relief she seeks"); *id.* at 699 (focus is on "barrier separating one co-equal branch of the federal government from another").  By contrast, for non-parties who are not high-ranking government officials, mandamus is not available.  *See, e.g.*, *Perry v. Schwarzenegger*, 602 F.3d 976, 979-80 (9th Cir. 2010) (denying mandamus petition seeking interlocutory review of ruling regarding non-parties' assertion of First Amendment privilege because petitioners have alternative "means of obtaining appellate review").

[4] "*Pls.' Action*" refers to *Bogard Construction, Inc., et al. v. Oil Price Information Service, LLC*, Case No. 3:22-mc-80104-JSC. "*Defs.' Action*" refers to *SK Energy Americas, Inc., et al. v. Oil Price Information Service, LLC*, Case No. 3:22-mc-80107-JSC.

4

service in California" for such information and news, Compl. ¶ 71, and it has operated

continuously since 1977, Herbert Decl. ¶ 2.  Every day, OPIS journalists gather information about

"spot" trades of gasoline specifically formulated for the California market.  *See* Compl. ¶¶ 71-73;

*OPIS Methodology*, https://www.opisnet.com/about/methodology/ (last visited July 6, 2022).

OPIS publishes a daily "West Coast Spot Market Report" that serves as "the industry

pricing benchmark" for both buyers and sellers of purchases of gasoline specifically formulated

for the California market.  Compl. ¶ 71; *U.S. West Coast Methodology*,

https://www.opisnet.com/about/methodology/#West-Coast (last visited July 6, 2022). OPIS

prepares that report based on information its editors obtain from "various channels including

telephone calls, e-mails, instant messaging, electronic platforms and electronic transfer of back

office deal sheets."  *See OPIS Methodology*, https://www.opisnet.com/about/methodology/.

Beyond preparation of its daily market reports, OPIS's journalists also use the information they

obtain from their sources to "cut[] through the clutter of fuel industry news to identify, interpret

and analyze what you really need to know to understand long-term market trends."  *OPIS

Newsletter*, https://www.opisnet.com/product/news/opis-newsletter/ (last visited July 6, 2022); *see

also* Herbert Decl. ¶¶ 2-3.  Subscribers "can also receive market updates from OPIS throughout

the day that include reported deals and other industry news."  Compl. ¶ 71; *see also OPIS News

Overview*, https://www.opisnet.com/product/news/ (last visited July 6, 2022) (explaining that

"[t]hanks to our unique market position and industry sources, we often scoop other media and

provide unmatched perspective to our customers"); *OPIS Blog*, https://blog.opisnet.com/ (last

visited July 6, 2022) (OPIS blog featuring regular posts providing "[a] closer look at key topics in

the downstream oil and energy industry").

## B.      This Action, the Subpoenas and the Court's Order

Plaintiffs allege that Defendants SK Energy Americas, Vitol, Inc., Brad Lucas, and David

Niemann ("Defendants") artificially and unlawfully inflated the price of gasoline traded in the

California spot markets during an alleged scheme that ran from February 2015 through "at least

June of 2016."  Compl. ¶ 3.  As pertinent here, Plaintiffs allege that Defendants "tamper[ed] with

5

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

the price of refined gasoline in California by manipulating" the California spot market prices that OPIS reported in its West Coast Spot Market Report.  *See id.* ¶ 111.

Both Plaintiffs and Defendants served subpoenas on OPIS for documents and for a Rule 30(b)(6) deposition.  In addition, the California Attorney General, in a companion state investigation, requested voluminous documents and responses to interrogatories from OPIS.  In general terms, the requestors (Plaintiffs, Defendants, and the Attorney General) sought information about (a) OPIS's published reports, (b) its methodology, and (c) unpublished information gathered in connection with its reports.

In response to these various requests, OPIS has now produced more than 20,000 pages of published information to the California Attorney General, and has electronically produced to the parties a substantial volume of published information.  *See* Notice of Compliance at 2 (reporting that scope of production of published information to Plaintiffs has been resolved).  OPIS has also agreed to produce a Rule 30(b)(6) witness to answer questions about its general methodology, which, as described above, is set forth in detail on OPIS's website, as well as the other published information that OPIS has produced.

OPIS has objected, however, to the subpoenas' requests for unpublished and source information on various grounds, including, as relevant here, that such information is privileged from disclosure by the First Amendment to the U.S. Constitution; the California journalist's shield law enshrined in article I, section 2(b) of the California Constitution and California Evidence Code § 1070; and, in the alternative, the Maryland journalist's privilege codified in Maryland Courts and Judicial Proceedings Code § 9-112.  *See, e.g.*, Defs.' Mot. to Compel Ex. N, *Defs.' Action* (ECF No. 1-17).

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), the parties filed motions to compel and OPIS filed motions to quash in the District of Maryland, where OPIS is headquartered.  OPIS also moved to transfer the discovery motions to this Court, which the Maryland court granted over the parties' objections, finding that "[a]lthough the parties try mightily to complicate the analysis, it is straightforward."  *See* Mem. Op. at 4, *Pls.' Action* (ECF No. 44).

In moving to compel, both Plaintiffs and Defendants contended that the unpublished information they sought from OPIS "isn't just 'desired' discovery—it is essential to both" Plaintiffs' claims and Defendants' defenses.  *See* Pls.' Mot. to Compel at 10 ("Pls.' MTC"), *Pls.' Action* (ECF No. 1-1); *see also id.* at 2-3, 4 (insisting the material demanded is "essential" and "critical" to Plaintiffs' case); Defs.' Mot. to Compel at 1, 3-4 ("Defs.' MTC"), *Defs.' Action* (ECF No. 1-1) (characterizing the information "essential," "necessary," and "critical" to defending the case); *id.* at 6 ("those documents are not just relevant but central").  While OPIS disagrees with that characterization, it is significant for purposes of this motion, specifically whether resolution of OPIS's assertion of the absolute journalist's privilege under California law would materially advance the resolution of this case.

In ruling on the motions to compel and motions to quash, this Court found, as relevant here, that, (a) under Rule 45, Maryland's choice-of-law rules applied because the motions had been transferred from Maryland, (b) under Maryland's choice-of-law rules, Maryland would apply the *Second Restatement*, (c) under those principles, the Maryland journalist's shield law applied, (d) OPIS's source information was absolutely protected thereunder, (e) the parties satisfied, with "clear and convincing evidence," the three-part test for overcoming the shield law's qualified protection for unpublished information, and (f) OPIS would be required to produce the "unpublished communications and data" requested by the parties, "on the condition that source information is redacted and thus not disclosed."  Order at 10.  As the Court acknowledged during the May 11, 2022, hearing, the questions raised by the parties and OPIS were far from straightforward and it "was like being back in law school again."  Hr'g Tr. at 16:24-25.

## III.   ARGUMENT

A district court may certify an interlocutory order for immediate appeal when the "order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011).  If the original order does not contain the requisite certification, it may be amended to include necessary language.  *See* Fed. R. App. P. 5(a)(3)

7

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

("[T]he district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement.").  OPIS respectfully submits that each of the conditions for certification of the Order is satisfied.

      **A.**     **The Order Adjudicated Multiple Controlling Questions of Law.**

          **1.**     **The Order involves controlling conflicts of laws questions.**

As a matter of both state constitutional and statutory law, in civil cases California provides absolute protection against compelled disclosure of (a) "the source of any information procured . . . for publication in" news materials and (b) "*any* unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public."  Cal. Const. art. I, § 2(b); Cal. Evid. Code § 1070(b) (emphasis added).  Maryland's shield law, in contrast, provides an absolute protection from disclosure of all source information but only qualified protection for unpublished information.  Md. Cts. & Jud. Proc. Code Ann. § 9-112(d).  The determination of which state's shield law applies to OPIS's unpublished information is thus controlling, particularly in light of the parties' assertions (contested by OPIS) that the information is "essential" and "critical" to their case.  *See* Pls.' MTC at 2-4, 10; *see also* Defs.' MTC at 1, 3-4 (same, arguing that Defendants need OPIS's unpublished material "[t]o fully defend against these allegations").

Such choice-of-law issues are, for good reason, "considered controlling questions of law." *IBLC Abogados, S.C. v. Bracamonte*, No. 11-cv-2380-GPC-KSC, 2013 U.S. Dist. LEXIS 138853, at *4 (S.D. Cal. Sept. 26, 2013) (whether California or Mexico law applied to claim "is both fundamental to Plaintiff's breach of contract claim and could have a material effect on the outcome of the case"); *see also, e.g.*, *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 779 (9th Cir. 1991) (noting that court "granted permission to appeal the choice of law issue"); *Hoffman v. Citibank (South Dakota) N.A.*, No. SACV 06-0571 AG (MLGx), 2007 U.S. Dist. LEXIS 98644, at *7 (C.D. Cal. Feb. 15, 2007) (finding "controlling question of law" in whether California choice-of-law rules would void contractual South Dakota choice-of-law and mandatory arbitration provisions); *Maertin v. Armstrong World Indus., Inc.*, No. 01-5321 (JBS), 2006 U.S. Dist. LEXIS 13612, at *19 (D.N.J. Mar. 29, 2006) ("[T]he choice-of-law determination is a

8

controlling question of law in that reversal of that decision . . . will result in the application of a different jurisdiction's substantive law.").  The Order raises two distinct, but interrelated, choice-of-law issues.  The determination of each could (and, in OPIS's view, should) have resulted in application of California's shield law to bar compelled production of unpublished information.

First, the Order involves the controlling question of law of whether the Court must apply the choice-of-law rules of Maryland or of California.  Analogizing to the rule applicable to cases transferred under 28 U.S.C. § 1404(a), the Court concluded that, because the discovery motions were first filed in Maryland under Rule 45(d)(3), "Maryland constitutes the forum state for purposes of" the conflict-of-laws analysis and Maryland's choice-of-law rules applied.  Order at 7 (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 521 (1990)).  OPIS respectfully submits that the law governing transfers of *entire cases* on *forum non conveniens* grounds does not, for good reason, apply to transfers of *discovery motions* under Rule 45.  As discussed *infra*, the drafters of the current version of Rule 45 opposed a regime in which different courts would apply different choice-of-law rules to similar issues in the same case (for example, if the parties in this case were to subpoena another publisher in another jurisdiction).

This purely legal question has a profound impact on the case: had the Court applied California's choice-of-law rules, those rules presumptively would have required application of California's absolute protection for OPIS's unpublished information.  *See, e.g.*, *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020) (under California's governmental interest test, "California law presumptively applies"); *Nat'l Steel Prods. Co. v. Super. Ct.*, 164 Cal. App. 3d 476, 486 (1985) (applying California's work-product doctrine rather than New York's because "whatever the policy interests of the New York rule, they have little or no import as applied to this California lawsuit").  The parties can overcome the presumption that the California shield law would apply only if they could show that Maryland's interests in the issues at stake "would be more severely impaired by the application of California['s shield] law."  *Glob. Commodities*, 972 F.3d at 1111.  They certainly did not do so in their briefing.  And, indeed, what possible interest could Maryland have in whether OPIS's unpublished information about California gasoline trades is or is not available to the parties in a

9

1   California lawsuit based on California claims seeking recovery for a proposed class of plaintiffs

2   who bought gasoline in California?  Whatever Maryland's interest may be, it pales in comparison

3   to that expressed *twice* by Californians—first through their Legislature and then via referendum to

4   amend their state constitution—that parties in civil cases, tried in a California court and asserting

5   California claims, absolutely cannot obtain journalists' unpublished information, even if it means

6   that they cannot assert their claims.  Whether California's choice-of-law rule (and thus its shield

7   law) should have been applied is thus a controlling question of law.

8       Second, even if for some reason Maryland's choice-of-law rules properly followed the

9   discovery motions to this Court, there remain separate controlling questions of law flowing from

10  that decision: which shield law would apply under Maryland's choice-of-law rules.  For starters,

11  this includes whether Maryland would apply the choice-of-law principles set forth in the *First*

12  *Restatement* or the *Second Restatement* to a journalist's privilege question.  Citing *Hill v.*

13  *Huddleston*, 263 F. Supp. 108 (D. Md. 1967), the Court applied the latter.  Order at 7.  Given the

14  substantial subsequent authority by Maryland's appellate courts repeatedly eschewing the *Second*

15  *Restatement* in favor of the *First*, OPIS respectfully submits that this issue is controlling to the

16  extent that it compelled a different result on this central issue.

17      In particular, Maryland adheres to the *First Restatement*'s *lex loci delicti* test to resolve

18  conflicts of law arising in its courts.  *See, e.g.*, *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 651

19  (Md. 2007) ("The rule of *lex loci delicti* is well established in Maryland.").[5]  Further, the *First*

20  *Restatement* often treats matters of privilege as procedural and therefore applies the privilege law

21  of the forum, *i.e.*, the court that receives evidence.  *See Valencia v. Colo. Cas. Ins. Co.*, No. CIV

22  06-1259 JB/RHS, 2007 U.S. Dist. LEXIS 97721, at *31 (D.N.M. Dec. 6, 2007).  Under either

23

24  [5] *See also, e.g.*, *Hauch v. Connor*, 453 A.2d 1207, 1209-10 (Md. 1983) ("we have continued to adhere to the rule of *lex loci delicti*" in part because it provides "the courts and all parties

25  concerned . . . predictability and certainty as to which state's tort law will govern"); *Jacobs v. Adams*, 505 A.2d 930, 935 (Md. Ct. Spec. App. 1986) ("Maryland has received many invitations

26  to retire the rule of *lex loci delicti* in favor of 'more progressive' theories but has consistently declined them."); William M. Richman & David Riley, *The First Restatement of Conflict of Laws*

27  *on the Twenty-Fifth Anniversary of Its Successor: Contemporary Practice in Traditional Courts*, 56 MD. L. REV. 1196, 1200-02 (1997) (noting that multiple surveys of state conflicts-of-laws rules

28  consistently identify Maryland as adhering to *First Restatement*).

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

scenario (*lex loci* or the rule of the forum), California's shield law would apply.  Even if the *Second Restatement* applied, the Court's determination that Maryland rather than California has the most significant connection to the information over which OPIS asserts privilege similarly involves a controlling question of law.  *See* Order at 8-9.  Thus, the determinations that, under Maryland's choice-of-law principles, it would (a) follow the *Second Restatement* (b) to apply Maryland's shield law, and not California's, are also controlling questions of law.

> **2.    The Order involves a controlling question of law about the scope of protection for unpublished material under Maryland's shield law.**

Apart from the choice-of-law questions, the Order also involves the separate controlling questions of law of whether Maryland's shield law (assuming it applies) allows a journalist to be compelled (a) to produce unpublished information that, once redacted to protect sources, is not meaningfully different from the published material it has already disclosed, or (b) to produce unpublished information to a party who intends to use it to identify journalists' sources.

As the Order recognizes, Maryland's shield law provides *absolute* protection against compelled disclosure of "[t]he source of any news or information" OPIS obtained in connection with its newsgathering.  Order at 9 (quoting Md. Cts. & Jud. Proc. Code Ann. § 9-112(d)(2)). The law also affords qualified protection for unpublished (non-source) information unless the requesting party shows, by "clear and convincing" evidence, that (a) OPIS's unpublished information is "relevant to a significant legal issue," (b) the information the parties believe they might derive from OPIS's unpublished material could not be obtained "by any alternate means," and (c) there "is an overriding public interest in disclosure" of the unpublished information.  *Id.*

Having determined that Maryland's shield law applies, the Court authorized OPIS to redact source-identifying information from the unpublished material the Court ordered it to disclose.  *Id.* However, once OPIS does so, there is no practical difference between the published and unpublished information because the documents will not disclose the identities of a trade's buyer, seller, and/or broker.  Herbert Decl. ¶¶ 30-32.  What remains in the unpublished material after redaction of such source-identifying information?  Nothing that relates to a significant legal issue, in which there is an overriding public interest in disclosure, other than prices and dates—in other

11

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

1 words, "what is [already] contained in OPIS's published" information, *id.* ¶ 33, which has now

2 been produced electronically to both parties (and, in more than 20,000 pages of documents, to the

3 California Attorney General).

4      The Court has therefore essentially ordered OPIS to engage in an extraordinarily

5 burdensome undertaking to prepare and produce material to the parties that will not provide

6 meaningfully different information than the published material they already have received.[6]  But

7 the Maryland shield law protects against compelled disclosure of unpublished information where

8 the information can "be obtained by any alternate means," including, as the case here, from the

9 voluminous published records already produced.  Md. Cts. & Jud. Proc. Code Ann. § 9-

10 112(d)(1)(ii).  Despite bearing the burden of satisfying the Maryland shield law's three-part test,

11 and doing so by clear and convincing evidence, the parties did not even attempt to address the

12 impact of (a) the published information produced and/or (b) the redaction of source information

13 from unpublished material.  Thus, to the extent that Maryland law applies, this presents a

14 controlling question of law.

15      Moreover, the Order requires OPIS to produce unpublished information that the Plaintiffs

16 have expressly said they intend to use to identify the entities involved in the reported trades.  In

17 addition to relaying that intent during recent meet-and-confer conferences pursuant to the Order,

18 they made the same representations in emails attached to the discovery motion papers, specifically

19 advising OPIS's counsel that they intended to use OPIS's unpublished "trade file information to

20 match up the trades in" the published data "to know which [trades] related to our Defendants'

21 trades."  Romero Decl. Ex. C at ECF p. 19, *Pls.' Action* (ECF No. 4-6); *see also id.* at ECF p. 16

---

[6] As counsel advised the Court during the June 23, 2022 Case Management Conference, the unpublished information at issue involves more than 10,000 pages of unpublished information covering every work day over a multi-year period.  In her uncontroverted declaration, OPIS's Chief Operating Officer estimated that "it would take over 4,300 person-hours to complete" the review and production of these documents.  *See* Herbert Decl. ¶ 37.  Some of that review can be undertaken by paralegals employed by OPIS's counsel, but given the highly technical nature of the records, it will also require massive amounts of time from OPIS journalists.  Thus, even assuming that the parties paid the costs of the paralegals' and journalists' time, as the "reasonable cost of compliance," Order at 5, the production would still work a major harm by requiring journalists to spend an extraordinary number of hours reviewing documents for redaction rather than engaging in reporting.  *See* Fed. R. Civ. P. 1 (rules should be applied to secure the "just, speedy, and inexpensive determination of every action and proceeding").

12

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

(Plaintiffs' counsel, explaining that they "are trying to figure out what" information they need "to be able to more accurately and precisely match [unpublished] deal log information to the [published] trade files").  Maryland's shield law absolutely prohibits OPIS from being compelled to provide information to Plaintiffs that would allow them "directly *or indirectly*" to "ascertain[] the source's identity."  *Lightman v. State*, 294 A.2d 149, 156 (Md. Ct. Spec. App. 1972) (emphasis added).  This attempted end-run around the shield law's absolute protection of source information is, in OPIS's view, prohibited and thus also presents a controlling question of law.

### B.    There is a Substantial Ground for Difference of Opinion Concerning These Questions of Law.

A "substantial ground for difference of opinion" on a question of law exists when "reasonable judges might differ" on its answer and where "uncertainty provides a credible basis" for the differing opinions.  *Reese*, 643 F.3d at 687-88.  This part of the test is satisfied "where reasonable jurists *might* disagree on an issue's resolution, not merely where they already disagreed."  *Id.* at 688.  Thus, "a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Id.*  The controlling questions of law involved in the Order are precisely the types of issues that lend themselves to different opinions.

### 1.    The choice-of-law issues addressed in the Order are novel and complex.

Even routine choice-of-law questions are "particularly vexing" and mire courts and parties into "a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in a strange and incomprehensible jargon." *Adelson v. Harris*, 973 F. Supp. 2d 467, 475-76 (S.D.N.Y. 2013) (quoting William L. Prosser, *Interstate Publications*, 51 MICH. L. REV. 959, 971 (1953)).  And questions involving the choice of competing shield laws have been described as "present[ing] some of the most difficult legal questions which federal courts are required to resolve."  *Laxalt v. McClatchy*, 116 F.R.D. 438, 446 (D. Nev. 1987) (ruling that *First Restatement* governed choice-of-law analysis, that Nevada shield law applied, and that, in the alternative, *Second Restatement* test would also require application of Nevada law).

13

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

The choice-of-law issues involved in the Order are unusually novel and complex in several respects.  First, there is no clear answer on how courts sitting in diversity are to resolve conflicts of privilege law issues.  *See, e.g.*, *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) ("Rule 501, however, does not tell us which state law the forum state should apply. Commentators have suggested several methods for resolving this choice of law issue: (1) Assume that the state 'which supplies the rule of decision' is the state which also supplies the privilege law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict of law doctrine of the state in which the federal court sits.").  This variable approach to the questions the Court resolved in the Order is sufficient to establish substantial grounds for differences of opinion.

Second, the foundational question of whether and how a Rule 45(f) transfer impacts the choice-of-law analysis remains unsettled (and, as discussed above, issue-dispositive under these circumstances).  There are substantial grounds for reaching different conclusions, not least as evidenced by the parties' and Court's reliance upon a *single* case for the proposition that the "follow-the-original-forum" rule applicable to *case* transfers under 28 U.S.C. § 1404(a) governs the transfer of *discovery motions* under Rule 45(f).  *See* Defs.' Reply at 5, *Pls.' Action* (ECF No. 36) (citing *City of Almaty, Kazahkstan v. Ablyazov*, No. 1:15-cv-05345-JGK-KHP, 2018 U.S. Dist. LEXIS 242385 (S.D.N.Y. July 23, 2018)); Order at 7 (same).[7]  But choice-of-law was not disputed in that case, *see* Ltr. to J. Parker at 1-2, *City of Almaty* (ECF No. 721) (describing lack of opposition by subpoenaed party), and that court's analysis consists of one sentence, which relied, in turn, on a single prior ruling issued before Rule 45's 2013 amendments went into effect.

The development of those amendments, meanwhile, provides additional, substantial grounds for differing with the Order's approach.  As they revised Rule 45, members of the Civil Rules Advisory Committee worried about "[c]hoice-of-law problems" that were arising under the pre-2013 framework and that could proliferate under the new Rule 45(f) transfer regime.  One committee member described a case involving a set of discovery motions in multiple districts and

---

[7] It appears that the Order represents the only instance in which *City of Almaty* has been cited.

14

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

concluded that "[i]t makes no sense to require all these courts to rule, perhaps inconsistently, on the same question as presented in the same action."  *See* Draft Minutes of Nov. 15-16, 2010 Meeting of Civil Rules Adv. Comm. at 4, *available at* https://www.uscourts.gov/sites/default/files/fr_import/CV2011-04.pdf.

A few months later, the committee also considered the example of *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268 (W.D. Wash. 2010).  *See* Minutes of April 4-5, 2011 Meeting of Civil Rules Adv. Comm. ("Apr. 2011 Minutes") at 14-15, available at https://www.uscourts.gov/sites/default/files/fr_import/Civil-Minutes-2011-04.pdf.  There, the Western District of Washington had to decide whether to apply the First Amendment-based journalist's privilege as construed by the Ninth Circuit (enforcement court) or by the Seventh Circuit (underlying action).  *See Jimenez*, 733 F. Supp. 2d at 1271.  The Committee viewed the decision to favor the enforcement court's law over that of the jurisdiction where the action was based as one of the "problems" that arise in cross-district subpoena enforcement.  *See* Apr. 2011 Minutes at 14.  In other words, the case was a "particularly useful" example:

> because it serves as a reminder that not only may the rules of evidence and discovery vary among the circuits, but state law also may become relevant, as when Evidence Rule 501 invokes state privilege law.  In a transfer regime, the question would be sharpened if the subpoena issued from the court in Illinois and the court in Washington decided to transfer the issue to Illinois.

*Id.*  In a clear nod to such concerns, the Advisory Committee explained in its final Notes to the updated Rule 45(f) that "transfer [of subpoena motions] may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  Fed. R. Civ. P. 45(f), Adv. Comm. Note.

In short, the notion that the choice-of-law rules of a Rule 45 enforcement court must be the rules applied after a Rule 45(f) transfer conflicts with the text, history, and goals of the current version of Rule 45.  Instead, to foster uniformity in decision-making, transferred motions should be governed by the choice-of-law rules of the presiding court to avoid the "[c]hoice-of-law

15

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

problems" identified by the Advisory Committee, rather than requiring that court to apply of a patchwork of choice-of-law rules, including over similar or identical issues.

Third, there remains a substantial reason for disagreement about whether Maryland—which has for decades expressly rejected application of the *Second Restatement* for resolving substantive choice-of-law questions—would nevertheless apply it when resolving a conflict of law on a privilege issue. The only case underlying the Court's ruling that Maryland would apply that test is *Hill v. Huddleston*, 263 F. Supp. 108 (D. Md. 1967), which, in the context of subsequent Maryland case law, is a highly questionable authority on that point.

In *Hill*, the District of Maryland *guessed* that, since Maryland courts had long followed the *First Restatement*, they would adopt the then-still-in-draft *Second Restatement* to resolve a conflict as to a privilege. *Id.* at 110 & n.2. The prediction that Maryland would embrace the *Second Restatement* turned out to be wrong, and Maryland courts routinely apply the *First Restatement* to resolve conflict questions. *See, e.g.*, *Erie Ins. Exch.*, 925 A.2d at 651 ("When its rationale has been put into question, this Court has consistently followed the rule" set forth in the *First Restatement*.).[8]

To the extent a state follows the *First Restatement*, and its *lex loci* approach, the law of the state where the dispute is centered applies (here, California). *See, e.g.*, *Laxalt*, 116 F.R.D. at 449 (applying *First Restatement*, and concluding that Nevada shield law protected communications involving a California journalist published by California newspapers because Nevada was the "place of injury"). Alternatively, privileges are also routinely treated as procedural under the *First Restatement* and therefore governed by the law of the forum (here, also California). *See, e.g.*, *Valencia*, 2007 U.S. Dist. LEXIS 97721, at *31 (applying privilege law of forum because "the

_____

[8] Further, while it may be that the "Second Restatement test is considered representative of the prevailing approach among states" to decide conflict of privilege law issues, Order at 7, "a majority of states have not established a choice of law doctrine regarding privileges." *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2100, 2011 U.S. Dist. LEXIS 39820, at *24-25 (S.D. Ill. Apr. 11, 2011). Even Plaintiffs asserted that Maryland "does not have an established conflict of law doctrine applicable to privilege issues." Pls.' MTC at 16.

16

1  First Restatement . . . suggests that attorney-client privilege is properly categorized as procedural"

2  and "all matters of procedure are governed by the law of the forum").

3       <u>Finally</u>, there remain substantial grounds for disagreement about whether, even if the

4  *Second Restatement*'s "most significant relationship" test applied, it requires application of

5  Maryland's shield law.  In determining that Maryland law applies, the Order emphasizes the

6  location of OPIS's headquarters.  *See* Order at 8.  It also de-emphasizes the facts that the bulk of

7  the communications at issue took place outside of Maryland and that the information at issue

8  relates specifically to the California spot market for gasoline.  *Id.* at 8-9.  OPIS submits that the

9  analysis should be reviewed because it fails to account for the clear and overriding statement of

10  public policy behind California's shield law and the lack of any contrary policy interest underlying

11  the application of Maryland's statute.  Indeed, *Second Restatement* § 139(1) expressly

12  contemplates that the privilege rules of the state with most significant relationship to the

13  communication are properly disregarded where they are "contrary to the strong public policy" of

14  the forum state.  *Laxalt*, 116 F.R.D. at 450 (quoting Section 139(1)).[9]

15       For example, in *Hare v. Family Publications Service, Inc.*, the District of Maryland

16  considered whether Maryland's accountant-client privilege should apply to communications made

17  in New York, a state that did not consider such communications privileged.  334 F. Supp. 953, 961

18  (D. Md. 1971).  The court acknowledged that New York had a significant relationship in the

19  communications, since they occurred there.  *Id.*  But it recognized that the analysis requires

20  consideration of the states' respective public policies and "[c]omity between the states."  *Id.*  The

21  court further reasoned that Maryland's privilege was not limited "only to communications made in

22  the State of Maryland or only to communications otherwise having a significant relationship to

23  Maryland."  *Id.*  Thus, what rendered Maryland's relationship to the accountant's communications

---

[9] In ruling otherwise, the Court posed a hypothetical in which a California publication, with only California personnel and sources, reported on events in Washington.  Order at 8-9.  We would expect that the strong public policy of California's constitutional shield law would govern such a privilege question, even though the publication's subject matter involved events in Washington. Here, by contrast the underlying dispute, forum, *and* subject matter of the communications all involve California, and California has the stronger interest, embodied in its Constitution.  Taken together, these facts coalesce to favor application of the California shield law's absolute protection.

17

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

more significant than the place where the communications were made was the fact that Maryland had expressed a clear and absolute preference against compelled disclosure of "any communications" constituting accountant-client discussions. *Id.* In other words:

> The state's affirmative action in carving out in absolute terms a privilege creating an exception to the general rule of testimonial compulsion, in this court's view, constitutes the enunciation of a strong public policy in favor of the protection of accountant-client communications. To require the disclosure of the communications here would be violative of that public policy.

*Id.* Because the Order disregards California's clear, *constitutional*, and doubly pronounced goal of granting journalists' absolute protection in situations precisely like this one, there are substantial grounds for disagreement with its conclusion that OPIS must produce its unpublished information.

**2.      There are substantial grounds for a difference of opinion about the application of Maryland's shield law.**

Even assuming it applies, Maryland's shield law is clear: the parties may overcome the qualified privilege OPIS has to withhold unpublished information only if they satisfy a demanding three-part test by "clear and convincing evidence." Md. Cts. & Jud. Proc. Code Ann. § 9-112(d)(1). There is substantial reason to disagree with the Order's brief recitation that the parties have made this showing, Order at 9-10, particularly given the extensive published information already produced and the required redaction of source information from unpublished materials.

Plaintiffs' sole attempt to meet the exhaustion requirement of the Maryland shield law is its blanket assertion by their counsel that only OPIS is likely to have retained "chat communications" with Defendant SK and "other third-party brokers and traders." *See* Stein Decl. ¶ 14, *Pls.' Action* (ECF No. 1-3). But even assuming that this representation is sufficient to exhaust *all* other alternate sources,[10] the fact remains that any communications that may exist with

---

[10] Whatever information Plaintiffs seek from the "chat communications" may be obtained, for example, through deposition testimony by Vitol and SK representatives and, to the extent it has anything to do with the case, from "third-party brokers and traders." Plaintiffs made no showing that they had attempted to do any of this. *See, e.g.*, *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981) (requiring litigant to show "that he has exhausted every reasonable alternative source of information," finding that taking 60 depositions, which included specific questions about information sought, was not sufficient) (applying First Amendment privilege analysis similar to Maryland's qualified protection for unpublished information).

18

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

SK and other brokers and traders are *source* communications from which OPIS is entitled to redact source-identifying information.  *See* Order at 10.  Further, to the extent such communications discuss trading activity, they would thus reflect pricing and date information that is information already provided in the published data.  And if there are communications discussing non-trading activity, it is hard to imagine—and the parties certainly have not established by clear and convincing evidence—that such communications are "relevant to a significant legal issue" or that "[t]here is an overriding public interest in disclosure" of chats and other communications that do not concern trading activity.  Md. Cts. & Jud. Proc. Code Ann. § 9-112(d)(1)(i), (iii).

The same holds true for Defendants.  They asserted only that "OPIS alone holds" the "data underlying OPIS's calculations for its published benchmark prices."  Defs.' MTC at 11.  But OPIS has already provided the published data resulting from that analysis.  To the extent Defendants seek information relating to trades that OPIS reported, that suffers from the same problem described above.  To the extent Defendants seek information related to trades that OPIS did not report, *see id.* at 6, that runs into the source-identifying problem again:  OPIS is entitled to redact such underlying unpublished information to protect its sources, and the remaining data—reflecting trade data that could not have impacted the market because they were not published—would hardly have any bearing on a "significant legal issue" or create and "overriding public interest in disclosure."

Finally, Plaintiffs have expressly declared their intent to use the compelled production of unpublished information to identify OPIS's sources.  OPIS respectfully submits that doing so violates Maryland law, *see Lightman*, 294 A.2d at 156 (disclosure of source information "cannot be compelled by requiring that [a journalist] answer questions aimed, directly or indirectly, toward ascertaining the source's identity"), and should have been considered prior to ordering disclosure of multiple years' worth of daily communications with sources.  This, too, provides a substantial basis for reaching a different conclusion.

In sum, there are substantial grounds for differing opinions as to whether, as a matter of law, the parties have made the "clear and convincing" showing necessary to overcome Maryland's protection for unpublished information.

19

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

1
2

**C.      Immediate Review of the Order Will Materially Advance the Conclusion of the Litigation.**

3        The final consideration in whether to certify an order under Section 1292(b) is whether

4 immediate review "may materially advance the ultimate termination" of the litigation.  28 U.S.C.

5 § 1292(b).  "[N]either § 1292(b)'s literal text nor controlling precedent requires that the [court

6 order] have a final, dispositive effect on the litigation, only that it 'may materially advance' the

7 litigation."  *Reese*, 643 F.3d at 688; *see also Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, No. CV

8 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 148584, at *3 (C.D. Cal. May 17, 2010) (court

9 should consider whether immediate review of order "could materially affect the outcome of

10 litigation").  In that regard, the Supreme Court has explained that "district courts should not

11 hesitate to certify an interlocutory appeal" in cases where, as here, "a privilege ruling involves a

12 new legal question or is of special consequence."  *Mohawk*, 558 U.S. at 110-11; *see also, e.g.*,

13 *Price v. Time, Inc.*, 416 F.3d 1327, 1334 (11th Cir. 2005) (reviewing order certified under Section

14 1292(b) compelling disclosure of journalist's source information and reversing for party's failure

15 to exhaust alternative sources of information).  There are several reasons why these circumstances

16 meet this prong of the test.

17        <u>First</u>, in cases where the disputed privilege assertion allegedly goes to the heart of the

18 case—as asserted here by both parties—it "is of special consequence," and the court should certify

19 an interlocutory appeal.  *Mohawk*, 558 U.S. at 110-11.  Defendants, for example, have argued that

20 they must obtain OPIS's unpublished information because it is "necessary to defend themselves in

21 this case" and "is critical to this case."  Defs.' MTC at 1; Defs.' Reply at 5, *Pls.' Action*; *see also*

22 *id.* at 2, 12 (characterizing it as "critical" and "crucial").  For their part, Plaintiffs have asserted

23 that OPIS's reporting "was central to the alleged conspiracy in that Defendants reported their

24 alleged illicit trading activity to it."  Joint Letter Br. at 1 (ECF No. 280) *see also id.* at 2

25 (characterizing the OPIS information "significant" and "very important").  There is no question,

26 then, that the parties view the issues involved in the Order (and thus its review) as having a serious

27 //

28 //

20

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC

practical effect on this case and its outcome. *See, e.g.*, *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) ("controlling means serious to the conduct of the litigation, either practically or legally").

In *Semtech*, for example, the court ruled that a company sued for violations of securities law waived its privilege over materials turned over to government investigators. 2010 U.S. Dist. LEXIS 148584, at *2. The materials at issue were internal notes and work-product materials of the company's counsel who had investigated the very conduct at the heart of plaintiffs' claims. *Id.* at *4. Because the ruling could result in allowing the plaintiffs to be "privy to information that would not otherwise be available," and because *Mohawk* "specifically invites litigants to pursue appellate review of privilege issues under section 1292(b) in situations such as this," the court certified the ruling for interlocutory appeal. *Id.* at *6-7. The same should follow here, where the choice-of-law determination requires OPIS to produce materials, which, under California's shield law, would not otherwise be compelled and which the parties insist is "critical" to their case.[11] In short, the Order surely is the type of "privilege ruling" that not only "involves a new legal question" but that is also, in the parties' view, "of special consequence" to the case. *Mohawk*, 558 U.S. at 110-11. As such, the Court "should not hesitate to certify an interlocutory appeal" of the Order. *Id.*

Second, certification of the Order for immediate appeal will allow for its expedient review. Other than certification, the only path to appellate review is of an order of contempt. *See* note 1 *supra*. But where an alternative route to appellate review exists, and the question involves compelled disclosure of privileged information—the proverbial "bell that can't be unrung"—certification would advance the resolution of the litigation in an orderly fashion. Indeed, the constitutional and statutory provisions of California's shield law expressly confer an immunity from contempt. Where, as here, there is a ready alternative, it would make little sense to require a news organization to be found in contempt in order to pursue an *immunity from* contempt.[12]

---

[11] As explained above, OPIS disputes that the unpublished information the parties seek will have any more bearing on the outcome of this case than the published material already produced.

[12] Under California state procedures, a non-party is required to be found in contempt before seeking appellate review. *See, e.g.*, *New York Times Co. v. Super. Ct.*, 51 Cal. 3d 453, 458 (1990).

21

IV.     **CONCLUSION**

For all the foregoing reasons, OPIS respectfully requests that the Court amend its May 31, 2022 Order re: OPIS Subpoenas, ECF No. 437, and certify it for immediate appeal under 28 U.S.C. § 1292(b).


DATED:  July 6, 2022                                     BALLARD SPAHR LLP


                                                        */s/ Seth D. Berlin*
                                                        By:  Seth D. Berlin (admitted *pro hac vice*)
                                                              Matthew S.L. Cate

                                                        *Attorneys for Non-Party*
                                                        *Oil Price Information Service, LLC*

---

However, California law mandates an automatic stay of such an order, *id.*, provides review by writ, and does not allow direct appeal of contempt orders.  *See* Cal. Civ. Proc. Code § 904.1(a)(1). Here, where there is an alternative expressly endorsed by the U.S. Supreme Court for cases involving privilege questions, certification is proper.

22

Mot. to Amend and Certify the Court's Order re: OPIS Subpoenas for Immediate Appeal
Case Nos. 3:20-cv-03131-JSC, 3:22-mc-80104-JSC, 3:22-mc-80107-JSC