1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE CALIFORNIA GASOLINE SPOT
MARKET ANTITRUST LITIGATION


This document relates to:

All actions

Case No.  20-cv-03131-JSC

**ORDER RE: DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE
PLEADINGS**

Re: Dkt. No. 439

Plaintiffs allege that Defendants entered into horizonal agreements to restrain competition

and manipulate the spot market for gasoline and gasoline blending components formulated for use

in California.  Plaintiffs bring state antitrust and unjust enrichment claims against SK Energy

Americas, Inc. ("SK Energy"), Vitol Inc. ("Vitol"), and two individual defendants.  Defendants'

motion for partial judgment on the pleadings is now pending before the Court.  (Dkt. No. 439.)

Having considered the parties' briefs and having had the benefit of oral argument on August 4,

2022, the Court DENIES the motion.

**DISCUSSION**[1]

Plaintiffs bring claims on behalf of those who purchased gasoline sold by Defendants on

the California gasoline spot market, as well as those who purchased gasoline in California that was

not sold by Defendants and not sold on the spot market.  Plaintiffs' theory is that Defendants'

alleged anticompetitive conduct raised the price of all gasoline sold in California, not just the gas

sold by Defendants on the spot market.  Such theory, or claims, are often referred to as "third

---

[1] The Court assumes familiarity with the factual and procedural background. The underlying
complaint allegations are recited in the Court's order denying Defendants' motions to dismiss and
are incorporated here by reference. (Dkt. No. 281 at 5-6.)

1    party" or "umbrella" claims.  *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust*

2    *Litig.*, 691 F.2d 1335, 1339 (9th Cir. 1982) ("The umbrella theory is essentially a consequential

3    damages theory. It seeks to hold price-fixers liable for harm allegedly flowing from the illegal

4    conduct even though the price-fixing defendants received none of the illegal gains and were

5    uninvolved in their competitors' pricing decisions").

6            Defendants' motion seeks dismissal of the third-party/umbrella claims, that is, claims

7    brought by consumers who did not purchase gasoline sold by Defendants.  First, Defendants insist

8    that Plaintiffs who did not purchase gasoline sold by Defendants lack prudential standing to assert

9    Cartwright Act and unjust enrichment claims. Second, and relatedly, they contend that Plaintiffs'

10   "umbrella claims" are too attenuated to state a viable claim because third-party pricing

11   determinations break the causal chain such that any injury is too indirect and speculative; that is,

12   that Plaintiffs have not and cannot allege the required proximate cause.  Third, Defendants argue

13   that the Cartwright Act's plain language defeats the third-party umbrella claims.

14   **A.  The Cartwright Act**

15          To state a claim under the Cartwright Act, a plaintiff must allege: (1) the formation and

16   operation of the conspiracy, (2) the illegal acts done pursuant thereto, (3) a purpose to restrain

17   trade, and (4) the damage caused by such acts. *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 265

18   (1983).  The plaintiff also must show that an antitrust violation was the proximate cause of its

19   injuries. *Kolling v. Dow Jones & Co.*, 137 Cal.App.3d 709, 723 (1982).  However, "[t]he alleged

20   antitrust violation need not be the sole or controlling cause of the injury in order to establish

21   proximate cause, but only need be a substantial factor in bringing about the injury." *Saxer v. Philip*

22   *Morris, Inc.*, 54 Cal. App. 3d 7, 23 (1975).

23          "Antitrust standing under state law is [] a matter of state law." *In re Lithium Ion Batteries*

24   *Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *7 (N.D. Cal. Oct. 2, 2014*); see*

25   *also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000) ("'the more

26   restrictive definition of 'antitrust injury' under federal law does not apply' to the Cartwright Act.")

27   (citing *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1234 (1993)).  To have

28   standing to bring a Cartwright Act claim, "the plaintiff must be within the target area of the

United States District Court
Northern District of California

2

1    alleged violation—the area which it could reasonably be foreseen would be affected by the

2    antitrust violation." *Saxer*, 54 Cal. App. 3d at 26 (internal citation and quotation marks omitted).

3    Both direct and indirect purchasers have standing to bring claims under the Cartwright Act.

4    *Cellular Plus*, 14 Cal.App.4th at 1234.

5            **1. Cartwright Act Standing**

6            Defendants insist that the Cartwright Act standing inquiry is the same as that under federal

7    antitrust law and that Plaintiffs must satisfy the federal antitrust standing requirements set forth in

8    *Associated General Contractors of California, Inc. v. California State Council of Carpenters*

9    *("AGC")*, 459 U.S. 519, 534 (1983). "Under *AGC*, courts consider (1) the nature of plaintiffs'

10   injuries and whether plaintiffs were participants in the relevant markets; (2) the directness of the

11   alleged injury; (3) the speculative nature of the alleged harm; (4) the risk of duplicative recovery;

12   and (5) the complexity in apportioning damages." *In re: TFT–LCD (Flat Panel) Antitrust Litig.*,

13   586 F.Supp.2d 1109, 1123 (N.D. Cal. 2008) (citing *AGC*, 459 U.S. at 536–39).

14          Defendants' argument relies in large part on a recent decision from the Second Circuit

15   Court of Appeals in *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th

16   103, 120 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2852 (2022). The *Schwab* court concluded "that

17   California law substantially incorporates" the federal antitrust standing requirements set forth in

18   *AGC*. *Schwab*, 22 F.4th at 120. Because the plaintiff there lacked federal antitrust standing to

19   bring claims based on the purchase of bonds from third-parties, it likewise lacked standing to

20   bring the same claims under the Cartwright Act. *Id*. In so holding, the Second Circuit relied

21   heavily on the California Court of Appeals decision in *Vinci v. Waste Mgmt., Inc.*, 36 Cal.App.4th

22   1811 (1995). *Schwab*, 22 F.4th at 120.

23          The Court is not persuaded by *Schwab's* reliance on *Vinci*. The *Vinci* court applied the

24   *AGC* factors based upon general observations that "the Cartwright Act has objectives identical to

25   the federal antitrust acts," and California courts have historically looked to cases construing

26   federal antitrust laws for guidance on Cartwright Act claims. *Vinci*, 36 Cal. App. 4th at 1814 n.1.

27   Almost two decades later, however, the California Supreme Court clarified that "[i]nterpretations

28   of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright

United States District Court
Northern District of California

1   Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on

2   statutes enacted by California's sister states around the turn of the 20th century." *Aryeh v. Canon*

3   *Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1195 (2013).  The *Schwab* court discounted this statement

4   from *Aryeh* as dicta. *See Schwab*, 22 F.4th at 120 (citing *In re Am. Express Anti-Steering Rules*

5   *Antitrust Litig.*, 19 F.4th 127, 144 (2d Cir. 2021) ("the California legislature, like Congress, was

6   'familiar with the common-law rule' of proximate cause, and California courts will not assume

7   that the legislature intended 'to displace *it sub silentio*.'") (internal quotation omitted)).  However,

8   the California Supreme Court has consistently held that "[t]he Cartwright Act is broader in range

9   and deeper in reach than the Sherman Act," *In re Cipro Cases I & II*, 61 Cal. 4th 116, 160 (2015)

10  (internal citation omitted), and has reiterated *Aryeh's* command that federal antitrust law is "*at*

11  *most* instructive."  *Id*. at 142 (emphasis added).

12          Absent an authoritative holding from the California Supreme Court, it falls on a federal

13  court sitting in diversity to "predict how the state's highest court would decide the question."

14  *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019).  This Court joins the other

15  courts in this District which have concluded that "[i]n light of the California Supreme Court's

16  repeated instruction that federal antitrust law does not control interpretation of the Cartwright Act,

17  [] the California Supreme Court would not find the rationale set forth in *Vinci* persuasive and

18  would not apply *AGC*."  *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-

19  CV-01180-BLF, 2015 WL 4755335, at *19, n.10 (N.D. Cal. Aug. 11, 2015); *see also In re*

20  *Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1073 (N.D. Cal. 2015) ("disregarding" reliance

21  on *Vinci* and finding that "the federal standing test under *AGC* has not been clearly applied by the

22  California Supreme Court to claims brought under California's Cartwright Act"); *In re Lithium*

23  *Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *11 (N.D. Cal. Oct. 2,

24  2014) (finding that "*Aryeh* casts a significant shade over the reasoning of *Vinci*" and declining to

25  "curtail indirect-purchaser standing using the precise five-factor test set forth in *AGC*").

26          Accordingly, the Court declines to find that federal antitrust standing principles govern

27  cases brought exclusively under the Cartwright Act.

28          //

United States District Court
Northern District of California

4

**2. Plaintiffs Adequately Allege Standing**

The Court already concluded that "Plaintiffs' allegations of a scheme to inflate and otherwise impact the price of gasoline in California [] adequately plead[s] causation and an antitrust injury." *In re California Gasoline Spot Mkt. Antitrust Litig*., No. 20-CV-03131-JSC, 2021 WL 1176645, at *6 (N.D. Cal. Mar. 29, 2021).  Defendants nonetheless insist that "umbrella claims" such as those asserted by Plaintiffs here fail as a matter of law because third-party pricing determinations break the causal chain such that any injury is too indirect and speculative.  This Court previously examined at length whether the Cartwright Act permits claims under an umbrella theory in *Cnty. of San Mateo v. CSL Ltd*., No. 10-CV-05686-JSC, 2014 WL 4100602, at *2-6 (N.D. Cal. Aug. 20, 2014), and concluded that "umbrella damages under the Cartwright Act are not barred as a matter of law as too inherently speculative."  *Id*. at *5.  Defendants have not persuaded the Court that its reasoning in *CLS Ltd.* is incorrect.

Defendants' suggestion that even if umbrella damages are not categorially barred, Plaintiffs cannot seek them here because they have not alleged that defendants "controlled the vast majority of the relevant market," is unpersuasive.  (Dkt. No. 473 at 16 (*quoting In re Aluminum Warehousing Antitrust Litig*., 520 F. Supp. 3d 455, 481 (S.D.N.Y. 2021)).)  Defendants are again relying on federal—not California—antitrust principles.  Under the Cartwright Act, "[t]he alleged antitrust violation need not be the sole or controlling cause of the injury in order to establish proximate cause, but only need be a *substantial* factor in bringing about the injury." *Saxer v. Philip Morris, Inc*., 54 Cal. App. 3d 7, 23 (1975) (emphasis added).

Plaintiffs' allegations describe a conspiracy whereby Defendants "reached agreements with each other and with third parties to raise, fix, maintain and otherwise tamper with the price of refined gasoline in California by manipulating OPIS-reported prices in order to realize supra-competitive profits while limiting genuine market risk."  (Dkt. No. 186 at ¶ 111; *see also id*. at ¶ 112-128 (describing the acts taken in further of the conspiracy).)  Because the spot market informs the daily wholesale fuel price which determines the amount paid at the retail pump, Defendants' alleged anticompetitive spot market activity indirectly impacted the amount all consumers paid for gasoline at the pump.  (*Id*. at ¶¶ 75-76; *see also id*. ¶ 145 ("spot price manipulation increases the

United States District Court
Northern District of California

1    price of gasoline at all retailer distribution outlets, whether they supply branded or unbranded (i.e.,

2    gas sold by retail discounters like Arco, Safeway, and Costco) gasoline.").)  These allegations, if

3    true, demonstrate that Defendants' actions were a "substantial factor" in causing higher gasoline

4    prices that injured even those consumers who did not purchase gasoline sold by Defendants.

5    Thus, in contrast to *Schawb*, there is no "disconnect" between Plaintiffs' alleged injury and

6    Defendants' alleged actions—Plaintiffs' theory is that Defendants' conduct impacted the price of

7    *all* gasoline regardless of whether the gasoline was sold by Defendants and that Defendants'

8    conduct yielded supra-competitive profits.  *Schwab*, 22 F.4th at 116 ("The disconnect between

9    Plaintiffs' injury and the Banks' alleged benefit further demonstrates the attenuated nature of the

10   causal chain" because "the reduced-interest payment in no way enriched the Banks, who had no

11   financial stake in the transactions whatsoever.").

12       As discussed at oral argument, Defendants' lament that Plaintiffs' theory of liability is too

13   attenuated is not amenable to resolution at the pleading stage.  As the Court held in denying

14   Defendants' 12(b)(6) motion to dismiss, "[w]hether other factors likewise impacted the price so as

15   to undermine Plaintiffs' allegations that Defendants' actions were the proximate cause of their

16   injury is not a question that can be resolved at the pleading stage." *In re California Gasoline Spot*

17   *Mkt. Antitrust Litig.*, 2021 WL 1176645, at *6.  To be sure, calculating Defendants' impact on the

18   benchmark is no simple feat.  As this Court observed in *CSL*, damages claims in indirect purchaser

19   cases are particularly challenging as

20           each purchase along the chain of distribution must be examined. To
             reach the 'but for' price at each stage, a complex damages model must
21           be created that predicts what the price would have been in the market
             under competitive conditions during the conspiracy period—taking
22           into account cost increases, as well as other market forces, that existed
             during the conspiracy period that may have increased prices absent
23           the anticompetitive conduct.

24   *CSL*, 2014 WL 4100602, at *3.  That a viable damages model is difficult, however, does not mean

25   the Court can conclude at the pleading stage that is impossible as a matter of law.

26       **3. The Cartwright Act's *Illinois Brick* Repealer Provision**

27       Defendants' argument that Plaintiffs' third-party claims are barred as a matter of law

28   because "they are not authorized by the plain text of the Cartwright Act's *Illinois Brick* repealer

United States District Court
Northern District of California

1    provision" fares no better.  (Dkt. No. 439 at 26.) The repealer provision provides: "This action

2    may be brought by any person who is injured in his or her business or property . . . regardless of

3    whether such injured person dealt directly or indirectly with the defendant."  Cal. Bus. & Prof.

4    Code § 16750(a).  Defendants argue that with third-party claims, the consumer did not deal

5    directly or indirectly with the defendant and therefore the Cartwright Act does not apply.  Not so.

6         The Cartwright Act broadly confers standing to sue on "any person who is injured in his or

7    her business or property by reason of anything forbidden or declared unlawful." Cal. Bus. & Prof.

8    Code § 16750(a).  While the repealer amendment added language in 1978 stating that an

9    individual has standing to sue regardless of whether they dealt "directly or indirectly with the

10   defendant," there is no indication that this language was intended to restrict standing under the

11   Act.  To the contrary, California courts have consistently emphasized "the broad class of persons

12   and injuries which the Cartwright Act intends to cover."  *Cellular Plus, Inc. v. Superior Ct*., 14

13   Cal. App. 4th 1224, 1233 (1993); *see also Clayworth v. Pfizer, In*c., 49 Cal. 4th 758, 770 (2010)

14   (noting that the broad standing principles outlined in § 16750(a) under the Act have "been carried

15   forward essentially without change from the original version of the act." );  *Saxer v. Philip Morris,*

16   *Inc.*, 54 Cal. App. 3d 7, 26 (Cal. Ct. App. 1975) ("[t]he fact that plaintiff was not a competitor of

17   defendants presents no obstacle to recovery for [t]he statute does not confine its protection to

18   consumers, or to purchasers, or to competitors, or to sellers.") (internal citation and quotation

19   marks omitted).

20        The legislative history confirms that the intent of the *Illinois Brick* repealer provision was

21   to clarify—not restrict—the already broad standing principles under the Cartwright Act.  *See* Sen.

22   Com. on Judiciary, Rep. on Assem. Bill No. 3222 (1977-78 Reg. Sess.) reprinted at Cal. Bus. &

23   Prof. Code § 16750, p. 1) ("[t]he purpose of the bill is the prevent a federal case interpretation of

24   the Sherman Act precluding an indirect purchaser's standing to sue in antitrust actions from being

25   applied to actions under the Cartwright Act.") (Dkt. No. 457-5); Governor's Office Rep. on

26   Assem. Bill No. 3222 (1977-78 Reg. Sess.) p. 1 (stating that the bill "is little more than

27   codification of current case law which holds that anyone in the 'target area' has standing to sue

28   under the Cartwright Act" (citing *Saxer*, 54 Cal. App. 3d 7, 36)) (Dkt. No. 457-6).

United States District Court
Northern District of California

1    There is thus no support for Defendants' theory that the repealer provision limited the

2    existing broad standing principles under California law.

3                                                          ***

4    Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' third-party

5    Cartwright Act claims.

6    **B. Unjust Enrichment**

7    Defendants insist that Plaintiffs' unjust enrichment claim is dependent on their Cartwright

8    Act claim and must be dismissed if that claim is dismissed.  Because the Court rejects Defendants'

9    Cartwright Act arguments, their motion to dismiss the unjust enrichment claims is moot.

10                                              **CONCLUSION**

11    For the reasons stated above, the Court DENIES Defendants' motion for judgment on the

12    pleadings.

13    This Order disposes of Docket No. 439.

14    **IT IS SO ORDERED.**

15    Dated: August 9, 2022

16

17

18    JACQUELINE SCOTT CORLEY
      United States District Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California