NEAL MANNE (94101)
nmanne@susmangodfrey.com
ALEX KAPLAN (*Pro Hac Vice*)
akaplan@susmangodfrey.com
MICHAEL C. KELSO *(Pro Hac Vice)*
mkelso@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Phone: (713) 651-9366

AMANDA K. BONN (270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Phone: (310) 789-3100

Attorneys for Defendants Vitol Inc. and Brad Lucas

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CALIFORNIA GASOLINE SPOT MARKET ANTITRUST LITIGATION | Case No. 3:20-cv-03131 JSC<br><br>**DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT PROFESSOR CRAIG PIRRONG**<br><br>Judge: Hon. Jacqueline S. Corley<br>Date: July 20, 2023<br>Time: 10:00 a.m. PST<br>Courtroom: 08, 19th Floor<br>**REDACTED** |

Case No. 3:20-cv-03131 JSC

**Table of Contents**

Notice of Motion and Motion ........................................................................................................... 1

Statement of Issues to Be Decided................................................................................................... 1

Memorandum of Points and Authorities .......................................................................................... 2

Background ....................................................................................................................................... 3

    I.      Plaintiffs' Allegations and the California Gasoline Market in 2015....................... 3

    II.     Plaintiffs' Collapsing Case and Last Minute Search for an Antitrust
           Impact Expert .......................................................................................................... 4

    III.    Pirrong's Model ....................................................................................................... 6

Legal Standard ................................................................................................................................. 7

Argument .......................................................................................................................................... 8

    I.      Pirrong Model Is Results Oriented and Unreliable as a Matter of Law.................. 8

          A.     Pirrong's Decision to "Not Report Results that Did Not Support
               a Claim of Inflation" Is Conclusion-Driven and Unreliable as a
               Matter of Law............................................................................................. 8

          B.     Pirrong's Rejection of All Negative Results as False Negatives
               But Acceptance of All Positive Results as Reliable Is
               Impermissibly Outcome-Driven................................................................. 10

          C.     Pirrong Cherry Picked His Event Windows to Find Price
               Inflation..................................................................................................... 12

          D.     Pirrong's Doctored His Results to Remove Negative Numbers ............... 15

    II.     Pirrong's Model Fails to Control for Legitimate Market Forces .......................... 17

          A.     Pirrong's Model Has No Explanatory Power and Does Not
               Reliably Predict Prices During His Control Period................................... 17

          B.     Pirrong's Model Fails to Control for Important Market Forces
               that Drive His False Findings of Price Inflation ....................................... 18

               1.     Pirrong's Model Fails to Control for the NYMEX
                     Futures Component of the OPIS Rate Not at Issue in this
                     Case ............................................................................................. 19

               2.     Pirrong Fails to Control for Refinery Disruptions ........................ 20

                3.     Pirrong Fails to Control for Vessel Imports................................. 21

                 4.     Pirrong Fails to Control for "Backwardation" ............................. 22

11413934v1/016884

III.    The Overwhelming Statistical Insignificance of Pirrong's Results Further Demonstrates their Unreliability ............................................................. 23

Conclusion .................................................................................................................... 255

11413934v1/016884

**Table of Authorities**

**Cases**                                                                                                **Page**

*ATA Airlines, Inc. v. Fed. Exp. Corp.*,
   665 F.3d 882 (7th Cir. 2011).................................................................................................... 23

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. (USA) LLC*,
   752 F.3d 82 (1st Cir. 2014) .................................................................................................... 19

*Brown v. China Int'l Energy Inc.*,
   2014 WL 12576643 (C.D. Cal. 2014)...................................................................................... 11

*Daubert v. Merrell Dow Pharma., Inc.*,
   509 U.S. 579 (1993) .................................................................................................................. 8

*General Elec. Co. v. Joinder*,
   522 U.S. 136 (1997) ................................................................................................................ 18

*Grodzitsky v. Am. Honda Motor Co.*,
   957 F.3d 979 (9th Cir. 2020) .................................................................................................... 8

*In re Bextra & Celebrex Prods. Liability Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ................................................................................... 8

*In re High-Tech Employee Antitrust Litig.*,
   2014 WL 1351040 (N.D. Cal. 2014)....................................................................................... 24

*In re Incretin-Based Therapies Prod. Liab. Litig.*
   524 F. Supp. 3d 1007 (S.D. Cal. 2021) ................................................................................... 11

*In re Libor-Based Financial Instruments Antitrust Litig.*
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)..................................................................................... 19

*In re Lipitor Prods. Liability Litig.*
   892 F.3d 624 (4th Cir. 2018).......................................................................................... 8, 10, 25

*In re Omnicom Group Secs. Litig.*,
   541 F. Supp. 2d 546 (S.D.N.Y. 2008)..................................................................................... 19

*In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Prod. Liab. Litig.*,
   424 F. Supp. 3d 781 (N.D. Cal. 2020) ................................................................................ 9, 15

*In re Virtus Inv. Ptrs., Inc. Sec. Litig.*
   (S.D.N.Y. 2017) 2017 WL 2062985 ....................................................................................... 19

*In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*,
   858 F.3d 787 (2017).................................................................................................................. 24

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................................. 8

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
   89 F.3d 594 (9th Cir. 1996)....................................................................................................... 8

11413934v1/016884

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .............................................................................................. 19

*Open Text S.A. v. Box, Inc.*,
2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ....................................................................... 8

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
111 F.3d 528 (7th Cir. 1997)............................................................................................. 19

*United States v. Sandoval-Mendoza*,
472 F.3d 645 (9th Cir. 2006)............................................................................................... 8

**Rules**

Fed. R. Evid. 702 .................................................................................................... 1, 7, 8

**Other Authorities**

Fed. Ref. Manual on Sci. Evid. § 303 ............................................................... 18, 23, 25

11413934v1/016884

**Notice of Motion and Motion**

To the Parties and their Attorneys of Record:

Please take notice that on July 20, 2023, at 10:00 a.m. PST, or as soon thereafter as the matter may be heard, before the Honorable Jacqueline S. Corley, Phillip Burton United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Courtroom 8, 19th Floor, defendants Vitol Inc., SK Energy Americas Inc., Brad Lucas, and David Niemann (together, "defendants") will, and hereby do, move under Federal Rule of Evidence 702 to exclude the opinions of Plaintiffs' expert witness Professor Craig Pirrong from evidence.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the exhibits and declarations submitted with this motion, the arguments of counsel, and all other material and submissions that the Court may consider.

**Statement of Issues to Be Decided**

Whether the opinions of Plaintiffs' expert Professor Craig Pirrong on antitrust impact are admissible under Federal Rule of Evidence 702.

1                                                    Case No. 3:20-cv-03131 JSC

11413934v1/016884

**Memorandum of Points and Authorities**

> **A**      I did not report results that did not support a claim of inflation.

-Plaintiffs' Expert Craig Pirrong, Deposition (Feb. 21, 2023)

> **streetwiseprof**
> @streetwiseprof
>
> Whenever you see "modeling study" (e.g., in regards to covid, climate change) remember the quote from the great *scientist* von Neumann: "With four parameters I can fit an elephant, and with five I can make him wiggle his trunk." IOW, you can get a model to say anything you want

-Plaintiffs' Expert Craig Pirrong, Twitter (July 26, 2020)

*     *     *

Defendants move to exclude the opinions of Craig Pirrong, the economist hired by Plaintiffs to prove the essential antitrust impact element of their Cartwright Act claim. Pirrong's opinions are results-oriented and unreliable as a matter of law.

- 

2                          Case No. 3:20-cv-03131 JSC

11413934v1/016884



Pirrong's model is results-driven junk science. Pirrong admits that "you can get a model to say anything you want." Ex. 1. That is what he did in this case.

**Background**

I.    **Plaintiffs' Allegations and the California Gasoline Market in 2015**

Plaintiffs bring an antitrust claim alleging that Vitol Inc. and SK Energy Americas Inc. (SKEA) conspired to manipulate the OPIS benchmark rate in the aftermath of a February 18, 2015, explosion at Exxon's oil refinery in Torrance, California, outside of Los Angeles.

The Exxon explosion took offline Southern California's third-largest oil refinery and 8.1% of the gasoline refining capacity in the entire state. Knittel ¶¶ 109, 125. That refinery explosion coincided with a number of other market factors already constraining gasoline supply in California. *Id.* ¶¶ 110–113. Tesoro's refinery in Martinez, California—which produced about another 8% of California's gasoline supply—was offline and not producing gasoline because of a labor strike. *Id.* ¶ 111. Inventory levels, meaning the amount of excess gasoline kept in storage by refineries, were also below historical seasonal levels in the leadup to the Exxon explosion. *Id.* ¶ 156. These factors amplified the economic effect of the explosion. The California Energy Commission called the price spike following the Exxon explosion "not surprising." Ex. 2 at 23.[1]

Meanwhile, several fundamental features of the California gasoline market limited market participants' ability to replace that lost production. California uses a unique blend of gasoline called Carbob not used by any other state or country that is difficult and expensive to blend and

---

[1] Exhibit references are to the accompanying Kelso Declaration. References to the parties' expert reports and expert depositions follow the conventions in Defendants' memorandum in opposition to Plaintiffs' motion for class certification.

produce. Knittel ¶¶ 21–25. Even if refineries or energy firms elsewhere in the U.S. could produce or blend Carbob, there are no pipelines that allow gasoline to be brought to California from other states, and the federal Jones Act severely limits firms' ability to ship gasoline from one U.S. port to another. *Id.* ¶¶ 27–30. These factors normally make California dependent on in-state refineries for gasoline supply. *Id.* ¶¶ 31–36. When one of those refineries is down (as Exxon's Torrance refinery was in 2015) imports from overseas (a three- to six-week voyage by sea) are the principal source of replacement gasoline supply for the California market. *See id.* ¶¶ 29–30, 139.

Exxon's refinery was shut down for about 16 months after the February 18, 2015, explosion. Knittel ¶ 125. A series of imports came in the first six months following the Torrance explosion. *Id.* ¶ 139. Yet at the same time, California's other eleven oil refineries did not stop experiencing problems of their own just because Exxon Torrance was down. They continued to suffer periodic disruptions (unexpected maintenance, fires, delayed restart dates after routine maintenance, etc.) during the Exxon Torrance outage. *Id.* ¶¶ 277–86. News about such refinery disruptions tended to cause spot prices to increase in the near term, while expectations about gasoline imports tended to decrease prices for future delivery in the time period when those vessels were expected to arrive in California. *Id.* ¶¶ 277–86, 298–99.

## II.      Plaintiffs' Collapsing Case and Last Minute Search for an Antitrust Impact Expert

Plaintiffs began this case by asserting sweeping claims on behalf of eight named plaintiffs, alleging that defendants (i) engaged in a conspiracy to restrain the California spot gasoline market that involved "repeated and pervasive manipulation of the spot market price" that "caused retail gasoline prices to be higher throughout the Class Period," (ii) that the "central" component of that conspiracy were alleged "sham" joint ventures to import alkylate, (iii) that defendants' conduct "impacted CARBOB spot prices in both San Francisco and Los Angeles," such that (iv) "Californians continue to pay more than $3 billion per year for gasoline above the levels that could be explained by standard cost analysis." ECF 180 ¶¶ 1, 132-134, 138, 144, 152, 156.

Two years of discovery conclusively refuted those false allegations and Plaintiffs' class certification motion and supporting expert reports repudiate most of them. Plaintiffs have now abandoned the claims of five of the eight originally named class representatives. ECF No. 513

11413934v1/016884

at 1. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

ECF No. 512-3,

¶¶ 115, 127, 131. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

*Compare* ECF 512 at 1, *with* Knittel ¶ 186 & tbl. 2. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ ECF No. 512-4, at ¶ 14(1). Plaintiffs now seek to certify a class of Southern California purchasers that covers two relatively brief windows of time in 2015.

The facts that ultimately led Plaintiffs to abandon large swaths of their pleaded allegations were apparent by early November 2022, just weeks before the deadline to serve expert reports. At that point Plaintiffs (and the AG) apparently still had no expert who would offer an opinion on the crucial antitrust injury element of their claim.

To put together an economic model to prove this essential element, Plaintiffs turned to Craig Pirrong, an economist at the University of Houston. Pirrong publishes a blog, www.streetwiseprofessor.com, and a Twitter account (@streetwiseprof) where he regularly purports to analyze data and reaches dubious and conspiratorial conclusions.

- Pirrong has twice been denied tenure at major research universities. Pirrong Dep. I 142.22–143.3. He blames Hillary Clinton for his denial of tenure at the University of Michigan—retribution, he testified, for his publications supposedly using the same "standard event study methodology" he applied in this case to opine that Secretary Clinton's "speeches led to economically and statistically significant declines in pharmaceutical company stock prices" when "Hilary was also invested in a hedge fund that shorted health care stocks." *Id.* 31.19–32.6, 36.1-6, 36.21–37.22 & Ex. 826. Pirrong's second denial of tenure, at Washington University in St. Louis, was, even according to him, unrelated to any purported conspiracies by the Clintons or their supporters. Pirrong Dep. I 142.22–143.17.

- In another blog post, Pirrong offered numerous supposed analyses of scientific data and claimed that COVID "has been hijacked by governments and shadow governments to

5                                    Case No. 3:20-cv-03131 JSC

11413934v1/016884

justify imposition of measures that deprive billions of people basic liberties" and attacked the "dubious evidence of efficacy of COVID vaccines." Ex. 836.

- In a November 5, 2020, blog post called "Remember, Remember, the Third of November" Pirrong purported to analyze the "transparently absurd results in Michigan and Wisconsin" in the 2020 presidential election and called the election returns for President Biden "Soviet- or Nork-style turnout numbers" that were "Not even remotely credible." Ex. 838.

- Pirrong published a blog post on December 11, 2022, in which he purported to analyze data on gun homicides in the U.S. and concluded that the Black Lives Matter movement "cost more black lives in a couple of years than the KKK." Ex. 837.

See Pirrong Dep. I 194.6–9; Pirrong Dep. II 32.15–24, 233.15–21, 239.23–17.

### III.    Pirrong's Model

---

[2] In the November 23, 2022, CMC statement, Class Plaintiffs told the Court they were asking for an extension of the class certification deadline from December 16 to January 6 "To stay generally aligned with the Attorney General's case schedule, and given the Holidays." ECF 506 at 1. The revelation that Class Plaintiffs had only just hired Pirrong as their antitrust impact expert weeks earlier casts doubt on the completeness of that representation.

[3] Schaps Dep. 284.9–287.3.

6                          Case No. 3:20-cv-03131 JSC

11413934v1/016884

**Legal Standard**

Under Federal Rule of Evidence 702, a witness may offer expert testimony only if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

7                                        Case No. 3:20-cv-03131 JSC

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 is a "gatekeeping obligation" that assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 597 (1993)).

The proponent of the expert witness testimony has the burden of proving its admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Expert testimony is reliable only if "the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert,* 509 U.S. at 592). "[A] critical prerequisite is that the underlying methodology be sound. When it is not, exclusion of the expert's opinion is proper." *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *2 (N.D. Cal. Jan. 23, 2015) (citations omitted); *see also Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 987 (9th Cir. 2020) (affirming exclusion of expert at class certification because of "methodological flaws").

## Argument

**I.     Pirrong Model Is Results Oriented and Unreliable as a Matter of Law**

      **A.     Pirrong's Decision to "Not Report Results that Did Not Support a Claim of Inflation" Is Conclusion-Driven and Unreliable as a Matter of Law**

The Court should exclude Pirrong's opinions from evidence because the model he uses to prove antitrust impact is the product of an unscientific results-driven analysis.

"Result-driven analysis, or cherry-picking," is inadmissible because it "undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion." *In re Lipitor Prods. Liability Litig.* 892 F.3d 624, 634 (4th Cir. 2018). In *In re Bextra & Celebrex Prods. Liability Litig.*, 524 F. Supp. 2d 1166, 1175 (N.D. Cal. 2007), the court excluded an expert for "cherry-picking observational studies that support his conclusion and rejecting or ignoring the great weight of the evidence that contradicts

his conclusion" and holding such a practice "does not reflect scientific knowledge, is not derived by the scientific method, and is not 'good science.'" In *In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Products Liability Litigation*, 424 F. Supp. 3d 781, 796 (N.D. Cal. 2020), the court excluded an expert who "assigned virtually no weight" to a factor that was unfavorable to her conclusions because her "analysis was unduly results-driven."

Pirrong engaged in precisely that type of prohibited "result-driven analysis." Plaintiffs alleged in their complaint that Vitol and SK "reached an agreement to coordinate" starting "in or around late October of 2014 or early November of 2014," that "Beginning no later than late February of 2015, Vitol and SK Energy—through Lucas, Niemann, and others—reached agreements with each other and with third parties to raise, fix, maintain and otherwise tamper with the price of refined gasoline in California by manipulating OPIS," and that "Niemann left SK Energy in May 2017." Compl. ¶¶ 92, 98, 111.

Pirrong's model refutes those accusations.

Knittel ¶ 228–29 & fig. 16.

*Id.* ¶ 229.

*Id.* ¶¶ 228–29 & fig. 16.



11413934v1/016884



ECF 512-3 ¶ 103.

*See* Knittel ¶ 339 tbl. 5.[4]

Pirrong Dep. I 187.9–13.[5]

. *Lipitor*, 892 F.3d at 634.

**B.**   **Pirrong's Rejection of All Negative Results as False Negatives But Acceptance of All Positive Results as Reliable Is Impermissibly Outcome-Driven**

---

[4] Cumulative residuals can be calculated by summing the daily residuals starting with the first day of each pricing window.

[5] Pirrong Dep. II 21.1–22.10. His testimony in that case applies equally to his opinions in this case.

10   Case No. 3:20-cv-03131 JSC

11413934v1/016884

███████████████████████████ Pirrong State Initial Report ¶ 189. ██████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ That results-based reasoning renders Pirrong's opinions unreliable. *See Brown v. China Int'l Energy Inc.*, 2014 WL 12576643, at *7 (C.D. Cal. 2014) ("Marek's subjective determination of which events to examine in his event study renders unreliable his analysis and conclusion.").

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ That is not legitimate scientific analysis. *See In re Incretin-Based Therapies Prod. Liab. Litig.* 524 F. Supp. 3d 1007, 1038 (S.D. Cal. 2021) (striking an expert where "the Court finds Dr. Wells' exclusion of the EXSCEL study arbitrary and therefore not properly grounded in science").

████████████████████████████████████████████████████████████████████████████

11                                                    Case No. 3:20-cv-03131 JSC

11413934v1/016884

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Pirrong's model cannot be right every time it favors Plaintiffs and wrong every time it favors the defendants. Pirrong's decision to reject all of his defendant-favoring negative results and accept all of his Plaintiff-favoring positive results is Pirrong doing what he said he could in his Twitter post: "get a model to say anything you want." Ex. 1. That is not admissible expert analysis and the Court should exclude it from evidence.

### C.   Pirrong Cherry Picked His Event Windows to Find Price Inflation

    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

11413934v1/016884



*See* Knittel ¶¶ 334.

Knittel ¶ 351 tbl. 6

Pirrong Dep. I 233.8-12.

13                    Case No. 3:20-cv-03131 JSC

11413934v1/016884



14                    Case No. 3:20-cv-03131 JSC

11413934v1/016884



His "unduly results-driven" selection of event periods is unreliable and inadmissible. (*See In re Viagra & Cialis Prods. Liability Litig.* (N.D. Cal. 2020) 424 F. Supp. 3d 781, 796.)

**D.      Pirrong's Doctored His Results to Remove Negative Numbers**

15                                                          Case No. 3:20-cv-03131 JSC

11413934v1/016884



---

[6] Ex. 4, Sheet CumResid_July_15; Ex. 3, Sheet CumResid_ Nov_15 (highlighting added to both).
[7] Ex. 5, Columns A-C, Rows 111-114 (top pane frozen, highlighting added).

11413934v1/016884

██████████████████████████████████████████████████████████████████

████████████████████████

## II.   Pirrong's Model Fails to Control for Legitimate Market Forces

The Court should also exclude Pirrong's opinions because his model (a) ████████████████████████████████████████████████████████████ and (b) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### A.   Pirrong's Model Has No Explanatory Power and Does Not Reliably Predict Prices During His Control Period

Pirrong's model should be excluded because it cannot reliably predict OPIS rates during his control period, and thus there is no basis to conclude it can reliably predict prices during the putative Class Period.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████

$$\Delta\ CARBOB\ Spot\ Price = \Delta\ NYMEX\ RBOB\ Futures\ Price + \Delta\ CARBOB\ Spot\ Basis$$

- Dependent variable in Professor Pirrong's regressions
- Determined by national and global factors
- Could not be affected by alleged manipulation
- Determined by local and regional factors
- Subject of Plaintiff's allegations
- May also be affected by alleged manipulation if present

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

17   Case No. 3:20-cv-03131 JSC

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ *See General Electric Co. v. Joinder*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Pirrong's findings that prices were higher than his model's predictions are consistent with a poorly specified model with low explanatory power and inadequate controls, not price inflation due to conspiratorial manipulation.

**B.    Pirrong's Model Fails to Control for Important Market Forces that Drive His False Findings of Price Inflation**

Pirrong's failure to control for fundamental supply and demand factors affecting the California gasoline market in the wake of the Torrance explosion compounds the weak explanatory power of his model and leads to his many false positive results.

A "statistical study that fails to correct for salient explanatory variables, or even to make

18                                Case No. 3:20-cv-03131 JSC

the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in federal court." *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 111 F.3d 528, 537-38 (7th Cir. 1997). Indeed, courts recognize that a "regression may be unreliable, and therefore excludable, despite having a high R-squared, for being mis-specified (including by failing to account for significant explanatory variables), among other reasons." *In re Libor-Based Financial Instruments Antitrust Litig.* 299 F. Supp. 3d 430, 494 n.31 (S.D.N.Y. 2018). In *Libor*, the quintessential benchmark price-fixing case, the court excluded an expert's model on this ground, noting that (among other things), major "confounding variables loom large" and show that the models "offer no means of controlling for the effects of economic events and business developments" and therefore cannot "reliably support" a "causation opinion."

And courts regularly exclude event studies that do not control for "confounding information that entered the market on the event date." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. (USA) LLC*, 752 F.3d 82, 95 (1st Cir. 2014); *see also In re Virtus Inv. Ptrs., Inc. Sec. Litig.* (S.D.N.Y. 2017) 2017 WL 2062985, at *4 ("To prove that a stock was responding to a specific piece of information on a specific day under the generally accepted event study approach (1) the return must be abnormal; (2) the abnormal return must be significant; and (3) there must not be confounding news."); *In re Omnicom Group Secs. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008) ("Because the law requires the disaggregation of confounding factors, disaggregating only some of them cannot suffice to establish that the alleged misrepresentations actually caused Plaintiffs' loss.").

### 1. Pirrong's Model Fails to Control for the NYMEX Futures Component of the OPIS Rate Not at Issue in this Case

This not only causes his model's weak explanatory power—it also causes his model to return "nonsensical results such as false positives." *See Olean Wholesale Grocery Cooperative v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 n.9 (9th Cir. 2022) (en banc).

19                                    Case No. 3:20-cv-03131 JSC

**2.      Pirrong Fails to Control for Refinery Disruptions**

---

[8] Pirrong's refinery outage variable is deficient for at least two other reasons. *First*, it fails to control for news of refinery disruptions that did not ultimate result in changes to production. E.g.,

11413934v1/016884

### 3. Pirrong Fails to Control for Vessel Imports

ECF 512-3 ¶ 167.

_____

(… cont'd)

a news report of a fire at a refinery may cause prices to increase as firms anticipate a supply disruption. But if the fire is quickly put out or the refinery can make up any lost production, Pirrong's outage variable would not capture the price effect from that news report and Pirrong would find a false-positive overcharge. *Second*, Pirrong's outage variable includes only outages that are entirely unplanned. If a refinery is down for planned maintenance but the restart date is delayed, Pirrong would miss the change in production due to the delay. *See* Knittel ¶ 282.

11413934v1/016884

**4.      Pirrong Fails to Control for "Backwardation"**



Case No. 3:20-cv-03131 JSC

11413934v1/016884

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████

### III.    The Overwhelming Statistical Insignificance of Pirrong's Results Further Demonstrates their Unreliability

The Court should exclude Pirrong's results because they produce results that are indistinguishable from mere chance. The Judicial Manual on Scientific Evidence states: "In most scientific work, the level of statistical significance required to reject the null hypothesis (i.e., to obtain a statistically significant result) is set conventionally at 0.05 or 5%." *Id.* § 303 at 10.[9] The Manual continues, "Although the 5% criterion is typical, reporting of more stringent 1% significance tests or less stringent 10% tests can also provide useful information." *Id.*

---

[9] *See also ATA Airlines, Inc. v. Fed. Exp. Corp.*, 665 F.3d 882, 895 (7th Cir. 2011) (noting that a 95 percent confidence interval—corresponding to a 5% statistical significance threshold—"is the standard criterion of reasonable confidence used by statisticians").

Although courts have held that the mere "fact that these two variables are not statistically significant at the 1%, 5%, and 10% levels goes to the weight, not the admissibility" of a model, *see In re High-Tech Employee Antitrust Litigation*, 2014 WL 1351040, at *15 (N.D. Cal. 2014), statistical significance "remains an important metric to distinguish between results supporting a true association and those resulting from mere chance." *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 793 (2017).

Pirrong's results do not just fail conventional measures of statistical significance (the issue in *High-Tech*)—they do not come anywhere close.

24   Case No. 3:20-cv-03131 JSC

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████ The Federal Reference Manual on Scientific Evidence advises that "When the expert evaluates the null hypothesis that a variable of interest has no linear association with a dependent variable against the alternative hypothesis that there is an association, a two-tailed test, which allows for the effect to be either positive or negative, is usually appropriate." *Id.* § 303 at 11. The Manual then states: "Because using a one-tailed test produces p-values that are one-half the size of p-values using a two-tailed test, ***the choice of a one-tailed test makes it easier for the expert to reject a null hypothesis***." *Id.* at 11. ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

This is another results-driven decision by Pirrong to manipulate his results and make them look more favorable to Plaintiffs than they really are. *See Lipitor*, 892 F.3d at 634 (excluding impermissible "cherry-picking" of an expert who changed his method for calculating p-values so that his analysis "returned a statistically significant result."). ███████████████

██████████████████████████████████████████████████████

███████████████████ is "Result-driven analysis" that "does not reflect scientific knowledge, is not derived by the scientific method, and is not 'good science.'" *Lipitor*, 892 F.3d at 634.

## Conclusion

The Court should exclude Pirrong's opinions on antitrust impact from evidence.

---

[10] Sheets  CumResid_T_FebMar_15,  CumResid_T_MarMay_15,  CumResid_T_MarMay_15. ██████████████████████████████████████████████ Knittel ¶ 376.

25                         Case No. 3:20-cv-03131 JSC

11413934v1/016884

Dated:  April 14, 2023

Respectfully Submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

SUSMAN GODFREY LLP

By: /s/ Steven G. Madison
John B. Quinn (SBN 90378)
Steven G. Madison (SBN 101006)
Shon Morgan (SBN 187736)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
johnquinn@quinnemanuel.com
stevemadison@quinnemanuel.com
shonmorgan@quinnemanuel.com

By: /s/ Amanda K. Bonn
Neal S. Manne (SBN 94101)
Alexander L. Kaplan (Pro Hac Vice)
Michael C. Kelso (Pro Hac Vice)
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com
mkelso@susmangodfrey.com

John M. Potter (SBN 165843)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
johnpotter@quinnemanuel.com

Amanda K. Bonn (SBN 270891)
Eliza Finley (SBN 301318)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
abonn@susmangodfrey.com
efinley@susmangodfrey.com

Attorneys for Defendant Vitol Inc.

Attorneys for Defendant Vitol Inc.

K&L GATES LLP

COVINGTON & BURLING LLP

By: /s/ Michael E. Martinez
Michael E. Martinez (Pro Hac Vice)
michael.martinez@klgates.com
Lauren Norris Donahue (Pro Hac Vice)
lauren.donahue@klgates.com
Clifford C. Histed (Pro Hac Vice)
clifford.histed@klgates.com
Brian J. Smith (Pro Hac Vice)
brian.j.smith@klgates.com
John E. Susoreny (Pro Hac Vice)
john.susoreny@klgates.com
70 W. Madison St., Suite 3300
Chicago, Illinois 60602
Telephone:  (312) 372-1121

By: /s/ Jeffrey M. Davidson
Jeffrey M. Davidson (SBN 248620)
jdavidson@cov.com
Phillip Warren (SBN 89744)
pwarren@cov.com
Amy S. Heath (SBN 312516)
aheath@cov.com
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile:  (415) 591-6091

Attorneys for Defendants SK Energy
Americas, Inc. and SK Trading International
Co., Ltd.

John S. Playforth (Pro Hac Vice)
jplayforth@cov.com
Carol S. Weiland (Pro Hac Vice)
cweiland@cov.com
Jeffrey Cao (SBN 313389)
jcao@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

11413934v1/016884

**Certificate of Service**

I hereby certify that a true and correct copy of the above document was served pursuant to Fed. R. Civ. P. 5(b) by electronically mailing a copy to the following counsel of record:

Michael P. Lehmann
mlehmann@hausfeld.com
Christopher L. Lebsock
clebsock@hausfeld.com
Tae Kim
tkim@hausfeld.com
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104

Dena C. Sharp
dsharp@girardsharp.com
Mikaela Bock
mbock@girardsharp.com
Scott Grzenczyk
scottg@girardsharp.com
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108

*Interim Co-Lead Class Counsel*

Jeffrey M. Davidson
jdavidson@cov.com
Phillip H. Warren
pwarren@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105

John S. Playforth
jplayforth@cov.com
COVINGTON AND BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

Michael E. Martinez
michael.martinez@klgates.com
Lauren Norris Donahue
Lauren.Donahue@klgates.com
Brian J. Smith
brian.j.smith@klgates.com
John E. Susoreny
john.susoreny@klgates.com
Clifford C. Histed
clifford.histed@klgates.com
Stephen M. Humenik
Stephen.humenik@klgates.com
K L GATES, LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602

*Counsel for Defendants SK Energy Americas, Inc.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:

By: /s/ Helen Danielson

1                                    Case No. 3:20-cv-03131 JSC

11413934v1/016884