1   [Submitting Counsel on Signature Page]

2

3

4

5

6

7

8

9

10                          **UNITED STATES DISTRICT COURT**
                          **NORTHERN DISTRICT OF CALIFORNIA**
11                            **SAN FRANCISCO DIVISION**

12

13   IN RE CALIFORNIA GASOLINE SPOT          CASE NO. 3:20-cv-03131-JSC
     MARKET ANTITRUST LITIGATION
14                                           **SETTLEMENT CLASS**
                                             **REPRESENTATIVES' NOTICE OF**
15   ─────────────────────────────          **MOTION AND MOTION FOR**
                                             **PRELIMINARY APPROVAL OF CLASS**
16   This Document Relates to:               **ACTION SETTLEMENT**
     All Class Actions
17                                           **MOTION HEARING**

18

19                                              DATE:       August 8, 2024
                                                TIME:       10:00 a.m.
20                                              LOCATION:   San Francisco Courthouse,
                                                            Courtroom 8—19th Floor
21                                                          450 Golden Gate Avenue,
                                                            San Francisco, CA 94102
22

23                                           HON. JACQUELINE S. CORLEY

24

25

26

27

28

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL ............................. 1

I.       STATEMENT OF ISSUES TO BE DECIDED ................................................... 3

II.      INTRODUCTION ............................................................................................ 3

III.     PROCEDURAL HISTORY ............................................................................... 4

         A.    Initial Filing, Related Actions, and Consolidation ................................. 4

         B.    Discovery and Expert Work .................................................................. 5

         C.    Class Certification and *Daubert* ......................................................... 6

         D.    The Settlement in the People's Action .................................................. 6

         E.    Settlement of this Litigation ................................................................ 7

IV.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............. 7

         A.    Legal Standard ................................................................................... 7

         B.    Certification of the Settlement Class is Likely ....................................... 9

               1.    The Settlement Class Satisfies Rule 23(a)'s Requirements ............ 9

                     a.    Numerosity .......................................................... 10

                     b.    Commonality ........................................................ 10

                     c.    Typicality ............................................................. 11

                     d.    Adequacy ............................................................ 12

               2.    The Settlement Class Satisfies Rule 23(b)(3)'s Requirements ...... 13

                     a.    Predominance ....................................................... 13

                     b.    Superiority ........................................................... 14

         C.    The Settlement Is Fair, Reasonable, and Adequate ................................ 15

               1.    Procedural Considerations ....................................................... 15

                     a.    Adequate Representation of the Class ....................... 15

                     b.    Arm's Length Negotiations After Extensive Discovery ...... 16

               2.    Substantive Considerations ...................................................... 17

i

| | | |
|---|---|---|
| a. | Strength of Plaintiffs' Case and Risks of Continued Litigation | 17 |
| b. | The Proposed Plan of Allocation Provides An Effective and Equitable Method For Distributing Benefits To the Settlement Class | 19 |
| c. | Attorneys' Fees and Expenses | 19 |
| d. | Service Awards to Class Representatives | 20 |
| e. | Additional Agreements | 21 |
| f. | Equitable Treatment of Settlement Class Members | 22 |
| g. | The Released Claims Are Those Pled in the Litigation | 23 |
| h. | Past Distributions | 23 |

V.    THE NOTICE PLAN SHOULD BE APPROVED ........................................... 23

VI.   THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR AND THE ESCROW AGENT TO MAINTAIN THE SETTLEMENT FUND ............. 25

VII.  THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL........................................................................ 26

VIII. THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE .............................. 27

IX.   CONCLUSION ................................................................................................. 27

1

## TABLE OF AUTHORITIES

2

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
    2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)......................................................17

*Alaska Airlines v. United Airlines*,
    948 F.2d 536 (9th Cir. 1991).....................................................................................14

*Alvarez v. Farmers Ins. Exchange*,
    2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)..........................................................21

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................................................................12, 14

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
    2021 WL 5991060 (N.D. Cal. July 12, 2021)..........................................................22

*Beck-Ellman v. Kaz USA, Inc.*,
    2013 WL 1748729 (S.D. Cal. Jan. 7, 2013).............................................................24

*Bellinghausen v. Tractor Supply Co.*,
    303 F.R.D. 611 (N.D. Cal. 2014)..............................................................................14

*Boston Retirement System v. Uber Technologies, Inc.*,
    2022 WL 2954937 (N.D. Cal. 2022).........................................................................12

*Castillo v. Bank of America, NA*,
    980 F.3d 723 (9th Cir. 2020)....................................................................................11

*Chinitz v. Intero Real Est. Servs.*,
    2020 WL 7042871 (N.D. Cal. Dec. 1, 2020)...........................................................24

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...........................................................................11, 13

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994)........................................................................................20

*In re Broiler Chicken Antitrust Litig.*,
    2022 WL 1720468 (N.D. Ill. May 27, 2022) ............................................................9

*In re Cathode Ray Tube Antitrust Litig.*,
    308 F.R.D. 606 (N.D. Cal. 2015)..............................................................................14

*In re Cipro Cases I & II*,
    121 Cal. App. 4th 402 (2004)....................................................................................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    2006 WL 1530166 (N.D. Cal. June 5, 2006) ..........................................................11

27

28

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
　　2013 WL 12333442 (N.D. Cal. Jan. 8, 2013), *report and recommendation
　　adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*,
　　2014 WL 12879520 (N.D. Cal. June 27, 2014) ............................................................ 9

*In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*,
　　2008 WL 11504857 (C.D. Cal. Dec. 31, 2008) ............................................................ 9

*In re Glumetza Antitrust Litig.*,
　　336 F.R.D. 468 (N.D. Cal. 2020) .............................................................................. 14

*In re High-Tech Employee Antitrust Litig.*,
　　985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................... 11

*In re Hyundai & Kia Fuel Econ. Litig.*,
　　926 F.3d 539 (9th Cir. 2019) .............................................................................. 8, 13

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
　　2022 WL 2343268 (N.D. Cal. June 28, 2022) ......................................................... 10

*In re Korean Ramen Antitrust Litig.*,
　　2015 WL 13021314 (N.D. Cal. Nov. 10, 2015) ......................................................... 9

*In re Lidoderm Antitrust Litig.*,
　　2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ......................................................... 21

*In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331 (N.D. Cal. Mar. 20,
　　2017), *aff'd sub nom. Young v. LG Chem Ltd.*, 783 F. App'x 727 (9th Cir.
　　2019) ........................................................................................................................ 9

*In re Omnivision Techs., Inc.*,
　　559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 22

*In re Optical DiskDrive Antitrust Litig.*,
　　303 F.R.D. 311 (N.D. Cal. 2014) .............................................................................. 12

*In re Packaged Seafood Prod. Antitrust Litig.*,
　　2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ......................................................... 24

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
　　338 F.R.D. 294 (D. Mass. 2021) ................................................................................ 9

*In re Static Random Access (SRAM) Antitrust Litig.*,
　　2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ......................................................... 14

*In re Static Random Access memory (SRAM) Antitrust Litig.*,
　　264 F.R.D. 603 (N.D. Cal. 2009) ................................................................................ 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
　　2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .............................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
　　267 F.R.D. 583 (N.D. Cal. 2010), *amended in part*, No. M 07-1827 SI, 2011
　　WL 3268649 (N.D. Cal. July 28, 2011) ...................................................................... 9

*Massey v. Star Nursing, Inc.*,
　　2022 WL 14151758 (N.D. Cal. Oct. 24, 2022) .................................................... 23, 24

*Nat'l Rural Telecomm. Coop. v. DIRECTV*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................ 16

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .......................................................................... 15, 17, 23

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale
    Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143
    S. Ct. 424, 214 L. Ed. 2d 233 (2022) ............................................................................ 9

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................ 16, 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................................... 13

*Uschold v. NSMG Shared Servs.*, LLC,
    333 F.R.D. 157 (N.D. Cal. 2019) ................................................................................ 15

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................. 11, 13

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .............................................................. 20

**Other Authorities**

2 *Newberg on Class Actions*, § 11.28 ...................................................................... 12

4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002) ...................... 16

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.) .......................... 16

*Manual for Complex Litigation, Third* § 30.42 (1995) .............................................. 16

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................ 8, 9, 10

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 10

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 10, 11

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 11

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 12

Fed. R. Civ. P. 23(b) ........................................................................................................ 8

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................................ 14

Fed. R. Civ. P. 23(e) ...................................................................................................... 21

Fed. R. Civ. P. 23(e)(1) ................................................................................ 8, 9, 14, 23

Settlement Class Representatives' Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-cv-03131-JSC

Fed. R. Civ. P. 23(e)(2)(A)-(B) .................................................................................. 15

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(3) ......................................................................................... 9, 21

Settlement Class Representatives' Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-cv-03131-JSC

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

**PLEASE TAKE NOTICE THAT** on August 8, 2024, at 10:00 a.m., or a date and time convenient for the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 8, 19th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Settlement Class Representatives,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:

(1)    preliminarily approving the proposed Settlement Agreement;

(2)    finding that the following Settlement Class is likely to be certified for settlement purposes: (a) natural persons who, at the time of purchase, were not residents of the State of California, and (b) all Persons that are not natural persons, wherever located, that: (i) purchased Gasoline from a retailer, (ii) for their own use and not for resale, (iii) within the State of California, (iv) from February 18, 2015, through May 31, 2017;[2]

(3)    conditionally appointing Settlement Class Representatives to represent the Settlement Class;

(4)    conditionally appointing Dena C. Sharp of Girard Sharp LLP and Christopher L. Lebsock of Hausfeld LLP as Settlement Class Counsel;

(5)    preliminarily approving the proposed Plan of Allocation;

(6)    approving and ordering the implementation of the proposed Notice Plan;

(7)    appointing Verita Global, LLC ("Verita") f/k/a KCC Class Action Services,

---

[1] Settlement Class Representatives for the purposes of the proposed settlement are Fricke-Parks Press, Inc., Bogard Construction, Inc., and Ritual Coffee Roasters, Inc. Capitalized terms in this Motion incorporate the defined terms from the Settlement Agreement.

[2] Excluded from the Settlement Class are (a) the California Attorney General, bringing suit in the name of the People of the State of California, including in his role as *parens patriae* for natural persons residing in the State of California, as pleaded in the complaint in the People's Action; (b) the Settling Defendants or any other named defendant in the litigation; (c) officers, directors, employees, legal representatives, heirs, successors, or wholly or partly owned subsidiaries or affiliated companies of the Settling Defendants or any other named defendant in the litigation; (d) Class Counsel and their respective partners and employees; (e) the Court and other judicial officers, their immediate family members, and associated court staff assigned to the Litigation; and (f) those individuals who timely and validly exclude themselves from the Settlement Class.

1                         LLC as the Settlement Administrator;

2          (8)      appointing Huntington National Bank as the escrow agent to maintain the

3                  Settlement Fund;

4          (9)      authorizing the payment of initial notice and settlement administration

5                  expenses; and

6         (10)   setting a schedule for final approval, including for a final approval hearing.

7      A copy of the [Proposed] Order Granting Preliminary Approval of Class Action

8 Settlement is separately submitted with this Motion.

9      Settlement Class Representatives' Motion is based on Federal Rule of Civil Procedure 23,

10 the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"),

11 this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of

12 Dena C. Sharp, the Declaration of Carla A. Peak, the pleadings and papers on file in *In re*

13 *California Gasoline Spot Market Antitrust Litigation*, No. 3:20-cv-03131-JSC (the "Litigation"),

14 and any other matter this Court may take notice of.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should grant preliminary approval of the Settlement Agreement and authorize notice to the Settlement Class.

### II.    INTRODUCTION

Settlement Class Representatives seek preliminary approval of a $13,930,000 settlement with Defendants Vitol Inc., Brad Lucas, SK Energy Americas, Inc., SK Trading International Co. Ltd., and David Niemann—memorialized in the Settlement Agreement (Declaration of Dena C. Sharp, dated July 1,2024, attached as Exhibit 1 ("Sharp Decl."), Ex. A (Settlement Agreement)). While this Litigation has been complex and challenging, the proposed settlement is simple: the Settlement Class, comprised of businesses and non-California natural persons that purchased Gasoline in California, receives a $13,930,000 million, non-reversionary fund in exchange for releasing their claims in this Litigation. The Settlement Agreement, which is the result of months of mediation and arm's-length negotiations between the parties, complements a separate settlement reached by the California Attorney General on behalf of natural persons who reside in the state of California, providing relief to a different category of gasoline purchasers.

Settlement Class Members will be eligible for payments from the Settlement Fund based on the amount they paid for Gasoline within the State of California during the relevant time period. The Notice Plan will advise Settlement Class Members of their rights and options. Payments will be distributed to Settlement Class Members in accordance with the proposed Plan of Allocation. The Settlement Agreement offers Settlement Class Members a streamlined claims process supervised by Settlement Class Counsel and an experienced Settlement Administrator. Attorneys' fees, expenses, and service awards will be paid from the Settlement Fund in amounts subject to this Court's discretion.

The Settlement Agreement meets all the criteria for approval under Federal Rule of Civil Procedure 23. The carefully negotiated Settlement Agreement is the product of extensive arm's-length negotiations overseen by the Honorable Layn R. Phillips (Ret.), an experienced mediator,

and conducted by experienced attorneys familiar with the legal, factual, and procedural issues in this case, including the complicated nature of modeling damages related to manipulation of benchmark prices and unique aspects of the overlap with the California Attorney General's parallel action in state court (the "People's Action"). The terms of the Settlement Agreement and Plan of Allocation treat all Settlement Class Members equitably relative to each other and will deliver significant relief. Settlement Class Representatives and Settlement Class Counsel believe the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

Settlement Class Representatives ask the Court to initiate the settlement approval process by entering the proposed Preliminary Approval Order—preliminarily approving the Settlement Agreement, finding that the Settlement Class is likely to be certified for settlement purposes, conditionally appointing Settlement Class Representatives to represent the Settlement Class, conditionally appointing Settlement Class Counsel, preliminarily approving the proposed Plan of Allocation, approving and ordering the implementation of the proposed Notice Plan, appointing Verita as the Settlement Administrator, appointing Huntington National Bank as the escrow agent to maintain the Settlement Fund, authorizing the payment of initial notice and settlement administration expenses, and setting a schedule for final approval, including for a final approval hearing.

## III. PROCEDURAL HISTORY

### A. Initial Filing, Related Actions, and Consolidation

On May 6, 2020, the first proposed class action in this matter was filed against Vitol Inc., SK Energy Americas, Inc., and SK Trading International Co. Ltd. Case No. 3:20-cv-03131-JSC, Dkt. 1 (N.D. Cal.). In the following days and weeks, multiple additional proposed class cases were filed, which were related to this Court. Dkts. 20, 33, 42, 59, 60, 65-66, 70, 101-102, 105, 171-172. The class cases were filed on the heels of the California Attorney General's filing of a complaint against overlapping Defendants in San Francisco Superior Court—the People's Action. The Court appointed leadership in the class actions, and Plaintiffs filed a consolidated complaint

on September 24, 2020, on behalf of a class of all purchasers of gasoline in California during the relevant time period. Dkt. 186.

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted and a lack of standing to seek injunctive relief. Dkt. 224. Defendant SK Trading International Co. Ltd. further sought to dismiss the claims against it for lack of personal jurisdiction and improper venue. Dkt. 221. After a period of jurisdictional discovery, the Court granted SK Trading International Co. Ltd.'s motion with respect to personal jurisdiction and venue and largely denied Defendants' substantive motions to dismiss. Dkts. 281, 348.

**B.**     **Discovery and Expert Work**

Discovery was heavily contested and continued for years. Settlement Class Counsel entered into a common interest agreement with the California Attorney General and worked collaboratively on many aspects of discovery. Sharp Decl. ¶¶ 7-8. Settlement Class Counsel took the lead in conducting and directing the multi-language document review and on many of the depositions, working in coordination with the California Attorney General at every step. *Id*. ¶¶ 8-9. Settlement Class Counsel reviewed millions of pages of documents, conducted 23 depositions of Defendants' current and former employees and 16 depositions of third-party witnesses, and obtained information pursuant to interrogatories. *Id*. ¶¶ 9-11.

Expert work in this matter was complex, wide-ranging, and multifaceted. *Id*. ¶¶ 13, 17. Settlement Class Counsel worked on retaining and developing extensive expert testimony, including industry testimony on gasoline trading, as well as economic modeling and regression calculations to determine the damages California Gasoline purchasers suffered. *Id*. Settlement Class Counsel and Plaintiffs' experts analyzed documents and data concerning multiple levels of the distribution and pricing chains for gasoline and gasoline products. *Id.* The expert analysis was particularly complicated given that the alleged price fixing involved a benchmark price that was set each day, and that developing the appropriate inputs for the economic model required, even at class certification, full expert reports from merits experts. *Id*. ¶ 17. Defendants also asserted throughout this Litigation that Plaintiffs sought "umbrella damages," which are generally

disfavored under the antitrust laws. *Id.* While the Court agreed with Plaintiffs that "umbrella damages" are available under the Cartwright Act,[3] the fact that the allegations in this Litigation involve benchmark manipulation and goods sold by both Defendants and their competitors, added an extra layer of complexity to an already challenging economic model. *Id.*

Settlement Class Counsel coordinated with the California Attorney General on expert work wherever feasible, but, due to the procedural hurdle class certification posed, and the differing case schedules and ultimate trial venues, Settlement Class Counsel and the California Attorney General largely retained, and paid for, their own respective slates of experts—further multiplying the expense and complexity of this Litigation. *Id.* ¶ 13. In short, even though Settlement Class Counsel and the California Attorney General looked for efficiencies wherever they could and coordinated closely to avoid further increasing the challenge of proving their respective cases, expert work in this matter was complicated, protracted, and costly. *Id.* Settlement Class Counsel also defended multiple expert depositions. *Id.* ¶ 15.

**C.    Class Certification and *Daubert***

Following extensive fact discovery, Plaintiffs Asante Cleveland, Bogard Construction, Inc., and Ritual Coffee Roasters, Inc. moved to certify a class of all Southern California Gasoline purchasers on January 6, 2023, and proffered three expert reports in support thereof. Dkt. 513; Sharp Decl. ¶ 14. Defendants opposed the motion with support from three experts (Dkt. 530; Sharp Decl. ¶ 16), and Plaintiffs replied, relying on responsive expert reports (Dkt. 543; Sharp Decl. ¶ 16). Defendants moved to exclude each of Plaintiffs' experts under *Daubert* (Dkts. 528, 532, 534), Plaintiffs opposed (Dkt. 545-2), and Defendants replied (Dkts. 549, 551, 553). The Court heard oral argument on class certification and the *Daubert* motions on July 20, 2023. *See* Dkt. 577.

**D.    The Settlement in the People's Action**

In their reply in support of their *Daubert* motions, Defendants publicly disclosed for the first time that they had reached an agreement to settle the claims brought by the California

---

[3] *See e.g.*, Order re: Defendants' Motion for Partial Judgment on the Pleadings, Dkt. 482.

1   Attorney General on behalf of California natural persons, which comprised a substantial portion

2   of the class that Plaintiffs at that time sought to certify. Dkt. 551; Sharp Decl. ¶ 19. Defendants

3   argued that the settlement in the People's Action was a further basis to deny class certification in

4   this Litigation. *See* Class Cert. Hrg. Tr. (July 20, 2024), at 102:17-104:16; Sharp Decl. ¶ 19.

5   Though Plaintiffs and Settlement Class Counsel had expressed willingness to participate in the

6   settlement negotiations between Defendants and the California Attorney General, those

7   negotiations proceeded without Plaintiffs and Settlement Class Counsel. Sharp Decl. ¶ 18.

8          Given the settlement in the People's Action and the potential implications on class

9   certification, the Court deferred ruling on the motion for class certification until there was a final,

10  signed settlement agreement in the People's Action. *See* Dkt. 577. Defendants and the California

11  Attorney General subsequently finalized their settlement, which Settlement Class Counsel

12  understands is expected to be filed in San Francisco Superior Court by July 9, 2024. At that time,

13  its terms will become public, and these can thus be addressed in the context of Settlement Class

14  Representatives' final approval papers. Sharp Decl. ¶ 20.

15         **E.     Settlement of this Litigation**

16         As the settlement in the People's Action came into focus, the parties in this Litigation

17  began negotiating with Defendants to resolve the claims in the action not covered by the

18  settlement in the People's Action—those brought on behalf of businesses and non-California

19  natural persons. Sharp Decl. ¶ 21. After an initial mediation in October 2023 with Hon. Layn R.

20  Phillips, negotiations continued. *Id.* The settlement is the result of extensive arm's length

21  discussions between the parties, and was reached under the auspices of Judge Phillips. *Id.* ¶¶ 21-

22  22.

23  **IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

24         **A.     Legal Standard**

25         At the preliminary approval stage, the Court may direct notice of a proposed settlement to

26  the class if it concludes that it will likely be able to certify the settlement class under Rule

27  23(e)(1) and to approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

28

To assess whether certification is likely under Rule 23(e)(1), the Court conducts a two-step analysis under Rules 23(a) and 23(b).

*First*, the Court must determine whether the proposed class meets the Rule 23(a) requirements:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Second,* if those four conditions are satisfied, the Court considers whether the proposed settlement class satisfies one of the requirements listed in Rule 23(b). In relevant part, under Rule 23(b)(3), a proposed settlement class may be maintained if questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is less demanding in the settlement context than in the litigation context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (*en banc*) (finding that manageability concerns are not an issue for a settlement class).

To assess whether a proposed settlement is fair, reasonable, and adequate, under Rule 23(e)(2), the Court considers whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims;

1          (iii) the terms of any proposed award of attorney's fees, including timing of

2                payment; and

3          (iv) any agreement required to be identified under Rule 23(e)(3); and

4      (D) the proposal treats class members equitably relative to each other.

5    Fed. R. Civ. P. 23(e)(2). The Court also considers the District Guidelines.

6        **B.**     **Certification of the Settlement Class is Likely**

7        The Settlement Class is cohesive, objectively defined, and likely to be certified upon entry

8    of judgment. *See* Fed. R. Civ. 23(e)(1). Courts routinely certify indirect purchaser classes alleging

9    antitrust violations, both for litigation and settlement purposes.[4] As shown below, the proposed

10   Settlement Class satisfies Rule 23 and other procedural guidelines and is likely to be certified.

11           **1.**     **The Settlement Class Satisfies Rule 23(a)'s Requirements**

12        Under Rule 23(a), certification is appropriate where: (1) the class is so numerous that

13   joinder of all members is impracticable; (2) there are questions of law or fact common to the

14   class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

15   of the class; and (4) the representative parties will fairly and adequately protect the interests of the

16   class. Fed. R. Civ. P. 23(a). These requirements are readily satisfied here. In their class

---

17
18   [4] **Litigation Classes**: *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424, 214 L. Ed. 2d 233 (2022); *In re*
19   *Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022); *In re*
20   *Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. 2021); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010), *amended in part*, No. M
21   07-1827 SI, 2011 WL 3268649 (N.D. Cal. July 28, 2011).

22   **Settlement Classes**: *In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*, No.
23   SACV058809JVSMLGX, 2008 WL 11504857 (C.D. Cal. Dec. 31, 2008); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442 (N.D. Cal.
24   Jan. 8, 2013), *report and recommendation adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*, No. C 06-4333 PJH, 2014 WL 12879520 (N.D. Cal. June 27, 2014); *In*
25   *re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013); *In re Lithium Ion Batteries Antitrust Litig.*, No. 413MD02420YGRDMR, 2017 WL
26   1086331 (N.D. Cal. Mar. 20, 2017), *aff'd sub nom. Young v. LG Chem Ltd.*, 783 F. App'x 727
27   (9th Cir. 2019); *In re Korean Ramen Antitrust Litig.*, No. C-13-04115-WHO, 2015 WL 13021314 (N.D. Cal. Nov. 10, 2015).

28

certification opposition, Defendants did not dispute that Plaintiffs could satisfy Rule 23(a). Def. Opp. to Class Cert., Dkt. 529, Ex. 2.

### a. Numerosity

Rule 23(a)(1) requires that members of a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity does not require a specific number of class members, courts in the Ninth Circuit generally agree that numerosity is satisfied if the class includes 40 or more members. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022).

The Settlement Class easily meets this threshold. The Settlement Class includes businesses and non-California natural persons who purchased Gasoline in California during the period of February 18, 2015, through May 31, 2017 (the "Settlement Class Period"). Common sense dictates that the number of proposed Settlement Class Members well exceeds 40 persons throughout the Settlement Class Period. That numerosity is satisfied here is also supported by the class certification report of Plaintiffs' economic expert Dr. Meyendorff, who estimated damages for purchases of Gasoline in Southern California by non-California natural persons and businesses as $42.34 million during the relevant time periods.[5] Publicly available records corroborate that there are thousands of businesses operating in California that potentially purchased Gasoline during the Settlement Class Period. Declaration of Carla A. Peak, dated July 1, 2024, attached as Exhibit 2 ("Peak Decl.") ¶¶ 14, 18 (describing list of businesses in and around California with large fleets that contains 60,623 postal addresses). Accordingly, the Settlement Class satisfies Rule 23(a)(1).

### b. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one that "is capable of classwide resolution—which means that

---

[5] Rebuttal Expert Report of Dr. Anna Meyendorff dated June 5, 2023, Dkt. 545-4, at 42. Because the motion seeking certification of all purchasers of Gasoline in California was fully briefed before the California Attorneys General settled claims on behalf of California natural persons, Plaintiffs' expert analysis on behalf of the Settlement Class is necessarily limited.

10

1   determination of its truth or falsity will resolve an issue that is central to the validity of each one

2   of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For

3   purposes of Rule 23(a)(2), "[e]ven a single common question of law or fact that resolves a central

4   issue will be sufficient to satisfy this mandatory requirement for all class actions." *Castillo v.

5   Bank of Am.*, NA, 980 F.3d 723, 728 (9th Cir. 2020). "Antitrust liability alone constitutes a

6   common question that 'will resolve an issue that is central to the validity' of each class member's

7   claim 'in one stroke'" because proof of the violation "'will focus on defendants' conduct and not on

8   the conduct of individual class members.'" *In re High-Tech Employee Antitrust Litig.*, 985 F.

9   Supp. 2d 1167, 1180 (N.D. Cal. 2013) (citing *Dukes*, 564 U.S. at 349).

10      This case presents numerous common questions of fact and law that relate to the

11  Defendants' anticompetitive conduct, including whether the Defendants entered into a

12  "combination of capital, skill, or other acts" under the Cartwright Act that increased the

13  benchmark price of California gasoline. *See* Pltfs' Mtn. for Class Cert., Dkt. 513 at 9 (listing

14  common questions of law and fact). The same questions of law and fact also apply to all members

15  of the Settlement Class who would necessarily use the same evidence to prove the Defendants'

16  alleged conduct "in one stroke." *Dukes*, 564 U.S. at 350. The Settlement Class satisfies Rule

17  23(a)(2).

18                      **c.      Typicality**

19      Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

20  of the claims or defenses of the class." *Castillo*, 980 F.3d at 729. Claims are typical of a class

21  when they "arise[ ] from the same event, practice or course of conduct that gives rise to the claims

22  of the absent class members" and are "based on the same legal or remedial theory." *In re

23  Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal.

24  June 5, 2006) (alteration in original) (citation omitted). "[C]laims are 'typical' if they are

25  reasonably co-extensive with those of absent class members; they need not be substantially

26  identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

27      Here, the Settlement Class Representatives' claims and those of the members of the

28

1    proposed Settlement Class are based on the same legal theory (price-fixing through manipulation

2    of the benchmark price for gasoline in California) and injury (overcharges on retail purchases of

3    Gasoline). "In cases involving an alleged price-fixing conspiracy, the representative plaintiff's

4    claim is often considered typical even where the plaintiff followed different purchasing

5    procedures, purchased in different quantities or at different prices, or purchased a different mix of

6    products than did the members of the class." *In re Optical DiskDrive Antitrust Litig.*, 303 F.R.D.

7    311, 317 (N.D. Cal. 2014). The fact that the proposed Settlement Class consists of both non-

8    California natural persons and businesses that purchased from different gas stations does not

9    weigh against a finding of typicality. Each Settlement Class Member's claim stems from the

10   Defendants' alleged conduct and resulting overcharge on purchases of retail Gasoline. Typicality

11   is satisfied.

12                                    **d.      Adequacy**

13          Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

14   the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Products, Inc. v. Windsor*,

15   521 U.S. 591, 625 (1997) (finding Rule 23(a)(4) "serves to uncover conflicts of interest between

16   named parties and the class they seek to represent"). To determine whether proposed settlement

17   class representatives meet this standard, courts ask two questions: (i) do the proposed

18   representatives have any conflicts of interest with other class members; and (ii) will they

19   prosecute the action vigorously on behalf of the class. *See Boston Retirement System v. Uber*

20   *Technologies, Inc.*, 2022 WL 2954937 * 4 (N.D. Cal. 2022); *accord Staton v. Boeing Co.*, 327

21   F.3d 938, 957 (9th Cir. 2003) (applying this analysis to a settlement).

22          No conflicts of interest exist between Settlement Class Representatives and Settlement

23   Class Members. *Staton*, 327 F.3d at 957. Settlement Class Representatives and the Settlement

24   Class Members have the same objective: to resolve their claims on the best terms possible given

25   the circumstances of this Litigation. And adequacy is also presumed where, as here, a fair

26   settlement was negotiated at arm's length. 2 *Newberg on Class Actions,* § 11.28, 11-59.

27

28

1

            **2.**        **The Settlement Class Satisfies Rule 23(b)(3)'s Requirements**

2          Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common

3  to class members predominate over any questions affecting only individual members, and that a

4  class action is superior to other available methods for fairly and efficiently adjudicating the

5  controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class easily satisfies these

6  requirements.

7                  **a.**        **Predominance**

8          Predominance exists when plaintiffs' claims "depend upon a common contention of such

9  a nature that it is capable of classwide resolution—which means that determination of its truth or

10  falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

11  *Wal-Mart*, 564 U.S. at 338. "[E]ven if just one common question predominates, 'the action may

12  be considered proper under Rule 23(b)(3) even though other important matters will have to be

13  tried separately.'" *Hyundai & Kia*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*,

14  577 U.S. 442, 453 (2016)).

15          The predominance inquiry is less demanding in the settlement context because, unlike

16  certification for litigation, "manageability is not a concern in certifying a settlement class where,

17  by definition, there will be no trial." *Id.* at 556–57. The predominant common question at this

18  stage will be whether this settlement is fair, adequate, and reasonable. *See Hanlon*, 150 F.3d at

19  1026. And even if the Court examines the disputed questions that would be tried absent

20  settlement, common issues predominate and include whether Defendants' conduct violated the

21  antitrust laws and caused retail Gasoline prices to be higher than they would have been in a

22  competitive market. *See* Pltfs' Mtn. for Class Cert., Dkt. 513 at 9.

23          "[C]ommon issues usually predominate in cases where the defendants are alleged to have

24  engaged in collusive, anticompetitive conduct resulting in artificially high market-wide prices for

25  a product." *In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 411 (2004) (collecting cases). The

26  focus is on Defendants' conduct and the effect on the market, which are common to all Settlement

27  Class Members. The focus is not on the actions of individual Settlement Class Members. *See In*

28

1   *re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020) (citing *Alaska Airlines v.*

2   *United Airlines*, 948 F.2d 536, 540 (9th Cir. 1991)); *see also id.* ("the illegality of defendants'

3   scheme turns on details of the payment and defendants' purposes — evidence common to every

4   purchaser"). "Courts repeatedly have held that the existence of the conspiracy is the predominant

5   issue and warrants certification even where significant individual issues are present." *In re*

6   *Cathode Ray Tube Antitrust Litig.*, 308 F.R.D. 606, 620 (N.D. Cal. 2015) (cleaned up).

7   <b>b.    Superiority</b>

8        "A class action is a superior means of adjudicating a dispute '[w]here classwide litigation

9   of common issues will reduce litigation costs and promote greater efficiency.'" *Bellinghausen v.*

10  *Tractor Supply Co.*, 303 F.R.D. 611, 618 (N.D. Cal. 2014) (quoting *Valentino v. Carter-Wallace,*

11  *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). In a certification for settlement, "a district court need

12  not inquire whether the case, if tried, would present intractable management problems, *see* Fed.

13  Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

14       Certifying the Settlement Class is superior to resolving Settlement Class Members' claims

15  through individual litigation, and would: (i) avoid congesting a court with the need to repetitively

16  adjudicate such actions; (ii) prevent the possibility of inconsistent results; and (iii) allow

17  Settlement Class Members an opportunity for redress they might otherwise be denied. "In

18  antitrust cases such as this, the damages of individual [indirect] purchasers are likely to be too

19  small to justify litigation, but a class action would offer those with small claims the opportunity

20  for meaningful redress." *In re Static Random Access (SRAM) Antitrust Litig.*, 2008 WL 4447592,

21  at *7 (N.D. Cal. Sept. 29, 2008). This is consistent with the approach taken by other courts in

22  antitrust cases.[6]

23       Accordingly, the proposed Settlement Class satisfies each certification requirement, and

24  Plaintiffs respectfully submit that the Court find that the Settlement Class is likely to be certified.

25  *See* Fed. R. Civ. 23(e)(1).

26

27  ─────────────────────

28  [6] *See supra*, fn. 4.

1

2

### C.   The Settlement Is Fair, Reasonable, and Adequate

#### 1.   Procedural Considerations

3

4

5

6

7

8

9

10

11

The Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as "the extent of discovery completed, and the stage of the proceedings[.]" *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

12

#### a.   Adequate Representation of the Class

13

14

15

16

17

18

19

20

21

22

23

24

The Settlement Class Representatives and Settlement Class Counsel have adequately represented the interests of the Settlement Class. The Settlement Class Representatives participated in this Litigation, including by preparing and sitting for depositions and producing documents, working with Settlement Class Counsel to provide oversight and input on the Litigation, and otherwise remaining informed of the progress of the case. Sharp Decl. ¶ 12. There is no evidence of antagonism or potential conflicts between the Settlement Class Representatives and absent Settlement Class Members: each had an interest in demonstrating the existence and unlawfulness of Defendants' anticompetitive conduct and its impact on the retail prices of Gasoline in California and each seeks to resolve their claims on the best terms possible. The Settlement Class Representatives have sufficiently demonstrated that their "interest[s] in this litigation [are] aligned with the class." *Uschold v. NSMG Shared Servs.*, LLC, 333 F.R.D. 157, 167 (N.D. Cal. 2019).

25

26

27

With respect to the adequacy of Settlement Class Counsel, they have vigorously litigated this case since its inception, collaborating wherever feasible on discovery, expert work, and liability issues with the California Attorney General. Sharp Decl. ¶¶ 7-8, 11, 13. Settlement Class

28

1   Counsel have devoted the resources necessary to prosecute this case and are experienced antitrust

2   litigators, having led multiple complex antitrust class actions in this District and across the

3   country, including cases asserting claims under the Cartwright Act. *Id.* ¶ 6.

4               **b.      Arm's Length Negotiations After Extensive Discovery**

5           The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-

6   collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g*

7   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are

8   reached "following sufficient discovery and genuine arms-length negotiation," both of which

9   undisputedly occurred here. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

10  528 (C.D. Cal. 2004); 4 Newberg & Rubenstein on Class Actions § 13:2 (6th ed.). "The extent of

11  discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the

12  case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42

13  (1995)). "A court is more likely to approve a settlement if most of the discovery is completed

14  because it suggests that the parties arrived at a compromise based on a full understanding of the

15  legal and factual issues surrounding the case." *Id.* (quoting 5 *Moore's Federal Practice*,

16  §23.85[2][e] (Matthew Bender 3d ed.)).

17          The Settlement Agreement was reached on a fully developed record. Settlement Class

18  Counsel reviewed more than 2.7 million documents comprised of tens of millions of pages

19  produced in discovery; obtained voluminous information pursuant to interrogatories and requests

20  for admission; produced over 3,700 pages of documents of documents in response to Defendants'

21  requests for production; took thirty-nine depositions of Defendants, their employees, and third

22  parties; and worked with their experts (and the California Attorney General's in some cases) to

23  assist in the drafting of expert reports, including responses to Defendants' experts. Sharp Decl. ¶¶

24  8-11, 13-16. They also fully briefed and argued multiple motions to dismiss, a motion for

25  judgment on the pleadings, and the motion for class certification and three *Daubert* motions. *See*

26  Dkt. Nos. 221, 224, 281, 348, 482, 513, 530, 543, 528, 532, 534, 545-2, 549, 551, 553; Sharp

27  Decl. ¶ 5.

28

16

1    Settlement negotiations in this Litigation were initiated following the California Attorney

2 General's resolution of claims brought on behalf of California natural persons. Sharp Decl. ¶ 21.

3 On October 30, 2023, the parties mediated with Hon. Layn R. Phillips, an experienced mediator.

4 *Id.* "The assistance of an experienced mediator in the settlement process confirms that the

5 settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, 2007 WL 3225466, at *3 (N.D.

6 Cal. Oct. 30, 2007). The negotiations continued over the ensuing months with the involvement of

7 the office of Hon. Layn R. Phillips, culminating in an agreement in principle in February 2024,

8 and execution of the Settlement Agreement on May 30, 2024. Sharp Decl. ¶¶ 21-23.

9    **2.    Substantive Considerations**

10    Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive'

11 review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory

12 committee's note to 2018 amendment. In determining whether "the relief provided for the class is

13 adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the

14 effectiveness of any proposed method of distributing relief to the class, including the method of

15 processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

16 including timing of payment; and (iv) any agreement required to be identified under Rule

17 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal

18 treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

19    **a.    Strength of Plaintiffs' Case and Risks of Continued Litigation**

20    In determining the likelihood of a plaintiff's success on the merits of a class action, "the

21 district court's determination is nothing more than an amalgam of delicate balancing, gross

22 approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations

23 omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator

24 arrived at a reasonable range of settlement by considering [p]laintiff's likelihood of recovery."

25 *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

26 (citing *Rodriguez*, 563 F.3d at 965).

27

28

Although Settlement Class Representatives and Settlement Class Counsel have confidence in their claims, a favorable outcome for businesses and non-California natural persons was far from assured. Plaintiffs would need to prevail at class certification in a complicated benchmark manipulation case with the possibility that the majority of their class's claims would be precluded due to the settlement in the People's Action, survive a possible interlocutory appeal of a class certification order, maintain class certification through entry of a final judgment, overcome numerous substantive defenses at trial, and succeed on a possible post-trial appeal. Defendants and their experts were prepared to contest every theory of liability and measure of damages, particularly given what Defendants described as the "umbrella damages" theory of this case. There are, for example, substantial disputes as to whether Defendants conspired to manipulate the benchmark price for gasoline in California at all, and whether their anticompetitive conduct caused California Gasoline purchasers to pay more than they would have at the pump on a classwide basis. Both sides believed they had persuasive facts to support their positions, and there are few precedents regarding the parties' competing theories. At trial, competing experts would have offered conflicting opinions as to whether the increase in benchmark prices was caused by Defendants' anticompetitive conduct, the extent to which these benchmark prices impacted retail Gasoline prices, and the proper measure of damages to class members.

Defendants were prepared to argue both at the district court and at the appellate level that Plaintiffs needed to submit new expert opinions to support certification of a smaller class after the California Attorney General settled its case. *See* Class Cert. Hrg. Tr. (July 20, 2024), at 102:17-104:16; Sharp Decl. ¶ 19. Defendants were also prepared to argue that because the settlement in the People's Action covered most of the claims in this Litigation, Plaintiffs would be unable to show classwide impact. *See* Class Cert. Hrg. Tr. (July 20, 2024), at 102:17-104:16; Sharp Decl. ¶ 19. At the same time, the class's overall damages would be significantly reduced if the claims of California natural persons were precluded. Sharp Decl. ¶ 19. These unresolved issues hung in the balance when the parties negotiated the Settlement Agreement now before the Court.

1

2

### b.   The Proposed Plan of Allocation Provides An Effective and Equitable Method For Distributing Benefits To the Settlement Class

3    The Court must consider "the effectiveness of [the] proposed method of distributing relief

4  to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class Members will be eligible for

5  payments based on the total amount they paid for Gasoline from a retailer within the State of

6  California from February 18, 2015, through May 31, 2017. *See* Sharp Decl. Ex. B ¶¶ 22-28 (Plan

7  of Allocation). As discussed in more detail below, in recognition of the two different types of

8  Settlement Class Members (businesses and natural persons) and the relative strength of the claims

9  depending on where the Gasoline was purchased (Southern or Northern California), under the

10  proposed Plan of Allocation, (1) 85% of the Settlement Fund will be allocated to compensate

11  businesses that allegedly paid supracompetitive prices for Gasoline due to Defendants' conduct,

12  and the remaining 15% of the Settlement Fund will be allocated to non-California natural persons

13  (unless that leads to compensation of either group beyond their collective single damages), and

14  (2) Gasoline purchases made in Southern California will be compensated at twice the rate

15  compared to those in Northern California (purchases in Southern California will carry weight of 1

16  and purchases in Northern California will carry a weight of 0.5). *See id.*

17    The Settlement Fund is non-reversionary Sharp Decl. Ex. A § 1.31. If the Settlement Fund

18  is not entirely consumed by distribution of payments to Settlement Class Members (including a

19  potential supplemental distribution) and payment of notice and administration expenses, taxes and

20  associated expenses, attorneys' fees and expenses, and service awards, then Settlement Class

21  Counsel will seek leave from the Court to select a *cy pres* recipient to distribute any residual

22  funds. Sharp Decl. Ex. B ¶ 30. In no event will any remaining Settlement Funds revert to

23  Defendants.

24    ### c.   Attorneys' Fees and Expenses

25    Any fees and expenses awarded to Settlement Class Counsel by the Court will be deducted

26  from the Settlement Fund. Sharp Decl. Ex. A § 15.1. Any reduction in requested fees and

27  expenses will benefit the Settlement Class, not Defendants. As a result, and consistent with the

28

19

District Guidelines (¶¶ 6, 9), while the Court need not decide the amount of fees and expenses to be award to Settlement Class Counsel at this stage, the structure of the settlement ensures that the future fee request poses no obstacle to preliminary approval.

The Settlement Agreement is not contingent on the award of any amount of fees or expenses. Sharp Decl. Ex. A § 15.3. In their motion for an award of fees and expenses, which will be heard only after Settlement Class Members have had an opportunity to object, Settlement Class Counsel will seek an award of attorneys' fees of up to 30% of the total Settlement Fund (plus 30% of interest accrued), and out-of-pocket expenses of up to $7,000,000. District Guidelines ¶ 6; Sharp Decl. ¶ 30; *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted) (attorneys may recover "out-of-pocket expenses that 'would normally be charged to a fee paying client'"). Before the objection deadline, Settlement Class Counsel will provide an itemized list of their expenses by category. *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6. Given the work performed that redounded to the benefit of the natural persons on whose behalf the California Attorney General settled its claims, as well as the collaborative nature of discovery and expert work between Settlement Class Counsel and the California Attorney General, Settlement Class Counsel also intends to seek a fee award in the People's Action. Sharp Decl. ¶ 30.

Settlement Class Representatives will also move as part of final approval for the payment of notice and settlement administration costs not to exceed $1,000,000 when combined with any initial payments that the Court approves (*see* Section VII, below).[7] *Id*. ¶ 32.

### d.     Service Awards to Class Representatives

Settlement Class Counsel intends to apply for service awards of $5,000 per Settlement Class Representative, which altogether would comprise less than 0.1% of the Settlement Fund.

---

[7] This figure reflects a cap on notice and administrative costs that Settlement Class Counsel negotiated with the Settlement Administrator. This cap is conditioned on the timing of notice and claims administration for this settlement and the settlement in the People's Action substantially overlapping. Peak Decl. ¶ 37. Settlement Class Counsel intend to authorize payments to the Settlement Administrator only for costs reasonably incurred given the volume of claims submitted, while balancing the need to ensure a robust and effective notice and claims processes.

20

1  Sharp Decl. ¶ 33. The service awards are subject to this Court's discretion, and their approval (in

2  whole or in part) is not a material term of the Settlement Agreement. The amount sought is

3  reasonable and well within the range of approval in this District. *See Alvarez v. Farmers Ins.*

4  *Exchange*, 2017 WL 2214585, at *1-2 (N.D. Cal. Jan. 18, 2017) (finding service awards of

5  $10,000 per plaintiff, which in the aggregate comprised 1.8% of the total settlement, to be

6  reasonable); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018)

7  (finding $10,000 service awards to be "consistent with similar service awards regularly approved

8  in class actions in this district").

9          As will be further explained in the motion for fees and expenses, service awards are

10  appropriate to compensate Settlement Class Representatives for the substantial time and effort

11  they spent participating in this Litigation. All Settlement Class Representatives participated in this

12  Litigation, including by preparing and sitting for depositions and producing documents, working

13  with Settlement Class Counsel to provide oversight and input on the Litigation, and otherwise

14  remaining informed of the progress of the case. Sharp Decl. ¶ 12.

15                                    **e.      Additional Agreements**

16          Rule 23(e)(3) requires disclosure of any "agreement made in connection with the

17  proposal." This provision is aimed at "related undertakings that, although seemingly separate,

18  may have influenced the terms of the settlement by trading away possible advantages for the class

19  in return for advantages for others."  Fed. R. Civ. P. 23(e), advisory committee notes 2003

20  amendments. Two individual Plaintiffs in this Litigation, Justin Lardinois and Asante

21  Cleveland—named Plaintiffs who are not part of the proposed Settlement Class and therefore not

22  eligible for either service awards or to recover under the Settlement Agreement, and who have,

23  like the Settlement Class Representatives, participated extensively in discovery and general

24  litigation efforts—entered into individual settlement agreements with Defendants that provide for

25  awards that mirror the service awards Settlement Class Counsel intends to seek for Settlement

26  Class Representatives. Sharp Decl. ¶ 33.

27

28

1

**f.      Equitable Treatment of Settlement Class Members**

2      The Settlement Fund will be divided into two pools to account for differences in the

3 estimated collective and average damages suffered by businesses and non-California natural

4 persons. Sharp Decl. Ex. B ¶ 2. Under the proposed Plan of Allocation, 85% of the Settlement

5 Fund will be distributed to businesses and 15% of the fund will be distributed to non-California

6 natural persons (unless that leads to compensation of either group beyond their collective single

7 damages), which reflects the estimated collective shares of damages by these two types of

8 Settlement Class Members, as calculated by Settlement Class Representatives' expert. Sharp

9 Decl. Ex. B ¶¶ 2, 22-28 & Ex. B-I (Declaration by Wesley J. Reppert). Within each pool,

10 Settlement Class Members are eligible to receive a *pro rata* share of the Settlement Fund based

11 on the amount they paid for Gasoline. Sharp Decl. Ex. B ¶¶ 22-28. In this calculation, purchases

12 made in Southern California will be afforded twice the value compared to purchases made in

13 Northern California (purchases in Southern California will carry weight of 1 and purchases in

14 Northern California will carry a weight of 0.5), to reflect the relative strength of these claims on

15 the merits, given that Plaintiffs did not move to certify a litigation class of Northern California

16 purchasers. Sharp Decl. ¶ 29 & Ex. B ¶¶ 22-28. Claimants in both pools are required to provide

17 supporting documentation of eligible purchases to combat fraudulent claims and ensure that only

18 eligible claimants receive payments from the Settlement Fund. Sharp Decl. Ex. B at ¶¶ 15-16.

19      The proposed Plan of Allocation is, thus, consistent with the principle that"[i]t is

20 reasonable to allocate the settlement funds to class members based on the extent of their injuries

21 or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

22 1045 (N.D. Cal. 2008). Over the course of the two-plus years Settlement Class period, business

23 claimants purchased proportionally larger volumes of Gasoline in California than non-California

24 natural persons. Sharp Decl. Ex. B-I. Thus, businesses collectively and on average suffered

25 greater damages due to Defendants' alleged conduct than non-California natural persons. Sharp

26 Decl. Ex. B-I.; *see also Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 5991060 (N.D.

27 Cal. July 12, 2021) (granting preliminary approval for settlement that distributed payments in

28

proportion to class members' harm). The Plan of Allocation also includes a mechanism to allow for transfer of funds between the two allocation pools if claimants in one of the two pools would receive more than their collective single damages based on the *pro rata* distribution of the funds (Sharp Decl. Ex. B ¶¶ 27-28), which ensures that neither type of Settlement Class Member receives a windfall. The Plan of Allocation thus treats all Settlement Class Members fairly.

### g.      The Released Claims Are Those Pled in the Litigation

The Settlement Class Released Claims include all claims (under any theory or statute) "arising from or related in any way to the conduct alleged in this Action, or that could have been alleged in this Action that also arise from or relate to the factual predicate of the Action, to the fullest extent allowed by law, with respect to purchases and/or use of Gasoline within the State of California during the period of February 18, 2015 through May 31, 2017." Sharp Decl. Ex. A § 1.29. The Settlement Class Released Claims apply only to Settlement Class Members, explicitly excluding claims covered by the settlement in the People's Action *Id.* In sum, the Settlement Class Released Claims are no broader than those pled in the operative complaint.

### h.      Past Distributions

The information sought by District Guidelines ¶ 11 regarding past distributions in class settlements is provided in the Sharp Declaration. Sharp Decl. Ex. C. Compared to this Litigation, these cases involved similar class sizes, similar levels of complexity, and/or similar settlement amounts.

## V.      THE NOTICE PLAN SHOULD BE APPROVED

A court must "direct notice of a proposed class settlement in a reasonable manner to all class members who would be bound by the proposal." *Massey v. Star Nursing, Inc.*, 2022 WL 14151758, at *5 (N.D. Cal. Oct. 24, 2022) (citing Fed. R. Civ. P. 23(e)(1)). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624. Adequate notice must be "reasonably calculated, under all the circumstances, to apprise the class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement" and

otherwise comply with all other requirements of due process and applicable federal law. *Massey*, 2022 WL 14151758 at *5 (citation omitted).

The proposed Notice Plan, which Class Counsel developed in tandem with the California Attorney General's notice plan, meets all these requirements. The notice documents use plain, easy to understand language. Peak Decl. ¶ 10. They advise recipients that they may be affected by the settlement of a class action lawsuit. *Id.* The Long Form Notice will be available on the settlement website, including in an easy-to-navigate FAQ, and in hardcopy upon request from the Settlement Administrator. Peak Decl. ¶¶ 31-32 & Ex. E (Long Form Notice). The Long Form Notice provides the key terms of the Settlement Agreement, describes Settlement Class Members' rights and options with respect to the Settlement Agreement, and advises how to opt out of the Settlement Class or object to the settlement. *Id.*

Notice of the Settlement Agreement will be provided to potential Settlement Class Members through direct notice (postcard and email), where contact information is reasonably available (Peak Decl. ¶¶ 14-21 & Ex. A (Email Notice) & Ex. B (Postcard Notice)), and by widespread publication notice (Peak Decl. ¶¶ 22-30 & Ex. C (Digital Notices) & Ex. D (Press Release). Direct and publication notice is estimated to reach well over 70% of the Settlement Class—more than 70% of the non-California natural persons and nearly all of the businesses. Peak Decl. ¶ 41; *see Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7042871, at *5 (N.D. Cal. Dec. 1, 2020) (approving notice plan where combined indirect and direct notice efforts were "reasonably calculated to reach at least 70% of class members"); *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15MD2670 DMS(MDD), 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (same); *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *3 (S.D. Cal. Jan. 7, 2013) (similar). All the notices will link or point to a settlement website, which will include the detailed Long-Form Notice and Frequently Asked Questions, the Settlement Agreement, the preliminary approval papers, and other relevant Court documents (Peak Decl. ¶¶ 16, 18, 25, 31-32), as well as simple forms allowing Settlement Class Members to make claims or opt out, both on paper or online (Peak Decl. ¶ 33; Ex. F (Claim

Forms) & Ex. G (Exclusion Request Forms)). The Settlement Administrator will operate a toll-free number for Settlement Class Member inquiries in English and Spanish and will also be accessible by email. Peak Decl. ¶ 34.

The Notice Plan was developed in tandem with the California Attorney General's notice plan, and this latter notice plan will complement the proposed Notice Plan in this case, thereby reducing administration costs and thus increasing the recovery of the Settlement Class. *See* Peak Decl. ¶¶ 27-30. For example, Settlement Class Counsel and the California Attorney General intend to launch notice simultaneously.[8] Sharp Decl. ¶ 27. Settlement Class Counsel and the California Attorney General intend to issue a joint press release, as well as administer a joint settlement website, the landing page of which will provide an info-graphic directing users to the appropriate designated settlement pages. Peak Decl. ¶¶ 30-31.

The Notice Plan constitutes the best notice practicable under the circumstances. Accordingly, Settlement Class Representatives respectfully request that this Court approve it.[9]

## VI.    THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR AND THE ESCROW AGENT TO MAINTAIN THE SETTLEMENT FUND

The Settlement Agreement will be administered by a well-known, independent claims administrator, Verita Global, LLC ("Verita") f/k/a KCC Class Action Services, LLC. After a competitive bidding process, Settlement Class Counsel selected Verita to administer notice to the Settlement Class and the claims process. Sharp Decl. ¶ 25. Verita also serves as the administrator of the California Attorney General's settlement, and Settlement Class Counsel anticipate that the planned coordinated notice and claims administration will achieve efficiencies and lower the cost of notice and claims administration, avoid confusion among claimants, and lead to an increased reach of the notice program. *Id*. Evidencing these efficiencies, Settlement Class Counsel successfully negotiated a cap on fees that Verita will charge for administrating the Settlement

---

[8] Accordingly, in the Proposed Order, commencement of notice is triggered by either a preliminary approval order being entered in this Litigation or by a preliminary approval order being entered in the People's Action, whichever is later.

[9] This settlement requires notice under the Class Action Fairness Act, which Defendants are serving per the Act. No other notices are required.

Agreement, which is conditioned on the timing of notice and claims administration for the two settlements substantially overlapping. *Id*.

Settlement Class Counsel and Verita developed a detailed plan for direct and publication notice to potential Settlement Class Members. *Id*. ¶ 26. Verita is well-positioned to administer the Settlement Agreement, given its ongoing work on the California Attorney General's notice, the institutional knowledge it already has developed, and the fact that choosing another administrator at this time would only lead to duplication of work and additional expense. *Id*. The Declaration of Carla Peak, filed herewith, includes Verita's estimates for costs for notice and administration, which will upon approval of the Court be paid from the Settlement Fund, and addresses all the other issues in the District Guidelines, including how Verita will securely handle Settlement Class Member data and its insurance coverage in case of errors. Peak Decl. ¶¶ 9, 37-40.

Settlement Class Counsel also request that the Court appoint Huntington National Bank as the escrow agent to maintain the Settlement Fund, and authorize the establishment of the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1.

## VII. THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL

Settlement Class Representatives and Settlement Class Counsel will file motions for the payment of attorneys' fees and expenses before the opt out and objection deadline, which gives Settlement Class Members an opportunity to be apprised of the requested fees and expenses before objecting to or opting out of the Settlement Agreement. Before that point, however, money will be spent providing notice to the Settlement Class and administering claims. Sharp Decl. ¶ 31. In consultation with Verita, Settlement Class Counsel believe that these initial costs could be as much as $500,000, and therefore request that the Court authorize up to $500,000 to pay for the out-of-pocket expenses incurred in distributing notice and administering claims. *Id.* The costs include processing direct and publication notice, responding to Settlement Class Members' inquiries, and website management. *Id.* These costs are reasonable and necessary to facilitate the

settlement. Notice and administration costs will be paid with Settlement Funds based only on costs actually and already incurred. *Id.*

## VIII.   THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the final approval hearing at which Settlement Class Representatives will seek final approval of the proposed Settlement Agreement. In addition, any objections to or arguments in support of final approval of the Settlement Agreement from absent Settlement Class Members may be heard at the final approval hearing. Settlement Class Representatives request the Court issue a final approval schedule leading up to this hearing, establishing dates for, amongst others, commencement and conclusion of notice, claims, exclusion requests, and objections deadlines, final approval briefing, and the final approval hearing, as set forth in the proposed Preliminary Approval Order filed herewith.

## IX.   CONCLUSION

For the foregoing reasons, Settlement Class Representatives and Settlement Class Counsel respectfully request that the Court enter the proposed Preliminary Approval Order.

Dated:  July 1, 2024                                    Respectfully submitted,

                                                       By: /s/ *Dena C. Sharp*
                                                       _____

                                                       Dena C. Sharp (SBN 245869)
                                                       Scott M. Grzenczyk (SBN 279309)
                                                       Kyle P. Quackenbush (SBN 322401)
                                                       Mikaela M. Bock (SBN 335089)
                                                       **GIRARD SHARP LLP**
                                                       601 California Street, Suite 1400
                                                       San Francisco, CA 94108
                                                       Telephone: (415) 981-4800
                                                       Facsimile: (415) 981-4846
                                                       dsharp@girardsharp.com
                                                       scottg@girardsharp.com
                                                       kquackenbush@girardsharp.com
                                                       mbock@girardsharp.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ *Christopher L. Lebsock*

Christopher L. Lebsock (SBN 184546)
Michael P. Lehmann (SBN 77152)
Kyle G. Bates (SBN 299114)
Samantha Derksen (*pro hac vice*)
Tae Kim (SBN 331362)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
clebsock@hausfeld.com
mlehmann@hausfeld.com
kbates@hausfeld.com
sderksen@hausfeld.com
tkim@hausfeld.com

*Interim Co-Lead Class Counsel and
proposed Settlement Class Counsel*

**FILER'S ATTESTATION**

I, Dena C. Sharp, am the ECF User whose ID and password are being used to file this

document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel listed above

have concurred in this filing.

By: /s/ *Dena C. Sharp*
Dena C. Sharp

28