1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    IN RE CALIFORNIA GASOLINE SPOT          Case No.  3:20-cv-03131-JSC

8    MARKET ANTITRUST LITIGATION
                                             **ORDER RE: MOTION FOR**
9                                            **PRELIMINARY APPROVAL**

10                                           Re: Dkt. No. 601

11

12

13          Plaintiffs filed this putative class action bringing state antitrust and unjust enrichment

14   claims against SK Energy Americas, Inc., Vitol Inc., and two individual defendants alleging

15   Defendants formed horizonal agreements to restrain competition and manipulate the spot market

16   for gasoline and gasoline blending components formulated for use in California. Plaintiffs now

17   move for preliminary approval of a class action settlement resolving these claims.  (Dkt. No.

18   601.[1])  Having considered the briefing and relevant legal authority, having had the benefit of oral

19   argument on August 8, 2024, and given the additional information provided in Plaintiffs'

20   supplemental submission (Dkt. No. 613), the Court GRANTS the motion for preliminary

21   approval.

22                                   **BACKGROUND**

23          The California Attorney General filed a parens patriae action in the San Francisco Superior

24   Court bringing Cartwright Act and UCL claims against Defendants. *See The People of the State of*

25   *California v. Vitol, Inc.*, et al., Case No. CGC20584456 (S.F. Superior, filed May 4, 2020) ("AG

26   Action"). Two days after the AG Action was filed, Pacific Wine Distributors, Inc., filed the first

27

28   [1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

action in this District. (Dkt. No. 1.) The other named plaintiffs subsequently filed separate actions, each of which was related to this action. The parties thereafter stipulated that all 23 related actions be consolidated for purposes of trial. (Dkt. Nos. 67, 121, 133, 146, 148, 174.) The Court appointed Hausfeld and Girard Sharp as co-lead interim class counsel. (Dkt. No. 167.)

After a series of motions to dismiss, Plaintiffs filed a motion for class certification.  (Dkt. No. 512.)  At the hearing on the motion for class certification, the parties advised the Court a settlement had been reached in the AG action.  (Dkt. No. 577.)  Over the ensuing months, the parties requested, and the Court granted, a series of requests to stay proceedings while the settlement in the AG Action was finalized and the parties in this action attempted to resolve the claims here.  On February 1, 2024, the parties advised the Court they had reached a settlement in principle, and ultimately, the underlying motion for preliminary approval was filed.  (Dkt. Nos. 595, 601.)  The preliminary approval motion for the AG Action is pending in the San Francisco Superior Court.  (Dkt. No. 607.)  At the preliminary approval hearing, the Court ordered Plaintiffs to file a supplemental submission addressing concerns regarding notice and the settlement amount. (Dkt. No. 612.)  Plaintiffs have since filed their supplemental submission which includes a revised long-form notice.  (Dkt. No. 613.)

### THE SETTLEMENT AGREEMENT

#### A.      The Settlement Class

The Settlement Class is composed of:

> (a) natural persons who, at the time of purchase, were not residents of the State of California, and (b) all Persons that are not natural persons, wherever located, that: (i) purchased Gasoline from a retailer, (ii) for their own use and not for resale, (iii) within the State of California, (iv) from February 18, 2015, through May 31, 2017.

(Dkt. No. 601-2, Settlement Agreement, § 1.26.)  The Settlement Class excludes:

> (a) the California Attorney General, bringing suit in the name of the People of the State of California, including in his role as parens patriae for natural persons residing in the State of California, as pleaded in the complaint in the People's Action; (b) the Settling Defendants or any other named defendant in the litigation; (c) officers, directors, employees, legal representatives, heirs, successors, or wholly or partly owned subsidiaries or affiliated companies of the Settling Defendants or any other named defendant in the litigation;

(d) Class Counsel and their respective partners and employees; (e) the Court and other judicial officers, their immediate family members, and associated court staff assigned to the Litigation; and (f) those individuals who timely and validly exclude themselves from the Settlement Class.

(*Id*.)

### B.    Payment Terms

The Settlement Agreement requires Defendants to establish a non-reversionary Gross Settlement Fund of $13.9 million in an escrow account maintained by Huntington National Bank. (*Id*. at §§ 1.9, 1.13, 1.15, 3.1, 3.6.)  Under the Settlement Agreement, the following amounts, as approved by the Court, may be deducted from the Gross Settlement Fund to yield the Net Settlement Fund: (1) the costs of notice and administration, (2)  litigation costs, and (3) service awards for the Settlement Class Representatives.  (*Id*. at § 1.15.)  Plaintiffs intend to seek recovery of attorneys' fees from the Net Settlement Amount.(Dkt. No. 613 at 4.)

The Plan of Allocation for dividing the Net Settlement Fund among class members recognizes two different pools of Settlement Class Members: (1) businesses, and (2) and non-California consumers.  (Dkt. No. 601 at 26; Dkt. No. 601-3, Plan of Allocation, § 2.)  The Net Settlement Fund will be distributed in pro rata shares among these two pools based on "the relative strength of the claims depending on where the Gasoline was purchased (Southern or Northern California)" as follows:

> (1) 85% of the Settlement Fund will be allocated to compensate businesses that allegedly paid supracompetitive prices for Gasoline due to Defendants' conduct, and the remaining 15% of the Settlement Fund will be allocated to non-California natural persons (unless that leads to compensation of either group beyond their collective single damages),

> (2) Gasoline purchases made in Southern California will be compensated at twice the rate compared to those in Northern California (purchases in Southern California will carry weight of 1 and purchases in Northern California will carry a weight of 0.5).

(Dkt. No. 601 at 26 (citing Dkt. No. 601-3, Plan of Allocation, §§ 22-25).)

Any funds unclaimed after six months "shall be redistributed among those Eligible Claimants who have cashed their checks and who would receive at least $15 from the redistribution, after payment of any additional costs or fees incurred in administering the Net

1    Settlement Fund for the redistribution." (Dkt. No. 601-3 at § 29.) However, if Class Counsel

2    decide "redistribution would be uneconomical" they may seek an order approving of a cy pres

3    recipient. (*Id*. at § 30.)

4    **C.    Scope of Release**

5    Any Settlement Class member who does not submit a timely request for exclusion releases:

> any and all manner of claims, including Unknown Claims, causes of
> action, cross-claims, counter-claims, charges, liabilities, demands,
> judgments, suits, obligations, debts, setoffs, rights of recovery, or
> liabilities for any obligations of any kind whatsoever (however
> denominated), whether class or individual, in law or equity or arising
> under constitution, statute, regulation, ordinance, contract, or
> otherwise in nature, for fees, costs, penalties, fines, debts, expenses,
> attorneys' fees, or damages, whenever incurred, and liabilities of any
> nature whatsoever (including joint and several), known or unknown,
> suspected or unsuspected, asserted or unasserted, which Plaintiffs or
> any Settlement Class Member ever had, now have, or hereafter can,
> shall or may have, individually, representatively, derivatively, or in
> any other capacity, against the Defendant Releasees, arising from or
> related in any way to the conduct alleged in this Action, or that could
> have been alleged in this Action that also arise from or relate to the
> factual predicate of the Action, to the fullest extent allowed by law,
> with respect to purchases and/or use of Gasoline within the State of
> California during the period of February 18, 2015 through May 31,
> 2017.

16   (*Id*. at § 1.29.)

17   **D.    Notice**

18   Plaintiffs selected Verita Global, LLC to administer notice to the Settlement Class and

19   facilitate the claims process. (Dkt. No. 601-1, Sharp Decl. at ¶ 25.) Verita is also administering

20   the settlement in the AG Action. (*Id*.) According to the Declaration of Carla Peak, Verita's Vice

21   President of Legal Notification Services, notice will be provided through direct notice (postcard

22   and email) as well as publication. (Dkt. No. 601-6 at ¶¶ 14-22.)

23   For direct notice, Verita plans to purchase a list of business entities "from a leading third-

24   party list provider." (*Id*. at ¶ 14.) This "Class List will be based on a database of records

25   indicating businesses located within the State of California with a fleet size of 10+ vehicles, as

26   well as businesses in Arizona and Nevada counties neighboring California with a fleet size of 50+

27   vehicles." (*Id*. at ¶ 14 n.3.) Verita estimates the Class List will contain 60,623 postal addresses

28   and 35,019 email addresses. (*Id*. at ¶¶ 15, 18.) Verita will first email notice and then will mail

United States District Court
Northern District of California

4

1   postcards to those on the Class List for whom there is no email or for whom the email bounces.

2   (*Id*. at ¶¶ 17-18.)  Verita will cross-verify the addresses with the National Change of Address

3   Database prior to sending and any returned notices will be re-mailed where change of address

4   information is available.  (*Id*. at ¶ 19)

5   For publication notice, Verita studied population data to determine the geographic

6   information and resident age of likely Settlement Class Members and it plans to purchase

7   "142,375,000 digital impressions [] via one or more ad exchanges and distributed over various

8   websites and the social media platform Facebook broadly targeted to adults 25 years

9   of age or older nationwide, with a geographic emphasis on Key States."  (*Id*. at ¶ 24.)

10   Verita is also administering the notice and claims process in the AG's Action.  There it

11   plans to provide direct notice to all individuals residing in Southern California via email and postal

12   mail and that notice will also include information regarding this action.  (*Id*. at ¶ 28.)

13   The parties in both actions plan to issue a joint press release which will distributed to over 6,500

14   nationwide news outlets as well as the Hispanic newsline in Spanish and AP News.  (*Id*. at ¶ 30.)

15   Verita also plans to establish and maintain a joint settlement website with additional information

16   about both actions.  (*Id*. at ¶ 31.)  Verita will also establish a case-specific monitored email

17   address and toll-free phone number for class member inquiries.  (*Id*. at ¶¶ 34-36.)

18   As for the form of notice, Verita has prepared a short form postcard and email notice as

19   well as a long-form notice that will be available on the settlement website.  (*Id*. at ¶¶ 16, 18, 32.)

20   Class Members can complete a claim form online or by downloading a paper copy from the

21   website.  (*Id*. at ¶ 33.)

22   Verita estimates the notice plan will "reach more than 70% of the natural persons portion

23   of the Settlement Class through the publication notice efforts described above, as well as nearly all

24   the businesses portion of the Settlement Class through the direct notice efforts."  (*Id*. at ¶ 41.)   It

25   anticipates the costs of notice and settlement administration for this settlement at $672,936 -

26   $945,977 assuming a 10-20% claims rate, and "has agreed to cap the costs of notice and

27   administration at $1,000,000 (on the condition that the timing of notice and claims administration

28   for this settlement and the settlement in the People's Action substantially overlap)."  (Dkt. No.

United States District Court
Northern District of California

601-6 at ¶ 37.)

### E.    Opt-Outs and Objections

The Settlement Agreement does not specify an opt-out process and instead states "The procedure for requesting exclusion from the Settlement Class (the "Opt-Out Procedure") shall be set forth in the Preliminary Approval Order, and shall be subject to the Court's approval."  (Dkt. No. 601-2 at § 5.1.)  While the motion for preliminary approval does not discuss the opt-out procedure, the proposed order includes the following language regarding requesting exclusions:

> Each Settlement Class Member who wishes to be excluded from the Settlement must submit to the Settlement Administrator a written statement requesting exclusion from the Settlement. Such requests for exclusion must be made by submitting the online form on the settlement website or by mailing a valid exclusion request to the address specified in the Long-Form Notice. Such requests for exclusion must be submitted online or postmarked by the deadline set forth below. To be effective, the request for exclusion must:
>
> a.   Include the Settlement Class Member's full name, address, and telephone number in case of a natural person, and the claimant's full name, address, and telephone number as well as the Settlement Class Member's business name, address, and telephone number in case of a business;
>
> b.   Explicitly and unambiguously state his or her desire to be excluded from the Settlement Class; and
>
> c.   Be individually and personally signed by the Settlement Class Member (if the Class Member is represented by counsel, it must also be signed by such counsel); no consolidated or group opt-outs will be accepted.

(Dkt. No. 601-14 at 7.)

The Settlement Agreement and motion for preliminary approval likewise do not discuss the objection process, but the proposed order includes the following language specifying the contents of any objection:

> a.   The case name and number (*In re California Gasoline Spot Market Antitrust Litigation*, Case No. 3:20-CV-03131-JSC).
> b.   The objecting Settlement Class Member's full name, address, and telephone number, and, if available, email address;
> c.   Proof of eligible Gasoline purchases in California between February 18, 2015 and May 31, 2017, to show the objector is a

United States District Court
Northern District of California

member of the Settlement Class[2];

    d.   A written statement of all grounds for the objection, accompanied by any legal support for the objection;

    e.   Copies of any papers, briefs, or other documents upon which the objection is based;

    f.   The name, address, email address, and telephone number of every attorney representing the objector; and

    g.   A statement indicating whether the objector and/or his or her counsel intends to appear at the Final Approval Hearing and, if so, a list of all persons, if any, who will be called to testify in support of the objection.

(Dkt. No. 601-14 at ¶ 18.)

The deadline for submitting a request for exclusion or objection to the Settlement Agreement is 126 days after entry of the preliminary approval order in either this action or the AG Action depending on which is later.  (*Id.* at p. 11.)

## DISCUSSION

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## I.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Class actions must meet the following requirements for certification:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action

---

[2] The revised long-form notice clarifies that proof of one eligible gas purchase is sufficient.  (Dkt. No. 613-2 at 15.)

must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous. Verita estimates the number of businesses in and around California with large fleets exceeds 60,623. (Dkt. No. 601-6 at ¶ 18.)

Second, the typicality requirement is similarly satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up). Here, the Settlement Class Representatives' claims and those of the members of the proposed Settlement Class are based on the same legal theory (price-fixing through manipulation of the benchmark price for gasoline in California) and injury (overcharges on retail purchases of Gasoline). "In cases involving an alleged price-fixing conspiracy, the representative plaintiff's claim is often considered typical even where the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class." *In re Optical DiskDrive Antitrust Litig.*, 303 F.R.D. 311, 317 (N.D. Cal. 2014).

Third, the commonality requirement is satisfied because there are common questions of law and fact that relate to Defendants' allegedly anticompetitive conduct. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B.*, 30 F.4th at 839 (cleaned up).

Finally, the adequacy of representation requirement is met as to both the Class Representatives and Class Counsel. Adequacy of representation requires "the representative

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (cleaned up).  There is no apparent conflict between the Class Representatives and class members, and the Class Representatives and Class Counsel have vigorously pursued this action on behalf of the class.

### B. Rule 23(b)(3)

As previously discussed, Rule 23(b)(3) requires a plaintiff to establish the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following nonexhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### 1. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotations omitted).

Here, the common questions raised by Plaintiffs' claims predominate over any individual questions because the focus is Defendants' conduct and its effect on the market which are all common questions.  *See In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 411 (2004) ("[C]ommon

issues usually predominate in cases where the defendants are alleged to have engaged in collusive, anticompetitive conduct resulting in artificially high market-wide prices for a product.") (collecting cases).

### 2.    Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*.  The Court concludes a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them.  "In antitrust cases such as this, the damages of individual [indirect] purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access (SRAM) Antitrust Litig*., 2008 WL 4447592 at *7 (N.D. Cal. Sept. 29, 2008).  Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

In sum, the Court finds the predominance and superiority requirements of Rule 23(b)(3) are met.

\* \* \*

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II.    PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a

class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

> 1)  when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2)  when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3)  when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A.      Whether the Settlement is Fair, Adequate, and Reasonable

#### 1.      Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

The settlement here was reached on a fully developed record.  According to the Declaration of Class Counsel Dena Sharp, Plaintiffs received and reviewed more than 2.7 million documents, propounded extensive written discovery, took 23 depositions, and retained multiple experts to assist in developing and valuing Plaintiffs' claims.  (Dkt. No. 601-1 at ¶¶ 8-11, 13-17.) Plaintiffs' legal theories were also tested through motion practice and class certification/*Daubert* issues had been fully briefed and argued at the time of settlement.  Finally, the settlement was reached after the AG Action settled and after multiple sessions with an experienced mediator.  (*Id.* at ¶ 21.)   The settlement thus appears the product of serious, informed, non-collusive negotiations. This factor weighs in favor of approval.

#### 2.      Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

The Settlement Agreement directs the Net Settlement Fund be distributed under a detailed Plan of Allocation.  (Dkt. No. 601-2 at § 1.21.)  The Plan of Allocation divides the Settlement Fund into two pools to "account for differences in the estimated damages suffered by business entities and non-California resident natural persons. Eighty-five percent of the Settlement Fund will be distributed to businesses and fifteen percent of the fund will be distributed to non-

California natural persons, which reflects the estimated share of damages calculated by Plaintiffs' expert." (Dkt. No. 601-1 at ¶ 27; Dkt. No. 601-3 (Plan of Allocation).)  Further, "[t]he proposed Plan of Allocation affords proportionally greater value to purchases made in Southern California (1) compared to purchases made in Northern California (0.5) to reflect the relative strength of these claims, given that Plaintiffs pled claims on behalf of but did not move to certify a class of Northern California purchasers." (Dkt. No. 601-1 at ¶ 29.)  In accordance with the Plan of Allocation, the funds will be distributed in pro rata shares among class members who submit documentation of eligible purchases.  (Dkt. No. 601-3 at ¶¶ 22-25.)  Class Counsel attests proof of eligibility is necessary to prevent "fraudulent claimants that harness bots and AI to increase the scope and effectiveness of fraud."  (Dkt. No. 601-1 at ¶ 28.)

In addition, under the Settlement Agreement, the Settlement Class Representatives Fricke-Parkes Press, Inc., Bogard Construction, Inc., and Ritual Coffee Roasters, Inc. may apply for a Service Award.  (Dkt. No. 601-2 at §§ 1.30, 16.1.)  While the Settlement Agreement does not indicate the size of the service award that will be sought, the motion for preliminary approval indicates Plaintiffs will seek $5,000 service awards for each Settlement Class Representative. (Dkt. No. 601 at 28.)

Given the above, the Settlement Agreement does not appear to provide preferential treatment to any particular class members or the Settlement Class Representatives.  The Court will defer ruling on the appropriateness of the amount of the requested service awards, if any, until final approval.

### 3.      Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the total settlement amount is $13.9 million.  Plaintiffs' expert, Dr. Meyendorff, opined the damages for the Cartwright Act claim for businesses and non-California resident natural persons was $42.34 million (before trebling) and Vitol and SKEA were unjustly enriched

by $19.5 million. (Dkt. 545-4 at 42; Dkt. No. 512-4 at 38.)  Thus, the settlement amount is approximately 33% of the Cartwright Act damages or 71% of the amount by which Defendants were allegedly unjustly enriched.  Plaintiffs have submitted a summary of past distributions in comparable settlements which reflects that the amounts here are within the range of approval. (Dkt. No. 601-5.)

In evaluating the reasonableness of this recovery, the Court considers the risks of continued litigation.   If the litigation continued, Plaintiffs faced significant class certification challenges including "the possibility that the majority of their class's claims would be precluded due to the settlement in the People's Action," and even if not precluded, Plaintiffs would need to prevail on class certification and "survive a possible interlocutory appeal of a class certification order, maintain class certification through entry of a final judgment, overcome numerous substantive defenses at trial, and succeed on a possible post-trial appeal."  (Dkt. No. 601 at 25.) Having reviewed the class certification briefs and held oral argument, the Court agrees that the risks and costs of continued litigation balanced against the relief here warrant preliminary approval and comment from class members.

### 4.      Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8.  This factor weighs in Plaintiffs' favor as no obvious deficiencies exist on the face of the settlement agreement.

* * *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

## III.   CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

(i) the nature of the action; (ii) the definition of the class certified; (iii)

14

the class claims, issues, or defenses; (iv) that a class member may
enter an appearance through an attorney if the member so desires; (v)
that the court will exclude from the class any member who requests
exclusion; (vi) the time and manner for requesting exclusion; and (vii)
the binding effect of a class judgment on members under Rule
23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

(cleaned up).

As discussed above, Plaintiffs propose four types of notice: an email notice, a postcard

notice, digital notices to be distributed on social media platforms, and a long-form notice

accessible via the settlement website.  (Dkt. Nos. 601-7, 601-08, 601-9, 601-11.)  These notices

comply with Rule 23(c).  The short form notices (the email, postcard, and digital notices) clearly

and concisely provide an overview of the lawsuit and the claims process and provide clear

instructions for how to obtain more information and file a claim.  Plaintiffs submitted a revised

long-form notice with their supplemental submission which addresses the concerns raised at the

hearing.  (Dkt. No. 613-1.)   In particular, the long-form notice describes the allegations and

claims in plain language, defines the two components of the Settlement Class (California

businesses, and non-California consumers), includes contact information for Class Counsel and

the Settlement Administrator, summarizes the settlement amount and the Plan of Allocation,

provides a range of possible recovery, and directs class members to a website, email, and toll-free

number for additional information.  The long-form notice also adequately describes the options

available to class members, including instructions for requesting exclusion from the settlement and

filing an objection, and states that proof of one gasoline purchase is sufficient to make an

objection.  It also indicates how Class Members can review Class Counsel's motion for attorneys'

fees and costs prior to the final approval hearing. *See In re Mercury Interactive Corp. Sec. Litig.*,

618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to oppose

class counsel's fee motion").  Finally, it informs class members they may appear at the final

fairness hearing in person or through an attorney.

United States District Court
Northern District of California

15

## IV.    ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the

1   reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with

2   the lodestar method will reveal if the amount requested is unreasonable in light of the hours

3   reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

4          The Settlement Agreement is silent as to the amount of Plaintiffs' request for attorneys'

5   fees, it just provides "Settlement Class Counsel and other counsel with a basis to seek the payment

6   of Class Attorneys' Fees and Expenses may apply to the Court for a reasonable award of Class

7   Attorney's Fees and Expenses ("Fee and Expense Award") from the Settlement Fund." (Dkt. No.

8   601-2 at § 15.1.)  It also indicates Class Counsel may "apply to the court in the People's Action

9   for a reasonable award of Common Benefit Fees." (*Id.* at § 15.2.)  In the motion for preliminary

10  approval, Plaintiffs indicate they will seek an award of up to 30% of the Gross Settlement Fund

11  (plus 30% of interest accrued) and expenses of up to $7,000,000, plus an additional $1,000.000 for

12  notice and claims administration costs. (Dkt. No. 601 at 27.)

13         At oral argument, the Court expressed two concerns regarding the request for attorneys'

14  fees: (1) given the high amount of litigation costs, any request for attorneys' fees should be on the

15  Net Settlement Amount and not the Gross Settlement Amount; and (2) while Plaintiffs disclosed

16  they would seek fees in the AG Action as well, it was not clear whether those fee requests would

17  be duplicative.  Plaintiffs' supplemental submission addresses the Court's concerns.  Plaintiffs

18  have agreed to seek 30 percent of the Net Settlement Fund, not the Gross Settlement Fund, for

19  attorneys' fees. (Dkt. No. 613 at 4; Dkt. No. 613-2 at 17.)  Plaintiffs have also revised the notice

20  to clarify the fee requests will not be duplicative. (Dkt. No. 613-2 at 17.)

21          Plaintiffs shall submit a motion for attorneys' fees, including declarations and detailed

22  billing records, so the Court may determine an appropriate lodestar figure, and to allow Settlement

23  Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995

24  (holding that class members must "have an opportunity to oppose class counsel's fee motion"

25  before the deadline for filing objections set forth in the class notice).  Plaintiffs shall also include

26  information about any request for Common Benefit Fees and an analysis of the combined fee

27  request in relation to their lodestar.  Counsel shall also submit detailed information in support of

28  their request for $7,000,000 in litigation expenses so the Court can determine whether such costs

1    are reasonable expenses incurred for the benefit of the class.

2    **CONCLUSION**

3    For the reasons stated above, the Court GRANTS preliminary approval of the class action

4    settlement as follows:

5    1.  This action is provisionally certified as a class action, for settlement purposes only,

6    pursuant to Federal Rule of Civil Procedure 23.  The Court preliminarily certifies the following

7    Settlement Class:

> (a) natural persons who, at the time of purchase, were not residents of
> the State of California, and (b) all Persons that are not natural persons,
> wherever located, that: (i) purchased Gasoline from a retailer, (ii) for
> their own use and not for resale, (iii) within the State of California,
> (iv) from February 18, 2015, through May 31, 2017.

10   Excluded from the Settlement Class are: (a) the California Attorney General, bringing suit

11   in the name of the People of the State of California, including in his role as parens patriae for

12   natural persons residing in the State of California, as pleaded in the complaint in the People's

13   Action; (b) Defendants; (c) officers, directors, employees, legal representatives, heirs, successors,

14   or wholly or partly owned subsidiaries or affiliated companies of Defendants; (d) Settlement Class

15   Counsel and their respective partners and employees; (e) the Court and other judicial officers, their

16   immediate family members, and associated court staff assigned to the Action and the People's

17   Action; and (f) those individuals who timely and validly exclude themselves from the Settlement

18   Class.

19   2. The Court conditionally appoints Dena C. Sharp of Girard Sharp LLP and Christopher

20   L. Lebsock of Hausfeld LLP as Settlement Class Counsel.

21   3. The Court appoints Huntington National Bank as the escrow agent to maintain the

22   Settlement Fund, which the Court establishes as a "qualified settlement fund" within the meaning

23   of Treasury Regulation Section 1.

24   4.  The Court appoints Verita Global, LLC ("Verita") f/k/a KCC Class Action Services,

25   LLC as the Settlement Administrator, and approves the payment of reasonable administration

26   costs to the Settlement Administrator from the proceeds of the Settlement, not to exceed $500,000

27   without further Court order prior to the Effective Date.

28

United States District Court
Northern District of California

18

5.  Plaintiffs shall file copies of the notices and claim form within 10 days of dissemination of notice.

6.  The Court approves of the deadline timing as set forth in the proposed order.  (Dkt. No. 601-14 at 10.)  Because the parties have agreed these deadlines are triggered by the later date of preliminary approval between this Court and the San Francisco Superior Court (Dkt. No. 606), the parties shall file a proposed order inserting actual dates within three business days of the San Francisco Superior Court's Order.

This Order disposes of Docket No. 601.

**IT IS SO ORDERED.**

Dated:  August 23, 2024

JACQUELINE SCOTT CORLEY
United States District Judge