1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

13 | IN RE CALIFORNIA GASOLINE SPOT MARKET ANTITRUST LITIGATION

CASE NO. 3:20-cv-03131-JSC

**[REVISED PROPOSED] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

This Document Relates to:
All Actions

HON. JACQUELINE S. CORLEY

On December 18, 2024, Settlement Class Representatives moved for final approval of their class action settlement with Defendants. Having considered the motion and related briefing, and good cause appearing, the Court **GRANTS** Settlement Class Representatives' motion.

## I.   BACKGROUND

Plaintiffs filed the first proposed class action in this matter on May 6, 2020 shortly after the California Attorney General's filing of a complaint against overlapping Defendants in San Francisco Superior Court. *See The People of the State of California v. Vitol, Inc., et al.*, Case No. CGC20584456 (S.F. Superior, filed May 4, 2020) ("AG Action"); (Dkt. No. 1.) The Court appointed leadership in the class actions, and plaintiffs filed a consolidated complaint on behalf of a class of all purchasers of gasoline in California during the relevant time period. (Dkt. Nos. 167, 186.) After a series of motions to dismiss, class plaintiffs moved to certify a class of all Southern California gasoline purchasers. (Dkt. No. 512.)

During the class certification proceedings, the parties advised the Court a settlement had been reached in the AG Action. (Dkt. No. 577.) And on February 1, 2024, the parties in this action advised the Court they had reached a settlement in principle; a motion for preliminary approval was filed and subsequently granted. (Dkt. Nos. 595, 601, 614.) Settlement Class Representatives moved for final approval of the class action settlement on December 18, 2024. (Dkt. No. 622.) The final approval motion for the AG Action will be filed on January 31, 2025. (Dkt. No. 617.)

## II.   FINDINGS AND CONCLUSIONS OF LAW

Unless otherwise noted, defined terms used in this Order and Judgment shall be defined as set forth in the Settlement Agreement.

### A.   Jurisdiction

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

### B.   Notice and Administration

The Settlement Administrator, Verita Global, LLC ("Verita") previously established a settlement website which includes: the long-form notice (explaining the procedures for Settlement Class Members to submit claims, object, or exclude themselves), the Settlement Agreement, the

Preliminary Approval Order, online and printable versions of the claim forms and the opt out forms, and answers to frequently asked questions. In addition, the motion papers filed in connection with Settlement Class Counsel's motions (in this action and the AG Action) for attorneys' fees and expenses were placed on the settlement website after they were filed (which was before the opt out and objection deadline). The Settlement Administrator also operated a toll-free number for Settlement Class Member inquiries.

Notice of the settlement was provided by direct notice and by widespread publication notice on relevant websites and social media platforms. In total, the Notice Plan is estimated to have reached at least 70% of Settlement Class Members. *See Chinitz v. Intero Real Est. Servs*., No. 18-CV-05623-BLF, 2020 WL 7042871, at *2 (N.D. Cal. Dec. 1, 2020) (The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (approving a notice plan reaching at least 70.69% of class members). The Court finds that the Notice Plan provided the best practicable notice to the Settlement Class Members and satisfied the requirements of due process. Settlement Class Members were given until January 8, 2025 to exclude themselves from the proposed settlement or to object to it. A total of 8,175 Claim Forms were timely received by the Settlement Administrator.[1]

The record establishes that the Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1)-(8). (Dkt. No. 605.)

---

[1] Between January 9, 2025, and January 28, 2025, the Settlement Administrator and Settlement Class Counsel received inquiries from persons and entities about submitting claims after the January 8, 2025, deadline. Several of those persons and entities stated that they were unable to file their claim sooner due to the wildfires in Southern California. Given the unprecedented nature of the Southern California wildfires, the Court orders that the persons and entities that contacted the Settlement Administrator and/or Settlement Class Counsel by January 28, 2025, about submitting a claim after the January 8, 2025 deadline be given the opportunity to submit a claim within 30 days of this order.

### C. Certification of the Settlement Class

For purposes of the settlement only and this Order and Judgment, Class Settlement Representatives have moved to certify the following Settlement Class:

> (a) natural persons who, at the time of purchase, were not residents of the State of California, and (b) all Persons that are not natural persons, wherever located, that: (i) purchased Gasoline from a retailer, (ii) for their own use and not for resale, (iii) within the State of California, (iv) from February 18, 2015, through May 31, 2017.[2]

#### 1. Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the Settlement Class is sufficiently numerous. Verita estimates the number of businesses in and around California with large fleets exceeds 60,623. (Dkt. No. 601-6 at ¶ 18.)

Second, the typicality requirement is similarly satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up). Here, the Settlement Class Representatives' claims and those of the members of the proposed Settlement Class are based on the same legal theory (price-fixing through manipulation of the benchmark price for gasoline in California) and injury (overcharges on retail purchases of Gasoline). "In cases involving an alleged price-fixing conspiracy, the representative plaintiff's claim is often considered typical even where the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than

---

[2] Excluded from the Settlement Class are (a) the California Attorney General, bringing suit in the name of the People of the State of California, including in his role as *parens patriae* for natural persons residing in the State of California, as pleaded in the complaint in the People's Action; (b) the Settling Defendants or any other named defendant in the litigation; (c) officers, directors, employees, legal representatives, heirs, successors, or wholly or partly owned subsidiaries or affiliated companies of the Settling Defendants or any other named defendant in the litigation; (d) Class Counsel and their respective partners and employees; (e) the Court and other judicial officers, their immediate family members, and associated court staff assigned to the Litigation; and (f) those individuals who timely and validly exclude themselves from the Settlement Class and are listed at Dkt. 623-1, Ex. A.

did the members of the class." *In re Optical DiskDrive Antitrust Litig.*, 303 F.R.D.311, 317 (N.D. Cal. 2014).

Third, the commonality requirement is satisfied because there are common questions of law and fact that relate to Defendants' allegedly anticompetitive conduct. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B.*, 30 F.4th at 839 (cleaned up).

Finally, the adequacy of representation requirement is met as to both the Settlement Class Representatives and Settlement Class Counsel. Adequacy of representation requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031(9th Cir. 2012) (cleaned up). There is no apparent conflict between the Settlement Class Representatives and Settlement Class Members, and the Settlement Class Representatives and Settlement Class Counsel have vigorously pursued this action on behalf of the class.

### 2.     Rule 23(b)

Rule 23(b)(3) requires a plaintiff to establish the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following nonexhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id*. (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (quotations omitted). Here, the common questions raised by Settlement Class Members' claims predominate over any individual questions sufficiently for the purposes of a settlement class because the focus is Defendants' conduct and its effect on the market which are all common questions. *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 558 (9th Cir. 2019) (the predominance inquiry "must be considered in light of the reason for which certification is sought—litigation or settlement—which is relevant to a class certification . . . [and] in deciding whether to certify a settlement-only class, a district court need not inquire whether the case, if tried, would present intractable management problems.") (internal citations and quotations omitted).

### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*. The Court concludes a class action enables the most efficient use of Court and attorney resources and reduces costs to the Settlement Class Members by allocating costs among them. "In antitrust cases such as this, the damages of individual

[indirect] purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access (SRAM) Antitrust Litig.*, 2008 WL 4447592 at *7 (N.D. Cal. Sept. 29, 2008). Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

In sum, the Court finds the predominance and superiority requirements of Rule 23(b)(3) are met.

### D. Final Approval of the Settlement

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[3] In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

---

[3] Prior to the amendments to Rule 23, which took effect December 1, 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, this Court applies the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

For the reasons further detailed below, the Court finds that the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors. The settlement provides significant recoveries for Settlement Class Members, particularly when balanced against the risks and expenses of continuing litigation. A class trial would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals that could result in any class certification or final judgment being overturned.

Counsel for all Parties are highly experienced. Settlement Class Counsel explained why they supported the settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

### 1.  Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class.

In the Preliminary Approval Order, this Court found that the Settlement Class Representatives and Settlement Class Counsel had adequately represented the interests of the proposed Settlement Class. This Court has seen no evidence to contradict its previous finding, and the Court reconfirms it here with respect to Settlement Class Representatives and Settlement Class Counsel, who have vigorously prosecuted this action through discovery, motion practice, mediation, and preparations for trial. Settlement Class Counsel "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983 *6 (citation omitted).

### 2.  The Settlement Was Negotiated at Arm's Length.

The Court finds that the Settlement Agreement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced mediator Honorable Layn R. Phillips (Ret.). *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983 *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator). Before agreeing on the terms of the settlement, the Parties engaged in extensive factual investigation,

which included dozens of depositions, the production and review of millions of pages of documents, extensive written discovery, robust motion practice, and expert discovery. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds no such signs. Specifically, the Court finds that Settlement Class Counsel did not compromise the claims of the Settlement Class in exchange for higher fees as there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

### 3.    The Cash Payments Provide Adequate Recovery to the Settlement Class.

In the Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL 6619983 *8 (quoting *Hanlon*, 150 F.3d at 1026).

Defendants have agreed to pay $13.93 million, which will be used as a common fund to pay cash benefits to Settlement Class Members as set forth in the Plan of Allocation. Settlement Class Members who submit eligible claims will therefore have the opportunity to receive payments corresponding to their gasoline purchases. Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable, and adequate given the risks of proceeding to trial and the maximum recovery potentially available to Settlement Class Members if plaintiffs had prevailed at trial.

### 4.    The Risk of Continuing Litigation.

The amount provided for in the settlement is also reasonable in light of the risks of continued litigation. Both sides believed they had persuasive facts to support their positions, and there is limited precedent available regarding the Parties' competing theories. Trial would have involved a clash of expert analyses as to whether Defendants' actions were anticompetitive; how

damages should be calculated; and what damages, if any, should be awarded, particularly given what Defendants described as the "umbrella damages" theory of this case. And even if plaintiffs succeeded at trial, appeals would undoubtedly have followed.

### 5. Attorneys' Fees and Expenses.

The Parties have reached no agreements regarding the amounts of attorneys' fees and expenses to be paid. *See, e.g.*, *Hyundai.*, 926 F.3d at 569-70 (rejecting fairness objection because class counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of attorneys' fees and expenses, if any, is subject to approval of the Court based on a finding that such amounts are fair and reasonable.

### 6. Other Agreements.

The Court is required to consider "any agreements required to be identified under Rule 23 (e)(3)." Two individual plaintiffs in this litigation, Justin Lardinois and Asante Cleveland—named plaintiffs who are not part of the proposed Settlement Class and are therefore not eligible for either service awards or to recover under the Settlement Agreement, and who have, like the Settlement Class Representatives, participated extensively in discovery and general litigation efforts—entered into individual settlement agreements with Defendants that provide for awards that mirror the service awards Settlement Class Counsel seeks for Settlement Class Representatives. (Dkt. No. 621 at 23 n.2.) No part of the class settlement is contingent on or affected by those individual settlements.

Settlement Class Counsel have coordinated their attorneys' fees requests with the California Attorney General (as detailed in Settlement Class Counsel's motion for attorneys' fees and expenses). The settlement is not contingent upon the amount of attorneys' fees counsel receives in this action or in the AG Action.

### 7. The Plan of Allocation is Reasonable and Treats Settlement Class Members Equitably Relative to Each Other

The claims process and distribution method are reasonable. Settlement Class Members must provide contact information and photo ID along with proof of purchase, either through a simple

online claim form or through the mail. (Dkt. No. 601-12.) William B. Rubenstein, *Newberg on Class Actions* § 12:18 (6th ed. 2023) (noting that "a claiming process is inevitable" when "[t]here would be no way of distributing a settlement fund to the class members without a process by which the class members identified themselves, their mailing addresses, etc."); *Shay v. Apple Inc.*, 2024 WL 1184693, at *9 (S.D. Cal. Mar. 19, 2024) ("[A]ll class members were required to provide proof of purchase at one point in the process . . . [t]his proof of purchase requirement was successful at weeding out many fraudulent claims[.]").

The method for distributing funds is also reasonable. The Plan of Allocation distributes 85% of the Settlement Fund to businesses and 15% to non-California consumers (unless that leads to compensation of either group beyond their collective single damages), which reflects the estimated collective shares of damages by these two types of Settlement Class Members, as calculated by Settlement Class Representatives' expert. "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). Under the Plan of Allocation, all Settlement Class Members who submit valid claims will receive cash payments amounting to their *pro rata* allocation share of the Settlement Fund based on the amount they paid for gasoline. In this calculation, purchases made in Southern California will be afforded twice the value compared to purchases made in Northern California (purchases in Southern California will carry a weight of 1 and purchases in Northern California will carry a weight of 0.5), to reflect the relative strength of these claims on the merits, given that class plaintiffs did not move to certify a litigation class of Northern California purchasers. *Id.*; *see In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), Dkt. No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount based on the relative strength of certain claims); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 6205473, at *6-7 (N.D. Cal. Sept. 19, 2023) (granting approval of a settlement allocating enhanced payments for certain class members).

Settlement Class Members have been given the option to choose their preferred method of

payment, including electronic methods or by paper check. After an initial distribution, if there are substantial funds from uncashed payments, the remaining funds will, where economically rational, be redistributed to the Settlement Class Members who made claims and accepted their initial distribution payments. Only if the distribution of residual funds becomes uneconomical will distribution be made to a *cy pres* or other similar recipient, subject to the Court's approval.

### 8. The Response of Settlement Class Members

Out of millions of Settlement Class Members, there were 60 opt-outs—8 opt outs on behalf of businesses and the remaining 52 being from individuals—and no objections to the Settlement. In comparison, Settlement Class Members submitted 8,175 timely-filed claim forms, of which 1,548 are from businesses and 6,627 from individuals. These figures represent a positive response. *See Churchill Village, LLC v. General Electric,* 361 F.3d at 577 (explaining that a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *see also, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements . . . where notice relied on media notice exclusively, the claims rate ranged between 0.002% and 9.378%, *with a median rate of 0.023%*") (emphasis added).

### E. Releases

By operation of this Order and Judgment, on the Effective Date, each Settlement Class Representative and Settlement Class Member hereby releases and forever discharges and holds harmless the Defendant Releasees of and from any and all Settlement Class Released Claims which the Settlement Class Member ever had, now has, or will have in the future. Each Settlement Class Member further covenants and agrees not to commence, file, initiate, institute, prosecute, maintain,

or consent to any action or proceedings against the Defendant Releasees based on the Settlement Class Released Claims.

By operation of this Order and Judgment, with respect to the Settlement Class Released Claims, Settlement Class Representatives, the Defendants Releasees, and Settlement Class Members shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The settlement states that Settlement Class Representatives, the Defendants Releasees, and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases, but acknowledge that this release extends only to economic loss claims (other than those expressly exempted from the scope of the release).

The Settlement Class Released Claims are dismissed with prejudice and without costs. Accordingly, the Consolidated Class Action Complaint and any other complaints in the litigation asserting Settlement Class Released Claims are hereby dismissed with prejudice and without costs.

Except as provided in this Order and Judgment, Settlement Class Members shall take nothing against the Defendant Releasees. This Order and Judgment shall constitute a final judgment binding the Defendant Releasees, Settlement Class Representatives, and Settlement Class Members with respect to the Settlement Class Released Claims.

F.   **Other Effects of This Order**

No action taken by the parties, either previously or in connection with the negotiations or proceedings connected with the settlement, shall be deemed or construed to be an admission of the

truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party. Neither the settlement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Settlement Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the settlement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the settlement, in any proceeding in any court, administrative agency, or other tribunal. The Defendant Releasees' agreement not to oppose the entry of this Order and Judgment shall not be construed as an admission or concession that class certification was or would be appropriate in the litigation outside of the context of settlement or would be appropriate in any other action

No distributions shall be made from the Settlement Account, or from any account holding the Gross Settlement Fund or Net Settlement Fund, without the written authorization of Settlement Class Counsel.

Defendants will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each claimant. No Settlement Class Member or any other person will sue or have any claim or cause of action against the Settlement Class Representatives, Settlement Class Counsel, any person designated by Settlement Class Counsel, or the Settlement Administrator arising from or relating to the settlement, the Settlement Class Released Claims, the Action, or determinations or distributions made substantially in accordance with the settlement or Orders of the Court, including this Order and Judgment.

Without affecting the finality of the judgment hereby entered, the Court reserves exclusive jurisdiction over the implementation of the settlement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders

and judgments entered, and releases delivered in connection herewith shall be null and void and the parties shall be returned to their respective positions ex ante.

### III. CONCLUSION

For the foregoing reasons, the Court certifies the Settlement Class and grants final approval of the settlement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

The Court further orders that the persons and entities that contacted the Settlement Administrator and/or Settlement Class Counsel by January 28, 2025, about submitting claims after the January 8 deadline be given the opportunity to submit a claim. The Settlement Administrator shall inform these persons and entities within fourteen (14) days of this Order that they may submit a claim within thirty (30) days of this Order.

**IT IS SO ORDERED**.

Date: _____

_____
HON. JACQUELINE SCOTT CORLEY
UNITED STATES DISTRICT COURT JUDGE