**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

IN RE CALIFORNIA GASOLINE SPOT MARKET ANTITRUST LITIGATION

This Document Relates to:
All Actions

CASE NO. 3:20-cv-03131-JSC

**[REVISED PROPOSED] ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

HON. JACQUELINE S. CORLEY

[REVISED PROPOSED] ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO.
3:20-cv-03131-JSC

On December 6, 2024, court-appointed counsel in this matter ("Class Counsel") moved for an award of attorneys' fees, expenses, and service awards from the Net Settlement Fund. Having Considered the motion and related briefing, and good cause appearing, the Court **GRANTS** Class Counsel's motion.

This litigation began in May 2020 with the filing of cases by the California Attorney General ("AG") in California state court and by private plaintiffs in this Court. The AG and Class Counsel jointly prosecuted their overlapping claims against Defendants, including conducting coordinated document review, depositions, expert work, and strategy, with Class Counsel taking the lead on the work on behalf of the proposed class.

While class certification briefing was underway, the AG reached a settlement with Defendants on behalf of all California natural persons. Damages related to California natural persons represented roughly 75% of the total classwide damages. Following the AG's settlement, negotiations between Defendants and Class Counsel commenced under the supervision of mediator Hon. Layn R. Phillips (Ret.). Defendants and Settlement Class Representatives reached a settlement on May 30, 2024.

Class Counsel now requests an award of attorney fees in the amount of 30% of the Net Settlement Fund. The Net Settlement Fund is equal to the full settlement amount ($13,930,000) minus (1) any expense payments awarded by the Court, (2) service awards, and (3) amounts paid to the settlement administrator. Class Counsel advised at the final approval hearing that based on discussions with the claims administrator, the claims administration costs in this matter will not exceed $650,000. Using that maximum figure and the requested expense reimbursements and service awards (described below), the Net Settlement Fund is at least $6,710,902.48. A 30% award to Class Counsel from the Net Settlement Fund is therefore at least $2,013,270.74. Class Counsel additionally requests 30% of any interest accrued on the settlement account.

Class Counsel also request expense reimbursements in the amount of $6,554,097.52. Lastly, Class Counsel requests a service award of $5,000 for each of the Settlement Class Representatives.

## I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

In the Ninth Circuit, there are two ways of assessing requests for attorneys' fees in common fund cases: the percentage-of-the-recovery method (where the fee is evaluated as a percentage of the common fund) and the lodestar method (where the fee is evaluated by reference to counsel's lodestar). *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) ; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994) ("*WPPSS*")). District courts have discretion concerning which method to apply in a particular case. *Apple Device*, 50 F.4th at 784. As set forth below, an award of 30% of the Net Settlement Fund is reasonable under either approach.

### A. The Percentage-of-the-Recovery Method Supports the Requested Fees

When using the percentage-of-the-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The factors courts consider when determining whether to depart from the 25% benchmark are: (1) the result achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. Consideration of these factors weighs in favor of a 30% fee award, particularly when considering the complexity of the case and that the fee is calculated based on the Net Settlement Fund and will result in a significant negative multiplier. *See Ramirez v. TransUnion, LLC*, 2022 WL 17722395, at *10 (N.D. Cal. Dec. 15, 2022) (negative multiplier supported an award of 46 percent of the settlement fund).

**1. The Results Achieved**

Given the nature and scope of the claims in play, particularly after the AG settled claims on behalf of California natural persons, the $13.93 million settlement represents a substantial return for the Settlement Class. The $13.93 million settlement represents a 33% recovery on the $42 million single damages estimate for the settlement class. This percentage is at the higher end of typical recoveries in antitrust cases. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (antitrust settlement for 30% of plaintiffs' estimated damages was "fair and reasonable no matter how you slice it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *7 n.19 (N.D. Cal. July 7, 2016) (describing survey of 71 settled cartel cases where weighted mean settlement recovery was 19% of single damages); *In re High-Tech Empl. Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving total settlements that were 14% of the class damages estimate, and noting that "[d]istrict courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages"). The meaningful recovery on behalf of the Settlement Class weighs in favor of a 30% fee award. *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2-3 (N.D. Cal. Sept. 20, 2018) (finding that "the size of the recovery here—whether measured in dollars or by reference to percentage-of-damages recovery" warranted a 33% fee award and lodestar multiplier).

**2. The Litigation Risks**

The Settlement occurred against the backdrop of the significant risks litigating this case entailed. As the Court noted in its order on Defendants' motion for judgment on the pleadings, Plaintiffs faced an uphill battle in overcoming multiple causation challenges and producing models and evidence sufficient to support an umbrella theory of damages, both at class certification and on the merits. Defendants strongly opposed Plaintiffs' umbrella theory of impact and damages.

Plaintiffs' motion for class certification was pending at the time of settlement and even if the Court certified a class, an appeal focusing on substantive legal issues for which there is not clear

Ninth Circuit precedent would have likely followed. Class Plaintiffs would also have needed to present a complicated case about events having taken place nearly a decade ago to a jury.

Given these and other considerations, this litigation carried significant risks.

**3. The Skill Required and Quality of Work by Counsel**

Prosecuting this case against highly capable defense counsel required skill and dedication on the part of Class Counsel. Class Counsel was required to develop an understanding of the complex trading and pricing dynamics in the gasoline industry, including how to interpret sometimes opaque trading logs and other documents related to Defendants' and third parties' trading activities. As noted above, the legal issues in this case were not straightforward. Defendants tried more than once to have this case thrown out due to Plaintiffs' umbrella theory of impact and damages. Class Counsel opposed, and the Court denied, each of Defendants' motions. The complex factual and legal nature of this case, and the quality of work needed to meet those challenges, weighs in favor of an upward adjustment from the 25% benchmark.

**4. The Contingent Nature of the Fee**

Class Counsel litigated this case on an entirely contingent basis, with no assurances of recovery. It is well-recognized that representation on a contingency basis weighs in favor of an upward adjustment from the 25% benchmark. *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *3 (N.D. Cal. Sept. 20, 2018) ("the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work."). And it was not only the non-payment of fees that was at risk. Class Counsel spent millions of dollars out-of-pocket on experts and other litigation expenses without any assurances of reimbursement. *See Vizcaino*, 290 F.3d at 1050 (finding that the litigation entailed "hundreds of thousands of dollars of expense" was a relevant consideration supporting an upward adjustment).

**5. Awards in Similar Cases**

In similarly complex cases, most of which involved attorney fee awards on the gross settlement fund, rather than the net fund, courts have not hesitated to grant fee requests exceeding the 25% benchmark where, as here, the circumstances warrant it. *E.g.*, *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2023 WL 11820531, at *1 (N.D. Cal. Dec. 18, 2023) (30% of $255M gross settlement fund); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-2 (N.D. Cal. Mar. 3, 2023) (awarding 40% of final settlement, which brought fee award to 31% of all settlements); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *7-9 (N.D. Cal. Apr. 24, 2019) (30% of $8,300,000 recovery); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *5 & n.30 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (collecting cases, including those awarding fees of 1/3 of the settlement fund); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (citing numerous cases awarding fees of 32% or greater).

**6. The Requested Fee is a Percentage of the Net, Not Gross, Settlement Amount**

In the Ninth Circuit courts have discretion to use either the gross settlement amount or the net settlement amount as the basis for calculating a percentage-based fee award. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015); *see also Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (the "choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable"). In this case, given the amount of expenses Class Counsel advanced relative to the size of the Gross Settlement Fund, Class Counsel is seeking an award of attorneys' fees based on the size of the Net Settlement Fund. Using the Net Settlement Fund instead of the gross settlement fund reduced the requested fee roughly by half.

**B. A Lodestar Crosscheck Confirms that the Requested Fees Are Reasonable**

The Ninth Circuit has explained that courts may consider class counsel's lodestar to "provide[] a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). The lodestar is calculated by multiplying the hours reasonably spent by reasonable hourly rates. *Bluetooth*, 654 F.3d at 941. Between August 7, 2020 (the appointment of Co-Lead Interim Class Counsel) and July 1, 2024 (Court's order granting preliminary approval), Class Counsel spent 31,262.2 hours prosecuting this litigation with a resulting lodestar of $17,721,644.50. Both the number of hours expended, and Class Counsel's hourly rates are reasonable.

Class Counsel had to expend substantial time on motion practice (motions to dismiss, jurisdictional motions, discovery motions, motions for judgment on the pleadings, class certification) and discovery. The Court actively oversaw the litigation and is aware of its complexities and volume of work Class Counsel performed.

Class Counsel represented that work was allocated to various firms and lawyers based on their experience with specified subject matters, and the overall litigation efforts were highly centralized, with Co-Lead Interim Class Counsel billing over 86% of the total hours. Class Counsel also reduced the number of hours by splitting work where feasible with the AG. This was particularly true with respect to document review and depositions. Lastly, Co-Lead Interim Class Counsel put in place billing protocols and reviewed time records to avoid unnecessary billing. The lodestar attributable to timekeepers with fewer than 10 hours were excluded, as was time spent by counsel preparing individual complaints (or conducting any other work) before the Court's order appointing interim class leadership.

Class Counsel's hourly rates range from $225 to $1,370 for attorneys (with less than 1% of the hours billed at more than $1,150), and from $175 to $380 for litigation staff. These rates are consistent with rates approved in complex class actions throughout this District. *See JUUL Labs*,

2023 WL 11820531, at *2 (approving rates ranging from $300 to $1,050 for attorneys); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving partner rates up to $1,195, associate rates up to $850, $425 for contract attorneys, and $325 for paralegals); *TransUnion*, 2022 WL 17722395, at *9 (finding hourly rates ranging from $1,325 to $455 to be "generally in line with rates prevailing in this community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *8 (N.D. Cal. Feb. 3, 2022) (approving attorney rates between $300 and $1,105); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates of $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals). The hourly rates of Co-Lead Interim Class Counsel and the other firms have been approved by courts in this District in other matters. *E.g. MacBook*, 2023 WL 3688452, at *15 (approving Girard Sharp rates); *In re Google Play Developer Antitrust Litig.*, 2024 WL 150585, at *3 (N.D. Cal., Jan. 11, 2024) (approving Hausfeld rates).

Class Counsel's fee award is approximately11.4% of their lodestar (using the maximum claims administration costs to calculate the Net Settlement Fund, as above). A "negative multiplier" such as this "suggests that the fee request is reasonable." *Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *10 (N.D. Cal. Feb. 27, 2023); *see also TransUnion*, 2022 WL 17722395, at *10 (negative multiplier "strongly suggests the reasonableness" of the fee) (quotation omitted); *In re DRAM Antitrust Litig.*, 2013 WL 12387371, at *12-13 (N.D. Cal. Nov. 5, 2013) (observing that a negative multiplier "is virtually sufficient to satisfy the cross-check requirement"). The fact that Class Counsel is seeking a significant negative multiplier also addresses any concern that might arise regarding inefficient billing (although, as noted above, Class Counsel took steps to minimize inefficiencies). *See Juarez v. Social Fin., Inc.*, 2023 WL 3898988, at *7 (N.D. Cal. June 8, 2023) (noting that fee request resulting from negative multiplier was still "far less" than an adjusted lodestar would be); *Pemberton v. Nationstar Mortgage, LLC*, 2020 WL 230014, at *2 (S.D. Cal.

Jan. 15, 2020) (court "need not reach a conclusion" about whether to adjust the hourly rate because the requested fee was "well below the lodestar").

The fact that Class Counsel have been awarded additional fees from the AG settlement in the state court action does not undermine the reasonableness of the requested fee award in this matter. Even with the $3,000,000 in attorneys' fees awarded in the state court action, the fee award in this case is approximately $5,013,270.74 (again using the maximum claims administration costs to calculate the Net Settlement Fund), which is 28.3% of Class Counsel's lodestar—still a significant negative multiplier.

Thus, regardless of the approach to analyzing Class Counsel's requested fee award, a lodestar crosscheck supports the reasonableness of the request.

## II. THE REQUESTED EXPENSES FEES ARE REASONABLE

Class Counsel also requests the reimbursement of $6,554,097.52 in litigation expenses (which is less than the $7,000,000 cap set forth in the class notice). In common fund cases "[c]lass counsel is entitled to reimbursement of reasonable expenses." *Lidoderm*, 2018 WL 4620695, at *4 (quotation omitted); *see also In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) ("In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense.") (citing *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)). Class Counsel submitted supplemental information detailing their requested expense reimbursement. ECF 626.

The requested expense reimbursement request, while substantial, is reasonable for this case. Most of the expenses ($5,607,358.86) were costs for industry and economic experts. While this amount is substantial, it is reasonable given the complexity and intensity of the expert work.

The non-expert costs are also reasonable. Document hosting costs, deposition, research, filing, and travel costs are necessary costs in complex litigations. These "categories of expenses . . . are the type routinely charged to clients, and should be reimbursed." *Lidoderm*, 2018 WL 4620695, at *4; *see also High-Tech*, 2015 WL 5158730, at *16 (awarding costs for (1) expert witness fees; (2)

mediators' fees; (3) document review; (4) court reporting and videographer services; (5) electronic research; (6) copying, mailing, and serving documents; and (7) case-related travel for plaintiffs, witnesses, experts, and counsel). Class Counsel were able to reduce costs by, for example, using in-house document reviewers and deposition check translators fluent in Korean, instead of paying high hourly rates to foreign language contract reviewers and interpreters. Only when official translations were needed (*i.e.*, for documents submitted to the Court or used in depositions) did Class Counsel incur the expense of obtaining certified translations from an outside source. Such translation service costs are typically considered "[r]easonable reimbursable litigation expenses." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018).

## III. THE REQUESTED SERVICE AWARDS ARE REASONABLE

The Ninth Circuit recently reiterated its holding "that reasonable incentive awards to class representatives are permitted." *Apple Device*, 50 F.4th at 785 (quotation marks and citation omitted). In so doing, the Court explained that nineteenth century caselaw, which established the "common fund doctrine," is "not[] discordant" with the Ninth Circuit's "twenty-first century precedent allowing [service] awards." *Id.* Instead, in the class action context, the common fund doctrine "supports reasonable awards to a litigant." *Id.* at 785-86 (quotation marks and citation omitted). And "private plaintiffs who recover a common fund are entitled to an *extra* reward," so long as it is reasonable. *Id.* (emphasis in original; quotation marks and citation omitted).

"When assessing requests for service awards, courts consider five principal factors: '(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.'" *Andrews v. Plains All American Pipe L.P.*, 2022 WL 4453864, at *4-5 (C.D. Cal. Sept. 20, 2022) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). These are often referred to as the "*Van Vranken*" factors.

Class Counsel requests a service award of $5,000 to each of the three Settlement Class Representatives. "In the Ninth Circuit, courts have found that $5,000 is a presumptively reasonable service award." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019); *see also Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (explaining that, in the Northern District of California, "a $5,000 [service award] payment is presumptively reasonable"); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (similar).

The awards are also reasonable under the *Van Vranken* factors. Each of the Settlement Class Representatives spent substantial time and energy participating in this lawsuit, including searching various sources for potentially responsive documents as far back as 2014, responding to interrogatories about their businesses, and producing witnesses to sit for depositions in their personal and 30(b)(6) capacities. *See In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *24 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (awarding $10,000 each to 21 individual class representatives who "spent a significant amount of time assisting in the litigation of th[e] case, including time spent in depositions and responding to discovery"). Their participation in the litigation has spanned four years but, given the size of the settlement, their overall financial stake as class members is limited. Modest service awards are therefore appropriate to financially compensate Settlement Class Representatives for their service and will not result in an undue windfall. Collectively, the service awards would represent less than 0.04% of the total settlement amount. Courts within the Ninth Circuit have repeatedly found awards constituting such a small share of the settlement fund to be reasonable. *E.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving service awards that constituted 0.56% of settlement); *Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) (approving $20,000 service awards where "the aggregate proposed incentive award for the two named plaintiffs is 0.34% of the Gross Fund").

**IV. CONCLUSION**

For the foregoing reasons, the Court grants Class Counsel's request for an award of attorneys' fees in the amount of 30% of the Net Settlement Fund, plus 30% of the interest accrued on the settlement account.

Class counsel is awarded $6,554,097.52 in litigation expenses.

Each of the Settlement Class Representatives is awarded service awards in the amount of $5,000.

**IT IS SO ORDERED**.

Date: ______________________________

______________________________
HON. JACQUELINE SCOTT CORLEY
UNITED STATES DISTRICT COURT JUDGE